JAMES W. MCGARRY (*pro hac vice*)
*JMcGarry@goodwinlaw.com*
YVONNE W. CHAN (*pro hac vice*)
*YChan@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax: +1 617 523 1231

Attorneys for Defendant
BANK OF AMERICA, N.A.

[*ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK*]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA –

## SAN DIEGO DIVISION

| | |
|---|---|
| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION | Case No. 21-MD-02992-LAB-MSB |
| | **DEFENDANT BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS MASTER CONSOLIDATED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)** |
| | Date: January 10, 2022<br>Time: 11:30 a.m.<br>Ctrm: 14A – 14th Floor<br>Judge: Hon. Larry Alan Burns |
| | Filed/Lodged Concurrently with:<br>1. Memorandum<br>2. Request for Judicial Notice<br>3. Declaration of Robert Chestnut<br>4. Declaration of Shane Daniels<br>5. [Proposed] Order |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......................................................................................... 1

BACKGROUND ........................................................................................... 3

ARGUMENT ............................................................................................... 7

I.    Plaintiffs' Direct Contract-Related Claims Must Be Dismissed (Counts 7, 8, & 9). ......................................................................................... 7

    A.    Plaintiffs' Claim for Breach of the Account Agreement (Count 7) Must Be Dismissed. .................................................................. 7

        1.    Plaintiffs Have Not Stated A Claim Based on Investigation and Reimbursement of Unauthorized Transaction Claims. ................................................................ 7

        2.    Plaintiffs Have Not Pled a Breach of Contract Based on Account Freezes. ...................................................................... 12

        3.    Plaintiffs Have Failed to Allege a Factual Basis For Concluding that BANA Disregarded Instructions From EDD. ................................................................................. 13

    B.    Plaintiffs Have Not Stated A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing (Count 9). ...................... 14

    C.    Plaintiffs' Implied Contract Claim (Count 8) Must Be Dismissed. .................................................................................. 16

II.   Plaintiffs Have Not Stated A Claim Under EFTA/Reg E (Count 1). ........... 17

III.  Plaintiffs Fail To State Any Claim As "Third-Party Beneficiaries" Under the EDD Agreement (Counts 11 and 12). ......................................... 20

    A.    Plaintiffs Are Not Third-Party Beneficiaries. ..................................... 20

    B.    Plaintiffs Fail To Allege A Breach Of The EDD Agreement. ............. 22

IV.   Plaintiffs Have Not Stated A Claim For Negligence Or Negligent Hiring (Counts 5 & 6). .................................................................... 24

V.    Plaintiffs Have Not Stated A Claim For Breach of Fiduciary Duty (Count 10). ................................................................................... 27

VI.   Plaintiffs Have Not Stated A Claim For Violation Of The California Consumer Privacy Act Or The California Customer Records Act (Counts 2 and 3). ............................................................................ 29

VII.  Plaintiffs Have Not Stated A Claim For Violation of The California Unfair Competition Law (Count 4). ............................................. 31

    A.  The UCL Does Not Provide For The Relief Sought By Plaintiffs. ............................................................................ 31

    B.  Plaintiffs Have Not Adequately Alleged A Violation Of The UCL. ..................................................................................... 33

        1.  Plaintiffs Have Not Adequately Alleged "Unlawful" Acts. ...... 33

        2.  Plaintiffs Have Not Adequately Alleged "Unfair" Acts. ......... 34

VIII.  Plaintiffs Have Not Stated A Due Process Claim (Counts 13 & 14). ........... 36

    A.  Plaintiffs Have Not Alleged Facts Sufficient To Establish That Bank Of America Is A State Actor. ...................................... 36

    B.  Plaintiffs Have Not Alleged Any Due Process Violation. .................. 39

CONCLUSION. ................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulaziz v. Twitter, Inc.*,
2020 WL 6947929 (N.D. Cal. Aug. 12, 2020)...................................................27

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ...................................................................................36, 38

*APAC-Carolina, Inc. v. Greensboro-High Point Airport Auth.*,
110 N.C. App. 664 (1993) .................................................................................16

*Baba v. Hewlett-Packard Co.*,
2010 WL 2486353 (N.D. Cal. June 16, 2010) ...................................................33

*Barvie v. Bank of Am., N.A.*,
2018 WL 4537723 (S.D. Cal. Sept. 21, 2018) ...................................................24

*Belluomini v. CitiGroup, Inc.*,
2013 WL 3855589 (N.D. Cal. July 24, 2013) ...................................................25

*Belue v. Keefe Commissary Grp., LLC*,
2021 WL 1197749 (D. Idaho Mar. 29, 2021) ...................................................37

*Benton v. Baker Hughes*,
2013 WL 3353636 (C.D. Cal. June 30, 2013)...................................................17

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) ............................................................................16

*Bernardo v. U.S. Bank Nat. Ass'n*,
2011 WL 3667475 (N.D. Cal. Aug. 22, 2011)...................................................28

*Black by Black v. Indiana Area Sch. Dist.*,
985 F.2d 707 (3d Cir. 1993) ............................................................................39

*Brunette v. Humane Soc'y of Ventura Cty.*,
294 F.3d 1205 (9th Cir. 2002)...................................................................38, 39

*California v. Kinder Morgan Energy Partners, L.P.*,
569 F. Supp. 2d 1073 (S.D. Cal. 2008) ............................................................25

*Chazen v. Centennial Bank*,
    61 Cal. App. 4th 532 (1998)................................................................28

*Chen v. Allstate Ins. Co.*,
    819 F.3d 1136 (9th Cir. 2016)..............................................................9

*Chen v. Bank of Am., N.A.*,
    2019 WL 9633650 (C.D. Cal. Oct. 29, 2019) ....................................19

*Chore-Time Equip., Inc. v. Cumberland Corp.*,
    713 F.2d 774 (Fed. Cir. 1983) ......................................................19, 20

*Chose v. Accor Hotels & Resorts (Maryland) LLC*,
    2020 WL 759365 (N.D. Cal. Feb. 14, 2020)......................................33

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................27

*Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd.*,
    2020 WL 3268578 (S.D. Cal. June 17, 2020) ....................................22

*Cohen v. Capital One, N.A.*,
    2015 WL 12746217 (C.D. Cal. June 1, 2015)....................................32

*Davis v. FEC*,
    554 U.S. 724 (2008) ..............................................................................9

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012)........................................................31, 34

*DeWitt v. Cal Citizens Redistricting Comm'n*,
    2016 WL 3049732 (N.D. Cal. May 31, 2016) ....................................19

*Diehl v. Starbucks Corp.*,
    2013 WL 12108658 (S.D. Cal. Oct. 16, 2013)....................................15

*Dos Beaches, LLC v. Mail Boxes Etc., Inc.*,
    2012 WL 506072 (S.D. Cal. Feb. 15, 2012) ......................................15

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    2016 WL 6523428 (S.D. Cal. Nov. 3, 2016)......................................25

*Fed. Deposit Ins. Co. v. Mallen*,
    486 U.S. 230 (1988) ............................................................................40

*Flagg Bros., Inc. v. Brooks*,
  436 U.S. 149 (1978) ............................................................................ 36, 38

*Fronda v. Staffmark Holdings, Inc.*,
  2015 WL 3866860 (N.D. Cal. June 22, 2015) ....................................... 30

*GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan
  Chase Bank, Nat'l Ass'n*,
  671 F.3d 1027 (9th Cir. 2012) ................................................................ 21

*Ghalchi v. U.S. Bank, N.A.*,
  2015 WL 12655402 (C.D. Cal. Jan. 8, 2015) ......................................... 18

*Gibson v. Jaguar Land Rover N. Am., LLC*,
  2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ......................................... 32

*Gilmore v. Garner*,
  157 N.C. App. 664 (2003) ...................................................................... 15

*Giron v. Wells Fargo Bank, N.A.*,
  2014 WL 12589628 (C.D. Cal. May 27, 2014) ....................................... 23

*Glenn-Colusa Irrigation Dist. v. U.S. Army Corps of Eng'rs*,
  2019 WL 3231748 (E.D. Cal. July 18, 2019) ......................................... 23

*Gonzalez-Maldonado v. MMM Healthcare, Inc.*,
  693 F.3d 244 (1st Cir. 2012) .................................................................. 37

*Goonewardene v. ADP, LLC*,
  6 Cal. 5th 817 (2019) ............................................................................. 22

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*,
  982 F.3d 1069 (7th Cir. 2020) ................................................................ 19

*Haynish v. Bank of Am., N.A.*,
  284 F. Supp. 3d 1037 (N.D. Cal. 2018) .................................................. 31

*Herskowitz v. Apple, Inc.*,
  301 F.R.D. 460 (N.D. Cal. 2014) ........................................................... 32

*Hester v. Regions Bank*,
  2010 WL 2232158 (M.D. Ala. June 3, 2010) ......................................... 37

*Huynh v. Quora, Inc.*,
  508 F. Supp. 3d 633 (N.D. Cal. 2020) ............................................. 31, 32

*Hyp3r Inc. v. Mogimo Inc.*,
  2017 WL 11515712 (N.D. Cal. Nov. 8, 2017)....................................................31

*Ileto v. Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003)...........................................................................26

*Ironshore Specialty Ins. Co. v. 23andMe, Inc.*,
  2018 WL 5316173 (N.D. Cal. Oct. 26, 2018).................................................23

*Jacobsen v. Katzer*,
  609 F. Supp. 2d 925 (N.D. Cal. 2009)...............................................................9

*Jiangmen Kinwai Furniture Decoration Co. v. IHFC Properties, LLC*,
  2015 WL 6393801 (M.D.N.C. Oct. 22, 2015) ................................................10

*Klaehn v. Cali Bamboo, LLC*,
  2020 WL 3971518 (S.D. Cal. July 13, 2020)..................................................34

*Klamanth Water Users Protective Ass'n v. Patterson*,
  204 F.3d 1206 (9th Cir. 1999)...........................................................................21

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003)..............................................................................32, 33

*Kruger v. Wells Fargo Bank*,
  11 Cal. 3d 352 (1974).........................................................................................36

*Lawrence v. Bank of Am.*,
  163 Cal. App. 3d 431 (1985).............................................................................27

*Loiseau v. VISA USA Inc.*,
  2010 WL 4542896 (S.D. Cal. Feb. 10, 2010) ...................................................9

*Major v. Wells Fargo Bank, N.A.*,
  2014 WL 4103936 (S.D. Cal. Aug. 18, 2014)..................................................33

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ...........................................................................................39

*McKinney v. Google, Inc.*,
  2011 WL 3862120 (N.D. Cal. 2011)................................................................35

*McKnight v. Torres*,
  563 F.3d 890 (9th Cir. 2009).............................................................................15

*Menzel v. Metrolina Anesthesia Assocs., P.A.*,
  66 N.C. App. 53 (1984) ...................................................................................... 9

*N.C. Mail Haulers & Postal Lab. Loc. 8001, Am. Postal Workers
  Union, AFL-CIO v. E. Coast Leasing, Inc.*,
  2006 WL 3068497 (M.D.N.C. Oct. 27, 2006) ................................................... 14

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ............................................................................ 27

*Nev. Fleet LLC v. FedEx Corp.*,
  2021 WL 2402953 (E.D. Cal. June 11, 20212) ................................................. 24

*Oaks Mgmt. Corp. v. Superior Ct.*,
  145 Cal. App. 4th 453 (2006) ........................................................................... 27

*In re Outlaw Labs., LP Litig.*,
  2021 WL 1198652 (S.D. Cal. Mar. 30, 2021) ................................................... 14

*Pasadena Republican Club v. W. Just. Ctr.*,
  985 F.3d 1161 (9th Cir. 2021) ..................................................................... 38, 39

*Phillips v. TLC Plumbing, Inc.*,
  172 Cal. App. 4th 1133 (2009) ......................................................................... 26

*Quattrocchi v. Allstate Indem. Co.*,
  2018 WL 347779 (E.D. Cal. Jan. 9, 2018) ....................................................... 35

*Quezada v. Franklin Madison Grp., LLC*,
  2020 WL 5819824 (S.D. Cal. Sept. 29, 2020) ................................................. 35

*Renderall-Baker v. Kohn*,
  457 U.S. 830 (1982) .................................................................................... 37, 38

*Rezapour v. Earthlog Equity Grp., Inc.*,
  2013 WL 3326026 (W.D.N.C. July 1, 2013) ................................................... 15

*S. Cal. Gas Leak Cases*,
  7 Cal. 5th 391 (2019) ....................................................................................... 24

*Shapiro v. Am.'s Credit Union*,
  2013 WL 5373269 (W.D. Wash. Sept. 25, 2013) ............................................ 18

*Simi Mgmt. Corp. v. Bank of Am., N.A.*,
  930 F. Supp. 2d 1082 (N.D. Cal. 2013) ..................................................... 25, 28

*Smith v. Visa U.S.A., Inc.*,
    2011 WL 2709819 (N.D. Cal. July 12, 2011) ....................................................24

*Solis v. City of Fresno*,
    2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ....................................................11

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..........................................................................32

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) .............................................................33

*Spa-Kur Therapy Dev., Inc. v. Bank of Am., N.A.*,
    2019 WL 1099834 (S.D. Cal. Mar. 8, 2019)....................................................24

*Spiegel v. Ryan*,
    946 F.2d 1435 (9th Cir. 1991) .........................................................................40

*Steinle v. City & Cnty. of San Francisco*,
    919 F.3d 1154 (9th Cir. 2019) .........................................................................22

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................................27

*The H.N. & Frances C. Berger Found. v. Perez*,
    218 Cal. App. 4th 37 (2013) ............................................................................21

*Townsend v. Bank of Am., N.A.*,
    2009 WL 10671412 (C.D. Cal. Mar. 9, 2009) .................................................27

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
    931 F.3d 966 (9th Cir. 2019) ...........................................................................26

*Unilab Corp. v. Angeles-IPA*,
    244 Cal. App. 4th 622 (2016) ..........................................................................17

*Valenzuela v. ADT Sec. Servs., Inc.*,
    820 F. Supp. 2d 1061 (C.D. Cal. 2010)............................................................25

*Venegas v. Bianco*,
    2019 WL 10301094 (C.D. Cal. Aug. 26, 2019) ...............................................37

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ...............................................................11, 26, 30

*Volkswagen Grp. of Am., Inc. v. S. States Volkswagen, LLC,*
  2011 WL 1549417 (M.D.N.C. Apr. 21, 2011) ................................................... 14

*Watson v. Bank of Am., N.A.,*
  2016 WL 3552061 (S.D. Cal. June 30, 2016) .............................................. 12, 13

*Widjaja v. JPMorgan Chase Bank,*
  2020 WL 2949832 (C.D. Cal. Mar. 31, 2020) ................................................. 24

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
  2017 WL 3727318 (N.D. Cal. Sept. 22, 2020) ................................................ 31

**Statutes**

15 U.S.C. § 1693f ............................................................................... 17, 18

15 U.S.C. § 1693f(a)(3) ............................................................................ 18

15 U.S.C. § 1693f(c) ................................................................................. 4

15 U.S.C. § 1693g ............................................................................... 17, 18

42 U.S.C. § 1983 ................................................................................... 36

31 U.S.C. § 5311 ..................................................................................... 6

Cal. Civ. Code § 1798.150(a)(1) ............................................................ 29, 30

Cal. Civ. Code § 1798.80 ......................................................................... 30

Cal. Civ. Code § 1798.100 ........................................................................ 29

**Regulations**

12 C.F.R. § 1005.6 .............................................................................. 17, 18

12 C.F.R. § 1005.11 ................................................................................. 17

12 C.F.R. § 1005.11(b)(1)(i) ...................................................................... 18

12 C.F.R. § 1005.11(b)(1)(iii) ..................................................................... 18

12 C.F.R. § 1005.11(c)(2)(i) ........................................................................ 4

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................ 2

Fed. R. Civ. P. 12(b)(1) ........................................................ 7, 9, 19

Fed. R. Civ. P. 12(b)(6) ................................................................ 7

**Legislative Materials**

S. Judiciary Comm. Rep. on A.B. 375 (June 25, 2018) ....................... 29

**Other Authorities**

*About the EDD Debit Card*, Cal. Emp. Dev. Dep't,
    https://www.edd.ca.gov/About_EDD/The_EDD_Debit_Card.htm/R
    K=2/pdf/EDD_Digital_Account_Fee_Disclosure_and_other_Impor
    tant_Disclosures.pdf ................................................................ 21

Cal. Empl. Dev. Dep't, Rep. No. 2020-128/628.1, EDD's Poor
    Planning and Ineffective Management Left It Unprepared to Assist
    Californians Unemployed by COVID-19 Shutdowns (2021),
    https://www.auditor.ca.gov/pdfs/reports/2020-128and628.1.pdf ....... 3

*CA EDD Admits Paying as Much as $31 Billion in Unemployment
    Funds to Criminals*, ABC7 News (Jan. 25, 2021),
    https://abc7news.com/california-edd-unemployment-fraud-ca-
    scam-insurance/10011810/ ........................................................ 1

Kenny Choi, *Update: Outrage Mounts After Bank of America Denies
    Claims From Victims of EDD Bank Card Scammers*, CBS Local
    News (Nov. 9, 2020),
    https://sanfrancisco.cbslocal.com/2020/11/09/outrage-mounts-after-
    bank-of-america-denies-claims-from-victims-of-edd-bank-card-
    scammers/ ............................................................................. 5

Legis. Analyst's Office, Legislative Oversight of Ongoing Challenges
    at EDD (Jan. 26, 2021),
    https://lao.ca.gov/handouts/state_admin/2021/EDD-Challenges-
    012621.pdf ............................................................................. 4

News Release, Cal. Empl. Dev. Dep't, EDD Provides Updates on
    Unemployment Benefit Fraud and Fraud Prevention Efforts (Jan.
    25, 2021), https://edd.ca.gov/about_edd/pdf/news-21-05.pdf ........... 1

News Release, U.S. Secret Serv. Media Rels., Secret Service
Announces the Creation of the Cyber Fraud Task Force (July 9,
2020),
https://www.secretservice.gov/newsroom/releases/2020/07/secret-
service-announces-creation-cyber-fraud-task-force ............................................ 3

U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 28-
20 (Aug. 31, 2020),
https://wdr.doleta.gov/directives/attach/UIPL/UIPL_28-20.pdf ......................... 3

**INTRODUCTION**

This multi-district litigation arises from a massive surge in fraud targeting California's unemployment benefits program during the COVID-19 pandemic. At a time when millions of unemployed Californians were relying on government assistance, legions of criminals were exploiting this unprecedented crisis to target the state agency providing that assistance, the California Employment Development Department ("EDD"), by filing fraudulent unemployment benefits claims. The responses to this wholly-unexpected crisis are the subject of these lawsuits.

EDD administers unemployment benefits in California, and retained Bank of America, N.A. ("BANA") to distribute those benefits through prepaid debit cards. As the Master Consolidated Complaint ("MCC") acknowledges, frauds perpetrated on the unemployment insurance program exploded in mid-2020. *See, e.g.*, MCC (Dkt. No. 72) ¶ 79. EDD has called the pervasive fraud a "criminal assault on the benefits system," and public reports suggest the deep involvement of sophisticated overseas criminal gangs, "money mules," users of the "dark web," prison inmates, and other malevolent groups and individuals seeking to take advantage of federal and state responses to the current health and employment crisis—to the tune of $11 billion to $31 billion of outright theft.[1]

BANA has taken many steps to combat this unprecedented surge of criminal activity—which remains a challenge—including freezing accounts that are suspected to be illegitimate and denying cardholder claims for reimbursement that appear to represent further attempts at fraud. In doing so, these measures have also had an unintended but regrettably unavoidable impact on some legitimate EDD

---

[1] *See* News Release, Cal. Empl. Dev. Dep't, EDD Provides Updates on Unemployment Benefit Fraud and Fraud Prevention Efforts (Jan. 25, 2021), https://edd.ca.gov/about_edd/pdf/news-21-05.pdf ("January 25, 2021 EDD News Release"); *CA EDD Admits Paying as Much as $31 Billion in Unemployment Funds to Criminals*, ABC7 News (Jan. 25, 2021), https://abc7news.com/california-edd-unemployment-fraud-ca-scam-insurance/10011810/ ("January 25, 2021 News Article").

cardholders. BANA is sympathetic to the experiences of legitimate cardholders who have been affected by its fraud prevention measures. BANA has provided numerous avenues for these affected cardholders to access their accounts and recover their funds, and many Plaintiffs acknowledge that their accounts have been unfrozen, their claims have been reconsidered, and they have been reimbursed.

This difficult situation does not justify the lawsuit before the Court, as Plaintiffs have not demonstrated that they are entitled to relief on any of their causes of action. Plaintiffs claim that BANA breached the cardholder Account Agreement and violated the Electronic Fund Transfer Act ("EFTA") by freezing certain Plaintiffs' accounts, but the Account Agreement expressly permits BANA to freeze accounts if it "suspect[s] irregular, unauthorized, or unlawful activity," and EFTA does not govern account freezes. Plaintiffs likewise have not adequately alleged that BANA failed to investigate and reimburse their claims of unauthorized transactions in violation of either the Account Agreement or EFTA, where many of them have been fully reimbursed (which also deprives them of a live Article III claim) and none have alleged sufficient facts to show that they are entitled to relief.

The rest of Plaintiffs' wide-ranging claims also fail because they are supported by neither law nor facts.[2] For instance, their negligence, fiduciary duty, and California Consumer Privacy Act ("CCPA") claims seek to impose duties on BANA that go far beyond any law or contract. Plaintiffs assert that BANA had a legal duty to issue cards with embedded "chips"—even though the *State* specified the use of magnetic strips. Plaintiffs have similarly failed to allege a violation of

_____

[2] The vast majority of Plaintiffs provide only barebones allegations that fail to satisfy even a liberal reading of Fed. R. Civ. P. 8(a). Plaintiffs appear to recognize their own pleading deficiencies based on their footnote stating that the allegations relating to Individual Plaintiffs "are presented here as set forth in each of their complaints, after meeting and conferring with Individual Plaintiffs' liaison counsel." MCC ¶ 89 n.16. Plaintiffs cannot sidestep their basic pleading obligations by relying on their prior, similarly deficient, pleadings, or on off-the-record conversations among the lawyers. If the MCC does not contain the necessary allegations, that is the end of the matter under Rule 8.

California's Unfair Competition Law, as they are challenging BANA's efforts to fight an unprecedented level of fraud directed at a government benefits program, which is hardly unfair or immoral.

For these and the other reasons set forth below, Plaintiffs' Master Consolidated Complaint must be dismissed in its entirety.

## **BACKGROUND**

### I.    THE COVID-19 PANDEMIC RESULTED IN UNPRECEDENTED LEVELS OF UNEMPLOYMENT AND WIDESPREAD FRAUDULENT ACTIVITY.

Since the beginning of the pandemic, millions of Californians have sought unemployment benefits, including many who were not traditionally eligible for state benefits but who qualified for Pandemic Unemployment Assistance ("PUA") under the federal CARES Act.[3]  *See* MCC ¶ 75.  Unfortunately, this infusion of federal dollars and the creation of PUA, a program easily misused by criminals, led to an explosion of fraudulent activity directed at the EDD program.[4]  *See id.* at ¶¶ 76, 79.

The frauds have taken two main forms that are relevant here.  First, individuals who are not entitled to any unemployment benefits (*e.g.*, prisoners, international syndicate members, non-Californians, even those who are gainfully employed) have submitted false applications, often using stolen identities.  *See supra*, p. 1 n.1.  EDD, which has complete responsibility for determining eligibility and approving benefits claims, has confirmed that it approved many ineligible applicants and distributed

---

[3] PUA is designed to provide benefits to persons generally not previously eligible for unemployment assistance, such as the self-employed and contractors (including participants in the "gig" economy).  *See* Cal. Empl. Dev. Dep't, Rep. No. 2020-128/628.1, EDD's Poor Planning and Ineffective Management Left It Unprepared to Assist Californians Unemployed by COVID-19 Shutdowns, at 10 (2021), https://www.auditor.ca.gov/pdfs/reports/2020-128and628.1.pdf.

[4] *See, e.g.*, U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 28-20 (Aug. 31, 2020), https://wdr.doleta.gov/directives/attach/UIPL/UIPL_28-20.pdf; News Release, U.S. Secret Serv. Media Rels., Secret Service Announces the Creation of the Cyber Fraud Task Force (July 9, 2020), https://www.secretservice.gov/newsroom/releases/2020/07/secret-service-announces-creation-cyber-fraud-task-force.

between $11 billion and $31 billion in fraudulently-obtained benefits. *See id.* Most of these funds were paid through prepaid debit cards issued by BANA, pursuant to a contractual arrangement with EDD, as described below. The "overwhelming majority" of this "enrollment fraud" has been associated with PUA claims "due to federal policymakers' decision to prioritize immediate assistance," and thus require a "lower standard of identity and wage information" from applicants.[5]

Second, criminals have exploited EFTA and its implementing regulation, Regulation E ("Reg E"), which set forth requirements that a prepaid card issuer like BANA must follow when a cardholder reports an account error, such as an allegedly unauthorized ATM transaction (referred to here as "Claims"). As relevant here, the prepaid card issuer must issue the cardholder a provisional credit if its investigation into the Claim is not completed within ten business days. *See* 15 U.S.C. § 1693f(c); 12 C.F.R. § 1005.11(c)(2)(i). Because this makes the disputed funds available pending the completion of the investigation, criminals have taken advantage of this federally-mandated protection by committing "double dipping" fraud: they file fraudulent Claims, obtain provisional credits, and then deplete the provisionally credited funds before the credit can be reversed when the false Claim is identified (and, in some cases, this fraud may go undetected and the credits may not be reversed). This "double dipping" fraud is committed both by individuals who engaged in enrollment fraud and individuals who are legitimate benefits recipients.

## II.    THE CALIFORNIA BENEFITS PROGRAM.

EDD retained BANA to deliver unemployment and disability benefits to California residents pursuant to an agreement between EDD and BANA (the "EDD Agreement"). *See* MCC ¶¶ 38–39; Declaration of Robert Chestnut ("Chestnut Decl."), Ex. 2. Under the EDD Agreement, BANA issues prepaid debit cards ("EDD

---

[5] Legis. Analyst's Office, Legislative Oversight of Ongoing Challenges at EDD, at 5 (Jan. 26, 2021), https://lao.ca.gov/handouts/state_admin/2021/EDD-Challenges-012621.pdf.

Debit Cards") to EDD-approved recipients who choose to receive their benefits through a prepaid debit card rather than a check from EDD, and EDD distributes benefits by funding those debit card accounts. *See* MCC ¶ 41.

EDD chose to require magnetic strip cards for its prepaid card program; as specified in the EDD Agreement and EDD's own RFP, BANA issued EDD Debit Cards with magnetic strip technology. *See* Chestnut Decl., Ex. 2, at 5 (Req. #323) ("The debit card shall contain no less than an ISO 7811-compliant high coercivity magnetic strip."). EDD has, in fact, publicly confirmed that it chose not to require chip cards in the EDD Agreement.[6]

As with any government benefit program, fraud deterrence and prevention is an important part of the EDD program and BANA's prepaid debit-card program. BANA, in close collaboration with EDD, has taken a number of steps to address both enrollment fraud and "double dipping" fraud in the state program. *See supra*, p. 4. Among other measures, BANA freezes or blocks accounts and denies Claims that it believes to involve illegitimate beneficiaries and fraudulent or suspicious activity.[7] These fraud prevention measures are expressly permitted by the account agreement ("Account Agreement") that governs the cardholder's contractual relationship with BANA. MCC ¶¶ 4, 71. Among other terms, the Account Agreement authorizes BANA to "freeze" accounts if it "suspect[s] irregular, unauthorized, or unlawful activities may be involved." Chestnut Decl., Ex. 1, § 2. It also specifies that BANA may restrict access to any prepaid debit card if BANA notices suspicious activity, *id.*

---

[6] *See* Kenny Choi, *Update: Outrage Mounts After Bank of America Denies Claims From Victims of EDD Bank Card Scammers*, CBS Local News (Nov. 9, 2020), https://sanfrancisco.cbslocal.com/2020/11/09/outrage-mounts-after-bank-of-america-denies-claims-from-victims-of-edd-bank-card-scammers/ (EDD: "Providing chip technology is a rather new offering and was not included in the current contract with Bank of America to provide debit card services for Unemployment Insurance (UI) claimants.").

[7] Account freezes and blocks both prevent a cardholder from accessing the account until the freeze or block is lifted; one primary difference between the two is that a cardholder may remove a block by verifying their identity with BANA.

§ 3, and deduct from an account funds that a cardholder is not entitled to keep, *id*. § 2. These rights are consistent with BANA's numerous obligations under federal law as a bank, including under the Bank Secrecy Act (31 U.S.C. § 5311 *et seq.*), to monitor and report fraudulent and suspicious activity, and to prevent BANA from being used as an instrument of fraud or illegal acts such as money laundering.

## III.    INITIAL CASES AND THE MULTIDISTRICT LITIGATION.

Plaintiffs filed a number of individual and class action proceedings against BANA in federal district court in California. In broad strokes, the actions challenged BANA's efforts to manage the unprecedented surge in unemployment fraud, arguing that BANA should have done more to combat the surge, but also should not have frozen Plaintiffs' accounts or denied their Claims based on suspected fraud. In other words, Plaintiffs' theory was that BANA was both too active in policing fraud and not active enough.

BANA filed motions to dismiss in six cases (including two motions in one case), but no oppositions were filed and none of the motions were resolved. On June 2, 2021, District Judge Chhabria issued a preliminary injunction in one of the cases, *Yick v. Bank of America*; this Court properly observed that the injunction was largely directed towards providing enhanced opportunities for certain debit card holders to seek to restore access to funds on their cards, but it also enjoined one aspect of the Bank's fraud strategies. *Yick v. Bank of America, N.A.*, Case No. 21-cv-00376-VC (N.D. Cal.) ("*Yick*"), ECF No. 103 (June 2, 2021) ("*Yick* Preliminary Injunction"). Judge Chhabria requested that the parties work out the terms of the injunction, which they did, in light of the Court's concerns, among others, that the order not "unduly hinder" the Bank's anti-fraud measures. *Yick*, ECF No. 89 at 3 (May 17, 2021) ("*Yick* Preliminary Order").

Shortly thereafter, on June 4, 2021, the Judicial Panel on Multidistrict Litigation consolidated the actions in this District. ECF No. 1. Following an initial Status Conference, the Court ordered Plaintiffs to file a Master Consolidated

Complaint ("MCC"). In the MCC, which was drafted with the benefit of the record facts entered in *Yick*, Plaintiffs allege that they received EDD benefits and that BANA improperly froze their EDD Debit Card accounts and/or did not reimburse them for allegedly unauthorized transactions on those accounts. *See* MCC ¶¶ 1–4. Their allegations largely mirror their prior complaints and do not remedy the many deficiencies that BANA identified in its previous motions to dismiss.

## ARGUMENT

### I. PLAINTIFFS' DIRECT CONTRACT-RELATED CLAIMS MUST BE DISMISSED (COUNTS 7, 8, & 9).

Plaintiffs raise three claims based on an alleged contractual relationship with BANA: breach of the Account Agreement (count 7); breach of the implied covenant of good faith and fair dealing in the Account Agreement (count 9); and breach of a separate "implied" contract (count 8). The Court should dismiss all three under Rules 12(b)(1) and 12(b)(6).

#### A. Plaintiffs' Claim for Breach of the Account Agreement (Count 7) Must Be Dismissed.

Plaintiffs' claim for breach of the Account Agreement is based on three theories. MCC ¶ 608. First, they assert that BANA's Claims investigation and reimbursement practices violated Section 9, which contains BANA's "Zero Liability" Policy for unauthorized transactions, and Section 11, which sets forth procedures for resolving errors involving account transactions. *See* Chestnut Decl., Ex. 1. Second, they assert that BANA froze or blocked their accounts. Third, they assert that BANA failed to make funds available to them as instructed by EDD. None of these theories is legally viable as to any Plaintiff.

##### 1. Plaintiffs Have Not Stated A Claim Based on Investigation and Reimbursement of Unauthorized Transaction Claims.

The theory that BANA breached Sections 9 and 11 of the Account Agreement by failing to properly investigate or credit Claims fails for all Plaintiffs.

First, the vast majority of Plaintiffs have not adequately pled facts showing that BANA's obligations under either Section 9 or Section 11 were triggered. Section 9 states that cardholders "may" be reimbursed for certain "unauthorized" transactions, while Section 11 applies to an "error" involving a transaction.  But dozens of Plaintiffs do not allege that they reported *any* unauthorized or erroneous transaction to BANA.  *See* App'x Column 1.[8]  Some Plaintiffs allege vaguely that they reported "fraud" but do not allege facts sufficient to show that the reported "fraud" fell within the scope of Sections 9 and 11.[9]  *See* App'x Column 2.

The Account Agreement also specifies that, to trigger BANA's obligations under Sections 9 and 11, a cardholder must provide notice to BANA within a certain period of time and must inform BANA, among other things, "[w]hy [they] believe there is an error, and the dollar amount involved."  Chestnut Decl., Ex. 1, § 11.  But many Plaintiffs allege that they reported fraud months after it occurred, well beyond the contractual time limits.  *See, e.g.*, MCC ¶¶ 312, 422, 435, 451, 456, 491; Chestnut Decl., Ex. 1, § 9 (requiring notice "within a reasonable time," to "be determined in [BANA's] sole discretion"); *id.* § 11 (requiring notice no later than 60 days after the first statement on which the error appeared, or the date a cardholder electronically accessed their account, but in any event no later than 120 days after the transaction allegedly in error).  And the vast majority of Plaintiffs fail to allege that they provided BANA with the contractually-required information, including the basis of their belief that there was an error.  *See* App'x Column 3.[10]

---

[8] Rather than citing to all Plaintiff-specific paragraphs for each argument, BANA has included an Appendix identifying individual Plaintiffs to whom the arguments apply.

[9] *See, e.g.*, MCC ¶ 383 (Plaintiff "reported the fraud" after discovering that someone had used his information to receive benefits).

[10] General assertions that Plaintiffs provided "reasons for their belief that the transaction was unauthorized," MCC ¶ 535, are not sufficient where Plaintiffs do not actually plead the reasons they provided to BANA.

Under the plain language of the Agreement, BANA was under no contractual obligation to investigate Plaintiffs' Claims when they were not timely reported or adequately explained.

Second, a substantial number of Plaintiffs allege that they have been fully reimbursed. *See* App'x Column 4. The Account Agreement expressly limits BANA's contractual liability to the "face amount of any unauthorized card transaction" and specifies that BANA is "not liable for any claims of special, indirect or consequential damages." Chestnut Decl., Ex. 1, § 9. Fully-reimbursed Plaintiffs therefore cannot recover any contract damages, which means they fail to state a breach-of-contract claim. *See Menzel v. Metrolina Anesthesia Assocs., P.A.*, 66 N.C. App. 53, 59 (1984) (breach of contract properly dismissed where no evidence of damages); *Loiseau v. VISA USA Inc.*, 2010 WL 4542896, at *2 (S.D. Cal. Feb. 10, 2010) ("Plaintiff cannot state a breach of contract claim as to either [defendant], because he fails to allege damages.").[11] In addition, because these fully-reimbursed Plaintiffs have received all of the relief to which they would be entitled under the contract, their contract claims are moot, and must also be dismissed pursuant to Rule 12(b)(1). *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (plaintiff must establish Article III case or controversy for each claim "he seeks to press and for each form of relief that is sought" (internal quotations omitted)); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) (claim is moot once plaintiff "receives all of the relief to which he or she is entitled on the claim").[12]

On top of these deficiencies, none of the Plaintiffs allege facts sufficient to

---

[11] The Account Agreement is governed by North Carolina law, *see* Chestnut Decl., Ex. 1, § 18, but for purposes of this motion to dismiss there are no material differences between North Carolina law and California law.

[12] Dismissal on this ground applies equally to the Plaintiffs who have been fully reimbursed but who did not allege as such in the Complaint. *See* Declaration of Shane Daniels ("Daniels Decl.") ¶ 3; *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 930 (N.D. Cal. 2009) (Court may "rely on affidavits or any other evidence properly before the court" when ruling on a Rule 12(b)(1) motion).

show that Sections 9 or 11 of the Account Agreement were violated. Instead, the
allegations essentially are that BANA breached the Account Agreement because it
did not pay every one of the Claims it received. Conclusory allegations of breach
are not sufficient to state a claim where, as here, contractual conditions limit a
party's liability or duty. Section 9 expressly provides that transactions are not
considered "unauthorized" if "for any other reason [BANA] conclude[s] that the
facts and circumstances do not reasonably support a claim of unauthorized use."
Chestnut Decl., Ex. 1, § 9. Plaintiffs allege no facts to show that BANA's decision
was based on anything other than such a conclusion. Instead, Plaintiffs allege that
BANA denied a number of Claims based on a "Claim Fraud Filter" that was used to
identify suspected fraud, and informed those cardholders that it "believe[d] the
account or the claim have been the subject of fraud or suspicious activity." MCC
¶ 89.[13] In other words, according to Plaintiffs, BANA concluded that the disputed
transactions did not appear to be unauthorized because the Claim Fraud Filter
indicated a suspicion of fraud—which is squarely within what Section 9 permits.
Because Plaintiffs do not allege facts to show that BANA's denial of their Claim
was based on anything other than a "conclu[sion] that the facts and circumstances
do not reasonably support a claim of unauthorized use," they have not alleged a
breach of Section 9. *See Jiangmen Kinwai Furniture Decoration Co. Ltd v. IHFC
Properties, LLC*, 2015 WL 6393801, at *3 (M.D.N.C. Oct. 22, 2015) (granting
summary judgment for defendant based on evidence it acted in good faith in
exercising discretion to determine if substitute premises were equivalent).

      Plaintiffs' general assertions that the Claim Fraud Filter applied "summarily"
or was "flawed" are also insufficient to establish a violation of Section 11. Section
11 does not specify a particular manner in which an investigation can or cannot be
conducted: there is no minimum length requirement, for example, nor any

---

[13] The vast majority of Plaintiffs do not even allege facts to show that their Claims
were denied based on the Claims Fraud Filter. *See* App'x Column 5.

prohibition on automated investigation procedures.  Section 11 simply states that BANA "will determine whether an error occurred"—which is precisely what BANA did when it denied Claims based on fraud or suspicious activity.  Indeed, it is perfectly reasonable to begin an investigation by applying a screening step to first determine whether a Claim itself is likely fraudulent—if it is, then there was no transaction error, and no further investigation is needed.  Nowhere does Section 11 require that BANA go through *all* possible investigation steps for *all* Claims—once it determines that no error occurred (whether it is because the Claim itself is fraudulent, or for one of many other possible reasons), it is reasonable to conclude the investigation at that point.  Plaintiffs have not alleged facts to show otherwise, nor have they alleged any facts to show that BANA failed to make a determination as required by Section 11.[14]  *See, e.g.*, MCC ¶ 276 (BANA informed Plaintiff that it was denying her claim because transfers were posted as requested); *id.* ¶ 283 (letter from BANA stating it had "determined that no error has occurred").  Their disagreement with the *outcome* of BANA's investigation does not establish that the investigation failed to comply with the contract.   Accordingly, Plaintiffs' claim for breach of Section 11 fails as well.

---

[14] A handful of Plaintiffs (Yick, Smith, Burns, Hanna, Horath, Morgan, Duey, and de Vera, *see* MCC ¶¶ 114–126, 200–202, 315, 384, 398, 440, 346, 337) allege that BANA did not make any determination at all, but they also failed to allege that they provided BANA with the information that would trigger a Section 11 investigation and determination, and their claims fail on that basis.  *See* App'x Column 3.  It also appears that some of these Plaintiffs reported a "fraud" that was not covered by Section 11.  *See, e.g.*, MCC ¶ 346 (discovered someone else had applied for benefits in her name and reported the fraud to BANA, which "said there was nothing they could do and that they needed to wait until EDD handled an appeals process"); *id.* ¶ 440 (notified BANA that a fraudulent person attempted to register under her name in two different states, and BANA "told her there was nothing they could do and that she needed to resolve her issue with EDD").  Many Plaintiffs also merely allege "on information and belief" that BANA failed to conduct an investigation, which is insufficient to survive a motion to dismiss.  *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009) (allegations based "upon information and belief" did not state a "plausible" claim for relief); *Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim.").

Though Plaintiffs rely on the *Yick* preliminary injunction (MCC ¶ 109), that order neither requires nor supports a different result. The preliminary order on which the injunction was based *preceded* the filing of the MCC and did not address the now-superseded contract claims in any detail (covering all aspects of the contract issues in less than a full sentence), or address the numerous pleading deficiencies that BANA had identified at that time. *See Yick* Preliminary Order, at 1. The order also did not address any individual *Yick* plaintiff's allegations, and certainly not the allegations of any plaintiff who was not a part of *Yick*.

### 2. Plaintiffs Have Not Pled a Breach of Contract Based on Account Freezes.

Plaintiffs' second contract theory, that BANA breached the Account Agreement by freezing or blocking some (but not all) of Plaintiffs' accounts (*see* App'x Column 6), fails across the board because the contract expressly authorizes BANA to freeze accounts. *See* Chestnut Decl., Ex. 1, § 2 ("If we suspect irregular, unauthorized, or unlawful activities may be involved with your Account, we may 'freeze' (or place a hold on) the balance pending an investigation of such suspected activities."). Plaintiffs offer no facts to support their conclusory assertions that accounts were frozen in a manner inconsistent with that provision. MCC ¶ 608; *see Watson v. Bank of Am., N.A.*, 2016 WL 3552061, at *21 (S.D. Cal. June 30, 2016) (granting motion to dismiss because Plaintiffs "failed to allege specific facts" to support their claim). Neither their allegation that the Claim Fraud Filter was used to freeze or block accounts nor their assertion that the Filter was "highly flawed and unreliable" (MCC ¶ 93) shows that BANA acted for reasons other than a "susp[icion] [of] irregular, unauthorized, or unlawful activities." Plaintiffs also fail to plead any facts showing that account freezes or blocks were longer than "necessary for a reasonable investigation." MCC ¶ 608(e).

Once again, the *Yick* preliminary injunction does not provide support for these claims. As noted above, the *Yick* court specifically recognized that the

injunction needed to be framed in order to protect the Bank's right to "freez[e] the accounts of people who are likely to have obtained their cards through fraud." *Yick* Preliminary Order, at 3. While the *Yick* court stated that it found a likelihood of success that cards had been frozen "based on a faulty screening process," *see id.* at 1, that observation related to the EFTA cause of action and did not address how freezing a card could violate the Bank's contractual right to do so based only on a suspicion of fraud, during a time when even Plaintiffs admit fraud was rampant in the California unemployment benefits program.

### 3. Plaintiffs Have Failed to Allege a Factual Basis For Concluding that BANA Disregarded Instructions From EDD.

Plaintiffs' final contract theory is that BANA failed to "make funds available" in accordance with EDD's instructions, including on the day EDD instructed BANA to fund their accounts. MCC ¶ 608(g), (h); *see* Chestnut Decl., Ex. 1, § 2 ("We will add funds to your Account only (a) in accordance with instructions from the EDD . . .); *id.* ("Funds are available for your use on the day we have been instructed by the EDD to fund your Account."). This theory fails as to all Plaintiffs because none allege that EDD provided BANA any funding instructions that BANA failed to follow, or that funds were not available on the day BANA was instructed to fund an account. *See Watson*, 2016 WL 3552061, at *21.

This theory is simply an attempt by those Plaintiffs whose accounts were frozen or blocked (*see* App'x Column 6) to circumvent the express contractual language permitting BANA to take those actions. While Section 2 states that BANA will fund an account when instructed by EDD and the funds will be available for use that day, there are a large number of limits on funds availability spread throughout the Account Agreement. *See, e.g.*, Chestnut Decl., Ex. 1, § 2 (BANA's right to freeze, BANA's right to withdraw funds the cardholder is "not entitled to," delays for emergencies), § 3 (BANA's right to "restrict access" to card in light of "suspicious activities," limits on frequency and types of transactions), § 4

(no illegal transactions), § 16 (BANA's right to "close or suspend" account "at any

time"). To interpret the funding provisions to prohibit account freezes would

render Section 2 meaningless, in violation of basic principles of contract

interpretation. *See Volkswagen Grp. of Am., Inc. v. S. States Volkswagen, LLC,*

2011 WL 1549417, at *2 (M.D.N.C. Apr. 21, 2011) ("[A]n interpretation which

gives a reasonable meaning to all provisions of a contract will be preferred to one

which leaves a portion of the writing useless or superfluous."); *In re Outlaw Labs.,*

*LP Litig.*, 2021 WL 1198652, at *3 (S.D. Cal. Mar. 30, 2021) (same).

### B.   Plaintiffs Have Not Stated A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing (Count 9).

Plaintiffs allege that BANA breached the implied covenant of good faith and

fair dealing in the Account Agreement, offering an exhaustive laundry list of

agreements that Plaintiffs wish BANA had made, but which they now seek to create

out of thin air. Not surprisingly, most of these alleged "implied" duties are vaguely

expressed and sweeping, only demonstrating they cannot possibly be found to arise

from the Account Agreement. So, the claim asserts that BANA breached the

implied covenant by generally failing to "safeguard" EDD benefits, including by

issuing magnetic strip rather than chip cards; failing to ensure "effective" customer

service; failing to warn or notify Plaintiffs of unauthorized use of their cards; failing

to investigate unauthorized transaction claims or provide provisional credits; failing

to employ "reasonable practices and procedures" to safeguard Plaintiffs' personal

information; and freezing accounts without a "reasonable basis" and without

providing a means to contest the freeze. MCC ¶¶ 621, 622.

These allegations fail as a matter of law for at least three reasons. First,

Plaintiffs cannot use the implied covenant to impose new obligations that extend

beyond or contradict the Account Agreement. *See N.C. Mail Haulers & Postal*

*Lab. Loc. 8001, Am. Postal Workers Union, AFL-CIO v. E. Coast Leasing, Inc.*,

2006 WL 3068497, at *7 (M.D.N.C. Oct. 27, 2006) ("implied covenant cannot add

new obligations to [an] agreement [as] it only governs the existing one"); *McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir. 2009) (same).  Thus, Plaintiffs cannot use the implied covenant to manufacture an obligation to issue chip cards, provide a certain level of customer service, take certain actions to protect Plaintiffs' personal information, or provide warnings or a "reasonable means" for contesting account freezes where the Account Agreement contains no such requirements.  Similarly, Plaintiffs' claim that BANA was obligated to freeze accounts "only to protect them from third-party fraud," MCC ¶ 621, impermissibly restricts the relevant provision in the Account Agreement, which expressly permits a freeze if BANA suspects *any* "irregular, unauthorized, or unlawful activities" regardless of whether BANA suspects they were committed by the cardholder or by a third party.  Chestnut Decl., Ex. 1, § 2; *see Gilmore v. Garner*, 157 N.C. App. 664, 667 (2003) ("No meaning, terms, or condition can be implied which are inconsistent with the expressed provisions." (alterations and citations omitted)); *Dos Beaches, LLC v. Mail Boxes Etc., Inc.*, 2012 WL 506072, at *15 (S.D. Cal. Feb. 15, 2012) ("[T]he covenant of good faith may not be read to prohibit a party from doing something that the contract expressly permits them to do.").

Second, Plaintiffs cannot bring an implied covenant claim based on the same allegations as those underlying their express contract claim.  *See Rezapour v. Earthlog Equity Grp., Inc.*, 2013 WL 3326026, at *4 (W.D.N.C. July 1, 2013) (dismissing implied covenant claim as "Plaintiffs' allegations are duplicative of Plaintiffs' allegations of breach of contract"); *Diehl v. Starbucks Corp.*, 2013 WL 12108658, at *6 (S.D. Cal. Oct. 16, 2013) (same).  Here, Plaintiffs' allegations regarding BANA's investigation of Claims and its freezing of accounts also form the basis of Plaintiffs' contract claim.  *Compare, e.g.*, MCC ¶ 608 (asserting breach of contract based on alleged failure to "timely and reasonably investigate and resolve [Plaintiffs'] fraud claims" and "to provide [Plaintiffs] with provisional credit when the Bank's investigation into their fraud claims exceeds 10 business

days"), *with id.* ¶ 622 (asserting breach of covenant based on alleged failure to "timely or adequately process and investigate EDD Debit Cardholders' claims regarding unauthorized transactions" and "to extend provisional credit in cases where EDD Debit Cardholders' fraud claims are not timely resolved").

Third, the claim itself, even if not legally barred, is too vaguely alleged. The supposed terms—such as the obligation to have "reasonably adequate" customer service, to take "reasonable" measures to safeguard Plaintiffs' information, or to "notify" cardholders of transactions that were too far away or too "inconsistent" with the cardholders' "past Account access behaviors"—provide no standards this Court or a jury could understand, interpret, or enforce. (The few that are at least somewhat specific duplicate the contract terms, as noted above.) The claim also provides no specific factual allegations of how these imagined terms were not met. The implied covenant claim therefore must be dismissed.

## C.    Plaintiffs' Implied Contract Claim (Count 8) Must Be Dismissed.

Having failed to state a claim for breach of the Account Agreement, Plaintiffs attempt to manufacture a separate contract claim based on a different and wholly distinct contract that they assert was "implied." This theory essentially echoes the implied covenant claim, seeking to impose those imagined duties through an implied contract rather than an implied covenant. The claim fares no better in these different clothes, and is deficient for the same reasons just explained.

Plaintiffs' implied-contract theory fails as a matter of law for two additional, separate reasons. First, it is well established that "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002); *see APAC-Carolina, Inc. v. Greensboro-High Point Airport Auth.*, 110 N.C. App. 664, 675 (1993) ("[N]o contract will be implied where an express contract covers the same subject matter."). Here, the "subject matter" of the alleged implied contract—BANA's servicing of EDD Debit Cards—is already governed by an "express

contract" (the Account Agreement).  Thus, BANA is not subject to any additional, "implied" obligations on this topic.

Second, "an implied-in-fact contract requires an ascertained agreement of the parties." *Unilab Corp. v. Angeles-IPA*, 244 Cal. App. 4th 622, 636 (2016). Plaintiffs assert that BANA "agreed" to take "reasonable steps" to protect their accounts, including, for example, issuing chip cards.  MCC ¶¶ 612, 615.  But Plaintiffs do not allege any facts showing BANA's assent to these additional obligations, and have therefore failed to state a claim based on an implied contract. *See Benton v. Baker Hughes*, 2013 WL 3353636, at *7 (C.D. Cal. June 30, 2013) (dismissing claim for breach of implied contract in the absence of "mutual assent").

## II.    PLAINTIFFS HAVE NOT STATED A CLAIM UNDER EFTA/REG E (COUNT 1).

Plaintiffs' claim under EFTA and Reg E, which set forth the procedures that financial institutions must follow in investigating a consumer's claims of unauthorized transactions and limit consumer liability for unauthorized transactions to $50 or less in most instances, fails for many of the same reasons as their contract claim.  *See* 15 U.S.C. §§ 1693f, 1693g; 12 C.F.R. §§ 1005.6, 1005.11.  Plaintiffs allege that BANA violated EFTA and Reg E by (1) failing to properly investigate and resolve their claims, including by not provisionally crediting their accounts and by subjecting them to more than the maximum amount of liability permitted for unauthorized transactions; and (2) adopting various customer service policies and practices and freezing accounts in an alleged effort to avoid statutory and regulatory obligations.  MCC ¶¶ 536, 539.  Both theories fail.

First, Plaintiffs who failed to plead that they reported any unauthorized transaction or other transaction error (including those who simply allege that they reported "fraud") have not alleged that BANA had any obligations under EFTA and Reg E, which apply only to "error resolution" and liability for unauthorized transactions.  *See* App'x Columns 1 & 2.

Similarly, Plaintiffs have failed to allege that they satisfied the notice

requirements of EFTA and Reg E. Like the Account Agreement, EFTA and Reg E require that a cardholder notify BANA as to the reason "why the consumer believes an error exists." 12 C.F.R. § 1005.11(b)(1)(iii); 15 U.S.C. § 1693f(a)(3). The vast majority of Plaintiffs have failed to allege that they provided such notice. App'x Column 3. General allegations such as "presented evidence over the phone regarding the unauthorized transactions," MCC ¶ 188, and "reported the fraud," *id.* ¶ 318, are insufficient to plead an EFTA violation. *See Ghalchi v. U.S. Bank, N.A.*, 2015 WL 12655402, at *8 (C.D. Cal. Jan. 8, 2015) (dismissing EFTA claim where plaintiffs' "description of her notice to Defendant only indicates that she 'notified' Defendant of 'unauthorized withdrawals' from her Checking Account'"); *Shapiro v. Am.'s Credit Union*, 2013 WL 5373269, at *2 (W.D. Wash. Sept. 25, 2013), *aff'd*, 650 F. App'x 447 (9th Cir. 2016) (dismissing Reg E claim with prejudice where plaintiff "presented no evidence that [he] notified [defendant] with sufficient particularity to constitute a proper EFTA 'notice'"). A mere recitation that Plaintiffs provided "reasons for their belief," without identifying any reasons provided, is also insufficient. *See supra*, p. 8 n.10. Likewise, a number of Plaintiffs allege that they reported fraud well beyond the applicable EFTA deadline. *See* 12 C.F.R. § 1005.11(b)(1)(i) (notice must be "received by the institution no later than 60 days after the institution sends the periodic statement or provides the passbook documentation, required by § 1005.9, on which the alleged error is first reflected"); *see, e.g.*, MCC ¶ 312 (plaintiff reported June 2020 fraudulent transactions in January 2021); *id.* ¶¶ 422, 435, 451.

In addition, as noted above, a number of Plaintiffs have been fully reimbursed. *See* App'x Column 4; Daniels Decl. ¶ 3. These Plaintiffs do not have a cause of action under Section 1693g, which limits a consumer's liability for unauthorized transactions, because they have incurred no liability at all (not even the amount of liability permitted by EFTA and Reg E). *See* 15 U.S.C. § 1693g; 12 C.F.R. § 1005.6. They also do not have a live claim under Section 1693f, which

sets forth error resolution procedures, as BANA has remedied any concrete injury they may have suffered. *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020) (procedural violation of the Fair Debt Collection Practices Act did not confer standing in the absence of a concrete injury). For lack of standing and pursuant to Rule 12(b)(1), those must be dismissed.

Plaintiffs also fail to allege facts to support their assertion that BANA failed to conduct an investigation as required by EFTA and Reg E. As with the contract claim, "on information and belief" allegations are insufficient. *See supra*, p. 11 n.14. Plaintiffs level much of their attention on the Bank's use of the Claim Fraud Filter, but all they allege about how that process purportedly violated the law is to offer pejoratives—asserting it was highly flawed, automated, summary and unreliable. *See, e.g.*, MCC ¶¶ 89, 93, 112. Name-calling does not state a claim, particularly where neither EFTA nor Reg E prohibit the use of "automated" or allegedly "summary" measures. *See Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 781 (Fed. Cir. 1983) (declining to impose a requirement that "appears nowhere in the statute"). Rather, what Plaintiffs do allege is that the Filter was intended to "determine if the claimant is using a stolen identity" (MCC ¶ 89), which undermines rather than states a claim that its use was unreasonable as a matter of law. Plaintiffs have not alleged any facts to show specifically how BANA's investigation into their Claims, whether based on the Claim Fraud Filter or on other methods of investigation, actually did not meet a controlling legal standard under EFTA and Reg E. *See supra*, Section I. Accordingly, Plaintiffs' EFTA and Reg E investigation claims must be dismissed. *See Chen v. Bank of Am., N.A.*, 2019 WL 9633650, at *7-8 (C.D. Cal. Oct. 29, 2019) (dismissing claim where plaintiff alleged that "the Bank 'failed to investigate in good faith the fraudulent transactions,'" but "d[id] not allege details establishing any bad faith on [the Bank]'s part"); *cf. DeWitt v. Cal. Citizens Redistricting Comm'n*, 2016 WL 3049732, at *3 (N.D. Cal. May 31, 2016), *aff'd*, 705 F. App'x 594 (9th Cir. 2017)

(dismissing claim where plaintiff alleged "no more than conclusory allegations" that the Secretary of State failed to investigate).

Plaintiffs' second theory—that the Bank froze accounts and took customer service actions to avoid its legal obligations—also fails. EFTA and Reg E do not prohibit or place any limitations on the freezing of accounts. They also do not require certain levels of customer service; there is no limit on wait times, or required hours of operation. Plaintiffs cannot use the specific and well-defined requirements of EFTA and Reg E to impose expansive obligations that do not appear anywhere in the statute or the regulation. *See Chore-Time Equip.*, 713 F.2d at 781. These allegations are therefore insufficient to state a claim under EFTA.

Judge Chhabria's prior order found that the *Yick* Plaintiffs had a "strong likelihood" of success under EFTA, for failing to conduct "an adequate, good faith investigation" and for account freezes. Preliminary Order, at 1. The latter finding is of no help to Plaintiffs, as EFTA does not even govern account freezes, as just explained. With respect to investigations, the Order's conclusions were not based on the MCC that is before this Court, which does not state a claim for all of the reasons already discussed, and the Order itself is summary and non-specific as to what conduct of the Bank the Court believed likely violated EFTA and Reg E.

## III.   PLAINTIFFS FAIL TO STATE ANY CLAIM AS "THIRD-PARTY BENEFICIARIES" UNDER THE EDD AGREEMENT (COUNTS 11 AND 12).

Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing based on the EDD Agreement fail as a matter of law.

### A.   Plaintiffs Are Not Third-Party Beneficiaries.

Plaintiffs are not entitled to enforce either the terms of the EDD Agreement or any implied covenant in that agreement because they are not third-party beneficiaries as a matter of law. "[A] person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his or her benefit and one in which it clearly appears that he or she was a beneficiary." *The H.N. &*

*Frances C. Berger Found. v. Perez*, 218 Cal. App. 4th 37, 43–46 (2013) (internal alterations and quotations omitted).  Where, as here, individuals "benefit from a government contract," they are "generally assumed to be *incidental* beneficiaries, rather than *intended* beneficiaries, and so may not enforce the contract absent a clear intent to the contrary."  *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) (emphases added); *Klamanth Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) (quoting Restatement (Second) of Contracts § 302(1)(b) cmt. a) ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.").  Indeed, there are millions of EDD benefits recipients, and Plaintiffs' theory that each one of them is entitled to enforce the EDD Agreement would cripple EDD's ability to administer its own benefits program.  Each individual benefits recipient would have the power to make public policy decisions about the administration of EDD benefits; for example, by seeking to prevent BANA from freezing cards, thereby allowing EDD's benefit dollars to escape into the hands of criminal syndicates; to require BANA to issue chip cards;[15] or by seeking to enforce their own interpretation of funding processes or requirements.  This is why courts must "examine the precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries."  *GECCMC*, 671 F.3d at 1033 (internal alterations and quotations omitted).  No such intent is evident in the EDD Agreement, which specifies that BANA's services are to be

---

[15] Indeed, Plaintiffs assert that *all* EDD Debit Cards should contain a chip, even though EDD recently announced that chip cards would be issued only for new or replacement cards.  *About the EDD Debit Card*, Cal. Emp. Dev. Dep't, https://www.edd.ca.gov/About_EDD/The_EDD_Debit_Card.htm/RK=2/pdf/EDD_ Digital_Account_Fee_Disclosure_and_other_Important_Disclosures.pdf (last visited Oct. 1, 2021).

provided "for the EDD."  Chestnut Decl., Ex. 2, at 2.[16]

The California Supreme Court has already rejected Plaintiffs' theory (MCC ¶ 640) that they are intended third-party beneficiaries simply because they benefited from performance of the EDD Agreement.  In *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 835-37 (2019), the court held that an employee was not a third-party beneficiary of her employer's contract with the payroll company that issued her paychecks.  As the court explained, the employee was entitled to wages regardless of her employer's contract with payroll company.  Thus, the "relevant motivating purpose of the contract [was] simply to assist the employer in its performance of its required tasks, not to provide a benefit to employees with regard to the amount of wages they receive."  *Id.* at 835.  Similarly, here, the "relevant motivating purpose" of the EDD Agreement is to assist EDD in distributing benefits—not to provide recipients with benefits that they are entitled to receive from EDD regardless of EDD's chosen distribution method.  *See id.*

Plaintiffs also assert that allowing them to enforce the EDD Agreement would be "consistent with the objectives of the contract and the reasonable expectations of the contracting parties."  MCC ¶ 640.  To the contrary, each EDD cardholder is party to their own Account Agreement with BANA—thus establishing the parties' intent that cardholders enforce their *own* agreements with BANA, not EDD's agreement. *See Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd.*, 2020 WL 3268578, at *10 (S.D. Cal. June 17, 2020) (dismissing third-party beneficiary breach of contract claim where plaintiffs could sue "under their own individual employment agreements").

### B.    Plaintiffs Fail To Allege A Breach Of The EDD Agreement.

Plaintiffs also have not alleged facts that show a breach of the EDD Agreement.  Plaintiffs challenge BANA's issuance of magnetic strip cards, MCC

---

[16] The EDD Agreement is properly considered here as it "forms the basis of the plaintiff's claim" for breach of that agreement.  *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162–63 (9th Cir. 2019).

¶ 642, but the EDD Agreement—which incorporates EDD's own RFP—specifies the use of magnetic strip technology with no mention of chips. Chestnut Decl., Ex. 2, at 5 (Req. #323) (citing requirement for magnetic strip technology). EDD has publicly confirmed that it chose magnetic strip technology over chip technology in its contract with BANA. *See supra*, p. 5. Plaintiffs' remaining allegations are likewise insufficient because they do not identify any provisions of the EDD Agreement that were breached. *See Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, 2018 WL 5316173, at *2 (N.D. Cal. Oct. 26, 2018) (party "failed to allege facts sufficient to make out a plausible claim for breach of contract" where it did "not identify which provision or provision of the policy it believes [were] breached"). Nor could they, particularly as to their customer service allegations, *e.g.* MCC ¶ 642, as the EDD Agreement was amended to excuse compliance with a number of provisions, including wait times for calls, in light of the pandemic.[17] Chestnut Decl., Ex. 3, at 1.

Plaintiffs' claim for breach of an implied covenant in the EDD Agreement is equally unfounded. As already discussed, *supra*, pp. 14-15, an implied duty cannot be used to expand or contradict obligations in an existing contract. *See Glenn-Colusa Irrigation Dist. v. U.S. Army Corps of Eng'rs*, 2019 WL 3231748, at *5 (E.D. Cal. July 18, 2019) (implied duty "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions"); *Giron v. Wells Fargo Bank, N.A.*, 2014 WL 12589628, at *3 (C.D. Cal. May 27, 2014). Therefore, Plaintiffs cannot assert that BANA breached the implied covenant by failing to issue chip cards, where the EDD Agreement specified magnetic strip cards. *See supra*, p. 5. Similarly, Plaintiffs cannot use the implied covenant to assert that BANA was obligated to provide levels of customer service beyond what the EDD Agreement (as amended) required. *See supra*.

---

[17] That Plaintiffs seeks to enforce customer service requirements that EDD chose to excuse further underscores that Plaintiffs were not intended to have the ability to enforce the EDD Agreement.

## IV. PLAINTIFFS HAVE NOT STATED A CLAIM FOR NEGLIGENCE OR NEGLIGENT HIRING (COUNTS 5 & 6).

Plaintiffs allege that BANA acted negligently by failing to (1) issue chip cards and "protect" the cardholders from fraud; (2) provide "effective" customer service; and (3) adequately investigate and provisionally credit their claims of unauthorized transactions. MCC ¶ 587. Plaintiffs also allege that BANA is liable for negligent hiring, supervision, and retention based on its use of subcontractors to provide customer service and "various" other functions under BANA's contract with EDD. MCC ¶ 595. Both claims fails for three independent reasons.

First, Plaintiffs' negligence claims are barred by the economic loss doctrine, which generally limits liability for negligence to damages for physical injuries. *See S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 402 (2019); *Spa-Kur Therapy Dev., Inc. v. Bank of Am., N.A.*, 2019 WL 1099834 at *2 (S.D. Cal. Mar. 8, 2019) ("[P]laintiffs may recover in tort for physical injury to person or property, but not for 'purely economic losses that may be recovered in a contract action.'"); *Nev. Fleet LLC v. FedEx Corp.*, 2021 WL 2402953, at *7 (E.D. Cal. June 11, 20212) (dismissing claim for negligent hiring under the economic loss rule). Economic losses "are primarily the domain of contract and warranty law or the law of fraud, rather than of" tort. *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 402.

Thus, "[m]ultiple courts have applied the economic loss rule to bar a plaintiff's claim against a bank arising from fraudulent activity." *Widjaja v. JPMorgan Chase Bank*, 2020 WL 2949832, at *8 (C.D. Cal. Mar. 31, 2020); *see Smith v. Visa U.S.A., Inc.*, 2011 WL 2709819, at *1–2 (N.D. Cal. July 12, 2011) (economic loss doctrine barred tort claim against a debit card provider based on allegations of harm caused by the company's allegedly lax security procedures, which allowed "hackers to commit theft from multiple debit and credit card accounts"); *Barvie v. Bank of Am., N.A.*, 2018 WL 4537723, at *5 (S.D. Cal. Sept. 21, 2018) (barring tort claim against bank based on improper account withdrawals);

*see also Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) (economic loss doctrine barred tort claim based on defendant's failure to exercise reasonable care in securing plaintiff's personal information from hackers). Applying these principles here, both of Plaintiffs' negligence-based claims must be dismissed. MCC ¶¶ 587, 601.

Second, Plaintiffs' negligence claims fail because Plaintiffs have not alleged facts to show that BANA owed them a tort duty. Plaintiffs assert that BANA owed tort duties based on a purported "special relationship" between Plaintiffs and the Bank. MCC ¶ 586. But California courts have repeatedly held that "the bank-depositor relationship is not a 'special relationship.'" *Belluomini v. CitiGroup, Inc.*, 2013 WL 3855589 (N.D. Cal. July 24, 2013) (citations omitted). As a result, "[t]he relationship between the two [bank and depositor] is not fiduciary, but rather is contractual in nature." *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1100 (N.D. Cal. 2013). Further, "[t]he failure to perform a contractual obligation is never a tort unless it constitutes a failure to perform an independent legal duty." *Valenzuela v. ADT Sec. Servs., Inc.*, 820 F. Supp. 2d 1061, 1071 (C.D. Cal. 2010) (internal quotations and citations omitted). Thus, as a matter of law, BANA owed Plaintiffs no tort duties that can form the basis of a negligence claim.

Plaintiffs also assert that alleged violations of the California Consumer Privacy Act, the Gramm-Leach Bliley Act, the California Financial Information Privacy Act, and the California Consumer Records Act constitute negligence per se. MCC ¶ 589. But negligence per se is "simply a codified evidentiary doctrine"; it does not provide an independent basis for relief in the absence of a viable negligence claim. *California v. Kinder Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073 (S.D. Cal. 2008). Moreover, Plaintiffs have not sufficiently alleged a violation of any of these four statutes. For the Gramm-Leach-Bliley Act, Plaintiffs assert that BANA failed to comply with certain regulatory requirements regarding data security, but their allegations are based largely "[o]n information and

belief" with no supporting factual details; Plaintiffs fail to allege, for example, any facts about how information was actually stored or transmitted. MCC ¶¶ 56, 579, 580, 581, 589; *see also infra*, p. 30; *Vivendi*, 586 F.3d at 695 (allegations based "upon information and belief" are insufficient). Plaintiffs' allegations are even more scant with respect to the California Financial Information Privacy Act: Plaintiffs assert that the Bank disclosed Plaintiffs' information to third parties, but nowhere do they allege when or in what context, or even to whom the information was released. MCC ¶ 582. As to the California Consumer Privacy Act and the California Consumer Records Act, Plaintiffs have not alleged a violation of those statutes for the reasons discussed below. *See infra*, pp. 29-31.

Third, both of Plaintiffs' negligence-based claims fail because they do not allege facts sufficient to establish causation, which is a required element of a negligence claim. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003); *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1140 (2009). In particular, with respect to their core theory that BANA should have issued cards with chips, Plaintiffs have failed to allege any non-speculative facts to establish that use of chip-less cards caused their fraudulent transactions and losses. *See U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (claims must "move beyond speculation" for allegations to survive a motion to dismiss). Indeed, the majority of Plaintiffs do not even describe how the supposedly fraudulent transaction occurred, and therefore have provided no factual basis for concluding that card technology played any role in the alleged fraud. *See, e.g.*, MCC ¶ 323. Several Plaintiffs allege that they never received their cards in the first place, suggesting that they were stolen from the mail—meaning, again, that a chip would have made no difference. *See, e.g.*, MCC ¶ 287.

As to their negligent hiring claim, Plaintiffs do not allege any facts to support either a breach or causation. They claim that independent contractors committed "a series of internal data breaches," but offer no support other than their speculation

that one Plaintiff's cardholder information *must* have been stolen by Bank subcontractors because she alleges she never used her debit card.  MCC ¶¶ 58, 598; *see Abdulaziz v. Twitter, Inc.*, 2020 WL 6947929, at *7 (N.D. Cal. Aug. 12, 2020) (dismissing negligent hiring claim because the plaintiff's allegations were "conclusions, not facts"); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 259 (4th Cir. 2009) (affirming dismissal of defamation claim based on "nothing but [the plaintiff's] speculation" that defendant must have been the author because plaintiff could not identify an alternative).  Not only are these allegations insufficient to establish a data breach, they are also insufficient to show that any Plaintiff suffered harm as a result of BANA's practices in hiring, training, and supervising any subcontractor.  MCC ¶ 58.  Absent concrete factual allegations to support Plaintiffs "internal breach" theory, this claim must be dismissed.  *See Townsend v. Bank of Am., N.A.*, 2009 WL 10671412, at *6 (C.D. Cal. Mar. 9, 2009) (dismissing negligent hiring claim where "Plaintiff's bare, conclusory allegations are not sufficient to state a valid underlying theory of liability against Defendants or their employees").  Further, to the extent Plaintiffs' allegations rest on a "*risk* of fraud and exfiltration," MCC ¶ 598 (emphasis added), they lack standing to seek relief based on a "conjectural and hypothetical" future harm.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Plaintiffs have not alleged, as necessary, that any threatened injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("allegations of *possible* future injury are not sufficient" (internal alterations and quotations omitted) (emphasis in original)).

## V.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT 10).

It is well settled that "under ordinary circumstances the relationship between a Bank and its depositor . . . is not a fiduciary one." *Lawrence v. Bank of Am.*, 163 Cal. App. 3d 431, 437 (1985); *see Oaks Mgmt. Corp. v. Superior Ct.*, 145 Cal. App. 4th 453, 466 (2006) ("in ordinary banking transactions the 'bank is in no sense a

true fiduciary'"); *Bernardo v. U.S. Bank Nat. Ass'n*, 2011 WL 3667475, at *4 (N.D. Cal. Aug. 22, 2011); *Simi Mgmt. Corp.*, 930 F. Supp. 2d at 1100 ("A bank has limited duties to its customers. The relationship between the two is not fiduciary, but rather is contractual in nature.").

Plaintiffs nevertheless assert that BANA owes a fiduciary duty because it is "charged with implementing EDD benefits programs." MCC ¶ 631. They assert that their relationship with BANA is somehow different from an ordinary bank-customer relationship because BANA allegedly had "unbridled access to [their] personal, confidential, and financial information," an "absolute ability" to control Plaintiffs' account data, and "delegated authority" to deny Plaintiffs access to EDD benefits. *Id.* These allegations are insufficient to transform the contractual relationship between BANA and EDD cardholders into a fiduciary one.

To start, Plaintiffs have not shown how access to personal or financial information—the type of information that customers routinely provide to obtain banking services—somehow renders BANA a fiduciary. If access to personal and financial information and the ability to control account data sufficed to create a fiduciary relationship, then all banks would be fiduciaries for their customers. That is not the case. *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998) ("banks are not fiduciaries for their depositors" (internal quotation marks omitted)).

Moreover, Plaintiffs have not alleged facts to show that EDD "delegated authority" to BANA to "deny" Plaintiffs access to their benefits (which Plaintiffs agreed to be distributed through the debit card), nor do they explain how such authority, even if it existed, would give rise to a fiduciary duty. Indeed, Plaintiffs allege that EDD, not BANA, approved them for benefits, MCC ¶¶ 1, 47 n.1, but they do not assert that EDD owes fiduciary duties to the millions of EDD benefits recipients. Plaintiffs also allege that cardholders are able to receive benefits checks from EDD even if BANA has frozen their accounts. *See, e.g.*, MCC ¶¶ 100, 174, 318, 433, 452. There is no legal basis for imposing a fiduciary duty on a financial

institution simply because an account contains funds received from a government

benefits program.  Under Plaintiffs' theory, any bank that accepted a direct deposit

for unemployment benefits, or a subsequent transfer of those funds, would be a

fiduciary.  Such a broad imposition of a fiduciary duty would be in direct

contradiction to the general rule that banks are not fiduciaries.  *See supra*, pp. 27-

28.  Plaintiffs' fiduciary duty claim must be dismissed.

## VI.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT OR THE CALIFORNIA CUSTOMER RECORDS ACT (COUNTS 2 AND 3).

Plaintiffs' claim under the California Consumer Privacy Act ("CCPA"), Cal.

Civ. Code §§ 1798.100 *et seq.*, is based on three theories: (1) the use of debit cards

without EMV chips; (2) "collecting," "transmitting," and "storing" Plaintiffs'

personal information in an allegedly unsecure manner; and (3) an alleged failure to

ensure that subcontractors maintained the confidentiality of Plaintiffs' personal

information.  MCC ¶ 553.  All three theories fail as to all Plaintiffs.

First, Plaintiffs' theory that the CCPA imposed a duty to issue EDD Debit

Cards with EMV chip technology, MCC ¶ 547, 553, is novel and entirely

unsupported.  The CCPA creates a right of action for a consumer whose

"nonencrypted or nonredacted personal information . . . is subject to an

unauthorized access and exfiltration, theft, or disclosure as a result of the business's

violation of the duty to implement and maintain reasonable security procedures."

Cal. Civ. Code § 1798.150(a)(1).  The CCPA does not "impose[]" a new duty, but

rather incorporates "*existing* law requir[ing] a business … to implement and

maintain reasonable security procedures and practices appropriate to the nature of

the information[.]"  S. Judiciary Comm. Rep. on A.B. 375 (June 25, 2018), at 5

(citing Cal. Civ. Code § 1798.81.5(b), (e)) (emphasis added).  There is no existing

duty on financial institutions to issue cards with EMV chips instead of magnetic

strips.  Indeed, the EDD Agreement confirms the absence of any duty to issue a

chip card, as the State itself chose only to require magnetic strip technology (under

an ISO standard Plaintiffs do not dispute that the debit cards met).  *See supra*, p. 5.
Nevertheless, Plaintiffs' CCPA claim asks the Court to impose a duty on every
financial institution that issues cards in this State to include chip technology.  There
is no support for such a duty and no basis for a federal court to create one.[18]

Second, Plaintiffs' two other theories of CCPA liability are entirely lacking
in any factual support.  Plaintiffs vaguely assert that BANA collected, transmitted,
and stored Plaintiffs' and Class Members' personal information in an unsecure
fashion, thereby allowing "unauthorized third parties to access that information in
violation of the CCPA," MCC ¶¶ 551–54, but offer no facts regarding how BANA
collected, transmitted, or stored their information (other than the allegations
regarding chip cards, which fail for the reasons explained above).  Similarly,
Plaintiffs allege no facts to support their theory that BANA's subcontractors failed
to maintain the security of Plaintiffs' information.  *See supra*, pp. 26-27.  Plaintiffs
merely plead "[o]n information and belief" that BANA was not sufficiently careful
with Plaintiffs' personal information, and thereby "permitted unauthorized third
parties to access that information."  MCC ¶ 551–54.  But allegations "on
information and belief" are not sufficient.  *Vivendi*, 586 F.3d at 695.  Moreover,
Plaintiffs do not plead facts to show that the allegedly compromised information
was "nonencrypted or nonredacted," which is a necessary condition of liability.
Cal. Civ. Code § 1798.150(a)(1).  Plaintiffs have raised "nothing more than vague,
conclusory allegations unsupported by any facts."  *Fronda v. Staffmark Holdings,
Inc.*, 2015 WL 3866860, at *2 (N.D. Cal. June 22, 2015).

Plaintiffs' claim for violation of the California Customer Records Act
("CRA"), Cal. Civ. Code §§ 1798.80 *et seq.*, similarly fails because it is speculative
and unsupported by any facts.  The CRA imposes notification requirements on
businesses that have suffered a data breach, *id.* § 1798.82, but Plaintiffs do not

---

[18] Plaintiffs also have not alleged facts to show that they suffered any "unauthorized
access . .. as a result of" the use of the magnetic strip cards.  *See infra*, p. 31.

1  allege a single fact to support their conclusory assertion that a breach actually

2  occurred.  MCC ¶¶ 562–74.  They hypothesize that a breach *must* have occurred

3  because one of the plaintiffs alleges that her card information was compromised

4  even though she states that she never used her debit card.  *See id.* ¶¶ 20, 58.  That

5  speculative assumption is insufficient to withstand a motion to dismiss.  *See supra*,

6  pp. 26-27.  Moreover, Plaintiffs fail to allege facts to establish "when Defendants

7  discovered" the purported breach, and therefore "have not adequately alleged that

8  Defendants 'unreasonably delay[ed]' in notifying Plaintiffs" of the breach.  *In re*

9  *Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *38 (N.D.

10 Cal. Sept. 22, 2020) (dismissing CRA claim that "does not contain any allegations

11 about when Defendants discovered or were notified of the [alleged] breach"

12 (internal alterations and quotations omitted)).[19]

13
14 **VII.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (COUNT 4).**

15      California's Unfair Competition Law ("UCL") prohibits "three varieties of

16 unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."

17 *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).  Plaintiffs

18 assert claims under the "unlawful" and "unfair" prongs, but neither theory is viable.

19      **A.    The UCL Does Not Provide for the Relief Sought by Plaintiffs.**

20      First, the Court should dismiss BANA's UCL claim because the UCL is

21 equitable in nature and provides for only two forms of relief: injunctive relief and

22 restitution.  *See Hyp3r Inc. v. Mogimo Inc.*, 2017 WL 11515712, at *4 (N.D. Cal.

23 Nov. 8, 2017); *Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1052 (N.D. Cal.

24 2018).  Plaintiffs are not entitled to either.

25      "Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy

26
27 ───────────────
   [19] BANA asked Plaintiffs' counsel to provide the information they claimed to have received about a speculative data breach, in order to allow BANA to investigate and remedy any breach.  Not only did Plaintiffs' counsel refuse to do so, they have also
28 failed to allege any such facts in the MCC.

at law, equitable relief is unavailable" under the UCL.  *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020).  Plaintiffs' UCL claim does not raise any new or different issues from their other causes of action; the availability of monetary damages for those causes of action demonstrates that Plaintiffs would have an adequate remedy at law, if they had facts to support their claims.  They are therefore not entitled to seek additional or different relief under the UCL.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Huynh*, 508 F. Supp. 3d at 662 (N.D. Cal. Dec. 21, 2020) (granting summary judgment for defendant where plaintiff "fails to allege or demonstrate that any remedy at law is inadequate" and brought damages claim based on same alleged conduct); *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3–4 (C.D. Cal. Sept. 9, 2020) (plaintiffs' failure to "allege[] facts that could support a finding that monetary relief is insufficient … [was] fatal to" UCL claim).

Even if Plaintiffs could show that their UCL claim was based on different allegations (which they cannot, based on their MCC), they still are not entitled to any UCL relief.  Plaintiffs' proposed injunction prohibiting unspecified practices and requiring unspecified measures (MCC ¶ 584) does not state a claim for any relief under the UCL, *see, e.g.*, *Cohen v. Capital One, N.A.*, 2015 WL 12746217, at *11 (C.D. Cal. June 1, 2015), and their request for "processing" of Claims is an impermissible attempt to shoehorn a damages claim—a request that Claims be paid— into a request for injunctive relief.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) ("A UCL action is equitable in nature; damages cannot be recovered."); *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 482 (N.D. Cal. 2014) ("[A] plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money.").

Plaintiffs' claim for restitution also fails because the thing to be "restituted," funds from their debit card accounts, were allegedly taken by the third party criminals who performed the unauthorized transactions, and not by BANA.  *See, e.g.*, MCC

¶¶ 74–79.  The UCL does not allow for the disgorgement of profits from a defendant where "the money sought to be disgorged was not taken from plaintiff."  *Korea Supply Co.*, 29 Cal. 4th at 1144–45.  The account freezes do not provide any basis for restitution either, as Plaintiffs do not allege that BANA takes their funds when it freezes an account, only that Plaintiffs are unable to access the funds during the period of time when their accounts are frozen.  *See, e.g.*, MCC ¶¶ 169, 191; *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012) ("Sony did not benefit financially from the Data Breach, nor did Sony receive monies paid by Plaintiffs for Third Party Services."); *Chose v. Accor Hotels & Resorts (Maryland) LLC*, 2020 WL 759365, at *6 (N.D. Cal. Feb. 14, 2020) ("Plaintiff does not allege that she—or any other members of the putative class—actually paid Defendant any money.").

      **B.**      **Plaintiffs Have Not Adequately Alleged A Violation of the UCL.**

Even if Plaintiffs could somehow get past the fact that UCL authorized none of the relief they seek, they fail to adequately allege any violation of the statute.

      **1.**      **Plaintiffs Have Not Adequately Alleged "Unlawful" Acts.**

Plaintiffs' claim under the "unlawful" prong fails because they have not adequately alleged any violation of law.  *Major v. Wells Fargo Bank, N.A.*, 2014 WL 4103936, at *7 (S.D. Cal. Aug. 18, 2014) ("[T]o be 'unlawful' under [the UCL], the conduct must violate another 'borrowed' law.") (quoting *Cel-Tech Comms. Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)) (Burns, J.). Plaintiffs allege violations of Due Process, EFTA/Reg E, CCPA, CRA, the Gramm-Leach-Bliley Act, and California Financial Information Privacy Act, but they have failed to adequately allege any of these primary violations.  *See supra*, Sections II, IV, VI; *infra*, Section VIII; *see also Baba v. Hewlett-Packard Co.*, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) ("In California, a UCL claim of any kind 'must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation.'").

## 2. Plaintiffs Have Not Adequately Alleged "Unfair" Acts.

Plaintiffs have likewise failed to adequately allege that BANA engaged in "unfair" acts in violation of the UCL. Plaintiffs provide a laundry list of allegedly "unfair" practices revolving around BANA's (1) procedures for maintaining, storing, and transmitting Plaintiffs' information, including its issuance of magnetic strip cards; (2) alleged failure to monitor and detect fraud; (3) investigation and resolution of Plaintiffs' claims; (4) customer service practices; and (5) freezing or blocking of accounts. *See* MCC ¶ 577. Just like the implied covenant and implied contract claims, these allegations attempt to create out of whole cloth a litany of vague and standardless obligations that no contract or law requires.

As this Court has already recognized, "[w]hat constitutes unfair conduct in consumer actions under the UCL is unclear." *Klaehn v. Cali Bamboo, LLC*, 2020 WL 3971518, at *8 (S.D. Cal. July 13, 2020) (Burns, J.). Some courts consider a practice to be "unfair" if it "offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *Davis*, 691 F.3d at 1169. Others look at whether a consumer injury is "substantial," "not outweighed by any countervailing benefits to consumers or competition," or "one that consumers themselves could not reasonably have avoided." *Klaehn*, 2020 WL 3971518, at *8 (internal quotation omitted). "Under another approach, California courts balance the impact on its alleged victim against the reasons, justifications, and motives of the alleged wrongdoer." *Id.* (internal alterations and quotations omitted).

Plaintiffs have not alleged facts to support a finding of any practice that rises to the level of "unfair" under the UCL. The use of magnetic strip cards does not offend an "established" public policy in California, particularly when those cards were specifically required by the State.[20] *See supra*, p. 5. Plaintiffs' complaints

---

[20] It is also worth noting that Plaintiffs knew, when they received their cards, that the cards did not have a chip. *See, e.g.*, MCC ¶¶ 9–33. They still chose to activate their cards, *see, e.g.*, *id.* ¶¶ 200, 282, 478, instead of asking EDD for a check.

about customer service also do not establish unfairness: Plaintiffs' theory would allow any consumer dissatisfied with a company's customer service to bring a UCL claim, and that decidedly is *not* the law. *McKinney v. Google, Inc.*, 2011 WL 3862120, at *7 (N.D. Cal. 2011) (assertion "that customer service was inadequate" was insufficient to state a claim under UCL's "unfair" prong).

As for BANA's fraud monitoring and Claim investigation practices, Plaintiffs' allegations, at bottom, are that BANA erroneously identified some of them as having committed fraud rather than being victims of fraud.  Plaintiffs do not dispute that BANA should act to detect and deter fraud*, see, e.g.*, MCC ¶¶ 80, 86,[21] and making strong efforts to prevent widespread public benefits fraud clearly do not offend *any* public policy.  Indeed, when the impact of a frozen account or denied Claim is considered not only against the various avenues available to allow affected cardholders to regain access to their accounts and recover their funds, but also against the explosion of fraud that BANA was attempting to combat, the balancing approach to unfairness—indeed, *any* approach—compels the conclusion that Plaintiffs have failed to state a claim that BANA's efforts were "unfair."

As for Plaintiffs' assertion that BANA violated the UCL by freezing accounts, those actions were expressly permitted by the Account Agreement.  *See supra*, Section I.  The unfairness prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Quezada v. Franklin Madison Grp., LLC*, 2020 WL 5819824, at *6 (S.D. Cal. Sept. 29, 2020) (Burns, J.) (quoting *S. Bay Chevrolet v. Gen Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999)).  Thus, a UCL claim must be dismissed where the allegedly unfair conduct "was permitted by the contract." *Quattrocchi v. Allstate Indem. Co.*, 2018 WL 347779, at *2 (E.D. Cal. Jan. 9, 2018), *aff'd*, 775 F. App'x 330 (9th Cir. 2019) (collecting cases).

---

[21] Plaintiffs' assertion that BANA failed to conduct any fraud monitoring is inconsistent with individual Plaintiffs' allegations that BANA froze accounts based on BANA's internal fraud monitoring procedures. *See, e.g.*, MCC ¶¶ 420, 488.

## VIII. Plaintiffs Have Not Stated A Due Process Claim (Counts 13 & 14).

Finally, Plaintiffs bring claims for due process violations against BANA, asserting that BANA failed to provide sufficient notice before freezing their accounts (though not all allege frozen accounts, *see* App'x Column 6). But a plaintiff seeking relief under 42 U.S.C. § 1983 for violation of the United States Constitution must show that she was "deprived of a right secured by the Constitution or laws of the United States," and that "the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). The requirements under the California Constitution are the same. *Kruger v. Wells Fargo Bank*, 11 Cal. 3d 352, 356 (1974). Here, Plaintiffs have not adequately alleged that BANA was acting as a state actor when it froze their accounts, nor have they sufficiently alleged that due process would require notice and a pre-deprivation hearing under these extraordinary circumstances.

### A. Plaintiffs Have Not Alleged Facts Sufficient To Establish That Bank Of America Is A State Actor.

To start, it is important to note that Plaintiffs are not challenging any account freezes that were requested by the State. *See* MCC ¶ 50 ("None of those EDD-initiated freezes are at issue in this case."). Rather, their theory is that BANA has frozen accounts or maintained freezes where the State did not take an action to ask or agree that the accounts be frozen. *See, e.g.*, *id.* ¶¶ 52–53, 528 (alleging "Failure to Unfreeze Subclass" based on accounts that were not unfrozen or unblocked after EDD allegedly "instructed" BANA to do so). The allegations necessarily defeat the claim that BANA engaged in *state* action. Nevertheless, Plaintiffs assert that BANA is a state actor because it "performs a traditional and exclusively governmental function" and "is engaged in a joint undertaking with the State" in administering EDD benefits. *Id.* ¶¶ 654, 659. Both arguments are meritless.

First, a public function is one "traditionally exclusively reserved to the State"; "very few" functions satisfy this standard. *Flagg Bros., Inc. v. Brooks*, 436

U.S. 149, 157, 158 (1978).  Plaintiffs have failed to allege any facts that would transform BANA's servicing of their debit card accounts—a classic function of a private bank—into a function that is both traditionally and exclusively governmental.  *See, e.g.*, *Belue v. Keefe Commissary Grp., LLC*, 2021 WL 1197749, at * (D. Idaho Mar. 29, 2021) ("[M]aintaining or managing financial accounts is not a function that is traditionally and exclusively performed by the government."); *Venegas v. Bianco*, 2019 WL 10301094, at *9 (C.D. Cal. Aug. 26, 2019) (same); *see also Hester v. Regions Bank*, 2010 WL 2232158, at *5 (M.D. Ala. June 3, 2010) ("[T]he actions in question are the freezing of private bank accounts, and the transfer of funds, which are not traditionally the exclusive prerogative of the state.").  The State did not delegate a traditional government duty—rather, it outsourced banking work that the State is not able to do itself.  It does not matter that the debit cards are used to distribute public benefits; merely "serv[ing] the public does not make [a private actor's actions] state action." *Renderall-Baker v. Kohn*, 457 U.S. 830, 842 (1982); *see also Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 248 (1st Cir. 2012) (private entity does not become a state actor merely because it manages government funds).  Otherwise, every government contractor would become a state actor, which in turn would deter private companies, like financial institutions, from assisting the state in distributing much-needed benefits during times of crisis, whether under the CARES Act or in the aftermath of a devastating hurricane or fire or for other government programs.

Plaintiffs nonetheless assert that freezing a private bank account was a governmental function because its effect was to "cut[] off their access" to already issued benefits, and "suspend[] their receipt of any future EDD benefits to which they may be entitled."  MCC ¶ 656.  But once funds are deposited into a prepaid debit card account, they are the property of the cardholder, and EDD has no further rights to the funds (subject to limited exceptions).  *See* Chestnut Decl., Ex. 1 , § 2. If a private banking function transformed into a governmental function simply

because it affected privately-owned funds that originated from the State, any bank would become a state actor merely by allowing government employees to deposit their paychecks (or allowing any other recipient of the myriad forms of government aid to deposit their benefits). That sweeping reformulation of "state action" runs counter to the Supreme Court's narrow definition of public functions. *See, e.g.*, *Flagg Bros.*, 436 U.S. at 157. As for the theory that an account freeze "cuts off" future benefits, those benefits originate from EDD, not BANA, and the prepaid debit card is merely one way benefits recipients can choose to receive them. Plaintiffs can choose instead to receive checks from EDD; some already have. *See, e.g.*, MCC ¶¶ 174, 328, 433. Freezing an account does not "cut off" future benefits; at most, it just means the recipient may decide to choose another method to receive those benefits (rather than pursue the unfreezing of the account).

Second, joint action exists only if the private actor's actions are "inextricably intertwined with those of the government." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) (internal quotations omitted), *petition for cert. docketed*, No. 20-55093 (U.S. June 16, 2021). Here, however, Plaintiffs allege that the account freezes they challenge were *not* endorsed by the State. MCC ¶¶ 50, 52, 53, 528. Actions taken independently of the State cannot qualify as a joint undertaking. *See Sullivan*, 526 U.S. at 52 (private insurers not state actors where state "authorizes, but does not require" withholding of payment); *Pasadena*, 985 F.3d at 1171 (private club not a state actor where City did not participate in the club's allegedly unconstitutional cancellation of a speaking event); *Brunette v. Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1208, 1212 (9th Cir. 2002) (private party and a "quasi-public" entity "acted independently" where neither "assisted the other in performance of its separate and respective task").

The EDD Agreement does not create a joint undertaking, standing alone. "[M]erely contracting with the government does not transform an otherwise private party into a state actor." *Pasadena*, 985 F.3d at 1170; *see also Kohn*, 457 U.S. at

841 (private corporation whose business depended primarily on state contracts did not become a state actor solely because of its "significant or even total engagement in performing public contracts"); *Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 710–11 (3d Cir. 1993) (contractor and employees not "state actors" in carrying out state sponsored program with state compensation).  Plaintiffs point to the so-called "revenue-sharing agreement" in which there is "no cost to the State," while BANA collects fees and earns interest.  MCC ¶ 49.  This arrangement (which is not even accurately described in the MCC) does not demonstrate the necessary "significant financial integration," which requires a showing that the private entity's financial success "depends" on the arrangement with the State, or vice versa.  *See Pasadena*, 985 F.3d at 1168 (contractor's maintenance services at Air Force base were "most certainly not an indispensable element in the Air Force's financial success"); *Brunette*, 294 F.3d at 1213–14 (private news company did not "render[] any service indispensable to the Humane Society's continued financial viability").  Indeed, Plaintiffs' allegation that a joint undertaking results from a contractual agreement that creates a "mutually beneficial relationship" (¶ 654) would mean that *any* private entity that contracts with the state becomes a state actor, as all contracts must be supported by mutual consideration and contractual relationships are therefore all mutually beneficial.  That is not the law.  *See Pasadena*, 985 F.3d at 1170.  Plaintiffs' allegations "fall[] far short of creating the substantial interdependence legally required to create a symbiotic relationship," *Brunette*, 294 F.3d at 1214.

### B.    Plaintiffs Have Not Alleged Any Due Process Violation.

Even if BANA were somehow deemed a state actor, Plaintiffs have failed to adequately allege any due process violation.  The scope of procedural protections required by due process depends upon the "particular situation" or circumstances at issue.  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).  Plaintiffs focus on the

freezing of some of their accounts, but fail to allege any facts to show that notice or additional procedures are required where accounts were being frozen to investigate "suspect[ed] irregular, unauthorized, or unlawful activities" during a time of substantial fraud directed at a government benefits program.  Chestnut Decl., Ex. 1, § 2.  The Supreme Court has held that "[a]n important government interest, accompanied by substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation."  *Fed. Deposit Ins. Co. v. Mallen*, 486 U.S. 230, 240 (1988).  The alternative Plaintiffs seems to embrace would be to provide advance notice of a planned freeze and some opportunity to contest it—which undoubtedly would have guaranteed that accounts controlled by fraudsters would be drained to a zero balance immediately.  Here, BANA has a compelling interest in preventing fraud, and it is not only reasonable, but logical, to freeze accounts without advance notice to "avoid the risk that [the cardholder] would dissipate his assets or attempt to put them beyond the government's reach." *Spiegel v. Ryan*, 946 F.2d 1435, 1440 (9th Cir. 1991).  Providing advance notice would directly undermine the whole point of an account freeze, which is to protect the assets in an account.[22]  Plaintiffs' apparent lack of concern for that result may be understandable in a way, as they believe they would have been able to avoid a freeze in all events, but a due process claim cannot be so narrowly drawn.

## **CONCLUSION**

For all of the foregoing reasons, BANA respectfully requests that the Court dismiss Plaintiffs' Consolidated Complaint with prejudice.

---

[22] To the extent Plaintiffs argue that they received insufficient post-deprivation process, their own allegations show the ability to unfreeze their accounts.  *See, e.g.*, MCC ¶ 340 ("[T]he Bank unfroze [Delgado's] Account."); ¶ 193 ("[W]ilson was able to get the Bank to unfreeze his account.").

Dated:   October 1, 2021             Respectfully submitted,

By:  s/ *Yvonne W. Chan*
LAURA A. STOLL (SBN 255023)
*LStoll@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 South Figueroa Street, 41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

JAMES W. MCGARRY (pro hac vice)
*JMcGarry@goodwinlaw.com*
YVONNE W. CHAN (pro hac vice)
*YChan@goodwinlaw.com*
**GOODWIN PROCTER** LLP
100 Northern Avenue
Boston, MA  02210
Tel.: +1 617 570 1000
Fax: +1 617 523 1231

THOMAS M. HEFFERON (pro hac vice)
*THefferon@goodwinlaw.com*
**GOODWIN PROCTER** LLP
1900 N St. NW
Washington, DC 20036
Tel: +1 202 346 4000
Fax: +1 202 346 4444

JANICE P. BROWN (SBN 114433)
*jbrown@myersnave.com*
ARLENE R. YANG (SBN 297450)
*ayang@myersnave.com*
**MEYERS NAVE**
600 B Street, Suite 1650
San Diego, CA 92101

BARRY W. LEE (SBN 088685)
*bwlee@manatt.com*
**MANATT PHELPS & PHILLIPS LLP**
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Tel.: +1 415 291 7450
Fax: +1 415 291 7474

Attorneys for Defendant
BANK OF AMERICA, N.A.

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that I electronically filed the foregoing with the clerk of the

3    court for the United States District Court for the Southern District of California by

4    using the CM/ECF system on October 1, 2021. I further certify that all participants

5    in the case are registered CM/ECF users and that service will be accomplished by

6    the CM/ECF system. I certify under penalty of perjury that the foregoing is true and

7    correct.

8

9

10    Executed:    October 1, 2021        *s/ Yvonne W. Chan*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Abarr | Paul | ¶ 286 | | | X | | X | |
| Abbot | Kobe | ¶ 287 | X | | | | X | |
| Adams | Michael | ¶ 289 | | | X | | X | |
| Aders | Jordan | ¶ 288 | | | X | | X | |
| Aguirre | Jonathan | ¶ 290 | | | X | | X | |
| Allison | Christopher | ¶ 291 | X | | | | X | |
| Alvarez | Kevin | ¶ 292 | | X | | | | |
| Alvarez | Courtney | ¶ 293 | | | X | | X | |
| Alvarez | Rosa | ¶ 294 | | | X | | X | X |
| Anderson | David | ¶ 295 | | | X | | X | X |
| Anderson | Rebekah | ¶ 296 | | | X | | X | |
| Andrade | Amanda | ¶ 297 | | X | | | X | |
| Anistik | Sheila | ¶ 299 | | | X | X | X | |
| Arnoldstarr | Robert | ¶ 300 | | X | | | X | |
| Arrey | Vanessa | ¶ 301 | | X | | | X | |
| Auburn | Ursula | ¶¶ 254-257 | | | X | X | X | X |
| Ayala | Christal | ¶ 302 | X | | | | X | |
| Back | Celina | ¶ 303 | | X | | | X | |
| Baker | Cindy | ¶¶ 250-253 | | | X | X | X | |
| Barnettte | Mark | ¶ 304 | | X | | | X | |
| Beckham | Douglas | ¶ 305 | | X | | | X | |
| Beehler | Sky | ¶ 306 | | X | | | X | |
| Bennett | Amber | ¶ 307 | | | X | | X | |
| Berlt | Forrest | ¶ 308 | | X | | X | X | |
| Blacksands | Stone | ¶ 309 | X | | | | X | |
| Blankenship | Claire | ¶¶ 279-284 | | | X | | | X |
| Bommel | Dean | ¶ 310 | | X | | | X | |
| Brady | Nicholas | ¶ 311 | | | X | | | |

1

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Brooks | James | ¶ 312 | | | X | | | |
| Brotman | Adam | ¶ 313 | | | X | X | | |
| Bruno | James | ¶ 314 | | | X | X | X | |
| Burns | Beth | ¶ 315 | | | X | | X | |
| Burrow | Dwight | ¶ 316 | | | X | | X | |
| Bynum | Mario | ¶ 317 | | X | | | X | |
| Byrn | Daniel | ¶ 318 | | | X | | X | |
| Cajas | Clara | ¶¶ 195-199 | | | X | X | | |
| Calzado | Joseph | ¶ 319 | | | X | | | |
| Camberos | Stacey | ¶ 320 | | | X | | X | |
| Cardenas Cortez | Victor | ¶ 333 | | | X | | X | |
| Carpenter | Kimberly | ¶ 321 | | X | | X | X | |
| Castillo | Patricia | ¶ 322 | | | X | X | X | |
| Caton | Richard | ¶ 323 | | | X | | X | |
| Chapple | Susan | ¶ 324 | | | X | | X | |
| Chase | Randy | ¶ 325 | X | | | | X | |
| Chavez | Angela | ¶ 326 | | X | | | X | |
| Chavez | Phillip | ¶ 327 | | | X | | X | |
| Chong | Kuang Ting | ¶¶ 261-267 | | | X | X | X | X |
| Cochran | Tiffany | ¶ 328 | | | X | | X | |
| Collins | LaMar | ¶ 329 | | | X | | X | |
| Contreras | Jennifer | ¶ 330 | | | X | | X | |
| Contreras | Jose | ¶ 331 | | | X | | X | |
| Corella | Donmonique | ¶ 332 | | | X | | X | |
| Cortez-Gonzalez | Crystal | ¶ 334 | | | X | | X | |
| D'Agostino Criado | Teresa | ¶ 335 | | X | | | X | |
| Dale | Heather | ¶ 336 | | X | | | X | |
| De Hoyos | Marcus | ¶ 400 | | | X | | X | |

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| De Los Angeles, Sr. | Samuel | ¶ 298 | | X | | | X | |
| de Vera | Michell | ¶ 337 | | X | | | X | X |
| Deasy | Timothy | ¶ 338 | | | X | | X | |
| Delariva | Luis | ¶ 339 | | | X | | X | |
| Delgado | Delbert | ¶ 340 | | | X | | X | |
| Delgado | Selena | ¶ 341 | | | X | | X | |
| Dirickson | Nickolaus | ¶ 342 | | | X | | X | |
| Dones | Lorina | ¶ 343 | | X | | | X | |
| Douglas | Anthony | ¶ 344 | X | | | | X | |
| Douglass | Benjamin | ¶ 345 | | X | | X | X | |
| Duey | Kayli | ¶ 346 | | X | | | X | |
| Eason | Roxanne | ¶ 347 | | | X | | X | |
| Echeverria | Peter | ¶ 348 | | X | | | X | |
| Edwards | Linda | ¶ 349 | | | X | | X | |
| Escalante | Maritza | ¶ 350 | | | X | X | X | |
| Espalin | Marley | ¶ 351 | | | X | | X | |
| Estrada | Juan | ¶ 352 | | X | | | X | |
| Farina | Dawn | ¶ 353 | | | X | X | X | |
| Ferraro | Cody | ¶ 354 | | | X | | X | |
| Flores | Jacob | ¶ 355 | | X | | | X | |
| Flores | Arnold | ¶ 356 | | | X | | X | |
| Flores | Stephanie | ¶ 357 | X | | | | X | |
| Franks | Anthony | ¶ 358 | | X | | | X | |
| Friday | Meredith | ¶ 359 | | X | | X | X | |
| Friend | Joseph | ¶ 360 | | | X | | X | |
| Gage | Latisha | ¶ 362 | | | X | | X | |
| Galicia | Abigail | ¶ 361 | | | X | | X | |
| Garcia | Monica | ¶ 363 | | | X | | X | |

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Gaynor | Glynda | ¶ 364 | | | X | | X | |
| George | Laquitta | ¶ 365 | | X | | | X | |
| Giddens | Elizabeth | ¶ 366 | | | X | X | | |
| Glassflowers | Seante | ¶ 367 | | | X | X | X | |
| Gonzalez | Angela | ¶ 368 | | | X | | X | |
| Gonzalez | Barton | ¶ 369 | | | X | X | X | |
| Gonzalez | Lizet | ¶ 370 | | | X | | X | |
| Graham | Lainie Ann | ¶ 371 | | | X | | X | |
| Grant | Audrey | ¶ 372 | | | X | | | X |
| Gray | Willie | ¶ 373 | | | X | | X | X |
| Grimes | Sean | ¶ 374 | | | X | | X | |
| Guadalajara | Jeffrey | ¶ 375 | | X | | | X | |
| Guirguis | Noah | ¶ 376 | X | | | | X | |
| Gutcher | Lyndsey | ¶ 377 | | | X | | X | |
| Gutierrez | Andres | ¶ 378 | | | X | | X | |
| Gutierrez | Angelica | ¶ 379 | | | X | | | |
| Gutierrez | Crystal | ¶ 380 | | | X | | X | |
| Hakopian | Shant | ¶ 381 | | | X | | X | |
| Hanes | James | ¶ 382 | | X | | X | X | |
| Haney | Micah | ¶ 383 | | X | | | X | |
| Hanna | Preston | ¶ 384 | | X | | X | X | |
| Harden | Rebecca | ¶ 385 | | | X | | X | |
| Harper | Johnny | ¶ 386 | | | X | | X | |
| Harris | Ivan | ¶ 387 | X | | | | X | |
| Harris | Markee | ¶ 388 | | | X | X | X | |
| Hart | Steven | ¶ 389 | | | X | X | | |
| Hassanshahi | Bahram | ¶ 390 | | X | | | X | |
| Hayden | Kaytricia | ¶ 391 | | | X | | X | X |

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Heinz | Gretchen | ¶ 392 | X | | | X | X | |
| Hernandez | Ronnie | ¶ 393 | | | X | | X | |
| Hernandez | Ruben | ¶ 394 | X | | | | X | |
| Hernandez | Vanessa | ¶ 395 | | X | | | | |
| Hicks | Julie | ¶¶ 258-260 | | | X | | X | |
| Hollingsworth | Anthony | ¶ 396 | | | X | X | | |
| Holloway | Lindsie | ¶ 397 | | | X | | X | |
| Horath | Crystal | ¶ 398 | | | X | | X | |
| Howze | Terrance | ¶ 399 | X | | | | X | |
| Hutchins | Sharonna | ¶ 401 | | | X | | X | |
| Huynh | Quoc | ¶ 402 | X | | | | X | |
| Idemudia | John | ¶ 403 | | | X | | X | |
| Isles | Juanita | ¶ 404 | | X | | | X | |
| Jabara | Derrick | ¶ 405 | | | X | | X | |
| Jackson | Shreel | ¶ 406 | | | X | X | X | |
| Jaurigue, Jr. | Robert | ¶ 407 | X | | | | X | |
| Jeff | Anthony | ¶ 408 | | | X | | X | |
| Johnson | Evett | ¶ 409 | | | X | X | X | |
| Johnson | Lester | ¶ 410 | | | X | | X | |
| Johnson | Terrell | ¶ 411 | | | X | | X | |
| Jones | Brian | ¶ 412 | | | X | | X | |
| Jones | Victoria | ¶ 413 | X | | | | X | |
| Karam | Alan | ¶¶ 203-215 | | | X | X | X | |
| Kelly | Olivia | ¶ 414 | | | X | | X | |
| Kessler | Erick | ¶ 415 | | | X | | X | |
| Knight | Deandre | ¶ 416 | | | X | | X | |
| Koole | Candace | ¶¶ 136-143 | | | X | X | X | |
| Lawson | Corey | ¶ 417 | | | X | X | X | |

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Laxton | Sabrina | ¶ 418 | X | | | | X | |
| Lind | Tonya | ¶ 419 | X | | | | X | |
| Littles | Limmie | ¶ 420 | X | | | | X | |
| Lopez | Ronda | ¶ 421 | | | X | | X | |
| Loredo | Ernie | ¶ 422 | | | X | | X | |
| Madrid | Raina | ¶ 423 | | X | | | X | |
| Madrid | Mario | ¶ 424 | | X | | | X | |
| Magallan | Joseph | ¶ 425 | | | X | | X | |
| Main | Joseph | ¶ 426 | | | X | | X | |
| Martinez | Danela | ¶ 427 | X | | | | X | |
| Mathews | Rosemary | ¶¶ 160-170 | | | X | X | X | |
| Matson, Jr. | Russell | ¶ 428 | | | X | | X | |
| Matthews | Vernon | ¶ 429 | | | X | | X | |
| Maurer | Janelle | ¶ 430 | | | X | | X | |
| McCafferty | Christina | ¶ 431 | | X | | X | | |
| McCann | Brenda | ¶ 432 | | | X | | X | |
| McClure | Lindsay | ¶¶ 187-191 | | | X | X | | |
| McCrary | Michael | ¶ 434 | | | X | X | X | |
| Meza | Jennifer | ¶ 433 | | | X | | | |
| Middleton | Travis | ¶ 435 | | | X | | X | |
| Miller | Linda | ¶ 436 | | | X | X | X | |
| Moon | Azuri | ¶¶ 144-151 | | | X | X | X | |
| Moore | Stephanie | ¶¶ 268-273 | | | X | X | X | |
| Moore | Lavell | ¶ 437 | | | X | | X | |
| Morales | Sara | ¶ 438 | | | X | | X | |
| Morales | Albert | ¶ 439 | | | X | | X | |
| Morgan | Sharise | ¶ 440 | | X | | | X | |
| Morrell | Tiffany | ¶ 441 | | | X | X | X | |

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Morris | Heather | ¶ 442 | | | X | | X | |
| Mouck | Janette | ¶ 443 | | | X | | X | |
| Murphy | Robert | ¶ 444 | | | X | X | X | |
| Murphy | Sarah | ¶ 445 | | X | | | X | |
| Nicholson | Kimberly | ¶ 446 | | | X | | X | |
| Ojeda | Lelanya | ¶ 447 | | | X | | X | |
| Oosthuizen | Roland | ¶¶ 152-159 | | | X | X | | |
| Ortiz, Jr. | Frank | ¶ 448 | X | | | | X | |
| Owen | Kelly | ¶ 449 | | | X | | X | |
| Owensby | Mark | ¶ 450 | | | X | X | X | |
| Paningbatan | Flouzel | ¶ 451 | | | X | | X | |
| Payton | Laura | ¶ 452 | | | X | X | | |
| Pena, Jr. | Ismael | ¶ 453 | | | X | | X | |
| Perez | Luis | ¶¶ 216-224 | | | X | X | X | |
| Perez | Ann | ¶ 454 | | X | | | X | |
| Perez | Paul | ¶ 455 | | | X | | X | |
| Perkins | Kenyon | ¶ 456 | | X | | | X | |
| Petrova | Zinaida | ¶¶ 274-278 | | | X | | | |
| Piette | Melanie | ¶ 457 | | | X | X | X | |
| Pita | Ryan | ¶ 458 | | | X | | X | |
| Pitts | Darnell | ¶ 459 | | | X | | X | |
| Pitts | Vannessa | ¶ 460 | | | X | | X | |
| Pointer | Misty | ¶ 461 | | | X | X | X | X |
| Pomeroy | Tina | ¶ 462 | | X | | | X | |
| Posten | Randle | ¶ 463 | | | X | | X | |
| Pummill | Joshua | ¶ 464 | | X | | | X | |
| Quesada | Andrea | ¶ 465 | | | X | X | X | |
| Quiroz | Maurilio | ¶ 466 | | | X | | X | |

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Raiff | Mykela | ¶ 467 | X | | | | X | |
| Ray | Moaney | ¶ 468 | | | X | | X | |
| Reed | Kawana | ¶ 469 | | X | | X | X | |
| Rima-Fleurima | Nehemiah | ¶ 470 | X | | | | X | |
| Ritchey | Rhonda | ¶ 471 | | X | | | X | |
| Rivera | Vanessa | ¶¶ 127-135 | | | X | X | X | |
| Rivera | Israel | ¶ 472 | X | | | X | X | |
| Roa | Miguel | ¶ 473 | X | | | | X | |
| Robinson | Carmen | ¶ 474 | X | | | | X | |
| Robinson | Stanley | ¶ 475 | | | X | | X | |
| Robles | Joe | ¶ 476 | | X | | | X | |
| Rodriguez | Carlos | ¶¶ 171-176 | | | X | X | X | |
| Rodriguez | Catrina | ¶ 477 | | | X | | X | |
| Rodriguez Romo | Jose | ¶ 479 | | | X | X | X | |
| Rojas de Charolet | Elana Martina | ¶ 478 | | | X | | X | X |
| Royston | Melissa | ¶ 480 | | | X | | X | |
| Salaz | Raylene | ¶ 481 | | X | | | X | |
| Salazar | Miguel | ¶ 482 | | | X | X | X | |
| Saldate | Frankie | ¶ 483 | X | | | | X | |
| Schmidt | Michael | ¶ 484 | | | X | X | X | X |
| Schmitz | Timothy | ¶ 485 | X | | | | X | |
| Serrato | Melissa | ¶ 486 | | | X | | X | |
| Sevilla | Arminda | ¶ 487 | | | X | | X | X |
| Silva | Jenna | ¶ 488 | X | | | | X | |
| Simpson | Jessica | ¶ 489 | | | X | | X | |
| Sims II | Michael | ¶ 490 | | | X | | X | |
| Smith | Stephanie | ¶¶ 200-202 | | | X | | X | X |
| Smith | Jonathan | ¶¶ 229-236 | | | X | X | X | |

8

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Smith | Denise | ¶ 491 | | | X | | X | X |
| Smith | Nicole | ¶ 492 | | | X | | X | |
| Sparks | Jonathan | ¶ 493 | | | X | | X | |
| Stanfill | Amy | ¶ 494 | | | X | | | X |
| Stephens | Lucas | ¶ 495 | | | X | | X | |
| Stidham | Crystal | ¶ 496 | | | X | | X | X |
| Talia | Danny | ¶ 497 | X | | | | X | |
| Tamayo | Cesar | ¶ 498 | | | X | X | X | |
| Taylor | Michelle | ¶ 499 | | | X | X | X | |
| Taylor | Tonya | ¶ 500 | | X | | | X | |
| Tonna | Nicholas | ¶ 501 | | | X | | X | |
| Trammel | Tasha | ¶ 502 | | | X | X | X | |
| Tressler | Jimmy | ¶ 503 | | | X | | X | |
| Turnbull | Jason | ¶ 504 | | | X | | X | |
| Turner | Thomas | ¶ 505 | X | | | | X | |
| Valadez | Reina | ¶ 506 | | X | | | X | |
| Valenzuela | Juan | ¶ 507 | | | X | | X | |
| Vasquez | David | ¶ 508 | | | X | | X | |
| Verdun | Jessie | ¶ 509 | | | X | | X | X |
| Villagomez | Manuel | ¶ 510 | | | X | | X | |
| Viramontes | Luis | ¶ 511 | | | X | | X | |
| Walker | Norman | ¶ 512 | | X | | | X | |
| Wallace | Jason | ¶ 513 | | | X | | X | |
| Wiggins | Brian | ¶¶ 225-228 | | | X | X | X | |
| Wilburn | Cameren | ¶ 514 | X | | | | X | |
| Wilds | Denise | ¶ 515 | | | X | X | X | |
| Wilkins | Terrence | ¶ 516 | X | | | | X | |
| Williams | Zacharia | ¶ 517 | X | | | | X | |

| PLAINTIFF | | | COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | MCC Paragraph(s) | Does Not Allege That They Reported Fraud To BANA | Alleges Reporting "Fraud" Only | Does Not Allege Providing Required Information To BANA | Alleges They Have Been Reimbursed | Does Not Allege That Fraud Filter Was Used To Deny Claim | Does Not Allege Account Was Ever Frozen Or Blocked |
| Williams | Tyrisha | ¶ 518 | | X | | | X | |
| Williams | Willie | ¶ 519 | | | X | | X | |
| Williamson | Latasha | ¶ 520 | | | X | | X | |
| Willis | Leanna | ¶ 521 | | | X | | X | |
| Willrich | J. Michael | ¶¶ 177-186 | | | X | X | | |
| Wilson | Robert L. | ¶¶ 192-194 | | | X | X | X | |
| Wise | Lacey | ¶ 522 | | | X | | X | |
| Wood | Colton | ¶ 523 | X | | | | X | |
| Yeats | Matthew | ¶ 524 | | X | | | X | |
| Yick | Jennifer | ¶¶ 114-126 | | | X | | X | X |
| Young | Glen | ¶ 525 | | X | | | X | |
| Yuan | Alex | ¶¶ 237-245 | | | X | | X | X |
| Zettlemoyer | Christopher | ¶ 526 | X | | | | X | |
| Zoelle | Jory | ¶¶ 246-249 | | | X | | X | |