UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION | Case No.: 21md2992-GPC (MSB)<br><br>**DISCOVERY ORDER**<br>**[ECF NOS. 209, 212]** |
|---|---|

This multidistrict litigation ("MDL") arises from numerous class and individual actions brought against Defendant Bank of America, N.A. ("BANA") over its administration of California's electronic benefits payment system during the COVID-19 pandemic.  The instant discovery dispute concerns Plaintiffs' request to compel additional electronically stored information ("ESI") custodians and BANA's request to preclude additional ESI custodians.  (See ECF Nos. 209, 211–12, 214–15.)  To date, BANA has produced ESI from twenty custodians.  (ECF No. 209 at 5.)  Plaintiffs now request that the Court compel eight additional ESI custodians.  (ECF No. 212 at 2.)  After reviewing informal letter briefs lodged by the parties, the Court held an Informal Discovery Conference ("IDC") on January 3, 2024.  (ECF No. 199.)  The Court indicated it would be inclined to allow Plaintiffs to add three more executive ESI custodians of their choosing, but no additional non-executive ESI custodians.

Following the conference, both parties requested an opportunity for formal briefing, and the Court issued a briefing schedule. (ECF No. 205.) On January 23, 2024, Plaintiffs filed their "Motion to Compel Additional ESI Custodians" and Defendants filed their "Motion to Preclude Additional ESI Discovery." (See ECF No. 212, hereinafter "Pls.' Mot."; ECF No. 209, hereinafter "Def.'s Mot.") On January 30, 2024, the parties each filed oppositions. (See ECF No. 214, hereinafter "Def.'s Opp'n"; ECF No. 215, hereinafter "Pls.' Opp'n".) For the reasons explained below, the Court **GRANTS** Plaintiffs' request for ESI discovery from Catherine Bessant, Dean Athanasia, and Christine Channels and **DENIES** Plaintiffs' request for ESI discovery from Brian Moynihan, Thomas Montag, Jennifer Boussuge, Renee Johnson, and Rocco Blasi.

## I.     BACKGROUND

### A. Procedural History

Plaintiffs filed several individual and class actions against BANA in federal district courts throughout California. On June 4, 2021, the United States Judicial Panel on Multidistrict Litigation consolidated the actions in this District. (ECF No. 1.) Following this Court's Case Management Order, Plaintiffs filed a Master Consolidated Complaint ("MCC") in August 2021. (ECF No. 72.) BANA then moved to dismiss the MCC, and on May 25, 2023, this Court issued an Order granting in part and denying in part BANA's motion. (ECF No. 126.) On June 13, 2023, Plaintiffs filed the operative First Amended Master Consolidated Complaint ("FAMCC"). (ECF No. 136.) The following facts are taken from the FAMCC.

### B. Factual Background

Plaintiffs allege that in 2010, BANA entered an exclusive contract with the California Employment Development Department ("EDD") to provide electronic benefits payments such as unemployment insurance benefits and pandemic unemployment assistance benefits. (Id. at 22.) In 2015, EDD accepted BANA's proposal to extend the contract for a term running from August 1, 2016, through July 31, 2021 ("EDD-BANA Contract"). (Id.) Pursuant to the EDD-BANA Contract, eligible claimants received

periodic EDD benefits payments through prepaid debit cards ("EDD Debit Cards") administered and issued by BANA. (Id. at 7.) Since the inception of the COVID-19 pandemic in March 2020, Plaintiffs allege EDD received at least 18.5 million claims for various unemployment benefits and BANA issued more than nine million EDD Debit Cards to approved applicants. (Id. at 35.) During this time, there was a corresponding increase in fraud targeting EDD Debit Cardholders, with thousands of benefits recipients reporting substantial financial losses due to unauthorized transactions, fraud on their accounts, or account freezes preventing access to EDD benefits. (Id. at 34–53.)

In this MDL litigation, Plaintiffs allege, among other things, that BANA failed to secure Plaintiffs' sensitive card and account information by issuing them EDD Debit Cards that used outdated, vulnerable magnetic stripe technology rather than fraud-preventing EMV chip technology. (Id. at 24–32.) Further, Plaintiffs allege BANA breached its duties through "systemically lax security practices [that] enabled unauthorized persons to access [EDD Debit Cardholders'] personal and financial information and to make fraudulent, unauthorized transactions." (Id. at 8.) Moreover, Plaintiffs allege that BANA used a highly flawed Claim Fraud Filter to automatically deny error claims or to freeze or block EDD prepaid accounts. (Id. at 42–47.)

## II.   INSTANT DISCOVERY DISPUTE

### A. Plaintiffs' Motion to Compel Additional ESI Custodians

In the instant discovery dispute, Plaintiffs request that the Court compel BANA to add four additional executive ESI custodians—(1) Brian Moynihan (Chief Executive Officer, "CEO"); (2) Thomas Montag (President of Global Banking and Markets and Chief Operating Officer, "COO" until December 2021); (3) Catherine Bessant (Chief Operations and Technology Officer until 2021); and (4) Dean Athanasia (President of Regional Banking)—to produce documents responsive to Plaintiffs' requests for production ("RFPs") 76–79. (See Pls.' Mot. at 2.) Additionally, Plaintiffs request that the Court compel BANA to add four additional non-executive ESI custodians—(5) Christine

Channels[1]; (6) Jennifer Boussuge; (7) Renee Johnson; and (8) Rocco Blasi—for limited RFPs. (Id.) In support, Plaintiffs argue that these eight individuals "have highly relevant, non-duplicative documents; and Plaintiffs' need for those documents far outweighs any potential burden to the Bank." (Id.) First, Plaintiffs argue that four of these individuals—senior executives Moynihan, Bessant, Montag, and Athanasia—"were not merely passive recipients of information" but involved in decisions at the core of Plaintiffs' claims. (Id. at 4.) For example, Plaintiffs assert that discovery BANA has already produced shows these four executives "communicated about . . . key issues among themselves and with other non-custodian executives and the Bank's Board members—communications not in the possession of any lower-level custodians." (Id. at 5–6.) Second, Plaintiffs argue that BANA itself admitted the four non-executives—Channels, Boussuge, Johnson, and Blasi— are " 'most likely to possess non-duplicative, relevant ESI.' " (Id. at 6–7.)

Plaintiffs maintain that adding these eight custodians is proportional to the needs of the case and not unduly burdensome, considering the following factors: (1) the class comprises over 100,000 Californians and the requested damages are in the hundreds of millions of dollars; (2) the requested discovery is critical to the disputed issues, namely the Bank's reasons for implementing its Claim Fraud Filter and its knowledge of the impact of these policies on cardholders; (3) the Bank is well-resourced based on its reported 2022 revenue of more than $94 billion and $3 trillion in consolidated assets; and (4) only the Bank has access to these documents and its burden-based arguments fail. (Id. at 7–8.) Thus, Plaintiffs request that the Court compel BANA to add the eight requested ESI custodians, or alternatively request the Court at minimum adopt its tentative ruling from the IDC on January 3, 2024. (Id. at 8.)

///

---

[1] Although Plaintiffs do not refer to Christine Channels as an executive, BANA notes that she is Head of Client Services and Credit Assistance. (See Def.'s Mot. at 6.)

### B. BANA's Motion to Preclude Additional ESI Custodians

As an initial matter, BANA notes that Plaintiffs have already received more than 200,000 documents from twenty custodians, three non-custodian mailboxes, and six targeted databases, resulting in more than $4.5 million in vendor costs. (Def.'s Mot. at 4.) BANA contends the additional ESI that Plaintiffs now seek would be disproportionate to the needs of this case, and the vendor costs for the executive custodians alone would exceed $1.4 million. (Id. at 4–6.) During meet and confer discussions, BANA offered to add eight custodians who were involved in the Claim Fraud Filter and other relevant issues, including Christine Channels, Head of Client Services and Credit Assistance; however, Plaintiffs rejected this proposal and insisted on ESI from more top executives.[2] (Id. at 6.) BANA contends Plaintiffs are attempting to use discovery as leverage for settlement by exposing the Bank's top executives to unwarranted harassment. (Id.)

When assessing whether to allow document discovery from top executives, BANA contends the proper inquiry is whether "executives were involved in decision making relating to key issues in the case." (Id. at 6 (citing Blackberry Ltd. v. Facebook., Inc., No. CV 18-1844-GW (KSx), 2019 WL 4544425, at *6 (C.D. Cal. Aug. 19, 2019).) BANA highlights a Northern District of California case that applied this so-called "decision-maker on key issues" standard.[3] (Id. at 7 (citing In re Facebook, Inc. Consumer Priv. User Profile Litig., No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213, at *2 (N.D. Cal. Nov. 14, 2021). The court allowed ESI searches of Facebook's top two executives—Mark Zuckerberg and Sheryl Sandberg—after finding they were "key decision-makers related

---

[2] BANA does not currently object to the addition of Channels as an ESI custodian, "subject to the parties' negotiation of appropriate search parameters." (See Def.'s Mot. at 6 n. 2.)

[3] BANA also cites two out-of-circuit cases denying discovery requests where plaintiffs failed to demonstrate executives had "unique or personal knowledge" that was "necessary and not cumulative." (See Def.'s Mot. at 7 (citing Lutzeier v. Citigroup Inc., No. 4:14-CV-00183-RLW, 2015 WL 430196, at *7 (E.D. Mo. Feb. 2, 2015); Harris v. Union Pac. R.R. Co., No. 8:16CV381, 2018 WL 2729131, at *4 (D. Neb. June 6, 2018)).) These authorities are not binding on this Court. Additionally, the Court finds Lutzeier and Harris generally inapplicable because they relied on the "apex deposition doctrine," whereas the instant dispute concerns document discovery.

to issues at the heart of Plaintiffs' allegations." In re Facebook Litig., 2021 WL 10282213, at *2.  Here, BANA argues Plaintiffs cannot show that the executives they seek to add were involved in decision making relating to the key issues in this case— namely, BANA's use of the Claim Fraud Filter to decide claims and freeze or block suspected fraudulent accounts, BANA's use of EMV chip technology for EDD Debit Cards, and customer service of those cards.  (Id. at 7–10.)  Further, BANA argues the documents identified by Plaintiffs to justify the discovery they seek show only that BANA's top executives had "basic awareness" of the prepaid card program, not that they were involved in making key decisions.  (Id. at 7.)  Thus, BANA maintains Plaintiffs already have the custodians they need, and requests that the Court issue an order precluding additional ESI discovery.  (Id. at 11.)

### III.  RELEVANT LAW

The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Relevant information need not be admissible at trial to be discoverable.  Id.  District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; the requesting party "has had ample opportunity" to obtain discovery; or the discovery sought is beyond the scope of Federal Rule of Civil Procedure 26(b)(1).  See Fed. R. Civ. P. 26(b)(2)(C).

There is relatively limited legal authority on the standards a court should apply when addressing disputes about the designation of additional ESI custodians. See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig., No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018). After reviewing the cases cited by both parties, the Court sets forth the following general principles, which it applies in ruling on the instant dispute. First, the party seeking designation of additional custodians must show "that the disputed custodians possess uniquely relevant information that is not available from the sources already designated." See In re Facebook Litig., 2021 WL 10282213, at *1; see also B&G Foods N. Am., Inc. v. Embry, No. 2:20-CV-0526 KJM DB, 2024 WL 626962, at *3 (E.D. Cal. Feb. 14, 2024) (applying the same standard). Second, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Superior Commc'ns v. Earhugger, Inc., 257 F.R.D. 215, 217 (C.D. Cal. 2009) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry a heavy burden of showing why discovery was denied").

## IV. DISCUSSION

Both parties rely on Plaintiffs' Index of Exhibits and Exhibits, which were also lodged with the Court prior to the IDC on January 3, 2024. (See generally ECF Nos. 211–212.) The Exhibits were designated "CONFIDENTIAL" pursuant to the parties' Stipulated Protective Order. Wherever possible, the Court references the Exhibits only generally.

### A. Brian Moynihan

Brian Moynihan is the CEO of Bank of America. (Pls.' Mot. at 2.) Among other things, Plaintiffs contend Exhibits 1, 10, 11, and 12 demonstrate that Moynihan has relevant and unique knowledge about the issues in this case because he personally prepared memoranda and presented on key issues at Board meetings. (See Pls.' Mot. at 4–6; Pls.' Opp'n at 2.) Additionally, Plaintiffs assert Exhibits 4, 7, and 13 show that Moynihan personally authorized freezing EDD Debit Cards and that Moynihan and other executives directed changes to BANA's claims-processing procedures. (See Pls.' Mot. at

4–6; Pls.' Opp'n at 2.) In response, BANA maintains that these Exhibits unsurprisingly show that BANA's top executives, like Moynihan, received updates on the EDD program and the unprecedented fraud it was generating; however, the documents do not show that Moynihan or any other executives were decision makers on key issues. (See Def.'s Mot. at 7–10; Def.'s Opp'n at 2–3.)

After considering the relevant Exhibits and the parties' arguments, the Court finds that although Moynihan may possess relevant information, Plaintiffs have not demonstrated that he possesses "***uniquely*** relevant information that is ***not available from the sources already designated***." See In re Facebook Litig., 2021 WL 10282213, at *1 (emphasis added). For example, Plaintiffs contend Exhibit 7 shows that Moynihan "personally authorized freezing 46,000 cards." (Pls.' Opp'n at 2.) However, as BANA points out, the document merely reveals that a BANA employee asked whether Moynihan approved moving forward, to which an existing custodian responded, "we are freezing all the atm/combo cards but that's all we have approval for." (Def.'s Mot. at 8 (citing Ex. 7).) Thus, Exhibit 7 does not indicate *who* approved the freezing, let alone if Moynihan did so. Additionally, BANA represents that Plaintiffs have already received ESI from nine custodians who were involved in account freezing [Def.'s Mot. at 8], and the Court is not convinced that Moynihan is likely to produce information that is not already available from these existing custodians. Although Plaintiffs point to Exhibits 10–12 showing that Moynihan prepared memoranda and presented on key issues at Board meetings, BANA represents that "if any of these [Exhibits] resulted in relevant Board materials, *Plaintiffs already have them*." (Def.'s Mot. at 9.) Based on the foregoing, the Court finds that BANA has sufficiently explained and supported its objections to adding Moynihan as an ESI custodian. Superior Commc'ns, 257 F.R.D. at 217. Therefore, ESI discovery from Moynihan is **DENIED**.

### B. Thomas Montag

Thomas Montag was the President of Global Banking and Markets and COO of Bank of America until December 2021. (Pls.' Mot. at 2.) Plaintiffs assert that Montag,

along with other executives, "were not merely aware of but were *driving* the key issues" involved in this case. (Pls.' Opp'n at 2.) Plaintiffs point to Exhibits 3, 5, and 14, containing emails that were either sent to Montag or mention him directly. (See Pls.' Mot. at 4–6.) In response, BANA maintains that these Exhibits do not show anything more than general awareness on the part of Montag, which is not enough to add him as an ESI custodian. (See Def.'s Mot. at 7–10; Def.'s Opp'n at 2–3.)

Considering the relevant Exhibits and the parties' arguments, the Court finds that Montag is unlikely to possess unique information that cannot be found from existing ESI custodians. See In re Facebook Litig., 2021 WL 10282213, at *1 (emphasis added). Regarding Exhibit 3, BANA correctly points out that when a question was raised about the amount of potential operational losses related to prepaid claims fraud, Montag and Athanasia reached out to another offered custodian, Christine Channels, and an existing custodian, Jennifer Ehresman, to obtain the relevant information. (Def.'s Mot. at 10 (citing Ex. 3).) As to Exhibit 5, the Court agrees with BANA's contention that although Montag's approval may have been required for a new contract related to call center services, it appears he was not involved in negotiating the details of the contract. (Def.'s Mot. at 10 (citing Ex. 5).) Finally, although Exhibit 14 shows that Montag asked questions related to "pre-paid fraud losses," this does not demonstrate Montag possesses uniquely relevant information that cannot be obtained from existing sources. (Ex. 14.) Accordingly, the Court finds that BANA has sufficiently explained and supported its objections to adding Montag as an ESI custodian. See Superior Commc'ns, 257 F.R.D. at 217. ESI discovery from Montag is **DENIED**.

### C. Catherine Bessant

Catherine Bessant was the Chief Operations and Technology Officer of BANA until 2021. (Pls.' Mot. at 2.) Plaintiffs contend Exhibits 4 and 13 show that Bessant, in conjunction with other executives, directed changes to the Bank's claims-processing procedures. (See Pls.' Opp'n at 2.) Additionally, Plaintiffs argue Exhibits 1, 2, 4, 6, and 9—emails that were either sent to/from Bessant or mention her by name—support

adding Bessant as an ESI custodian.  (See Pls.' Mot. at 5–6.)  In response, BANA once again argues that these Exhibits do not show anything more than Bessant's general awareness, which is not enough to add her as a custodian.  (See Def.'s Mot. at 7–10; Def.'s Opp'n at 2–3.)

Courts have allowed ESI discovery of executives when they are shown to have unique knowledge of the subject matter.  See In re Facebook Litig., 2021 WL 10282213, at *1; Blackberry Ltd., 2019 WL 4544425, at *6 (considering only whether custodians have "unique or personal knowledge of the subject matter").  Here, the Court finds Bessant is an appropriate document custodian because she is likely to have unique knowledge relevant to key issues in this case, such as BANA's use of the Claim Fraud Filter.  For example, Exhibit 1 shows Bessant agreed to look at the "prepaid card situation" and was later tasked with briefing the Board on prepaid card issues.  (Def.'s Mot. at 9; Ex. 1.)  Exhibit 2 shows Bessant directed teams to generate ideas, articulate fraud strategies, and manage claims resolution processes.  (Def.'s Mot. at 10; Ex. 2.)  Additionally, Exhibit 9 shows Bessant conducted a full review of the unemployment insurance program and was involved in a presentation related to it.  (Def.'s Mot. at 9; Ex. 6.)  These examples appear to go beyond mere awareness.  The Court is not convinced that existing custodians are likely to possess the same information, and BANA has not met its burden of clarifying why this discovery should be denied.  Superior Commc'ns, 257 F.R.D. at 217.  Accordingly, ESI discovery from Bessant is **GRANTED** and she is **ORDERED** to produce documents responsive to Plaintiffs' RFPs 76–79.

### D. Dean Athanasia

Dean Athanasia is the President of Regional Banking of Bank of America.  (Pls.' Mot. at 2.)  Like the other executives already discussed, Plaintiffs contend Exhibits 4 and 13 show that Athanasia directed changes to the Bank's claims-processing procedures.  (See Pls.' Opp'n at 2.)  Additionally, Plaintiffs argue Exhibits 1, 3, and 6—emails that were either sent to/from Athanasia or mention him by name—support adding Athanasia as an ESI custodian.  (See Pls.' Mot. at 5–6.)  In response, BANA reiterates these Exhibits

merely show Athanasia's general awareness, and therefore he should not be added as an ESI custodian. (See Def.'s Mot. at 7–10; Def.'s Opp'n at 2–3.)

Here, the Court finds Athanasia is likely to possess "uniquely relevant information" that cannot be obtained from existing sources. See In re Facebook Litig., 2021 WL 10282213, at *1. For example, Exhibit 1 contains emails between Athanasia and Bessant regarding prepaid call centers. (Ex. 1.) Exhibit 4 shows Athanasia was involved in a management team discussion with Bessant and other executives, which resulted in changes to BANA's processes for EDD Debit Cardholders. (Def.'s Mot. at 10; Ex. 6.) Exhibit 6 contains emails where Athanasia gave feedback to an existing custodian, O'Neill, on an update regarding BANA's unemployment insurance program. (Def.'s Mot. at 9; Ex. 6.) Based on these documents, it appears Athanasia has unique and personal knowledge about several key issues in this case, including call centers and the Claim Fraud Filter. See Blackberry Ltd., 2019 WL 4544425, at *6. As with Bessant, the Court is not convinced that existing custodians are likely to possess the same information as Athanasia. Because BANA has not met its burden of clarifying why this discovery should be denied, ESI discovery from Athanasia is **GRANTED**. Superior Commc'ns, 257 F.R.D. at 217. Athanasia is **ORDERED** to produce documents responsive to Plaintiffs' RFPs 76–79.

### E. Christine Channels

Christine Channels is the Head of Client Services and Credit Assistance of Bank of America. (See Def.'s Mot. at 6.) Plaintiffs say BANA conceded Channels is one of the individuals "most likely to possess non-duplicative, relevant ESI pertaining to the issues remaining in the case." (Pls.' Mot. at 7.) In support, Plaintiffs highlight several interrogatory responses where BANA identified Channels as being involved with the Claim Fraud Filter and other relevant case issues. (Id. (citing Ex. 18).) BANA does not currently object to adding Channels as an ESI custodian, "subject to the parties' negotiation of appropriate search parameters." (See Def.'s Mot. at 6 n. 2.) Moreover, the Court finds that the cited interrogatory responses support a finding that Channels is

likely to possess "uniquely relevant information that is not available from the sources already designated." See In re Facebook Litig., 2021 WL 10282213, at *1. Accordingly, ESI discovery from Channels is **GRANTED**, subject to the negotiation of appropriately narrow search terms and de-duplication of ESI across custodians. See Rusoff v. Happy Grp., Inc., No. 21CV08084YGRLJC, 2023 WL 114224, at *4 (N.D. Cal. Jan. 5, 2023).

### F. Non-executives

Based on the excerpted organizational charts [Ex. 20], and considering the addition of Bessant, Athanasia, and Channels as ESI custodians, the Court finds ESI from non-executives is highly likely to be duplicative and not proportional to the needs of this case. See generally Fed. R. Civ. P. 26(b)(1) (noting an objective for courts to guard against redundant or disproportional discovery). Furthermore, BANA represents that Plaintiffs already have ESI from Jennifer Boussuge, Renee Johnson, and Rocco Blasi's direct supervisors, as well as other leaders in their departments. (Def.'s Opp'n at 4.) Plaintiffs have not shown that these non-executives are likely to possess unique documents that cannot be obtained from existing custodians. Thus, the Court finds BANA has met its burden of clarifying why this discovery should be denied, based on it being potentially duplicative or redundant. Superior Commc'ns, 257 F.R.D. at 217. ESI discovery from Boussuge, Johnson, and Blasi is **DENIED**.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' request for ESI discovery from Catherine Bessant, Dean Athanasia, and Christine Channels is **GRANTED**. Plaintiffs' request for ESI discovery from Brian Moynihan, Thomas Montag, Jennifer Boussuge, Renee Johnson, and Rocco Blasi is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 24, 2024

Honorable Michael S. Berg
United States Magistrate Judge