UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION, | Case No.: 21MD2992-GPC(MSB)<br><br>**ORDER**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AND**<br><br>**(2) GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>**[Dkt. Nos. 146, 151.]** |

    This multi-district litigation was transferred to the undersigned judge on April 8, 2024. (Dkt. No. 261.) Pending before the Court is Defendant's fully briefed motion to dismiss, (Dkt. Nos. 146, 171, 175), and Plaintiffs' fully briefed motion for reconsideration of the Court's order granting dismissal of the UCL claim with prejudice. (Dkt. Nos. 151, 158, 161.) Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend and GRANTS Plaintiffs' motion for reconsideration with leave to amend.

/ / /

**Background**

California's Employment Development Department ("EDD") administers unemployment benefits in California, and in 2010, entered into an exclusive contract with Defendant Bank of America, N.A. ("BANA") to distribute those benefits through Bank-issued and Bank-administered prepaid debit cards which are linked to individual Bank depository accounts. (Dkt. No. 136, First Amended Master Consolidated Complaint ("FAMCC") ¶¶ 1, 2, 39.) In 2015, EDD accepted BANA's proposal to extend the scope and duration of the contract from August 1, 2016 through July 31, 2021. (*Id.* ¶ 42.)

Plaintiffs, like other millions of Californians, lost their jobs during the COVID-19 pandemic and were found eligible by EDD for unemployment and other public benefits. (*Id.* ¶ 1.) The state's unemployment rate skyrocketed from 3.9% in January 2020 to 16.4% in April 2020 following closure orders from Governor Gavin Newsom. (*Id.* ¶ 74.) Since the start of the COVID-19 pandemic in March 2020, EDD received at least 18.5 million claims for various unemployment benefits. (*Id.* ¶ 75.) For instance, in the first week of December 2000, EDD received 341,813 claims which was a 600% increase from December 2019. (*Id.*) In turn, BANA issued more than 9 million EDD debit cards to individuals found eligible for unemployment benefits. (*Id.*) Per the exclusive contract between EDD and BANA, the BANA issued benefit payments through Bank-issued and Bank-administered prepaid debit cards. (*Id.* ¶ 2.) These pre-paid debit cards were subject to rampant third-party fraud during the COVID-19 pandemic and tens of millions of dollars have been stolen from these bank accounts. (*Id.* ¶¶ 76-78.)

On January 14, 2021, Class Plaintiff Jennifer Yick commenced a purported class action titled *Yick v. Bank of America, N.A.*, No. 3:21-cv-376, in the United States District Court for the Northern District of California. (*Id.* ¶ 106.) Eight additional class actions were subsequently filed and consolidated with *Yick* on March 29, 2021. (*Id.*) On April 1, 2021, Plaintiffs in the *Yick* consolidated class action sought a preliminary injunction enjoining BANA from automatically denying fraud claims based on its faulty "Claim Fraud Filter" and freezing or blocking claimants' accounts without investigation. (*Id.* ¶¶

107, 108.)  The *Yick* court granted a preliminary injunction on May 17, 2021, and provisionally certified a class of all EDD Cardholders who call BANA to report unauthorized charges.  (*Id.*, Ex. A.)  On June 1, 2021, following negotiations between the parties, the *Yick* court entered a preliminary injunction which: (1) barred BANA from considering the results of its Claim Fraud Filter when investigating claims; (2) prohibited BANA from denying claims without an investigation and providing the claimant with a written explanation; (3) prohibited BANA from freezing any account based on the results of the Claim Fraud Filter; (4) required BANA to reopen any claims previously denied based on the results of the Claim Fraud Filter; and (5) required BANA to establish dedicated toll free numbers for Class Members seeking assistance with fraud claims or frozen accounts.  (*Id.*; Dkt. No. 136, FAMCC ¶ 110.)  Around that same time, numerous individuals initiated actions against BANA for injuries stemming from the same alleged conduct.

On June 4, 2021, the Judicial Panel on Multidistrict Litigation transferred the *Yick* class action and individually filed actions to this Court for consolidated pretrial proceedings.  (Dkt. No. 1.)  Pursuant to the Court's order following a case management conference, (Dkt. No. 48), Plaintiffs filed a Master Consolidated Complaint ("MCC") on August 17, 2021.  (Dkt. No. 72.)  On May 25, 2023, the Court granted in part and denied in part Defendant's motion to dismiss the MCC with leave to amend.  (Dkt. No. 126.)  On June 13, 2023, Plaintiffs filed a First Amended Master Consolidated Complaint ("FAMCC") against BANA.  (Dkt. No. 136.)

The FAMCC alleges the following claims:

1. Violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1963 *et seq.,* and Regulation E ,12 C.F.R. §§ 1005.1 *et seq.*;
2. Violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100 *et seq.*;
3. Violation of the California Customer Records Act ("CCRA"), Cal. Civ. Code §§ 1798.80 *et seq.*;
4. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

5. Negligence and Negligence Per Se;
6. Negligent Hiring, Supervision, and Retention;
7. Breach of Contract;
8. Breach of Implied Contract;
9. Breach of the Implied Covenant of Good Faith and Fair Dealing;
10. Breach of Fiduciary Duty;
11. Third Party Beneficiary Breach of Contract;
12. Third Party Beneficiary Breach of the Implied Covenant of Good Faith and Fair Dealing;
13. Violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution; and
14. Violation of the Due Process Clause of the California Constitution.

(*Id.*)  On July 11, 2023, Defendant filed a motion to dismiss certain claims of the FAMCC and is fully briefed.  (Dkt. Nos. 146, 71, 175.)  On August 7, 2023, Plaintiff filed a motion for reconsideration of the UCL claims that were dismissed with prejudice and is fully briefed.  (Dkt. Nos. 151, 158, 161.)

On April 3, 2024, the Court granted BANA's motion to dissolve the preliminary injunction because EDD terminated its longstanding contract with BANA, directed BANA to close cardholders' existing EDD debit card accounts, and required BANA to provide notice to each affected cardholder and inform those with an existing balance as of April 30, 2024, how to recover the funds before they escheat to the state.  (Dkt. No. 255.)  All provisions of the preliminary injunction order are dissolved as of June 1, 2024.  (*Id.*)

## Discussion

### I. Defendant's Motion to Dismiss

### A. Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is

entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**B.     First Cause of Action – Violation of the EFTA**

The Electronic Funds Transfer Act ("EFTA") is a federal consumer protection law "establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(a). The EFTA, together with its implementing regulation, Regulation E, codified at 12 C.F.R. § 1005, regulate electronic fund transfers and was designed to protect consumers' accounts. *See* 15 U.S.C. § 1693(b)

("primary objective of [the EFTA] . . . is the provision of individual consumer rights."). The EFTA is a remedial statute accorded "a broad, liberal construction in favor of the consumer." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998). Congress intended the EFTA to provide "a comprehensive scheme of federal regulation for all electronic transfers of funds." *Kashanchi v. Texas Commerce Med. Bank, N.A.*, 703 F.2d 936, 939 (5th Cir. 1983).

An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone." 15 U.S.C. § 1693a(7). An "unauthorized electronic transfer" is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693a(12); *see also* 12 C.F.R. § 1005.2(m) (*same*).

Under the EFTA's error resolution procedure, when a consumer notifies a financial institution that the consumer believes an "error" has occurred in his or her account, the "financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." 15 U.S.C. § 1693f(a). The EFTA mandates specific steps the financial institution must take depending on the results of its investigation, as well as the time frames in which the steps must be taken. 15 U.S.C. §§ 1693f(b)-(d). To trigger a financial institution's obligations under the EFTA, consumers must identify a qualifying error. 15 U.S.C. § 1693f(a); 12 C.F.R. § 1005.11(b). Qualifying errors include:

(i) An unauthorized electronic fund transfer;

(ii) An incorrect electronic fund transfer to or from the consumer's account;
(iii) The omission of an electronic fund transfer from a periodic statement;
(iv) A computational or bookkeeping error made by the financial institution relating to an electronic fund transfer;
(v) The consumer's receipt of an incorrect amount of money from an electronic terminal;
(vi) An electronic fund transfer not identified in accordance with § 1005.9 or § 1005.10(a); or
(vii) The consumer's request for documentation required by § 1005.9 or § 1005.10(a) or for additional information or clarification concerning an electronic fund transfer, including a request the consumer makes to determine whether an error exists under paragraphs (a)(1)(i) through (vi) of this section.

12 C.F.R. § 1005.11(a)(1)(i)-(vii); *see also* 15 U.S.C. § 1693f(f)(1)-(7). "A request for documentation or other information must be treated as an error unless it is clear that the consumer is requesting a duplicate copy for tax or other record-keeping purposes." 12 C.F.R. Pt. 1005, Supp. I at 11(a) (Official Interpretation of § 1005.11(a)).[1]

In the prior order, the Court dismissed the EFTA claim for those Plaintiffs who solely alleged they reported account freezes to BANA because "[n]either EFTA nor Reg E lists account freezes as a qualifying error." (Dkt. No. 126 at 15-16.[2])  The Court noted, though, that to the extent Plaintiffs argued that they also requested additional information "to determine whether there was an incorrect or omitted EDD benefits transfer into the account," such allegations were not in the complaint and the Court could not consider them but instead granted them leave to amend.  (*Id.*)

The FAMCC now alleges that individual Plaintiffs' accounts were frozen or restricted and Plaintiffs requested additional information from BANA as to why their

---

[1] The Official Interpretations are "published in accordance with the broad powers that Congress delegated to the [Federal Reserve] Board to fill gaps in the statute." *Nero v. Uphold HQ Inc.*,-- F. Supp. 3d --, 2023 WL 5426203 *3 n.2 (S.D.N.Y. Aug. 23, 2023) (quoting *Roberts v. Fleet Bank (R.I.),* 342 F.3d 260, 265 (3d Cir. 2003), *as amended* (Oct. 21, 2003)).
[2] Page numbers are based on the CM/ECF pagination.

accounts were restricted or sought information BANA relied on to freeze their accounts. (*See e.g.,* Dkt. No. 136-1, FAMCC ¶ 308 (Berlt "requested additional information from Bank of America as to why his account was restricted."); ¶ 309 ("Blacksands also requested from Bank of America all the information it relied upon which caused the freeze of his account."); ¶ 357 (Stephanie Flores "began receiving EDD distributed through Bank of America. . . . In August 2020, Bank of America restricted her access to her Account" and she immediately "called Bank of America to inquire as to why a restriction was placed on her account and requested additional information regarding the restriction.").)

In its motion to dismiss, Defendant contends that the "freeze only" Plaintiffs, despite their amendments, have not stated a claim under the EFTA as they still fail to allege a qualifying error as defined under the EFTA. (Dkt. No. 146-1 at 9-11.) It argues that Plaintiffs merely allege that they requested additional information about their account freezes or restrictions to their accounts that prevented transfers on their accounts, and do not allege they requested additional information concerning a specific electronic fund transfer. (*Id.* at 9.) Plaintiffs respond they have properly amended the complaint to clarify that they requested additional or clarifying information "regarding bank errors resulting in missing deposit[] [transfers] or other omissions of EDD benefits transfers into their accounts while the freeze continued to be in effect." (Dkt. No. 171 at 5.)

The individual Plaintiffs, whose accounts were frozen or restricted, were all authorized recipients of EDD benefits and had either been approved for benefits or had been receiving EDD benefits when their accounts were frozen or restricted. (*See e.g.*, Dkt. No. 136-1, FAMCC ¶¶ 308, 309, 325, 357.) Therefore, the bank accounts that were frozen included funds that had already been "transferred" from EDD to BANA. To the extent the bank accounts were frozen prior to funds being deposited by EDD, the FAMCC sufficiently alleges a qualifying error. The FAMCC asserts that Plaintiffs requested additional information as to why their accounts were restricted, or in other words, requested additional information concerning "an incorrect electronic fund transfer

to or from the consumer's account" or the "omission of an electronic fund transfer from a periodic statement." *See* 12 C.F.R. §§ 1005.11(a)(1)(ii), (iii), (vii). In essence, Plaintiffs were seeking additional information regarding electronic fund transfers that did not occur. In considering the broad remedial purpose of the EFTA in favor of consumers, and drawing all reasonable inferences in favor of Plaintiffs on a motion to dismiss, the Court concludes that the individual Plaintiffs have plausibly alleged a qualifying error as defined under the EFTA.

Accordingly, the Court DENIES Defendant's motion to dismiss the EFTA claims regarding the "freeze only" individual Plaintiffs.

**C.     Remaining Unopposed Arguments**

Defendant also moves to dismiss the second cause of action for violation of the CCPA based on the theory regarding unsecure data collection and storage alleged in paragraphs 553(b)-(d); the third cause of action under the CCRA, and the fifth cause of action for negligence per se based on violations of the California Financial Information Privacy Act ("CFIPA") and CCRA with prejudice for Plaintiffs' failure and inability to amend those claims. (*Id.*) Plaintiffs do not oppose Defendant's arguments.

The Court's prior order granted dismissal of the CCPA claim to the extent it was based on BANA "collecting", "transmitting" and "storing" Plaintiffs' personal information in an inadequately secure manner with leave to amend, dismissed the CCRA cause of action with leave to amend and dismissed the negligence per se cause of action based on violations of the CFIPA and CCRA with leave to amend. (Dkt. No. 126 at 27-28, 29-31, 42-43.) Plaintiffs did not amend these claims in the FAMCC, and, in fact, admit they are unable to amend these claims at this time. (*See* Dkt. No. 136-1, FAMCC at 281 n.32; 285 n.33; 293 n.35.) Thus, the Court GRANTS Defendant's motion to dismiss with prejudice the second cause of action under CCPA as it concerns unsecure data collection and storage contained in paragraphs 553(b)-(d), the third cause of action under the CCRA, and the fifth cause of action for negligence based on the CFIPA and CCRA as unopposed.

Finally, Defendant moves to dismiss the seventh cause of action for breach of contract as to all Plaintiffs with prejudice for failing to amend except for the Section 9 and 11 theories of Plaintiffs Stephanie Smith, Beth Burns and Crystal Horath. (Dkt. No. 146-1 at 7-8.) Defendant also seeks to dismiss the Section 9 and 11 breach of contract claims brought by Plaintiff Jennifer Yick because she amended her allegations that her unauthorized transaction claims have been reimbursed in full by BANA. (*Id.* at 11.)

Previously, the Court granted dismissal of the claim for breach of Section 9 and 11 of the Account Agreement with leave to amend except as to Plaintiffs Jennifer Yick, Stephanie Smith, Beth Burns and Crystal Horath. (Dkt. No. 126 at 52.) As to Stephanie Smith, Beth Burns and Crystal, the FAMCC alleges Plaintiffs "are unable to amend those claims at this time." (Dkt. No. 136, FAMCC at 302 n.36.) Thus, the Court GRANTS dismissal of the breach of contract claims with prejudice except as to the Section 9 and 11 claims as to Stephanie Smith, Beth Burns and Crystal Horath as unopposed.

The Court previously dismissed the breach of contract claims with prejudice as to Plaintiffs who had been fully reimbursed. (Dkt. No. 126 at 51.) At the time, Yick had previously stated a breach of contract claim, but the FAMCC now alleges that she has been reimbursed in full by BANA. (*See* Dkt. No. 136, FAMCC ¶ 126.) Thus, the Court also GRANTS Defendant's unopposed motion to dismiss Plaintiff Yick's Section 9 and 11 breach of contract claims with prejudice.

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss. Specifically, the Court DENIES Defendant's motion to dismiss the first cause of action for violation of the EFTA as to the "freeze only" Plaintiffs. The Court GRANTS Defendant's motion to dismiss with prejudice as to (1) the second claim for violation of the CCPA based on Plaintiffs' alleged unsecure data collection and storage contained in paragraphs 553(b)-(d); (2) third claim for violation of the CCRA; (3) fifth claim for negligence per se based on violations of the California Information Privacy Act and California Customer Records Act; and (4) Plaintiffs' seventh claim for breach of

contract, including Plaintiff Yick, except for the Section 9 and 11 theories of Plaintiffs Stephanie Smith, Beth Burns and Crystal Horath. Plaintiffs shall file a Second Amended Master Consolidated Complaint to remove causes of actions that have been dismissed with prejudice within 21 days of the Court's order.

## II. Plaintiffs' Motion for Reconsideration

### A. Legal Standard on Motion for Reconsideration

A motion for reconsideration, under Rule 59(e), is "appropriate if the district court (1) is presented with newly discovered evidence; (2) clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993); *see also Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011). The Court has discretion in granting or denying a motion for reconsideration. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991). A motion for reconsideration should not be granted absent highly unusual circumstances. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

### B. Fourth Cause of Action - UCL

Plaintiffs move for reconsideration of the Court's order granting the UCL claim with prejudice arguing the Court committed clear error or the initial decision was manifestly unjust. (Dkt. No. 151-1 at 8-9.) First, they claim they have plead that legal remedies would be inadequate for future irreparable harms seeking prospective injunctive relief. (*Id.* at 6.) Second, Plaintiffs maintain that the Court's prior order overlooked Plaintiffs' "unfair" practices claim for which no legal remedies are available. (*Id.*) Alternatively, Plaintiffs argue that the Court erred by dismissing the UCL with prejudice and without an opportunity to amend in this Court or to re-file in state court. (*Id.*) Defendant responds that the MCC wholly failed to allege that legal remedies are inadequate or any facts to support it. (Dkt. No. 158 at 5.)

On the first argument, the parties agree that the prospective injunctive relief is now moot due to the dissolution of the preliminary injunction in *Yick v. Bank of America*,

Case No. 21cv1092 and the termination of the contract between EDD and BANA.[3] (Dkt. Nos. 255, 270, 271.) Thus, the Court DENIES Plaintiffs' motion for reconsideration of the UCL claim concerning prospective injunctive relief as moot.

### 1. Unfair Prong

#### a. Sufficiency of Allegations

The UCL prohibits "any [1] unlawful, [2] unfair or [3] fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The "unfair" prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). The unfair prong is "intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'" *Id.* (quoting *Am. Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 698 (1935)).

The Ninth Circuit has identified the following three tests that California courts have considered in addressing the "unfair" prong in a consumer case:[4] "(1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the

---

[3] On April 16, 2024, the Court directed the parties to submit supplemental brief on whether the prospective injunctive relief is still viable in light of the order dissolving the preliminary injunction. (Dkt. No. 264.)

[4] California courts are still divided on which "unfair" standard to apply to consumer suits. *See Nazemi v. Specialized Loan Serv., LLC*, 637 F. Supp. 3d 856, 864 (C.D. Cal. Oct. 31, 2022) (citing *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 612 (2014) ("the appellate courts split regarding the definition of 'unfair' business practices in consumer action."); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (internal quotation marks and citations omitted) (proper test for whether an action violates the unfair prong is "currently in flux among California courts."). The Court applies *Doe* because it is the most recent Ninth Circuit opinion on the unfair prong of the UCL concerning consumers. *See Epperson v. Genl Motors, LLC*, -- F. Supp. 3d --, 2023 WL 8628327, at *6 (S.D. Cal. Dec. 13, 2023) (recognizing different approaches adopted by the California courts of appeal as well as the Ninth Circuit and ultimately applying Doe "[g]iven that it is the most recently published Ninth Circuit opinion on the matter").

policy or spirit of an antitrust law,' [the "Tethering test"][5]; (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' [the "Immoral test"]; or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer [the "Balancing test"]." [6] *Doe v. CVS Pharm.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (internal citations omitted).

The MCC[7] alleges the following conduct as "unfair":

> BANA's failure (1) to "maintain, store, share, transmit, or otherwise use Plaintiffs' and Class Members' personal information"; (2) "to issue EDD Debit Cards with EMV chips, despite having for years been aware of the risks associated with magnetic stripe technology and despite knowing the heightened vulnerability of EDD Debit Cardholders and their Accounts and those Cardholders' heightened interest in securely, reliably, and timely accessing their EDD benefits"; (3) "to respond to the rise in demand for EDD benefits caused by or related to the COVID-19 pandemic by issuing chip cards"; (4) "falsely representing to Plaintiffs, Class Members, and EDD that it would provide 'best-in-class' fraud monitoring and that it would remain 'at the forefront of fraud and data security strategies benefiting the EDD and [EDD's] claimants'"; (5) "failing to protect Plaintiffs and Class Members from unauthorized transactions"; (6) "failing to employ reasonable practices and procedures to monitor for, detect, stop, and promptly notify Plaintiffs and Class Members about suspicious transactions involving their Cards and Accounts"; (7) "failing to provide reasonable or adequate customer service assistance to Plaintiffs and other Class Members who complained of fraud, despite representing to them that such assistance would be available '24/7,' and despite the Bank's awareness of rampant third-party fraud on EDD Debit Cards and Accounts"; (8) "establishing 'customer service' procedures designed to frustrate and obstruct efforts by Plaintiffs and Class Members to file their fraud claims"; (9) "failing to adequately

---

[5] The allegations to support the Tethering test of the "unfair" prong may overlap with the "unlawful" prong. Under these circumstances, "courts may effectively collapse the unlawful prong and the unfair prong, as understood by the public policy test, when the violation of a law is shown.'" *Pemberton v. Nationstar Mort. LLC*, 331 F. Supp. 3d 1018, 1050 n.14 (S.D. Cal. June 26, 2018).

[6] While courts have recognized a fourth test from § 45(a) of the Federal Trade Commission Act ("FTC test") which requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided", *Camacho v. Auto. Club of S. Cal.,* 142 Cal. App. 4th 1394, 1403 (2006), Plaintiffs do not allege or rely on the FTC test.

[7] The allegations concerning the "unfair" prong of the UCL in the MCC and FAMCC are the same.

investigate and resolve Plaintiffs' and Class Members' claims of unauthorized transactions in a timely manner despite the Bank's promised 'Zero Liability' policy for unauthorized transactions"; (10) "failing to extend provisional credit to Plaintiffs and Class Members in cases where the Bank was unable to timely investigate and resolve fraud claims"; (11) "automatically denying Plaintiffs' and Class Members' claims of unauthorized transactions without investigation, explanation, or reasonable basis, including based solely on the results of a highly unreliable 'fraud filter'"; (12) "rescinding, without explanation or legitimate basis, 'permanent' credits the Bank had previously paid to EDD Debit Cardholders upon determining fraud had occurred in their Account"; (13) "freezing and/or blocking EDD Debit Card Accounts without a reasonable basis for believing that the Cardholders themselves had committed fraud"; (14) "freezing and/or blocking EDD Debit Card Accounts not to protect the Cardholders but to protect the Bank's own interests"; and (15) "failing to provide reasonable or adequate customer service to Plaintiffs and other Class Members seeking assistance in obtaining reimbursement for third-party fraud on their Accounts or in accessing their frozen Accounts, despite the Bank's representation" to the contrary.

(Dkt. No. 77, MCC ¶ 577.) The MCC claims these fifteen acts or failures to act by BANA "offend public policy and constitute immoral, unethical, oppressive and unscrupulous activities that caused substantial injury, including to Plaintiffs and Class Members. The harm caused by Bank of America's conduct outweighs any potential benefits attributable to such conduct." (*Id.* ¶ 578.)

In the underlying motion to dismiss, BANA argued that Plaintiffs failed to sufficiently allege acts that rise to the level of "unfair" under the UCL.[8] (Dkt. No. 84-1 at 46-47.) Plaintiffs responded that BANA's argument impermissibly relies on disputed

---

[8] On reconsideration, the parties did not address the threshold question whether the MCC sufficiently alleged facts to support a claim under the tests for "unfair" prong of the UCL; instead, the parties disputed whether equitable damages were available for similar conduct arising under the "unlawful" and "unfair" prongs. (*See* Dkt. No. 151-1 at 11-14; Dkt. No. 158 at 12-13; Dkt. No. 161 at 11.) Because Plaintiffs are granted leave to amend, the Court need not consider these arguments.

assertions outside the MCC and they alleged "unfair" practices under the balancing test and the *Cel-Tech* tethering test. (Dkt. No. 90 at 55.)

Despite Plaintiffs' argument that they allege both the balancing test and *Cel-Tech's* tethering test, the MCC appears to allege the pre-*Cel-Tech*[9] tests which the Ninth Circuit, in *Doe*, has referred to as the Immoral and Balancing test. In *Morgan*, the court of appeal explained the confusion and background on the courts of appeal's use of the varying "unfair" prong tests:

> Before 1999, some Courts of Appeal held that "an 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" [ ]while others held that the determination whether a practice is unfair "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer" [ ]. In 1999, the Supreme Court defined "unfair" in the context of a UCL action by one competitor against a direct competitor, stating that "any finding of unfairness to competitors under [the UCL must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." [*Cel–Tech*, 20 Cal. 4th at 186-87] But the Supreme Court also made clear that its discussion about "unfair" practices was limited to actions by competitors alleging anticompetitive practices, and did not relate to actions by consumers. [*Id.* at 187, fn. 12] Nevertheless, some courts of appeal have applied the *Cel–Tech* definition of "unfair" to consumer actions [ ], while others (including this court) have applied the old definitions [ ].

*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) (internal citations omitted).

Because Plaintiffs may be seeking to rely on the three tests articulated in *Doe*, the Court now considers them.[10] In reviewing the allegations in the MCC, the Court

---

[9] *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

[10] BANA's argument addressed the merits of the "unfair" acts, which are not proper on a motion to dismiss, and did not address whether Plaintiffs had stated a claim under any of the tests Plaintiffs relied on. However, before addressing whether legal remedies are inadequate, the Court must first address whether a claim has been sufficiently alleged.

concludes that Plaintiffs have failed to sufficiently allege facts to support any of the three tests to support the "unfair" prong of the UCL. As to the Tethering "consumer" test, Plaintiffs have not tethered each fifteen challenged conduct to an "'underlying constitutional, statutory or regulatory provision' and the public policy of each provision."[11] *See Doe,* 982 F.3d at 1214–15 ("Applying the tethering test, Does do not mention the public policy allegedly violated . . . nor do they explain how, the Program violated that policy."). Similarly, as to the Balancing test, a summary assertion of "harm . . . outweighs any potential benefits attributable to such conduct" without any supporting facts is not sufficient to state a claim. *See id*. at 1215 ("as to the balancing test, Does assert in a conclusory fashion that CVS's conduct "'outweighs any justification, motive or reason therefor,' but they do not allege how that is so."). Finally, as to the Immoral test, the MCC is void of any facts to support that test. By merely listing fifteen acts or failures to act by BANA without any facts to support any of the three unfair prong tests, Plaintiffs have not plausibly stated a claim. *See Nazemi v. Specialized Loan Serv., LLC*, 637 F. Supp. 3d 856, 864 (C.D. Cal. Oct. 31, 2022) (the failure to plead these issue leaves the Court "to guess what conduct Plaintiff[ ] alleged satisfied the 'unfair' prong of the UCL."). Because leave to amend would not be futile, the Court concludes that it clearly erred in dismissing the UCL claim with prejudice because "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *See DeSoto*, 957 F.2d at 658. Thus, the Court GRANTS Plaintiffs' motion for reconsideration dismissing the UCL claims with prejudice. Plaintiffs are granted leave to amend to file a second amended master consolidated complaint to cure the deficiencies on the "unfair" prong of the UCL.

---

[11] In their motion, Plaintiffs summarily contend that they demonstrated that the unfair conduct "undermined the legislative declared public policy of various laws" such as the EFTA, but these allegations are not in the MCC. (Dkt. No. 151-1 at 14 n.2).

### b. Allegation of Inadequate Legal Remedies

Under the UCL, a plaintiff may only seek the equitable relief of restitution and/or an injunction. *Korea Supply Co.,* 29 Cal. 4th at 1144 ("Through the UCL a plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices."). The Ninth Circuit has held that plaintiffs seeking equitable relief under the UCL must establish that they lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL . . . .").

In the Court's prior order, it dismissed the UCL claim because Plaintiffs did not allege an inadequate remedy at law in the MCC.[12] The FAMCC now alleges an inadequate remedy at law but only addresses injunctive relief, not restitution. (Dkt. No. 136, FAMCC ¶ 285 (only addressing injunctive relief, not restitution).) Because injunctive relief is now moot, FAMCC fails to allege an inadequate remedy at law. Accordingly, Plaintiffs are granted leave to amend the FAMCC to allege an inadequate remedy at law as it concerns restitution.

### Conclusion

Based on the above, the Court GRANTS Plaintiffs' motion for reconsideration. Plaintiffs shall file a second amended master consolidated complaint within 21 days of the Court's order.

IT IS SO ORDERED.

Dated: June 25, 2024

Hon. Gonzalo P. Curiel
United States District Judge

---

[12] In their motion, Plaintiffs acknowledge that they did not allege an inadequate remedy at law in the MCC. (Dkt. No. 151-1 at 7 ("Although the MCC did not contain a boilerplate allegation that legal remedies are inadequate . . . .").