UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION, | Case No.: 21MD2992-GPC(MSB)<br><br>**ORDER SUSTAINING PLAINTIFFS' OBJECTIONS AND GRANTING PLAINTIFFS' MOTION TO REVERSE IN PART MAGISTRATE JUDGE'S APRIL 24, 2024 DISCOVERY ORDER**<br><br>[Dkt. No. 278.] |

Before the Court is Plaintiffs' objections to and motion to reverse in part Magistrate Judge's April 24, 2024 discovery order denying their request for production of documents ("RFP") nos. 76-79 seeking electronically stored information ("ESI") of bank executives Brian Moynihan and Thomas Montag, or alternatively, remand to Magistrate Judge Berg to reconsider his ruling under the correct Rule 26 legal standard. (Dkt. No. 278.) Defendant filed an opposition. (Dkt. No. 287.) Plaintiffs filed a reply. (Dkt. No. 292.) Based on the reasoning below, the Court SUSTAINS Plaintiffs' objections and GRANTS Plaintiffs' motion to reverse, in part, Magistrate Judge's April 24, 2024 discovery order.

/ / /

**Background**

This multidistrict litigation ("MDL") arises from numerous class and individual actions brought against Defendant Bank of America, N.A. ("BANA") over its administration of the electronic benefits payment system for California's Employment Development Department ("EDD") during the COVID-19 pandemic. EDD, the administrator of unemployment benefits in California, entered into an exclusive contract with BANA, to distribute those benefits through Bank-issued and Bank-administered prepaid debit cards which are linked to individual Bank depository accounts. (Dkt. No. 136, First Amended Master Consolidated Complaint ("FAMCC") ¶¶ 1, 2, 39.) The relevant contract at issue was in effect from August 1, 2016 through July 31, 2021. (*Id.* ¶ 42.)

Plaintiffs, like other millions of Californians, lost their jobs during the COVID-19 pandemic and were found eligible by EDD for unemployment and other public benefits. (*Id.* ¶ 1.) The state's unemployment rate skyrocketed from 3.9% in January 2020 to 16.4% in April 2020 following Governor Gavin Newsom's closure orders. (*Id.* ¶ 74.) Since the start of the COVID-19 pandemic in March 2020, EDD received at least 18.5 million claims for various unemployment benefits. (*Id.* ¶ 75.) For example, in the first week of December 2000, EDD received 341,813 claims which was a 600% increase from December 2019. (*Id.*) In turn, BANA issued more than 9 million EDD debit cards to individuals found eligible for unemployment benefits. (*Id.*) Per the exclusive contract between EDD and BANA, the BANA issued benefit payments through Bank-issued and Bank-administered prepaid debit cards. (*Id.* ¶ 2.) These pre-paid debit cards were subject to rampant third-party fraud during the COVID-19 pandemic and tens of millions of dollars have been stolen from these bank accounts. (*Id.* ¶¶ 76-78.) Relevant to the discovery dispute, Plaintiffs allege, among other things, that BANA used a highly flawed Claim Fraud Filter ("CFF") to automatically deny error claims by EDD debit cardholders, or to freeze or block EDD prepaid accounts without adequate investigation. (*Id.* ¶¶ 89-96.)

At issue are the following requests for production of documents ("RFP"):

REQUEST FOR PRODUCTION NO. 76.
ALL DOCUMENTS, including but not limited to COMMUNICATIONS, RELATING TO EDD, EDD BENEFITS, EDD DEBIT CARDS, EDD DEBIT CARD ACCOUNTS, EDD DEBIT CARDHOLDERS, TRANSACTIONAL FRAUD, or the CLAIM FRAUD FILTER that were exchanged between YOU and any member of YOUR Board of Directors or among any Board of Director members during the RELEVANT PERIOD.

REQUEST FOR PRODUCTION NO. 77.
ALL DOCUMENTS, including but not limited to COMMUNICATIONS, RELATING TO EDD, EDD BENEFITS, EDD DEBIT CARDS, EDD DEBIT CARD ACCOUNTS, EDD DEBIT CARDHOLDERS, TRANSACTIONAL FRAUD, or the CLAIM FRAUD FILTER exchanged with or among any of YOUR EXECUTIVE OFFICERS during the RELEVANT PERIOD including but not limited to EXECUTIVE OFFICERS Brian T. Moynihan, Alastair Borthwick, Geoffrey S. Greener, Lauren Mogensen, Dean C. Athanasia, Paul M. Donofrio, Thomas K. Montag and Thomas M. Scrivener.

REQUEST FOR PRODUCTION NO. 78.
ALL DOCUMENTS, including but not limited to COMMUNICATIONS, RELATING TO any CARDHOLDER CLAIMS, or the FREEZING or BLOCKING or UNFREEZING or UNBLOCKING of EDD DEBIT CARDHOLDER ACCOUNTS that were exchanged between YOU and any member of YOUR Board of Directors or among any Board of Director members during the RELEVANT PERIOD.

REQUEST FOR PRODUCTION NO. No. 79.
ALL DOCUMENTS, including but not limited to COMMUNICATIONS, RELATING TO any CARDHOLDER CLAIMS, or the FREEZING or BLOCKING or UNFREEZING or UNBLOCKING of EDD DEBIT CARDHOLDER ACCOUNTS exchanged with or among any of YOUR EXECUTIVE OFFICERS during the RELEVANT PERIOD including but not limited to EXECUTIVE OFFICERS Brian T. Moynihan, Alastair Borthwick, Geoffrey S. Greener, Lauren Mogensen, Dean C. Athanasia, Paul M. Donofrio, Thomas K. Montag and Thomas M. Scrivener.

(Dkt. No. 212-23, Chan Decl., Ex. 21 at 3-8.[1]) These RFPs seek electronic communications and documents exchanged between Brian Moynihan ("Moynihan"), Chief Executive Officer ("CEO"), and Thomas Montag ("Montag"), Chief Operating Officer ("COO"), and President of Global Banking and Markets ("GBAM") until December 2021, and the Board of Directors or Executive Officers regarding issues concerning all aspects of the Claim Fraud Filter implemented from September 28, 2020 until June 1, 2021 when the preliminary injunction in the consolidated *Yick v. Bank of America, N.A.*, No. 3:21-cv-376, in the United States District Court for the Northern District of California was imposed.

**A.     Magistrate Judge's Discovery Order of April 24, 2024**

After meeting and conferring concerning ESI custodians, and working with the Magistrate Judge, the parties agreed that BANA would review and produce ESI from 20 custodians. (Dkt. No. 279, Chan Suppl. Decl. ¶ 18; Dkt. No. 209-1, McGarry Decl. ¶ 4.) The 20 custodians "spanned 9 functional groups within BANA, and included the key decision makers on each of Plaintiffs' allegations, including the fraud filter and its use to decision error claims and freeze and/or block accounts . . . ." (Dkt. No. 209-1 McGarry Decl. ¶ 4.) The parties continued to dispute the production of executive-level ESI custodians sought by Plaintiffs.

On January 23, 2024, Plaintiffs filed a motion to compel additional ESI custodians while Defendant filed a motion to preclude additional ESI discovery. (Dkt. Nos. 212, 209.) After the motions were fully briefed, on April 24, 2024, Magistrate Judge Berg granted Plaintiffs' request for ESI discovery from executives Catherine Bessant, Chief Operations and Technology Officer until 2021; Dean Athanasia, President of Regional Banking of Bank of America; and Christine Channels, Head of Client Services and Credit Assistance, and denied Plaintiffs' request for ESI discovery from Moynihan and Montag

---

[1] Page numbers are based on the CM/ECF pagination.

as well as from non-executives Jennifer Boussuge, Renee Johnson, and Rocco Blasi. (Dkt. No. 268.)

As to Moynihan and Montag, the Magistrate Judge concluded that Plaintiffs had not shown that they possess "**uniquely** relevant information that **is not available from the sources already designated**." (Dkt. No. 268 at 8 (emphasis in original); *id.* at 9.)

On May 8, 2024, Plaintiffs filed Objections to the Magistrate Judge's order and motion to reverse in part the April 24, 2023 discovery order as it concerned the denial of ESI discovery from Brian Moynihan and Thomas Montag in response to RFP Nos. 76-79. (Dkt. No. 278.) In support, Plaintiffs filed supplemental exhibits that were not reviewed by the Magistrate Judge.[2] The Court exercises its discretion and considers them. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) ("we conclude that a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation.").

## Discussion

**A.     Standard of Review of Magistrate Judge's Discovery Order**

Under Federal Rule of Civil Procedure ("Rule") 72(a), aggrieved parties may file objections to the rulings of a magistrate judge in non dispositive matters within fourteen days. Fed. R. Civ. P. 72(a). In reviewing a magistrate judge's order, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002). A magistrate judge's legal conclusions are reviewable *de novo* to determine whether they are "contrary to law" and findings of fact are subject to the "clearly erroneous" standard. *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). "A Magistrate Judge's decision is 'contrary to law' if it applies an incorrect

---

[2] The Magistrate Judge denied Plaintiffs' request to provide additional briefing after the briefing had been closed for three weeks. (Dkt. No. 279-15, Chan Decl., Ex. 37.)

legal standard, fails to consider an element of [the] applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Martin v. Loadholt*, No. 10-00156, 2014 WL 3563312, at *1 (E.D. Cal. July 18, 2014) (citation omitted). "[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993).

### B. Legal Standard on Motion to Compel

A party may "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Specifically, "[a] party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). Rule 34 provides that a party may serve on any other party a request to produce documents or electronically stored information within the party's possession, custody, or control that is otherwise within the scope of Rule 26. Fed. R. Civ. P. 34(a)(1)(A). In turn, Rule 26 permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The court considers proportionality based on the following factors: (1) "importance of the issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Relevance under Rule 26(b)(1) is still defined broadly even after the 2015 amendments to Rule 26. *Medimpact Healthcare Systems, Inc. v. IQVIA Inc.*, Case No.: 19-cv-1865-GPC (DEB) 2021 WL 5605281, at *1 (S.D. Cal. July 15, 2021) (citations omitted). Further, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Rule 26(b) also requires a district court to "limit the frequency or extent of discovery" if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). "Court must consider both relevance and proportionality in determining whether the scope of discovery that a party seeks is appropriate." *BlackBerry Limited v. Facebook, Inc.*, Case No. CV 18-1844-GW (KSx) 2019 WL 4544425, at *6 (C.D. Cal. Aug. 19, 2019). The party resisting discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Weinstein v. Katapult Grp.*, Inc., No. 21-CV-05175-PJH, 2022 WL 4548798, at *1 (N.D. Cal. Sept. 29, 2022) (internal quotation marks omitted); *Doutherd v. Montesdeoca*, No. 2:17-cv-2225-MCE-EFB, 2018 WL 3008867, at *2 (E.D. Cal. June 15, 2018).

On a motion to compel, the moving party bears the burden of demonstrating relevance, proportionality and other Rule 26 requirements. *Shared P'ship v. Meta Platforms, Inc.*, Case No. 22-cv-02366-RS (RMI), 2023 WL 2526645, at *3 (N.D. Cal. Mar. 14, 2023) (citing *Rodriguez v. Barrita*, Inc., No. 09-04057 RS-PSG, 2011 WL 5854397 at *2 (N.D. Cal. Nov. 21, 2011)); *Rahod v. Providence Health & Servs.*, Case No. 2:20-cv-00064-RSL, 2021 WL 5182362, at *1 (W.D. Wash. June 21, 2021) (threshold requirements of Rule 26(b) include relevance and proportionality); *Centeno v. City of Fresno*, Case No. 1:16-cv-00653-DAD-SAB, 2016 WL 7491634, at *4 (E.D. Cal. Dec. 29, 2016) ("Under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case.").

"Discovery of ESI—especially in cases where the parties anticipate a large amount of ESI to be searched, reviewed, and produced—makes proportionality considerations particularly significant." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018). In considering a motion to compel additional ESI custodians for high level executives, district courts have placed the burden on the plaintiffs to show whether those executives are likely to possess unique, relevant information concerning issues central to the plaintiffs' allegations. *See In re Facebook, Inc. Consumer Privacy*

*User Profile Litig.,* Case No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213, at *1 (N.D. Cal. Nov. 14, 2021) (party seeking to "compel the designation of additional custodians requires a showing that the disputed custodians possess uniquely relevant information that is not available from the sources already designated.") (citing *Handloser v. HCL America, Inc*., No. 19-cv-01242-LHK (VKD), 2020 WL 7405686, at *2 (N.D. Cal. December 17, 2020) (refusing to order designation of additional custodians where plaintiffs failed to show why they "expect to discover information from these custodians that differs from discovery they have already obtained from the others")); *see also In re EpiPen Mktg., Sales Pracs. and Antitrust Litig.* No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) ("party moving to compel additional proposed custodians 'must demonstrate that the additional requested custodians would provide unique relevant information not already obtained'") (quoting *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co*., 297 F.R.D. 99, 107 (S.D.N.Y. 2013)).  In *Facebook*, the Discovery Special Master explained this standard "flowed from the prescriptions in Rule 26 that discovery must be proportional to the needs of the case and that 'the frequency or extent of discovery' must be limited if it is "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'"  *In re Facebook, Inc. Consumer Privacy User Profile Litig.,* 2021 WL 10282213, at *1 n.1.

**C.    Analysis**

In the Objections, Plaintiffs contend that the Magistrate Judge applied the wrong legal standard by applying the "apex doctrine" that governs deposition of high-level executives rather than the Rule 26(b) relevance analysis in denying their ESI discovery. (Dkt. No. 278-1 at 10.)  Plaintiffs argue that the ESI of Moynihan and Montag's are relevant to demonstrate their knowledge, motive and intent in adopting the challenged policies, including the implementation of the CFF, to support a showing of punitive

damages under state and federal law.³ (Dkt. No. 278-1 at 8; *see also* Dkt. No. 212 at 5 (Ps' Opening Brief).) They argue that Moynihan, as CEO of BANA, and Thomas Montag, former COO and President of GBAM, the division responsible for the EDD debit card program and creating the CFF policy that is being challenged, were key decision-makers "who determined priorities, gave directives, approved major decision about the Bank's management of its EDD debit card program." (Dkt. No. 278-1 at 8-9.) Further, they contend that the Court did not conduct a proportionality analysis under Rule 26(b)(1).

In response, Defendant maintains the Magistrate Judge applied the correct legal standard by placing the burden on Plaintiffs to not only satisfy relevance but also proportionality. (Dkt. No. 287 at 19-20.) BANA contends that the documents in support of Plaintiffs' motion demonstrate Moynihan and Montag's superficial involvement in the issues in the case as they were merely briefed by others regarding the CFF, including by custodians whose ESI Plaintiffs already have. (*Id.*) It asserts that compelling Moynihan and Montag's ESI would be duplicative and burdensome because Plaintiffs have or will receive discovery from 23 custodians, many who were actually involved in the decision and actions that give rise to the litigation, and it has already produced 275,000 documents and expended more than $7 million in vendor costs alone. (*Id.*)

The discovery order concluded that Moynihan and Montag may possess relevant information. (Dkt. No. 268 at 8-9.) However, because Plaintiffs had not shown that

---

³ Plaintiffs also argue that the ESI of Moynihan and Montag are relevant to support treble damages under the Electronic Funds Transfer Act, 15 U.S.C. § 1693f(e) ("EFTA"). (Dkt. No. 136, FAMCC ¶¶ 537-38, 545(e).) Yet, they do not articulate or provide support that treble damages require the knowing and willful conduct by top executives. *See* 15 U.S.C. § 1693f(e)(1) & (2) (consumer is entitled to treble damages where "(1) the financial institution did not provisionally recredit a consumer's account within the ten-day period . . . and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error;" or where "(2) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation"). Therefore, Plaintiffs have not shown that the ESIs of Moynihan and Montag would be relevant to treble damages.

Moynihan and Montag possessed "**uniquely** relevant information that is **not available from the sources already designated**, (*id.* at 8 (emphasis in original); *id.* at 9), the Magistrate Judge denied Plaintiffs' motion to compel.

In his findings, the Magistrate Judge necessarily concluded that Plaintiffs failed to meet their initial burden demonstrating proportionality by concluding that they did not demonstrate they possessed relevant information that is not available from existing sources. Therefore, the Court concludes that the Magistrate Judge applied the correct legal standard by placing the initial burden on Plaintiffs to show proportionality on the threshold inquiry under Rule 26. *See Vietnam Veterans of America v. C.I.A.*, No. 09–cv–0037 CW (JSC), 2011 WL 4635139, at *3 (N.D. Cal. Oct. 5, 2011) ("Under the principle of proportionality in discovery, the Court must limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.")

However, the Court finds that the Magistrate Judge clearly erred in concluding that Plaintiffs had not shown that Moynihan and Montag possess "uniquely relevant information that is not available from the sources already designated" as it concerned punitive damages.

The FAMCC seeks punitive damages. (Dkt. No. 136, FAMCC, Prayer ¶¶ 3-4.) Plaintiffs claims to seek punitive damages as it relates to BANA's alleged violations of due process, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. (Dkt. No. 278 at 14.)

Punitive damages may be awarded under federal and state law. First, "[i]t is well-established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). Under federal law, a showing of malice or intent is not required and a defendant may be liable for punitive damages if it "knew of or ratified" the challenged conduct. *See Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086,

1100 (7th Cir. 1992). Second, under California law, plaintiffs are entitled to punitive damages where they can show by "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).[4] When the defendant is a corporation, the oppression, fraud, or malice must be perpetrated, authorized, or knowingly ratified by an officer, director, or managing agent of the corporation. Cal. Civ. Code § 3294(b). At trial, Plaintiffs will need evidence of motive, intent, or knowledge and ratification by an officer, director or managing agent to support an award of punitive damages.

According to Plaintiffs, they seek discovery on the Bank's motives and reasons for "(a) developing its Claim Fraud Filter; (b) using its CFF as the basis for automatically denying EDD debit cardholders' unauthorized-transaction claims, rescinding their previously issued permanent credits, and freezing their accounts; (c) adopting a policy and practice of understaffing its EDD debit card customer service call centers, such that cardholders were subjected to hours-long wait times; and (d) maintaining these policies even after the Bank knew they were harming large numbers of legitimate cardholders." (Dkt. No. 278-1 at 15-16.) Therefore, important for punitive damages is what Moynihan and Montag "knew about the CFF, its impact on legitimate EDD cardholders, when they knew it, what action they directed, authorized, or ratified, and why." (Dkt. No. 278-1 at 15-16.)

The Court agrees with Plaintiffs that ESI from Moynihan and Montag concerning punitive damages can only be obtained by them, and not from sources already designated.

As to the burden and costs, Plaintiffs argue that their requests are narrowly tailored and limited to documents exchanged between and among executives and/or board

---

[4] "An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294.

members, and not held by existing custodians.  BANA acknowledges that the burden to review and produce ESIs relevant to RFP Nos. 76-79 would not be burdensome.  While BANA asserts that it produced 275,000 documents to date based on the parties' prior agreement, hired 400 contract reviewers and expended $7.150 million in processing, hosting review, redaction, production and privilege log costs, (Dkt. No. 287-2, Anderson Decl. ¶¶ 4, 5), and is currently reviewing and producing ESI from the three senior executive custodians allowed by the Magistrate Judge's Order with an estimated cost of $150,000 and $210,000, (*id.* ¶¶ 6, 11), the estimated costs associated with ESI from Moynihan and Montag will be between $135,000 and $170,000.  (*Id.* ¶ 12.)  Defendant also anticipates a smaller review population than prior custodians due to de-duplication and few documents identified by search terms.  (*Id.* ¶ 10; Dkt. No. 287-1, Briggs Decl. ¶ 9.)  Accordingly, the Court SUSTAINS Plaintiffs' Objections and GRANTS Plaintiffs' motion to reverse the Magistrate Judge's order.

## Conclusion

Based on the reasoning above, the Court SUSTAINS Plaintiffs' Objections and GRANTS Plaintiffs' motion to reverse the Magistrate Judge's discovery order denying Plaintiffs' motion to compel additional ESI custodians of Brian Moynihan, CEO and Thomas Montag, former COO.  The hearing set on July 19, 2024 shall be **vacated**.

IT IS SO ORDERED.

Dated:  June 25, 2024

Hon. Gonzalo P. Curiel
United States District Judge