UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION, | Case No.: 21MD2992-GPC(MSB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEAL DOCUMENTS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND GRANTING MOTION TO FILE CORRECTED DOCUMENTS UNDER SEAL**<br><br>[Dkt. Nos. 322, 328, 334 337.] |

Before the Court is Defendant Bank of America N.A.'s ("BANA" or "Defendant") motion to seal documents it produced under the designations "Confidential" and "Highly Confidential—Attorneys' Eyes Only" pursuant to section 12.6 of the parties' stipulated protective order, Dkt. No. 82 ("Protective Order"), and S.D. Local Rule 79.2.[1]  (Dkt. No.

---

[1] The motion arose in a unique procedural posture.  When Class Plaintiffs filed their motion for class certification, they filed a motion to seal documents in support but dispute sealing them based on BANA's confidentiality designations because there are no "compelling reasons" to file the documents under seal.  (Dkt. Nos. 322, 324, 334.)  In response, Defendant filed the instant motion to file the documents filed in support of class certification under seal.  (Dkt. No. 328.)  Due to the voluminous

1

328.) Relying on Plaintiffs' position that none of the exhibits should be filed under seal, Defendant moves to seal portions of the notice of motion, motion for class certification, portions of the Connie K. Chan declaration and Exhibits 1-4, 14-20, 24-51, 54-60[2], 62[3], 64-69, 74-102, 104-11, 113-30[4], 132-48, 150 and 153-156.[5] (*See* Dkt. Nos. 322, 328.) On September 19, 2024, Class Plaintiffs ("Plaintiffs") filed an opposition to Defendant's motions to seal, and on October 3, 2024, BANA filed a reply to its motion to seal. (Dkt. Nos. 341, 344.) On October 30, 2024, BANA filed the regulatory letters under seal pursuant to the Court's order. (Dkt. No. 354, 355.)

On September 13, 2024, Plaintiffs filed a corrected[6] index of exhibits to the Declaration of Connie K. Chan in support of the motion for class certification as well as a motion to file under seal Exhibits 14-16, and 107.[7] (Dkt. Nos. 334, 336.) In response, on September 17, 2024, Defendant filed a motion to file under seal Exhibits 14-16, 107 of the corrected documents. (Dkt. No. 337.)

Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to seal documents in support of Plaintiffs' motion for class certification.

///

---

nature of the documents and for efficiency reasons, these issues should have been raised and addressed prior to the filing of the motion for class certification.
[2] Class Plaintiffs agree that Exhibit 60 should be filed under seal. (Dkt. No. 341 at 20 n. 9.)
[3] Exhibit 62 has been de-designated by Plaintiffs. (Dkt. No. 336-1 at 6.)
[4] BANA agrees that Exhibits 76, 115 can be filed publicly and not sealed, (Dkt. No. 328 at 4 n.3).
[5] Defendant also seeks to file under seal Exhibit 152. (Dkt. No. 328 at 5.)
[6] The Court notes that there are no provisions to file a "corrected" document; instead, Plaintiffs should have filed an amended index of exhibits.
[7] On August 29, 2024 and again on September 13, 2024, Plaintiffs assert they "have initiated the meet and confer process for challenging the Bank's designations under the Protective Order, but because that process has not yet been completed, Plaintiffs are filing the sealing motions in accordance with the Protective Order and the Local Rules." (Dkt. Nos. 322, 334.) However, neither party has provided any updates or resolution as to any of these contested exhibits. Based on the briefing, it is evident that a meaningful meet and confer has not occurred as there are compelling reasons that certain documents should be filed under seal.

## Background

This multidistrict litigation ("MDL") arises from numerous class and individual actions brought against BANA over its administration of the electronic benefits payment system for California's Employment Development Department ("EDD") during the COVID-19 pandemic. EDD, the administrator of unemployment benefits in California, entered into an exclusive contract with BANA, to distribute those benefits through Bank-issued and Bank-administered prepaid debit cards which were linked to individual Bank depository accounts. (Dkt. No. 304, Second Amended Master Consolidated Complaint ("SAMCC") ¶¶ 1, 2, 39.) The relevant contract at issue was in effect from August 1, 2016 through July 31, 2021. (*Id.* ¶ 42.)

Plaintiffs, like other millions of Californians, lost their jobs during the COVID-19 pandemic and were found eligible by EDD for unemployment and other public benefits. (*Id.* ¶ 1.) The state's unemployment rate skyrocketed from 3.9% in January 2020 to 16.4% in April 2020 following Governor Gavin Newsom's closure orders. (*Id.* ¶ 74.) Since the start of the COVID-19 pandemic in March 2020, EDD received at least 18.5 million claims for various unemployment benefits. (*Id.* ¶ 75.) For example, in the first week of December 2000, EDD received 341,813 claims which was a 600% increase from December 2019. (*Id.*) In turn, BANA issued more than 9 million EDD debit cards to individuals found eligible for unemployment benefits. (*Id.*) Per the exclusive contract between EDD and BANA, the BANA issued benefit payments through Bank-issued and Bank-administered prepaid debit cards. (*Id.* ¶ 2.) These pre-paid debit cards were subject to rampant third-party fraud during the COVID-19 pandemic and tens of millions of dollars have been stolen from these bank accounts. (*Id.* ¶¶ 76-78.)

Plaintiffs allege that BANA used a highly flawed Claim Fraud Filter ("CFF") to automatically deny error claims by EDD debit cardholders, or to freeze or block EDD prepaid accounts without adequate investigation. (*Id.* ¶¶ 89-96.) They allege that during this time when many cardholders' accounts were frozen or blocked, BANA failed to adequately staff its customer-service and fraud-investigation departments forcing EDD

cardholders to be on hold for an inordinate amount of time which it knew or reasonably should have known would frustrate and obstruct cardholders from pursuing their rights. (*Id.* ¶¶ 97-105.)  In addition, Plaintiffs complain that BANA issued outdated and vulnerable "magnetic-stripe" only debit cards rather than the industry standard EMV chip cards that it had been issuing to its customer and business account customers since 2014). (*Id.* ¶¶ 59-69.)

## Discussion

### A.    Legal Standard

Courts historically have recognized a presumptive right of public access "to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  This right is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice."  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016).

A party seeking to seal a judicial record bears the burden of overcoming this strong presumption of access.[8]  *Foltz v. State Farm Mut. Auto Ins. Co*., 331 F.3d 1122, 1135 (9th Cir. 2003).  The showing required to overcome this burden depends on whether the documents at issue relate to a motion that is "more than tangentially related to the merits of the case."  *Ctr. for Auto Safety*, 809 F.3d at 1101.  If it is, then the more rigorous "compelling reasons" standard applies; if it does not, then the more relaxed "good cause" standard applies.  *Id*. at 1096-98.

---

[8] The Court notes that Defendant did not provide any evidence to support its motion to seal until it filed its reply when it should have filed them in its moving papers. While it is Defendant's burden to demonstrate compelling reasons, the Court recognizes that district courts have also not been consistent in requiring evidence in support of motions to seal for dispositive motions especially when the motions to seal are not disputed.  Therefore, the Court considers the evidence provided in Defendant's reply especially in light of the fact that many documents contain highly sensitive, and confidential materials that should not be disclosed.

1  In this Circuit, several courts, including this one, have found that class certification
2  motions more than tangentially relate to the merits of the case, and have accordingly
3  applied the "compelling reasons" standard.  *See, e.g., Cohen v. Trump*, 13-cv-2519-GPC-
4  WVG, 2016 WL 3036302 (S.D. Cal. May 27, 2016); *Nia v. Bank of America, N.A.*, Case
5  No. 21-cv-1799-BAS-BGS, 2024 WL 171659, at *2 (S.D. Cal. Jan. 12, 2024);
6  *McMorrow v. Mondelez Int'l, Inc.*, 17-cv-2327-BAS-JLB, 2021 WL 488337, at *2 (S.D.
7  Cal. Feb. 10, 2021); *Krommenhock v. Post Foods, LLC,* 334 F.R.D. 552, 586 (N.D. Cal.
8  2020).

9  Because Defendant's motion to seal concerns documents related to a class
10 certification motion, the Court will apply the compelling reasons standard.

11 Under the "compelling reasons" test, parties seeking to seal judicial records must
12 show "compelling reasons supported by specific factual findings" that outweigh the
13 general history of access and the public policies favoring disclosure.  *Kamakana*, 447
14 F.3d at 1178-79 (internal citations omitted).  This "compelling reasons" test requires
15 more than just a showing of "good cause," and it applies even if the motion attachments
16 were previously filed under seal pursuant to a protective order.  *Id*. at 1179.

17 A court should seal "sources of business information that might harm a litigant's
18 competitive standing." *Nixon*, 435 U.S. at 598.  However, "[t]he mere fact that the
19 production of records may lead to a litigant's embarrassment, incrimination, or exposure
20 to further litigation will not, without more, compel the court to seal its records."
21 *Kamakana*, 447 F.3d at 1179 (citation omitted).  Similarly, it is not enough to "mention[ ]
22 a general category of privilege, without any further elaboration or any specific linkage
23 with the documents." *Id.* at 1184.  Courts will also not seal proposed redactions when
24 they are "either already publicly available or were available in other documents being
25 produced." *Id.*  Courts will, however, seal "sensitive personal information." *Id.*

26 The Court has broad discretion when ruling on a motion to seal. *Nixon*, 435 U.S.
27 at 599 ("the decision as to access is one best left to the sound discretion of the trial
28 court").

**B.   Risk of Future Fraud**

Defendant moves to seal documents concerning all fraud detection and prevention policies and strategies, **Exhibits 27, 38, 44, 48, 49, 50, 56, 57, 59, 64, 65, 67, 81, 88, 91-92, 94-101, 106, 113-114, 141-143, 145, 153 and 156**; claims review policies and strategies and their implementation, **Exhibits 35-36, 47, 77, 79, 80, 82-87, 93, 96, 102, 104, 116-118, 141-143 and 156**; any analyses of transactional fraud (including card skimming and potential fraud prevention and detection strategies to combat fraud, including EMV chip technology), **Exhibits 27-29, 32-34, 55, 89 and 144**; and any analyses of claims fraud and potential strategies to combat that fraud, including use of the CFF, **Exhibit 42-43, 46, 51, 54, 58, 68, 75, 78, 105 and 106**.  BANA contends that such information could be misused by criminals to perpetuate future fraud by circumventing its security and fraud prevention procedures and cause harm to BANA and its customers. (Dkt. No. 328 at 4-5; 7-8.[9])

Plaintiffs respond that there are no compelling reasons to seal outdated four-year old documents regarding fraud prevention such as using EMV chip cards and the CFF because BANA no longer operates them and no longer contracts with EDD.  (Dkt. No. 341 at 17-18.)  In reply, BANA explains that even though the CFF is no longer in use, the CFF and other fraud strategies involved "various elements" which they may "still use today or in the future as part of or in conjunction with its many strategies and algorithms utilized to prevent fraud across its many products and services."[10]  (Dkt. No. 344 at 6.)

A bank's internal investigative processes and procedures in addressing fraud constitute compelling reasons that support sealing those documents in order to prevent

---

[9] Page numbers are based on the CM/ECF pagination.

[10] BANA's argument that the Court has already found good cause to seal documents in a nondispositive motion regarding the CFF, (*see* Dkt. No. 293) is not persuasive because good cause and compelling reasons are distinct standards.  *See Kamakana*, 447 F.3d at 1179 ("The public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials.").  To the extent Magistrate Judge Berg found that there were compelling reasons to seal these documents, it was without analysis and without opposition.  (*See* Dkt. No. 266.)

and combat future fraud. *See Soria v. U.S. Bank N.A.*, Case No.: SACV 17-00603-CJC(KESx), 2019 WL 8167925, at *4 (C.D. Cal. Apr. 25, 2019) (granting motion to seal under compelling reasons standard confidential information about the bank's investigative procedures, including specifically how it internally investigates alleged incidents of fraud because "public disclosure of this information may impede [the bank's] ability to identify and combat future instances of fraud. There is a significant danger that someone could improperly use this information to commit fraud and avoid detection."); *Clark v. InComm Fin. Servs., Inc.*, Case No. EDCV 22-1839 JGB (SHKx), 2024 WL 1600631, at *3 (C.D. Cal. Mar. 13, 2024) (compelling reasons to seal portions of a declaration that included "descriptions of the information and processes required to conduct searches of transactions and users on Defendant's internal systems" because "public disclosure of this information could impede Defendant's ability to combat future fraud."); *Activision Publ'g, Inc. v. EngineOwning UG*, Case No. CV 2:22-cv-00051-MWF (JCx), 2023 WL 2347134, at *1 (C.D. Cal. Feb. 27, 2023) (compelling reasons to seal the plaintiff's anti-cheating efforts and the number of accounts that have been banned using a specific software as disclosure may impede the plaintiff's "ability to identify and combat future fraud"); *Cowan v. G.E. Cap. Retail Bank*, Case No. 13–cv–03935–BLF, 2015 WL 1324848, at *3 (N.D. Cal. Mar. 24, 2015) (granting motion to seal documents that "describe internal procedures for addressing cardholder fraud notifications, as well as risk management and legal compliance in investigating fraud.").

Here, BANA has provided the declarations of BANA executives in Claims Processing and Fraud Operations to support its motion to seal.[11] (Dkt. No. 344-1, Martin Decl. ¶¶ 7-9; Dkt. No. 344-2, Robert Decl. ¶¶ 3-5.) In order to prevent fraud and other criminal activity involving use of its product or business, BANA designs and implements many different strategies at detecting, preventing and deterring fraud using various fraud

---

[11] Defendant filed evidence to support its motion to seal in its reply.  >>>>

1  analytics. (Dkt. No. 344-1, Martin Decl. ¶¶ 3-4.) Some strategies include blocking
2  suspicious transactions, blocking or freezing accounts that appear to be fraudulent. (*Id.* ¶
3  4.) Its fraud strategies are confidential because if criminals learn about the actions that
4  would trigger BANA's anti-fraud strategies, they would attempt to circumvent those
5  protections. (*Id.* ¶ 5.) Even fraud strategies, like the CFF at issue in this case, that are no
6  longer in use, should not be disclosed because certain elements of the CFF may still be in
7  use today or used in the future. (*Id.* ¶ 7.) Further, fraud technologies that are no longer
8  used with one program may still be used in other BANA programs and lines of business.
9  (*Id.* ¶ 8.) If made public, BANA's fraud prevention measures could be used to unravel
10 current or future fraud strategies or aid criminals in avoiding detection or in concocting
11 future frauds. (*Id.*) For another reason, public disclosure of its fraud prevention
12 strategies, in which it has invested substantial resources, could result in competitor's
13 gaining access to and using those strategies to its competitive disadvantage. (*Id.*)

14        BANA explains that even though it no longer issues EMV chip-enabled cards to
15 EDD cardholders, it continues to use EMV chip technology with other products and lines
16 of business; therefore, any internal analyses regarding the types of fraud that EMV chips
17 prevent and do not prevent, and its effectiveness are still relevant and must be kept
18 confidential so criminals do not try to evade the technology and commit future fraud. (*Id.*
19 ¶ 8.) In addition, BANA continues to use the same or similar policies, practices,
20 procedures, or strategies for claims intake, claims review and authentication, such as the
21 Adequate Investigation Standard Operating Procedures ("AISOP"), that were applicable
22 to the EDD program, in its other prepaid consumer, and commercial products and
23 services. (Dkt. No. 344-2, Robart Decl. ¶ 3.) Therefore, if disclosed, BANA's policies,
24 practices and procedures would be less effective and criminals could circumvent its fraud
25 prevention efforts subjecting BANA and its customers to fraud risks. (*Id.* ¶ 4.) Further,
26 other financial institutional would gain access to BANA's policies, procedures and
27 practices at no cost and use it to BANA's competitive disadvantage. (*Id.*)
28

8

21MD2992-GPC(MSB)

Due to the risk of future fraud and ability to combat future fraud, the Court finds that BANA has provided compelling reasons to seal documents concerning its fraud detection and prevention policies and strategies; claims review policies and strategies and their implementation; analyses of transactional fraud; and analyses of claims fraud and potential strategies to combat that fraud including use of the CFF, the Court GRANTS BANA's motion to seal **Exhibits 27-29, 32-36, 38, 42-44, 46-51, 54-59, 64-65, 67-68, 75, 77-89, 91-102, 104-06, 113-114, 116-118, 141-145, 153 and 156.**[12]

Further, BANA seeks to seal **Exhibits 24-26, 31, 45, 69 and 108** concerning its communications with EDD regarding fraud strategies utilized in the EDD program, such as the use of EMV chip technology and the freezing and blocking of accounts because such information could be misused by criminals to perpetrate future fraud and avoid detection. (Dkt. No. 328 at 5, 8.) Plaintiffs argue that BANA's communications with EDD are not sensitive information of fraud strategies but concern BANA's communications with EDD about converting EDD cards to EMV chip cards, internal commentary on the Bank's relationship with EDD and historical information about fraud rates and the benefits of EMV chips that is already in the public domain. (Dkt. No. 341 at 17.) BANA replies that these documents are sensitive information because BANA still operates other prepaid programs and other consumer programs using EMV chip technology so the internal analyses about the costs associated with and types of fraud that EMV chips may or may not prevent could be misused by fraudsters to perpetrate fraud on card with or without EMV chips. (Dkt. No. 344 at 6-7.)

After review of these documents, the Court finds that Exhibits 45 and 69 do not contain confidential or sensitive business information that would lead to risk of fraud and should not be sealed and DENIES BANA's motion to file under seal **Exhibits 45 and 69**. Otherwise, the remaining documents, Exhibits 24-26, 31, and 108 even though they

---

[12] Defendant includes Exhibit 7, (Dkt. No. 328 at 7), but it has not been designated as confidential. (Dkt. No. 336-1 at 2.)

involve general communications with EDD about converting its debit cards to EMV chip cards, it also reveals BANA's confidential business practices on how it negotiates with third parties on whether to implement EMV chip technology. It also includes internal analyses on the types of fraud that EMV chips prevent. The information could also be used by a competitor to BANA's commercial detriment on whether to issue EMV chip cards. (*See* Dkt. No. 344-1, Martin Decl. ¶ 8.)

Because communications about the use of the EMV chip technology and freezing and blocking of accounts could be misused by fraudsters to perpetuate future fraud and to avoid detection, the Court GRANTS BANA's motion to file under seal **Exhibits 24-26, 31, 69 and 108.**

For the same reasons, BANA moves to seal **Exhibits 30, 66, 77, 96, 114,[13] 119-22, 124-25, 133-34, 136-38, 140 and 151** regarding BANA's call center operations and strategies, which include authentication procedures to prevent fraud, trainings on how to handle fraud, business controls and processes and performance assessments, because they could be used by criminals to perpetrate future fraud by circumventing BANA's call center authentication and fraud prevention procedures and should be sealed. (Dkt. No. 328 at 5, 8 & n.6.) BANA continues to use call centers to answer cardholders' calls and to authenticate callers; therefore, details about its call center operations, including different types of call centers it uses, the roles and responsibilities of each call center, and its negotiated contract terms with vendors that operate certain call centers are commercially sensitive information that could be used by another financial institution as well as criminals to circumvent BANA's fraud prevention measures. (Dkt. No. 344-1, Martin Decl. ¶ 10.)

The Court agrees with BANA that documents about the call center and its operations should be filed under seal for compelling reasons because disclosing

---

[13] As discussed above, Exhibits 77, 96 and 114 were also filed under seal as they also pertained to claims review policies, strategies and their implementation and risk of future fraud.

information about call center operations and how they handle fraud claims and how they authenticate callers and their processes would be used to execute fraud against BANA and its customers. Thus, the Court GRANTS BANA's motion to seal **Exhibits 30, 66, 77, 96, 114, 119-22, 124-25, 133-34, 136-38, 140 and 151.**

B.   **Risk of Competitor Advantage**

Defendant moves to seal the exhibits listed above, and more specifically **Exhibits 35-36, 38, 44, 47-50, 56-57, 59, 64-65, 67, 77, 79-88, 91-102, 104, 106, 113-14, 116-18, 141-43, 145, 150, 153 and 156** because they contain confidential, sensitive business information that could also be used to BANA's competitive or commercial disadvantage concerning how BANA structures its claims and fraud teams and its "review procedures protocols and systems used and implemented by those teams." (Dkt. No. 328 at 8-9.) Plaintiffs respond that BANA only provides a "blanket assertion" of competitive harm and has not explained how documents that are four-years old could risk competitive harm especially concerning a program BANA no longer operates. (Dkt. No. 341 at 19-20.) In reply, BANA argues that Plaintiffs take a narrow view of the impact of competitive harm because it operates many other prepaid, consumer and commercial programs and they all use the same or similar policies, procedures or strategies concerning fraud prevention, cardholder authentication and claims review. (Dkt. No. 344 at 7-8.) Therefore, if made public, the information may be used by other financial institutions to BANA's competitive disadvantage. (*Id.*)

"Public disclosure of confidential business information . . . would likely provide competitors insight into the parties' business operations, and courts generally 'refuse[ ] to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing.'" *Capitol Specialty Ins. Corp. v. Geico Gen. Ins. Co.*, CV 20-672-RSWL-Ex, 2021 WL 7708484, at *3 (C.D. Cal. Apr. 14, 2021) (quoting *Nixon*, 435 U.S. at 598); *Ctr. for Auto Safety*, 809 F.3d at 1097 (noting that compelling reasons exist to seal materials that are "sources of business information that might harm a litigant's competitive standing"); *see also Fulton v. Ulta Beauty*, No. 18-CV-00889-AJB-

WVG, 2020 WL 5095494, at *6 (S.D. Cal. Aug. 28, 2020) (finding compelling reasons to file under seal documents containing the defendant's confidential business and financial information); *Baird v. BlackRock Inst. Trust Co.*, *N.A.*, 403 F. Supp. 3d 765, 792 (N.D. Cal. 2019) ("Courts have found that confidential business information' in the form of 'license agreements, financial terms, details of confidential licensing, negotiations, and business strategies satisfies the 'compelling reasons' standard.") (quoting *In re Qualcomm Litig.*, No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017)); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1162 (N.D. Cal. 2021) (noting that documents that can harm a parties' competitive standing include "customer information, internal reports and other such materials").

According to BANA, it has invested substantial resources in its fraud strategies, and public disclose of these strategies would result in a competitive disadvantage against competitor financial institutions. (Dkt. No. 344-1 Martin Decl. ¶ 7.) Its internal analyses concerning what frauds EMV chip-enabled cards prevent and do not prevent, even though they are no longer issued to EDD cardholders could put it at a competitive disadvantage in light of the fact they still use EMV chip-enabled cards to other customers in other products and lines of business. (*Id.* ¶ 8.) If other competitor financial institutions gain access to BANA's information at no cost, it could be used to their advantage and BANA's disadvantage. (Dkt. No. 344-2, Robart Decl. ¶ 5.)

Because these exhibits include confidential, proprietary insight into BANA's business operations, including procedures, protocols, systems and implementation as to its claims and fraud team, the Court GRANTS BANA's motion to seal **Exhibits 35-36, 38, 44, 47-50, 56-57, 59, 64-65, 67, 77, 79-88, 91-102, 104, 106, 113-14, 116-18, 141-43, 145, 153 and 156** due to harm to BANA's competitive advantage.

Defendant also seeks to seal documents reflecting its analyses of its state prepaid unemployment program operations and include contractual negotiations with EDD, contracts with call center vendors, card and fraud volumes, claims and call center operations and operational risks and losses, **Exhibits 93, 96, 109-10, 116, 118-19, 139-**

1    **40, 148 and 154;** fraud and operational losses in connection with the unemployment

2    insurance prepaid programs, **Exhibits 37, 39-41, 90[14], 107, 111, 119, 148, 153 and 155**;

3    as well as BANA's general services agreements and statements of work between BANA

4    and its call center, **Exhibits 123, 126-30, 132, 135 and 152** as they could be used by a

5    competitor financial institution to BANA's competitive disadvantage. (Dkt. No. 328 at 5,

6    9.) Plaintiffs do not directly respond to these documents.

7        The Court concludes that BANA has demonstrated compelling reasons to seal

8    documents concerning internal, proprietary, and confidential business analyses and

9    structures as well as negotiations and agreements with EDD and third party vendors

10   regarding BANA's fraud prevention programs to protect BANA's competitive advantage.

11   Thus, the Court GRANTS Defendant's motion to seal **Exhibits 37, 39-41, 90, 93, 96,**

12   **107, 109-111, 116, 118-19, 123, 126-30, 132, 135, 139-40, 148 and 152-55.**

13       Finally, Defendant seeks to seal **Exhibit 150** revealing its organizational charts and

14   divisions responsible for fraud strategies and prevention because it could be used by

15   competitors to BANA's competitive disadvantage. (Dkt. No. 328 at 6, 9.) Plaintiffs

16   argue that this information can easily be found publicly on the BANA's website. (Dkt.

17   No. 341 at 20 & n.8.) In reply, BANA argues that Exhibit 150 includes more information

18   than the names of BANA's leaders but include 48 pages depicting how BANA structures

19   the groups responsible for highly sensitive claim review and decisioning and its fraud

20   detection and monitoring strategies, and other banking responsibilities. (Dkt. No. 344 at

21   9.)

---

[14] Plaintiffs also dispute sealing Exhibits 39-41, 90, which are short email exchanges in 2020 with only general discussion about the prepaid debit program, and concern a program BANA no longer operates. (Dkt. No. 341 at 19-20.) BANA disagrees with Plaintiffs' characterization of Exhibits 39-41, and 90 as "only general discussions" about its prepaid debit card program, but contend these documents provide specific commercially sensitive information about "estimated prepaid fraud losses, overall expenses of BANA's Global Transaction Services business, and BANA's assessments of contractual responsibility for prepaid benefits eligibility fraud." (Dkt. No. 344 at 8 n. 7.) The Court agrees with BANA that Exhibits 39-41 and 90 contain confidential, internal business communications about estimated fraud losses, and expenses, and related comments, discussions, and opinions.

According to BANA, its organizational structure on how it detects and deters claims fraud and handle claims could be used by fraudsters with insight to avoid detection and commit claim fraud. (Dkt. No. 344-2, Robart Decl. ¶ 5; Dkt. No. 344-1, Martin Decl. ¶ 9.) Further, its organizational structure to combat fraud could be copied by other financial institutions against BANA's competitive stance. (Dkt. No. 344-2, Robart Decl. ¶ 5; Dkt. No. 344-1, Martin Decl. ¶ 9.)

Exhibit 150 does not simply include organizational charts, as Plaintiffs assert, that are on BANA's website, but rather include detailed organizational charts involving a multitude of group and sub-group divisions concerning EDD Prepaid Debt Accounts by year/months for the relevant time period in this litigation, along with a description of each groups' responsibilities and functions. BANA has demonstrated compelling reasons that Exhibit 150 should be filed under seal as confidential, internal business document that could be used both by criminals to avoid detection of fraud and by other financial institutions to BANA's competitive detriment. The Court GRANTS BANA's motion to seal **Exhibit 150**.

### C.     Confidential Regulator Materials

Next, BANA seeks to seal the Remediation Plan and Addenda ("Plans"), **Exhibits 74 and 147,** which were created in response to the 2022 Consent Orders it entered into with the Office of the Comptroller of the Currency ("OCC") and the Consumer Financial Protection Board ("CFPB") as well as **Exhibits 49, 59, 60, 98, and 146** showing implementation of the Plans**.** It explains that the OCC and CFPB designated the Plans and their implementation as "Highly Confidential – Attorneys' Eyes Only. (Dkt. No. 328 at 6, 11; Dkt. No. 344 at 10.) Plaintiffs simply assert that BANA has failed to provide evidence to substantiate its claim that CFPC and OCC are seeking to seal the Plans based on any assertion of confidentiality or bank examination privilege; therefore, the request to seal Exhibits 74 and 147 should be denied. (Dkt. No. 341 at 21.) Further, they argue that the accompanying exhibits contain only anonymized data about the amount of compensation each individual was paid after implementation of the Plans and other

anonymized data amounts of automatically denied claims and rescinded credits pursuant to the CFF, the lengths of time class member accounts were frozen and the number of individuals who have been excluded from receiving payment under the Plans, who are the same individuals excluded from the proposed class definition and should be made public. (*Id.*) In reply, Defendant argues not only have the OCC and CFPB designated the Plans and related documents as "Highly Confidential – Attorneys' Eyes Only" as a condition to BANA producing them to Plaintiffs and contain information that the agencies deemed privileged and confidential under its statutes and regulations, their disclosure could 1) provide criminals with a guide on how to fraudulently seek additional payments under the Plans; 2) criminals could use data in the documents to gain access to confidential formulas in the Plans; and 3) the data contains sensitive personal information about each cardholders' unemployment benefits, and losses each card holder experienced due to the inability to access their EDD benefits. (Dkt. No. 344 at 10.)

In 2021, BANA entered into consent orders with the OCC and CFPB and in response, created the Plans. (Dkt. No. 344-3, Lennon Decl. ¶ 3.) The Plans have been deemed subject to regulatory privileges and designated Highly-Confidential-Attorneys' Eyes Only." (*Id.*) Further, BANA is still implementing the Plans and disclosure of data about its implementation of the Plans could be used by fraudsters as a roadmap for how to seek additional payments under the Plans even though their claims are fraudulent. (*Id.* ¶¶ 3-4.)

According to the OCC and CFPB, when BANA sought their permission to disclose the Plans pursuant to a discovery request, both agencies, at the time, did not invoke the bank examination privilege but instead allowed disclosure as long as they were designated as "Highly Confidential – Attorneys' Eyes Only" and disclosed pursuant to §§ 7.3 and 7.4 of the Stipulated Protective Order. (Dkt. No. 359; Dkt. No. 359-1 (UNDER

SEAL).[15])  However, they did not waive their right to control, or impose limitations on any subsequent use or dissemination of the information.  (*Id.*)

Plaintiffs rely on the "Highly Confidential-Attorneys' Eyes Only" designation of the Plans but a designation of a document under a protective order does not provide compelling reasons to seal it.  *Kamakana,* 447 F.3d at 1183 ("we have held that a non-party's reliance on a blanket protective order is unreasonable and is not a 'compelling reason" that rebuts the presumption of access.'); *see ImprimisRx, LLC v. OSRX, Inc.*, Case No. 21-cv-01305-BAS-DDL, 2023 WL 7029210, at *4 (S.D. Cal. Oct. 24, 2023) ("[M]ere designation as 'confidential' or 'for attorneys' eyes only' . . . does not provide a compelling reason that justifies sealing.").  However, because the Plans contain BANA's comprehensive remediation plan for issues arising from distributing EDD's unemployment benefits in response to the Consent Orders, they contain highly sensitive, and confidential information that would subject any disclosure to potential fraud in seeking payments under the Plans; therefore, the Court GRANTS Defendant's motion to seal **Exhibits 74 and 147**.

**Exhibits 49 and 98** are interrogatory responses to questions seeking data under the Plans; therefore, they should also be filed under seal for the same reasons stated above.  Next, while BANA claims **Exhibits 59 and 146** are related to the implementation of the Plans, they do not appear to be related to the Plans.  Exhibit 59 includes interrogatory responses and anonymized data showing the cardholders who submitted a claim and whose claim triggered one of the indicators of the CFF, and whose debt card accounts were blocked based on application of the CFF.  Exhibit 146 includes interrogatory responses and a table of responsive data of anonymized cardholders whose claim triggered the CFF and was subsequently paid by BANA and a table of those cardholders' account that were frozen based on the use of the CFF and whose debit accounts were later

---

[15] Defendant filed these documents under seal pursuant to the Court's order.  (Dkt. No. 354.)

unfrozen or converted from frozen to blocked status and then unblocked. Because the cardholders' names are anonymized, personal identifying information is protected and may be publicly filed. *Cf. Stiner v. Brookdale Senior Living, Inc.,* No. 17-cv-03962-HSG, 2022 WL 1180216, at *2 (N.D. Cal. Mar. 30, 2022) (sealing documents containing employees' personally identifying information like names, email addresses, and phone numbers); *see Kamakana,* 447 F.3d at 1184 (disclosure of "sensitive personal information" could expose those to harm or identity theft).

Therefore, the Court GRANTS Defendant's motion to seal **Exhibits 49, 74, 98, and 147** and the Court DENIES the motion to seal **Exhibits 59 and 146.**

### D. Notice of Motion, Motion, Trial Plan, Expert Reports., Deposition Excerpts

First, in its notice of motion, Defendant seeks to redact the definition of the Excluded Cardholders in the Class Definition because the definition comes directly quoted from the Plans. (Dkt. No. 344 at 11.) Plaintiffs respond that without disclosure of the Excluded Cardholders, the public and potential class members will not know whether they are included in the class or not. (Dkt. No. 341 at 11.)

The Court acknowledges Plaintiffs' concerns about redacting the definition of the excluded class members from the Class Definition as many Californians will not know whether they are part of the class or not. *See e.g., Maldonado v. Apple, Inc.*, Case No. 3:16-cv-04067-WHO, 2021 WL 134579, at *5 (N.D. Cal. Jan. 14, 2021) (denying motion to seal information related to the "internal AC/AC+ [AppleCare/AppleCare+] device replacement process" because "potential class members would have difficulty determining whether they were in the class or not if this information were not made public" and "this information goes to the heart of this Order"). Because there are regulatory procedures in place, *see* 12 C.F.R. § 4.37 and 12 C.F.R. § 1070.47(b), the Court directs Defendant to seek consent to file the definition of the Excluded Cardholder of the Class Definition publicly with the OCC and CFPB.

Next, Defendant seeks to redact portions of the memorandum of points and authorities in support of the motion for class certification ("P&As"), Trial Plan, (Exhibit

17

157), expert reports (Exhibits 1-4) that quote and summarize content in the sealed exhibits, and sealing deposition excerpts (Exhibits 14-20). (Dkt. No. 344 at 12-15.) Plaintiffs respond that there are no compelling reasons to seal portions of these documents. (Dkt. No. 341 at 12-13.) Moreover, they argue that many redacted portions of the P&A, the Trial Plan and deposition excerpts have already been publicly filed or in the public record. (*Id.* at 12, 15.)

Quotes or summary descriptions from sealed exhibits should be filed under seal. *See Darisse v. Nest Labs, Inc.*, Case No. 14-cv-01363-BLF, 2016 WL 11474174, at *2 (N.D. Cal. June 2, 2016) (granting motion to seal exhibits and "portions of Plaintiff's Class Certification Motion and the Howlett, Dennis, and Weir declarations that quote or reference these exhibits"). However, sealed documents publicly disclosed or documents available publicly are not subject to sealing. *See Nia v. Bank of America, N.A.*, Case No. 21-cv-1799-BAS-BGS, 2024 WL 171659, at *6 (S.D. Cal. Jan. 12, 2024) (denying motion to seal publicly available information); *Yates v. Cheeseburger Restaurants, Inc.*, No. 2:22-cv-01081-DAD-DB, 2023 WL 4747431 (E.D. Cal. July 25, 2023) (denying motion to seal because the "plaintiff publicly filed his opposition brief, which quoted portions of defendant's sealed exhibits—without redactions—approximately eleven months ago without any objection raised by defendant.").

The Court has provided guidance on what documents should be filed under seal and what documents should not be filed under seal. Therefore, as it concerns the redaction of portions of the P&As, the Trial Plan, Expert Report of Daniel Kreis, Exhibit 1, Expert Report of Jane Cloninger, Exhibit 2 and Expert Report of Jay Minnucci, Exhibit 3, and Deposition Excerpts, Exhibits 14-20, the Court directs the parties to meet and confer about the redacted portions of these documents to resolve the dispute without the Court's involvement. To the extent the parties agree, Plaintiffs are directed to file an amended P&As, amended Trial Plan, and amended expert reports along with related motions to seal. To the extent the parties disagree, the parties shall jointly file a motion outlining both parties' positions, in detailed chart form as to each redaction disputed, as

well as legal support, as to the portions of the P&As, Trial Plan and Expert Reports they cannot agree upon by **November 22, 2024**.

Plaintiffs also challenge the redacted portions of the Expert Report of Greg J. Regan, Exhibit 4, that quote from or discuss the Plans; however, based on the Court's ruling above, any quotations or discussions of the Plans and their implementation must be filed under seal as they contain highly sensitive and confidential information that would subject any disclosure to potential fraud by criminals. Therefore, the Court will grant Defendant's motion to file under seal the unredacted portion of Exhibit 4 but Plaintiffs also challenge the redaction of the Excluded Cardholders set forth in the Class Definition that quotes directly from the Plans and must await a decision from the OCC and CFBP in the Expert Report of Greg J. Regan.

## Conclusion

Based on the reasoning above, the Court GRANTS in part and DENIES in part Defendant's motion to seal.[16] The Court **GRANTS** Defendant's motion to seal **Exhibit 60** as unopposed and **DENIES** Defendant's motion to seal **Exhibits 62, 76 and 115** as unopposed. (Dkt. No. 328.)

The Court **GRANTS** Defendant's motion to file under seal **Exhibits 24-51, 54-59, 64-68, 74-75, 77-102, 104-11, 113-14, 116-30, 132-45, 147-48, 150, 152, 153-56**. (Dkt. No. 328.) The Court **DENIES** BANA's motion to file under seal **Exhibits 45, 59, 69 and 146**. (Dkt. No. 328.) The Court also **GRANTS** Defendant's motion to file under seal **Exhibits 14-16, and 107** of the corrected documents. (Dkt. No. 337.)

As to redacting portions of the Notice of Motion, and the Expert Report of Greg J. Regan, (Exhibit 4), the Court will wait for direction or consent from the CFPB and OCC whether the Excluded Cardholders language in the Class Definition can be publicly filed.

---

[16] By way of the unique procedural posture on these motions, the Court also GRANTS in part and DENIES in part Plaintiffs' motions to seal. (Dkt. No. 322, 334.)

Defendant shall inform the Court or make an appropriate filing within 2 days of any response from the CFPB and OCC.

Further, the sealing of unredacted portions of the P&As, Expert Reports (Exhibits 1-3), Trial Plan, (Exhibit 157) and Deposition Excerpts (Exhibits 14-20) shall be on hold pending the parties' meet and confer until **November 22, 2024**. As to any documents that the Court has denied sealing, Plaintiffs must file an unredacted version on those exhibits within seven days of this order. To the extent that Defendant believes that the Court's denial of its motion to seal certain documents is in error, BANA must file a motion for reconsideration of those documents within 5 days of the Court's order and Plaintiffs may file a response within 3 days of the BANA's motion for reconsideration.

IT IS SO ORDERED.

Dated: November 12, 2024

*[signature]*
Hon. Gonzalo P. Curiel
United States District Judge