UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION, | Case No.: 21MD2992-GPC(MSB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STAY PENDING SUPREME COURT REVIEW**<br><br>**[Dkt. No. 415.]** |

Before the Court is Defendant's motion to stay the case pending the United States Supreme Court review in *Lab'y Corp. of Am. Holdings v. Davis*, No. 24-0304. (Dkt. No. 415.) Class Plaintiffs filed an opposition on February 21, 2025. (Dkt. No. 427.) Defendant filed a reply on February 28, 2025. (Dkt. No. 433.) A hearing was held on March 28, 2025. Based on the reasoning below, and hearing oral argument, the Court GRANTS in part and DENIES in part Defendant's motion to stay proceedings pending Supreme Court review.

### Background

This multidistrict litigation ("MDL") arises from Class Action Plaintiffs and Individual Plaintiffs' claims against Defendant Bank of America, N.A. ("BANA") for violations of the Electronic Funds Transfer Act and related causes of action during its

1

administration of the electronic benefits payment system for California's Employment Development Department during the COVID-19 pandemic. (*See* Dkt. No. 406, Third Amended Master Consolidated Complaint ("TAMCC").) The Individual Plaintiffs' cases have been stayed while the Class Plaintiffs proceeded with litigation. (*See* Dkt. No. 338.) Class Plaintiffs and BANA have been actively engaged in discovery since May 2023. Fact discovery has closed and the parties are currently engaged in expert discovery which is set to close on April 25, 2025. (Dkt. No. 417.)

Further, pending before the Court is Class Plaintiffs' fully briefed motion to certify class where oral arguments were heard on January 17, 2025 and the motion was taken under submission pending Class Plaintiffs' filing of the TAMCC and Defendant's answer. (Dkt. No. 324, 349, 378, 405.) In the meantime, one week after hearing oral argument, on January 24, 2025, the United States Supreme Court granted certiorari to review the Ninth Circuit's decision in *Lab'y Corp. of Am. Holdings v. Davis*, No. 24-0304 on the limited question of "[w]hether a federal court may certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury." *Lab'y Corp. of Am. v. Davis*, --S. Ct. --, 2025 WL 288305, at *1 (Jan. 24, 2025). Shortly thereafter, on February 7, 2025, Defendant filed a motion to stay pending Supreme Court Review under the authority of *Landis*[1] which is fully briefed. (Dkt. Nos. 415, 427, 433.)

## Discussion

### A.   *Landis* Stay

A federal district court possesses the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. American Co.,* 299 U.S. 248, 254 (1936).

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay

---

[1] *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936).

> must be weighed. Among those competing interests are [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962)). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of California, Ltd*., 593 F.2d 857, 863 (9th Cir. 1979) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co*., 342 U.S. 180 (1952)). The related proceeding need only narrow factual or legal issues for the court and the stay is generally for a limited duration. *See Landis*, 299 U.S. at 255-56 (recognizing that the related case "may not settle every question of fact and law" in the stayed federal action and a district court abuses its discretion by entering a "stay of indefinite duration in the absence of a pressing need"); *Dependable Highway Exp., Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1066-67 (9th Cir. 2007) (reversing district court for imposing *Landis* stay of indefinite nature). A district court has discretion whether to grant or deny a *Landis* stay. *See Dependable Highway Express, Inc.*, 498 F.3d at 1066. The moving party bears the burden that a stay is appropriate. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis,* 299 U.S. at 255).

### 1. Judicial Economy and the Orderly Course of Justice

The Court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Landis,* 299 U.S. at 255; *see CMAX*, 300 F.2d at 268. A stay promotes the orderly cause of justice where the underlying proceedings are likely to decide or contribute to the issues before the court. *See McGraw v. W. Serv. Cont. Corp*,

No. 13-CV-05129-JST, 2014 WL 12573519, at *2 (N.D. Cal. Apr. 14, 2014) (granting a preliminary injunction and staying discovery where "the resolution of the underlying litigation necessarily bears on the indemnification rights at issue in this action."); *see also Fahmy v. Live Nation Ent.,* Inc., No. 2-15-CV-01158-CAS, 2015 WL 3617040, at *13 (C.D. Cal. June 8, 2015) ("Although the outcome of the [underlying case] will not necessarily be dispositive of this case, that outcome will certainly inform this case.").

Defendant argues that a stay will promote judicial economy because the Supreme Court's ruling will resolve potentially case dispositive issues it raised opposing class certification on (1) whether the Court can certify a class action that includes members without Article III standing and (2) whether predominance is met where it will be necessary to engage in a "consumer-specific evidentiary process" to distinguish injured class members from uninjured class members. (Dkt. No. 415-1 at 3, 7-9.[2])

Class Plaintiffs respond that BANA fails to explain that the Supreme Court will overturn existing Ninth Circuit law and does not explain how the Supreme Court ruling will affect this case given the different factual record and legal arguments. (Dkt. No. 427 at 10-16.) They argue that the class definition in this case excludes fraudulent and uninjured class members by excluding cardholders who "(i) ha[ve] been disqualified by the [S]tate [of California] from Program eligibility" or whom the Bank has determined "(ii) ha[ve] previously engaged in fraudulent Program conduct, such as submission of fraudulent claims or other abuses of the claims process." (Dkt. No. 427 at 13.) They further claim that the class definition in addition to BANA's four-year investigation into class member eligibility due to the preliminary injunction issued on May 17, 2021, (Dkt. No. 324-73, Chan Decl., Ex. 73), and the Remediation Plan pursuant to the Consumer Financial Protection Bureau and Office of the Comptroller of the Currency Consent Orders, (Dkt. No. 324-75, Ex. 72; Dkt. No. 324-76, Chan Decl., Ex. 73; Dkt. No. 368-29,

---

[2] Page numbers are based on the CM/ECF pagination.

Chan Decl., Ex. 147 (UNDER SEAL)), "eliminates any realistic possibility that individualized inquiries into class member injury will predominate at trial." (Dkt. No. 427 at 13.)

With the exception of differences in the facts and causes of action alleged in this case and *Davis*, the legal issues raised before the Supreme Court are identical to the ones raised in this case. In opposing the motion to certify class, Defendant argued that all members of a certified class must have Article III standing and sorting through uninjured and injured plaintiffs will defeat predominance. (Dkt. No. 349 at 42-43.) According to BANA, "(i) criminals who defrauded the EDD with fraudulent benefits claims; (ii) legitimate beneficiaries and criminals alike who defrauded BANA with fraudulent transaction disputes; (iii) legitimate cardholders who disputed their own transactions by honest mistake; and (iv) legitimate cardholders already compensated for their potential injuries" were not injured, but will be in the class and subject to windfalls. (*Id.* at 43.) According to Plaintiffs, the proposed Class definition already excludes any person who "(i) has been disqualified by the [S]tate [of California] from Program[3] eligibility; [or] (ii) has previously engaged in fraudulent Program conduct, such as submission of fraudulent claims or other abuses of the claims process[.]" (Dkt. No. 384-1, Notice of Mot. at 3.) However, in opposing class certification, Defendant argued that the exclusions contained in the Remediation Plan is not a proxy that all uninjured class members are captured by the exclusions because the goal of the Remediation Plan was to remediate; therefore it gave those impacted by the Claim Fraud Filter the benefit of the doubt and even paid on claims to those not entitled. (Dkt. No. 349 at 44.)

In *Davis*, Petitioner Laboratory Corporation of America Holdings raised two issues: 1) whether Article III bars certification of a proposed Rule 23(b)(3) class that contains uninjured members; and 2) whether Rule 23(b)(3) bars certification of a

---

[3] Program means "the Bank's Unemployment Benefits Prepaid Card Program." (Dkt. No. 367-6, Chan Decl., Ex. 74 at 5 (UNDER SEAL).).

proposed class with an appreciable number of uninjured members. Brief for Petitioner, *Lab'y Corp. of Am. Holdings v. Davis*, 2025 WL 761874, No. 24-0304, at *15-48 (Mar. 5, 2025).[4] As noted by BANA, the Circuit Courts are divided on these two issues.

The Ninth Circuit has held that a class may be certified even with the presence of "more than a de minimis number of uninjured class members." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (rejecting de minimis rule as inconsistent with Rule 23(b)(3) requiring only whether common questions predominate over any individual ones). On the other hand, some circuits hold that a class may not be certified it if includes any members who have no Article III injury. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006) ("[While] [w]e do not require that each member of a class submit evidence of personal standing [at the class certification stage,] . . . [t]he class must . . . be defined in such a way that anyone within it would have standing."); *Halvorson v. Auto–Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision."). Other circuits fall in the middle concluding that "class certification is permissible even if the class includes a de minimis number of uninjured parties." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 14 (1st Cir. 2015) (addressing Article III standing and predominance); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619-624-25 (D.C. Cir. 2019) (affirming district court denial of class certification on predominance where 2,037, or 12.7% of proposed class members were not injured).

The Court is unable to speculate the ultimate ruling in *Davis*, and whether it will directly impact the predominance analysis in this case considering the factual and legal differences. However, because the Supreme Court will be addressing the identical issues

---

[4] Respondent's opposition brief is due on March 31, 2025. The reply brief is due on April 21, 2025, and oral argument is set on April 29, 2025.

raised in this case, a decision will likely inform on the proper standard to apply. To the extent the Supreme Court ruling will provide guidance or direction on whether all members of a proposed class must have Article III standing at class certification and/or what standard to apply to assess predominance when there are an "appreciable" number of uninjured class members, the Court finds that the orderly course of justice and judicial economy support a short stay as to class action issues.

### 2. Balance of Hardships between Class Plaintiffs and BANA

Defendant argues that a brief stay while the Supreme Court deals with a dispositive issue that could alter the course of this case would result in no undue hardship to Class Plaintiffs when an opinion by the Supreme Court is anticipated in June 2025 based on historical practices. (Dkt. No. 415-1 at 9-10.) BANA also contends that a stay would save both parties from expending substantial resources on proceedings that will need to be re-litigated. (*Id.* at 7.) In opposition, Class Plaintiffs claim that a stay will prejudice them because the case has been pending for more than four year and if the Supreme Court were to remand the case to the Ninth Circuit, a stay may be indefinite. (Dkt. No. 427 at 16-17.) Moreover, Class Plaintiffs argue because the case is over four years old, they will be "severely prejudiced" as witness memories continue to fade and the ability to reach class members to inform them of their class action rights diminishes with each passing month. (*Id.* at 17.) Finally, they maintain that a delay is particularly impactful because of class members' economic vulnerabilities and the length of time their claims have been pending. (*Id.* at 17-18.) In reply, Defendant argues that it only seeks a limited stay until the Supreme Court makes a ruling in June 2025, and not until resolution of a remand if the case were remanded for further proceedings. (Dkt. No. 433 at 7-8.) BANA further argues that while Class Plaintiffs complain of further delays if a stay were granted, they were the ones that sought an eight-month extension to file their motion for class certification. (*Id.* at 8.) Finally, it contends that Class Plaintiffs' argument regarding economic vulnerabilities are misplaced because the class members have been reimbursed for their unauthorized transaction claims and also received additional

compensation under the Remediation Plan. (*Id.* at 8-9.) Thus, because what remains to be litigated are treble and punitive damages, they do not constitute remedial damages. (*Id.* at 9.)

The Court must balance the "possible damage [to Plaintiff] which may result from the granting of a stay," with "the hardship or inequity which [Defendant] may suffer in being required to go forward." *CMAX,* 300 F.2d at 268. If there is "even a fair possibility that the stay for which [Defendant] prays will work damage to someone else," then Defendant must show "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

The Court finds that Class Plaintiffs have not demonstrated hardship by a short, three-month stay. Three months should not impact witness memories or limit the ability to reach class members to inform them of their rights. Further, through the preliminary injunction and the Remediation Plan, injured class members have received direct compensation, and if sought and approved, consequential damages; therefore, the economic vulnerabilities raised by Class Plaintiffs are not as paramount as they claim.

BANA argues that the burdens of motion practice and trial preparation to both parties especially if based on the wrong standard are sufficient to justify a stay. (Dkt. No. 415-1 at 7; Dkt. No. 433 at 10.) While "being required to defend suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*", *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1112 (9th Cir. 2005) (stay granted on belief that district court believed its jurisdiction to decide the scope of the automatic stay was in doubt), engaging in unnecessary "motion practice, planning and preparing for trial, and conducting merits-based discovery on the wrong standard" has been found to be a hardship to support a stay. *In re Taco Bell Wage & Hour Actions*, No. 1:07–CV–01314–OWW–DLB, 2011 WL 38646727, at *4 (E.D. Cal. Aug. 30, 2011); *Ludlow v. Flowers Foods, Inc.,* Case No.: 18-CV-1190 JLS (JLB), 2020 WL 773253, at *3 (S.D. Cal. Feb. 18, 2020) (preparing for trial without a clear answer on legal issue would cause unnecessary work for the parties and the court amount to a hardship). Here, because the

Supreme Court will be ruling on an issue that will impact the legal analysis on Rule 23(b)(3), it would be an unnecessary waste of resources to continue the litigate the class action issues. Therefore, the Court concludes that the balance of hardships is slightly in favor of a stay.

In weighing the *Landis* factors and the record in this case, the Court GRANTS Defendant's motion to stay the case but only as it concerns class certification and any subsequent dispositive motion practice. However, notwithstanding the Supreme Court's ruling, the parties will still need to complete expert discovery, whether through the Class Plaintiffs or Individual Plaintiffs. Therefore, the Court DENIES Defendant's motion to stay as it concerns expert discovery which shall continue to proceed until completion on May 16, 2025[5] and DENIES a stay as to any outstanding or subsequent discovery disputes.

### Conclusion

Based on the reasoning above, the Court GRANTS Defendant's motion to stay pending Supreme Court review as it relates to class certification and any subsequent dispositive motion practice. The Court DENIES Defendant's motion to stay as it concerns expert discovery which shall continue until completion on May 16, 2025, and DENIES a stay as to any outstanding or subsequent discovery disputes. The parties shall inform Court within five (5) days of the Supreme Court's ruling.

IT IS SO ORDERED.

Dated: March 28, 2025

Hon. Gonzalo P. Curiel
United States District Judge

---

[5] In a joint status conference report, filed on March 21, 2025, the parties request a three week extension of time to complete expert discovery to May 16, 2025 which the Court granted at the hearing.