**REDACTED**

No. _____

_____

*In the*

# United States Court of Appeals for the Ninth Circuit

_____

IN RE: BANK OF AMERICA CALIFORNIA
UNEMPLOYMENT BENEFITS LITIGATION,

BANK OF AMERICA, N.A.,
Defendant/Petitioner.

_____

On Petition for Leave to Appeal
from the United States District Court for the Southern District of California
No. 3:21-MD-02992-GPC-MSB (Curiel, J.)

_____

**REDACTED PETITION FOR LEAVE TO APPEAL
UNDER FED. R. CIV. P. 23(f)**

_____

Laura G. Brys
GOODWIN PROCTER LLP
601 S. Figueroa St., Ste. 4100
Los Angeles, Cal. 90017
lbrys@goodwinlaw.com
(213) 426-2500

James W. McGarry
Jordan Bock
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, Mass. 02210
jmcgarry@goodwinlaw.com
jbock@goodwinlaw.com
(617) 570-1000

William M. Jay
Keith Levenberg
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20001
wjay@goodwinlaw.com
klevenberg@goodwinlaw.com
(202) 346-4000

*Counsel for Petitioners*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1, Petitioners hereby disclose that Bank of America, N.A. is an indirect, wholly owned subsidiary of Bank of America Corporation. Bank of America Corporation is a publicly held company whose shares are traded on the New York Stock Exchange (BAC). Bank of America Corporation has no parent company and no publicly held corporation owns more than 10% of Bank of America Corporation's shares.

# TABLE OF CONTENTS

Page

JURISDICTION..................................................................................4

BACKGROUND ................................................................................4

    A.   The schemes to steal pandemic benefits ...........................4

    B.   The regulatory settlement..................................................6

    C.   Plaintiffs' claims...............................................................8

    D.   The class-certification order.............................................9

QUESTION PRESENTED .................................................................12

ARGUMENT ....................................................................................12

  I.   The certification of an overinflated class seeking ▮▮▮▮▮ ▮▮▮▮▮▮▮ in noncompensatory damages warrants review. .........13

  II.  The district court manifestly erred in concluding that Plaintiffs satisfied Rule 23(b)(3). ................................................................14

    A.   The certification decision fails to account for the impact of individualized inquiries. ..................................................14

       1.   The district court never required Plaintiffs to prove predominance. ............................................................14

       2.   The district court relied on a fail-safe class definition to sidestep the class's overwhelming predominance problem........18

    B.   The district court's conclusion that the necessary evidence is limited to BANA and EDD's records is both wrong and irrelevant.........................................................................20

  III. This case presents an important and continually recurring question of class action law.................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bank of Am. Cal. Unemp. Bens. Litig.*,
   674 F. Supp. 3d 884 (S.D. Cal. 2023)................................................................8

*Bowerman v. Field Asset Servs., Inc.*,
   60 F.4th 459 (9th Cir. 2023) ...............................................................................22

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ........................................................................13, 14

*Kamar v. RadioShack Corp.*,
   375 F. App'x 734 (9th Cir. 2010) ......................................................................19

*Lab. Corp. of Am. Holdings v. Davis*,
   605 U.S. ___, 2025 WL 1583302 (2025) ..............................................13, 14, 23

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) (en banc) ..................................2, 15, 16, 18, 19, 24

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) ........................... 14, 15, 16, 17, 18, 19, 21, 22, 24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)......................................................................................11, 23

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   268 F.R.D. 604 (N.D. Cal. 2010)........................................................................22

**Statutes**

15 U.S.C. § 1693a(12)(B) ...........................................................................................9

15 U.S.C. § 1693f(e)(2) ............................................................................................10

15 U.S.C. § 1693m(a)(1).............................................................................................10

## Other Authorities

12 C.F.R. § 1005.2(b)(1)...........................................................................9, 20

12 C.F.R. § 1005.2(b)(3)...............................................................................20

81 Fed. Reg. 83968 (Nov. 22, 2016)..............................................................20

This litigation arises from perhaps the largest epidemic of consumer financial fraud in U.S. history. Thieves stole billions of dollars in COVID-19-related unemployment benefits from taxpayers and the government. ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ Then they stole that too.

The victims of the fraud include the taxpayers, the California Employment Development Department (EDD) (which paid the benefits), and Bank of America, N.A. (BANA) (which issued the cards). The *perpetrators* of the fraud include an unknown but significant portion of the certified classes, who now stand to *triple* down on their frauds by collecting even more ill-gotten gains from BANA as "damages." Not surprisingly, █████████████████████████████

████████████████—██████████████████████████████████

████████—has not been injured and does not have a valid claim in federal court. The district court decided that the presence of these fraudulent claimants in the certified class presented no obstacle to class treatment. That decision rested on manifest errors of law and abuses of discretion that should be reversed. At the very least, it should receive the thorough review Rule 23(f) permits, given the stakes of the decision below—certification of a class seeking ██████████████████████

-1-

in damages (all non-compensatory), with no way of limiting the class to legitimate claimants.

Plaintiffs' primary theory of liability is that BANA violated the Electronic Funds Transfer Act (EFTA) by using a filter to identify suspicious reports of unauthorized card use before provisionally crediting funds back to cardholders. They claim that their class of over a hundred thousand people were all flagged in error. But the fact is that Plaintiffs have *no idea* how many of those flags were erroneous, versus how many class members were correctly caught reporting their own transactions as unauthorized.

The prospect of awarding windfall damages to people who were not victims of any misconduct, but rather perpetrators of it, did not bother the district court because it construed *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc), to hold that there is no obstacle to certifying a class containing numerous "uninjured" class members. A85-86. That misinterprets both *Olean* and Rule 23. Because the Supreme Court has made clear that no damages can be *awarded* to uninjured plaintiffs, *Olean* permits a class to be certified only if there is some method for identifying uninjured class members before judgment that will not devolve into hundreds of mini-trials.

No such method was proposed here. Plaintiffs' explicit strategy was to argue they didn't *need* one, because BANA had already done it for them. They relied on

BANA's settlement of a related regulatory investigation, ██████████████ ████████████████████████████████████████████████ Plaintiffs argued that BANA wouldn't have paid anyone under the settlement who wasn't entitled to it, so those same people must also be entitled to collect damages as class members. That assumption was not remotely justified, as the record evidence here shows. ██████████████████████████████████ ██████████████████████ A182-83. ████████████████ ███████████████████████████████████████ ███████████████████ ███████████████████████ ███████████████████████████████████████ ████████████████ So while the settlement means that everyone in the certified classes has already received full compensation for any injuries or inconveniences, it does *not* mean that the class excludes people who took part in the criminal fraud against the State, the taxpayers, and BANA.

Neither Plaintiffs nor the court below has any method for figuring out which class members are fraudsters ineligible for any recovery—and any such method would involve individualized investigations and mini-trials, which under Rule 23(b)(3) makes this case unsuitable for class treatment.

In the context of a national emergency, there might have been good reasons for EDD to prioritize getting money in people's hands as fast as possible, even at the

cost of paying fraudsters; in the context of a regulatory settlement, ████████

████████████████████████████████████████████████████████

████████████████████████████; but in the context of a federal court

proceeding, this beneficence reaches its constitutional and legal limit. Article III and

Rule 23 do not countenance the use of the class-action device to pay criminals and

others with no valid claims. Granting class certification here was not just

inappropriate, but harmful.

## JURISDICTION

This petition is timely because the district court docketed the sealed order

granting class certification on June 16, 2025.

## BACKGROUND

**A.    The schemes to steal pandemic benefits**

In March 2020, the COVID-19 crisis prompted the federal government to fund

a unique benefits program, Pandemic Unemployment Assistance, open to people not

eligible for traditional unemployment benefits (*e.g.*, the self-employed, contract

workers, and gig workers). Focusing on delivering relief as fast as possible to the

massive numbers of potential recipients, both the federal government and EDD

loosened requirements for verifying eligibility—for example, eliminating the need

to document prior employment history. A159-60. The result was a vulnerable target

for fraudsters and thieves. A120-21.

Studies showed that upwards of $400 billion of PUA benefits were paid to ineligible claimants defrauding the system. ECF 350-16 at 2.[1] The Department of Labor reported in August 2023 that more than a third of PUA payments was lost to fraud. ECF 350-15 at 6. California identified up to $31 billion in fraud losses as of January 2021, blaming 95% on the loosened verification requirements. *See* ECF 350-14 at 5. Some criminals were collecting EDD benefits under dozens of fraudulent identities. A115, A159-60.



A162-63. The credit-back process is governed by EFTA. Most card issuers, including BANA, implement that law's requirements by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That works fine in ordinary circumstances, but against the tsunami of fraudulent activity at issue here, ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Except where otherwise noted, ECF citations refer to the district court docket, No. 3:21-md-02992 (S.D. Cal.).

█████████████████ A159. ████████████████████████████████████████

█████████████████ *Id.*

BANA responded by launching new antifraud procedures in September 2020 to investigate claims and identify cardholders who were likely submitting fraudulent transaction disputes. *See* ECF 350-15 at 29-30. A fraud filter became the first layer of the investigation process, flagging accounts and transactions satisfying an array of criteria BANA's antifraud experts identified as reliable indicators of fraud, including ████████████████████████████ and disputed ATM withdrawals (which require the cardholder's personal PIN). A127-28; A164-65; A201-14. This last criterion—the current focus of Plaintiffs' class claims—reflected ████████████████████████████

████████████████████████████████████████

███████████████████████████ A126-27; A162-63. ██████████████

███████████████████████████████████ and BANA gave every cardholder flagged by the filter the ability to seek manual reconsideration. ████████████████████████████████

████████████████████████ A165.

## B.    The regulatory settlement

Notwithstanding the above, the CFPB launched an investigation into the fraud filter, which BANA resolved in a July 2022 settlement. ECF 106 at 2. ██████████████

███████████████████████████████████████████████████

███████████████████████████████ A182. ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ *Id*. █████████████████████████████████

██████████████████████ A183-84.

    ████████████████████████████████████████████████

████████████████████████████ ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

A182-83; A287. ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ A287-88. ███████████████

███████████████████████████████████████████████████

████████████████████████████████████████ A172. █████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████ *See* A183; A201-14; A281-85.

**C.    Plaintiffs' claims**

The lead case in this MDL, *Yick v. Bank of Am., N.A.*, No. 3:21-CV-00376 (N.D. Cal.), was filed on January 14, 2021. Only vestigial traces of its original claims and theories remain. The original complaint was that BANA didn't do *enough* to protect cardholders from unauthorized transactions. The current complaint is that it did *too much*.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████     ECF 304, ¶ 89.████████████████████

████████████████████████████████

At the Rule 12(b)(6) stage, the district court dismissed 83 plaintiffs based on failures to plead assorted elements of their EFTA claims so varying and specific to each individual Plaintiff that the court had to append a table clarifying who was being dismissed and on what grounds. *See In re Bank of Am. Cal. Unemp. Bens. Litig.*, 674 F. Supp. 3d 884 (S.D. Cal. 2023). The court emphasized that each plaintiff's claim would turn on BANA's records on each "particular account in question." *Id*. at 911-12 (quoting 12 C.F.R. § 1005, Supp. I at 11(c)(4)).

Plaintiffs amended their complaint, but, faced with the prospect of having to produce discovery and testify under oath about their claims, 109 plaintiffs voluntarily dismissed themselves. *Compare* ECF 136 *with* ECF Nos. 149, 193, 206,

216, 230, 235, 253, 263. On July 16, 2024, Plaintiffs filed a second amended complaint, reducing the number of individually named plaintiffs to 133 and naming only 21 as putative class representatives. *See* ECF 304.

## D.     The class-certification order

Plaintiffs moved to certify classes of cardholders who received payments under the CFPB settlement for disputed ATM transactions that BANA flagged "based solely" on Indicator 1 of the fraud filter. A236, A243-45, A248, A250. They do not dispute that the settlement payments already gave all class members full compensation for any harm; rather, they expressly acknowledged that they filed this action to take advantage of EFTA's provision for treble damages. A242; *see also* A86-87. Plaintiffs argued that these claims were suitable for class treatment because their claims all turned on whether BANA's "procedures" complied with EFTA's investigation requirements. A243-44.

But an EFTA claim requires more. As a threshold matter, someone who obtained the account by means of fraud or for criminal purposes does not have an "Account" (a regulatory term of art) covered by EFTA. *See* 12 C.F.R. § 1005.2(b)(1). Separately, someone trying to *defraud* a card issuer by cashing in (potentially stolen) benefits and then ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ does not have an EFTA claim because there is no unauthorized transfer. *See* 15 U.S.C. § 1693a(12)(B). And because Plaintiffs seek treble damages,

each plaintiff also must show the investigation was not just procedurally objectionable, but *wrong* in its outcome (else they have no "actual damages"). *See* 15 U.S.C. §§ 1693f(e)(2), 1693m(a)(1).

BANA opposed the motion by identifying specific individuals within the class where the evidence strongly suggested that BANA was correct ███████ ████████████████████████████████████████████████ *See generally* ECF 349 (BANA opposition).





A175-178. These cases were illustrative, not exhaustive. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████  *See id.*  ████████████████

████████████████████████████████████████████

████████████████████████

     After staying the case briefly to await a potential Supreme Court ruling about the treatment of uninjured class members, the district court granted class certification on June 16, 2025. A99. Misinterpreting *Olean*, it held that the presence of "more than a de minimis number of uninjured class members" did not bar class certification, with no analysis of how to identify those uninjured class members without individual mini-trials. A64-65. Misinterpreting both *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and EFTA, the district court relieved Plaintiffs of having to show they were legitimate cardholders with legitimate disputes—essential elements of their claims. A64-65. And misinterpreting both the record and Rule 23's allocation of the burden to the party seeking class certification, the court—implicitly,

but still erroneously—held (i) that it was BANA's burden to prove that identifying uninjured class members would pose predominance problems, rather than Plaintiffs' burden to prove that it wouldn't, and (ii) that BANA hadn't carried that burden, ███████████████████████████████████████████████████████████ ████████████████████████████████ A61-62. Finally, the court committed all these errors under the faulty assumption that Plaintiffs only had to satisfy Rule 23 as far as their "prima facie case," and not their case as a whole. A54-55. All of these errors, and others, warrant appellate review.

## QUESTION PRESENTED

Whether this Court should review a class-certification grant that puts ████████████████████████████ at stake and allows criminals to share in a class recovery without proposing any mechanism for removing these ineligible plaintiffs from the class.

## ARGUMENT

This case satisfies all three Rule 23(f) criteria: "(1) there is a death-knell situation for [the] defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's

class certification decision is manifestly erroneous." *Chamberlan v. Ford Motor Co.*,

402 F.3d 952, 959 (9th Cir. 2005).

## I.  The certification of an overinflated class seeking ████████ ████ in noncompensatory damages warrants review.

Appellate review is appropriate where "a grant of certification may 'force a

defendant to settle rather than incur the costs of defending a class action.'"

*Chamberlan*, 402 F.3d at 957 (citation omitted). Because Plaintiffs here are seeking

████████████████, "a doubtful class certification" ruling will put

immense pressure on BANA to proceed based not on whether it has a "meritorious

claim or defense," but on the stakes at trial. *Id.* at 957-58 (explaining that Rule 23(f)

provides a "mechanism through which appellate courts, in the interest of fairness,

can restore equilibrium when a doubtful class certification ruling would virtually

compel a party to abandon a potentially meritorious claim or defense before trial")

(quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir.

2000)).

That risk is all the more acute here because of the particular defect with this

certification ruling. "Classes that are overinflated with *uninjured* members raise the

stakes for businesses that are the targets of class actions." *Lab. Corp. of Am.*

*Holdings v. Davis*, 605 U.S. ___, 2025 WL 1583302, at *3 (2025) (Kavanaugh, J.,

dissenting). In that circumstance, the "[o]verbroad and incorrectly certified

class[] … threaten[s] massive liability" and "coerce[s] businesses into costly

settlements." *Id.* This case thus presents the exact circumstance that shows "why Rule 23(f)'s interlocutory appeal procedure was established in 1998." *Id.*

## II. The district court manifestly erred in concluding that Plaintiffs satisfied Rule 23(b)(3).

The district court's application of the requirement that common issues must predominate over individualized ones was "manifestly erroneous," and therefore warrants review under Rule 23(f) "even absent a showing of another factor." *Chamberlan*, 402 F.3d at 959. The court made two fundamental errors. First, it committed the same error this Court identified in *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023): Despite significant evidence that identifying all the uninjured class members would require extensive individualized evaluations, the district court never required plaintiffs to prove that class issues predominate. A62, A67, A69, A84. Second, the district court concluded that any individualized inquiry could not defeat predominance where the inquiry would look at evidence in the defendant's possession. A63-64. Either error warrants reversal.

### A. The certification decision fails to account for the impact of individualized inquiries.

#### 1. The district court never required Plaintiffs to prove predominance.

Once "a defendant substantiates … an individualized issue," the district court "must determine whether the plaintiff has proven by a preponderance of the evidence that the questions of law or fact common to class members predominate over any

-14-

questions affecting only individual members." *Van*, 61 F.4th at 1069. The district court never made this determination: the court deemed it unnecessary on the basis that it could certify a class with a de minimis number of uninjured class members, or even "more than a de minimis number of uninjured class members." A62. That was manifest error.

As this Court explained in both *Van* and *Olean*, the question is not the potential number of uninjured class members, but rather how those class members will be identified. *See Van*, 61 F.4th at 1067 n.11; *Olean*, 31 F.4th at 667. Regardless of "whether a great number of plaintiffs will win or lose at trial on the individualized issue … the district court must assess the necessity and manageability of the potential class-member-by-class-member discovery process and trial." *Van*, 61 F.4th at 1067 n.11. If identifying uninjured class members will require assessing "thousands of claims one at a time, then the individualized issue will weigh heavy in the predominance balancing"—regardless of the ultimate results of that individualized inquiry. *Id.*

This Court applied these principles to reverse a certification grant in *Van*. The district court had found predominance because it thought "the number of proposed class members for whom it can presently be determined [were uninjured] is de minim[i]s." *Id.* at 1068. As this Court explained, the defendant had "substantiated the individualized issue—that is, [the defendant's] exhibits demonstrated that at least

-15-

some [class members] lack meritorious claims because they were … uninjured." *Id.*

at 1068 n.13. Once the defendant made that showing, the district court could not

simply end the predominance analysis because only a handful of uninjured plaintiffs

had been identified *so far*: the "court was required to assess whether [the plaintiff]

had met her burden of proving that the question of law or fact common to class

members predominate[d] over any questions affecting only individual members." *Id.*

The district court committed precisely the same error here. In the district

court's view, the maximum number of fraudsters in the putative class was "███

███," meaning there were only "a de minimis number of uninjured class members."

A62. On that basis, the court concluded that BANA had "not sufficiently

demonstrated with evidence that individual issues will predominate on the EFTA

claim." *Id.* But BANA showed all that it was required to show—namely, that "at

least some class members lack meritorious claims" because they were uninjured,

"thus summoning the spectre of class-member-by-class-member adjudication." *Van*,

61 F.4th at 1069. At that point, *Plaintiffs* were required to "prove[] by a

preponderance of the evidence that the questions of law or fact common to class

members predominate" over the necessary individualized adjudication. *Id.*

The district court did not hold Plaintiffs to this burden. Plaintiffs never put

forth any "method or methods" they "propose[d] to use" to establish that "the

prerequisites of Rule 23(b)(3) are satisfied." *Olean*, 31 F.4th at 666 (internal citation

and quotation marks omitted). Despite that, the court repeatedly faulted *BANA* for failing to "sufficiently demonstrate[] with evidence that individual issues will predominate on the EFTA claim." A62; *see also* A63 ("BANA has not shown, with evidence, that individual inquiries will predominate over common ones."). But BANA provided "evidence that [] individualized issues bar recovery on at least some claims." A62. The district court in fact recognized as much. *See id*. At that point—irrespective of how many uninjured class members BANA had identified *so far*—Plaintiffs had the burden to show that individualized inquiries into who was uninjured would not predominate. *See Van*, 61 F.4th at 1067 n.11 (when assessing the "manageability of [a] potential class-member-by-class member" evaluation, "the district court should keep in mind that the plaintiff bears the burden of proving that class issues predominate over individual issues"). The district court's failure to allocate the burden correctly was a manifest error.

Finally, while not ultimately necessary to the Rule 23(f) analysis, it is worth noting that the district court fundamentally misconstrued the record. The district court concluded that a *maximum* of ███████████ engaged in fraud out of the 104,300 members of the primary class. A62. That conclusion confused a sample with a ceiling. ████████████████████████████████████
████████████████████ A173, ████████████████████████
████████████████  ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ *Id.* ████████████████████████████████████████

████████████████████ A174. The district court was therefore wrong to base its

analysis on the notion that ████ represents the maximum number of fraudsters in the

class.

This "clearly erroneous" "factual error" was "insignificant compared to the

legal error" discussed above. *Van*, 61 F.4th at 1068 n.13. Even had the district court

correctly assessed the record, it still manifestly erred by sidestepping any inquiry

into the required individualized analysis. *See id.* (noting that, whether defendant

"provided two or eighteen examples, [defendant] had substantiated the

individualized issue"). But if nothing else, the district court's misunderstanding of

the factual record highlights its failure properly to evaluate the issues at hand.

## 2. The district court relied on a fail-safe class definition to sidestep the class's overwhelming predominance problem.

The district court's predominance analysis rested on a separate, significant

legal error. Plaintiffs argued—and the district court agreed—that there was no

predominance problem because "the proposed Class definition already excludes any

person who … has previously engaged in fraudulent Program conduct." A59. In

other words, the district court erroneously created "a 'fail safe' class that is defined

to include only those individuals who were injured by the allegedly unlawful

conduct." *Olean*, 31 F.4th at 669 n.14 (internal citation and quotation marks

omitted). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (internal citation omitted). Fail-safe classes are impermissible because of "the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).

The relevant question under Rule 23 is *how* plaintiffs and the district court will ensure that anyone who "has previously engaged in fraudulent Program conduct" is "exclude[d]" from the class. A100. Simply referring to the class definition does nothing to accomplish this. As *Olean* establishes, Plaintiffs had to identify some method for weeding out class members who committed fraud without "individualized inquiries about such matters." 31 F.4th at 668. The court's reliance on the class definition, as if it were self-executing in the *absence* of such a method, was manifestly erroneous.

If predominance could be resolved simply by defining uninjured class members out of the class, there would be no need to consider whether individualized issues predominate. That is not the law. This Court has repeatedly directed district courts to assess the necessity of "a class-member-by-class-member assessment of the individualized issue." *Van*, 61 F.4th at 1069. And excluding fraudsters from the class *only once BANA identifies them* gets the issue backwards. Each additional

-19-

fraudster BANA identifies should tip the scales toward *denying* class certification—not granting it.

The above, if anything, understates the amount of individualized factfinding necessary. The district court repeatedly misunderstood the degree to which EFTA requires Plaintiffs to shoulder individualized proof.[2] Those legal rulings—which are reviewed *de novo* on appeal—compound the district court's manifestly erroneous treatment of predominance.

### B. The district court's conclusion that the necessary evidence is limited to BANA and EDD's records is both wrong and irrelevant.

The district court ultimately stated that "[e]ven if fraudulent claimants need to be sorted out, the process of fact-intensive analysis will come from BANA and EDD's records and not any evidence that a class member will need to present." A63. Thus, the court said, "many mini-trials will not overwhelm the proceedings." *Id.* That is wrong twice over.

---

[2] To take one example, the district court incorrectly concluded that class members need not show that their accounts were "created for personal, family or household purposes"—rather than for fraudulent or criminal purposes—because EDD accounts are "prepaid accounts." A52-53. But as the CFPB explained when it removed the phrase "established primarily for personal, family, or household purposes" from the regulation governing prepaid accounts (12 C.F.R. § 1005.2(b)(3)), the phrase was "unnecessary here as it already appears in the main definition of account in [12 C.F.R.] § 1005.2(b)(1) and prepaid accounts are expressly included as a subcategory within that broader definition." Prepaid Accounts Under the Electronic Fund Transfer Act (Regulation E) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 83968 (Nov. 22, 2016).

First, a wave of mini-trials is precisely what this "process of fact-intensive analysis" will involve. *Id*. If BANA's records show that a class member should be disqualified, that class member would need an opportunity to contest the finding, and the district court would have to resolve that dispute. On the flip side, BANA is entitled to test whether each proposed class member was entitled to unemployment benefits and submitted a *bona fide* unauthorized transaction claim. *See supra*, pp. 9-10. Notably, when faced with the prospect of testifying under oath about their claims, more than one-third of the individual plaintiffs dismissed themselves from the case. *See* Background, *supra*, Part C. This process, too, will require the district court to conduct individualized adjudications. Sorting out uninjured class members will thus involve precisely the "months of trial" that defeat predominance. *Van*, 61 F.4th at 1069.

Second, it is not true that the evidence needed for these mini-trials is ████ ████████████████ While BANA has found some smoking guns, certain other critical information is ██████████████████████████████████. It is simply not the case that "[i]ndividual inquiries to EDD cardholders will not be necessary." A63 (recognizing that EDD has information regarding cardholders' entitlement to benefits).

Even limiting the universe of relevant materials to BANA's records, the review process will still involve "class-member-by-class-member adjudication."

-21-

*Van*, 61 F.4th at 1069. ███████████████████

████████████████████████████████████████

██████████████████████████████████ A172. Whether

or not plaintiffs need to be involved in this exercise, it is exactly the type of

individualized inquiry that defeats predominance. *Van*, 61 F.4th at 1069; *see also*

*Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023)

(decertification appropriate where evaluation of "individualized injury" would

render class treatment "prohibitively cumbersome").

The district court essentially decided these mini-trials were irrelevant by

holding that Plaintiffs only needed to satisfy Rule 23 when it comes to their "prima

facie case." A55. "Such a view is directly at odds with the way the Ninth Circuit has

interpreted Rule 23(b)(3). The important inquiry is not whether common issues

predominate with respect to plaintiff's prima facie case, but rather will common

issues predominate in the entire litigation." *In re Wells Fargo Home Mortg.*

*Overtime Pay Litig.*, 268 F.R.D. 604, 612 (N.D. Cal. 2010) (citing *Zinser v. Accufix*

*Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)). "Simply because the

plaintiff may be able to establish the prima facie case using some form of common

proof does not mean that defendant is limited to common proof when asserting

relevant defenses." *Id.*

Nor can Plaintiffs sidestep predominance on the basis that BANA will shoulder the burden of identifying uninjured class members. It is the nature of the burden, not the party on which it rests, that determines whether individual issues predominate. "[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart*, 564 U.S. at 367. That applies regardless of which side furnishes the evidence. The district court erred by failing even to consider whether BANA's litigation of these defenses would predominate.

## III. This case presents an important and continually recurring question of class action law.

While the district court manifestly erred, it was faced with a challenging task. The proper approach to the predominance inquiry in cases with uninjured class members raises important legal questions that have split the circuits, as shown by the Supreme Court's recent grant of certiorari to resolve one such issue.[3] More guidance is needed within the Ninth Circuit as well.

To start, while both *Olean* and *Van* confirmed that the district court must evaluate whether individualized issues predominate, neither panel had occasion to

---

[3] The Supreme Court ultimately dismissed that petition as improvidently granted for procedural reasons specific to that case. *Lab. Corp.*, 605 U.S. at __, 2025 WL 1583302, at *1-2. But the *certiorari* papers, merits briefing, and argument underscore the complexity of this issue and the range of approaches that have developed.

conduct the analysis necessary when a class contains uninjured members. *See Olean*, 31 F.4th at 682 (explaining that plaintiffs had demonstrated injury at "the class certification stage for all class members"); *Van*, 61 F.4th at 1069 (remanding for the district court to "re-assess whether Van has met her burden of proving by a preponderance of the evidence that common issues predominate over questions affecting only individual members"). The district court therefore had minimal guidance on how to assess whether individualized inquiries predominate when all agree the class contains some number of uninjured class members. This analysis is critical for ensuring proper application of Rule 23(b)(3), a recurring issue of critical importance in the district courts.

Relatedly, this case provides an opportunity to address how a class definition can—and cannot—address predominance problems like these. The district court's effort to define away the predominance problem was understandable, but legally improper. It would be highly beneficial for the Court to provide further guidance on how the rule against fail-safe class definitions applies in this context.

*     *     *

This is a textbook case for Rule 23(f) review. Plaintiffs are seeking ████ ████████████ in damages, and BANA has provided ample evidence that the class contains at least some criminal fraudsters with no injury. Plaintiffs bore the burden of devising a method to identify them before final judgment that would not

descend into individual mini-trials. The district court did not make them carry it. It just relied on the notion that it could define fraudsters out of the class—but with no way to identify who those people are, or disqualify them from getting paid.

The district court committed multiple manifest errors, on important and recurring issues, in an enormous, high-stakes litigation. BANA respectfully requests that the Court grant this petition and allow BANA to brief the errors in the district court's analysis *before* it is potentially required to distribute ███████████ to criminals.

June 30, 2025                                   Respectfully submitted,


Laura G. Brys                              *s/ William M. Jay*
GOODWIN PROCTER LLP                        James W. McGarry
601 S. Figueroa St., Ste. 4100            Jordan Bock
Los Angeles, CA  90017                     GOODWIN PROCTER LLP
lbrys@goodwinlaw.com                       100 Northern Ave.
(213) 426-2500                             Boston, MA 02210
                                           jmcgarry@goodwinlaw.com
                                           jbock@goodwinlaw.com
                                           (617) 570-1000

                                           William M. Jay
                                           Keith Levenberg
                                           GOODWIN PROCTER LLP
                                           1900 N Street, N.W.
                                           Washington, DC  20001
                                           wjay@goodwinlaw.com
                                           klevenberg@goodwinlaw.com
                                           (202) 346-4000

                                           *Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

This Petition complies with the type-volume limitation of Circuit Rules 5-2 and 32-3(2) because, according to the word count of Microsoft Word, the word-processing system used to prepare the Petition, it contains 5,570 proportionately spaced words, excluding the parts of the Petition exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This Petition complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point, Times New Roman font.

Laura G. Brys
GOODWIN PROCTER LLP
601 S. Figueroa St., Ste. 4100
Los Angeles, CA 90017
lbrys@goodwinlaw.com
(213) 426-2500

*s/ William M. Jay*
James W. McGarry
Jordan Bock
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
jmcgarry@goodwinlaw.com
jbock@goodwinlaw.com
(617) 570-1000

William M. Jay
Keith Levenberg
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20001
wjay@goodwinlaw.com
klevenberg@goodwinlaw.com
(202) 346-4000

*Counsel for Petitioners*

-26-

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** _____

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[   ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**
[ X ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*: **See next page.**

-27-

**Cotchett, Pitre & McCarthy, LLP**
- Joseph W. Cotchett – jcotchett@cpmlegal.com
- Brian Danitz – bdanitz@cpmlegal.com
- Vasti Montiel – vmontiel@cpmlegal.com
- Caroline Yuen – cyuen@cpmlegal.com
- Karin B. Swope – kswope@cpmlegal.com
- Blair V. Kittle – bkittle@cpmlegal.com
- David Gregory Hollenberg – dhollenberg@cpmlegal.com
- Kevin Jones Boutin – kboutin@cpmlegal.com

**Altshuler Berzon LLP**
- Michael Rubin – mrubin@altber.com
- Stacey M. Leyton – sleyton@altber.com
- Matthew Murray – mmurray@altber.com
- Connie K. Chan – cchan@altber.com
- Colin Clemente Jones – cjones@altshulerberzon.com
- James Baltzer – jbaltzer@altshulerberzon.com
- Caroline C. Hunsicker – chunsicker@altshulerberzon.com
- Katherine Grace Bass – kbass@altshulerberzon.com

**Description of Document(s)** *(required for all documents)***:**

[Redacted] Petition for Leave to Appeal Under Fed. R. Civ. P. 23(f); and [Redacted] Appendix in Support of Defendant's Petition for Leave to Appeal Under Fed. R. Civ. P. 23(f)

**Signature** *s/ William M. Jay*_____    **Date** June 30, 2025_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*