# The Appellate Lawyer Representatives' Guide

## To Practice in the United States Court of Appeals for The Ninth Circuit

May 2021 ed.

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................ 4

II.     INTRODUCTION TO THE U.S. COURT OF APPEALS
        FOR THE NINTH CIRCUIT ................................................... 5

III.    OVERVIEW OF THE APPELLATE PROCESS ...................... 10

IV.     FILING AN APPEAL IN THE NINTH CIRCUIT: HOW TO
        GET STARTED ....................................................................... 20

V.      THE RIGHT TO COUNSEL ON APPEAL ............................... 37

VI.     MEDIATION IN THE NINTH CIRCUIT ................................ 46

VII.    MOTIONS PRACTICE ............................................................ 54

VIII.   EMERGENCY PROCEEDINGS ............................................. 75

IX.     DRAFTING THE BRIEF ........................................................ 83

X.      EXCERPTS OF RECORD ..................................................... 105

XI.     ORAL ARGUMENT ............................................................. 114

XII.    POST-DECISIONAL PROCESSES ...................................... 126

XIII.   REVIEW OF IMMIGRATION DECISIONS BEFORE THE
        NINTH CIRCUIT .................................................................. 147

XIV.    HABEAS CORPUS PROCEEDINGS .................................... 166

XV.     DRAFTER'S CHECKLIST FOR APPELLATE MOTIONS .... 174

XVI.    FILER'S CHECKLIST FOR APPELLATE MOTIONS .......... 177

XVII.   DRAFTER'S CHECKLIST FOR APPELLATE BRIEFS ........ 179

XVIII.  DRAFTER'S CHECKLIST FOR EXCERPTS OF RECORD
        AND SUPPLEMENTAL EXCERPTS OF RECORD .............. 182

XIX.   COMPILER'S CHECKLIST FOR EXCERPTS OF RECORD
       AND SUPPLEMENTAL EXCERPTS OF RECORD ..............188

XX.    FILER'S CHECKLIST FOR APPELLATE BRIEFS AND
       EXCERPTS OF RECORD ......................................................197

XXI.   RESOURCES FOR NINTH CIRCUIT PRACTICE................200

# I.
# <u>INTRODUCTION</u>

This practice guide was developed by the Ninth Circuit Appellate Lawyer Representatives as an informal guide to practice before the United States Court of Appeals for the Ninth Circuit. It does not represent the views of the judges or the employers of the appellate lawyer representatives.

This guide is an evolving document, and we welcome suggestions for its improvement. Please email any suggestions or comments to <u>ALRPracticeGuide@ca9.uscourts.gov.</u> We will do our best to keep the guide up to date, but rules, general orders, and electronic filing systems can and do change. In the event of conflict, follow the rules.

Finally, a special "thank you" to the representatives who drafted and commented on sections, as well as members of the Ninth Circuit Clerk's Office who commented on the guide. Those individuals include lead editor Jean-Claude André, Helen H. Hong, Dan Kaplan, Casey Pitts, Leah Spero, James Azadian, Ryan Bounds, Brian Goldman, Anne Voigts, Liora Anis, Susan Gelmis, Paul Keller, and Stephen Liacouras.

# II.
# INTRODUCTION TO THE U.S. COURT OF APPEALS FOR THE NINTH CIRCUIT

## I.    THE COURT

The U.S. Court of Appeals for the Ninth Circuit handles appeals arising from the federal trial and bankruptcy courts in the 15 judicial districts within the Circuit. Judicial districts within the Ninth Circuit include the districts of Alaska, Arizona, Central California, Eastern California, Northern California, Southern California, Hawaii, Idaho, Montana, Nevada, Oregon, Eastern Washington, Western Washington, the U.S. Territory of Guam, and the Commonwealth of the Northern Mariana Islands. The Court also has jurisdiction over petitions for review or enforcement of orders by several agencies, such as the Board of Immigration Appeals and the National Labor Relations Board.

## II.    COURT STRUCTURE AND PROCEDURES

**A.    PHYSICAL FACILITIES** The Court's headquarters is located at 95 Seventh Street, San Francisco, California 94103. The mailing address is P.O. Box 193939, San Francisco, California 94119-3939. The Clerk's Office may be reached at (415) 355-8000. Divisional Clerk's Offices are located in Pasadena, Seattle, and Portland. The Court also has three regional administrative units to assist the Chief Judge of the Circuit with administrative responsibilities: the Northern, Middle and Southern units. The most senior active judge of each unit is designated the administrative judge of the unit, and serves a non-renewable three-year term.

**1.**    The Northern Unit includes the districts of Alaska, Idaho, Montana, Oregon, and Eastern and Western Washington.

2.    The Middle Unit includes the districts of Arizona, Nevada, Hawaii, Guam, Northern and Eastern California, and the Northern Mariana Islands.

3.    The Southern Unit includes the districts of Central and Southern California.

Cases arising out of the Northern Unit are generally calendared in Seattle or Portland for oral argument; cases from the Middle Unit are generally heard in San Francisco; and cases from the Southern Unit are usually calendared in Pasadena. Cases may be heard in places specially designated by the Court. (For example, the Court occasionally hears cases at law schools within the Circuit.)

## B.    JUDGES AND SUPPORTING PERSONNEL

1.    **Judges** By statute, Congress authorizes 29 active judgeships within the Ninth Circuit. A judge may take "senior status" after a certain combination of years of service and age. A judge who has taken senior status still hears and decides cases, but may carry a reduced caseload. While a senior judge otherwise maintains the same responsibilities as an active judge, senior judges cannot vote on whether to take a case *en banc*. There are several senior circuit judges who regularly hear cases. Although San Francisco is the Court's headquarters, most of the active and senior judges maintain their residence chambers in other cities within the Circuit. The locations of the judges' chambers are listed on the Court's website at www.ca9.uscourts.gov.

2.    **Appellate Commissioner** The Appellate Commissioner role was created to serve a variety of functions for the Court of Appeals, including ruling on a wide range of motions filed before a case is

assigned to a three-judge panel for decision on the merits, managing the compensation of appellate counsel appointed under the Criminal Justice Act to represent parties financially unable to retain counsel, managing attorney disciplinary matters and attorney's fees in civil disputes upon referral by a panel, and conducting case management conferences in complex, multi-party criminal appeals. In the wake of the Appellate Commissioner's retirement at the end of 2020, the CJA compensation duties have been reassigned to a new CJA Administrative Attorney position in the Clerk's Office, and the Director of the Office of Staff Attorneys is serving as Interim Appellate Commissioner with respect to the remaining duties.

3. **Clerk's Office** Clerk's Office personnel are authorized to act on certain procedural motions, to handle stipulations for dismissal, and to dismiss cases for failure to prosecute. Inquiries concerning rules and procedures may be directed to the Clerk's Office. On matters requiring special handling, counsel may contact the Clerk's Office for information and assistance. No judge or any member of the Court staff will give legal advice. Court information, including Court rules, the general orders, calendars, and opinions, and many other resources for attorneys and the public are available on the Court's website at www.ca9.uscourts.gov.

4. **Office of Staff Attorneys** Staff attorneys perform a variety of tasks for the Court. They work for the entire Court, not individual judges.

   a. **Inventory** After briefing is completed, the case management attorneys review the briefs and record and identify the primary issues raised in

the case. The case management attorneys then assign a numerical weight to the case to reflect the complexity of the case and the number of issues presented. This weighting process is designed to distribute workload evenly among the active judges, as described in Chapter III.

    **b.**    **Research** For cases that are not calendared for oral argument, research attorneys review briefs and records, research legal issues, and draft non-precedential memorandum dispositions for oral presentation to three-judge panels. (Judges also hire term law clerks who may assist with cases that are calendared.)

    **c.**    **Motions** Motions attorneys process all motions filed in a case before a panel is assigned, except for procedural motions handled by the Clerk. The motions unit attorneys also process emergency motions filed pursuant to Ninth Circuit Rules 27-3 and 27-4, and motions for reconsideration of orders filed by motions panels.

**5.**    **Circuit Court Mediators** Circuit Court Mediators are permanent members of the Court staff. They are experienced appellate practitioners who have had extensive mediation and negotiation training. Shortly after a new civil case is docketed, the Circuit Court Mediators review the Mediation Questionnaire to evaluate whether a case appears suitable for the Court's settlement program. *See* Ninth Cir. R. 3-4 and 15-2. The Court's mediation program is discussed in detail in Chapter VI.

**6.**    **Library** The Ninth Circuit library system, headed by the Circuit Librarian, consists of 21 staffed libraries, including the headquarters library in San Francisco and 20 branch libraries located

throughout the Circuit. Court libraries may make their collections available to members of the bar and the general public depending on local court rules.

7.  **<u>Circuit Executive's Office</u>** The Circuit Executive's office is the arm of the Circuit's Judicial Council that provides administrative support to appellate, district court, magistrate, and bankruptcy judges in the Circuit.

C.  **THE JUDICIAL COUNCIL** The Judicial Council, established pursuant to 28 U.S.C. § 332, is currently composed of the Chief Judge, four circuit judges, and four district court judges. The Council convenes regularly to consider and take action upon any matter affecting the administration of its own work, as well as that of all federal courts within the Circuit, including some judicial misconduct complaints.

### III.
### OVERVIEW OF THE APPELLATE PROCESS

I.    THE LIFESPAN OF A CASE IN THE NINTH CIRCUIT







## II.   COURT PROCEDURES FOR PROCESSING AND HEARING CASES

### A.   HOW DOES THE COURT DETERMINE HOW A CASE WILL BE HANDLED?

After briefing is completed, case management attorneys inventory cases to assign the case a numerical weighting by type, issue, and complexity. This process enables the Court to balance judges' workloads and hear unrelated appeals involving similar legal issues at a single sitting. There are four main routes to a decision by the Court: (1) by a three-judge panel, after briefing and oral argument; (2) by a three-judge panel, after briefing and calendaring, but without oral argument; (3) by an oral or written screening panel, to whom staff attorneys have presented the case after briefing; and (4) through motions

practice. The majority of cases are decided without oral argument.

**B.    WHAT HAPPENS WITH CASES ASSIGNED TO A SCREENING PANEL?**

1.    **How are cases assigned to screening calendars?** Screening cases must: (1) be eligible for submission without oral argument under FRAP 34(a); and (2) meet both of the following criteria: (a) the result is clear and (b) the applicable law is established in the Ninth Circuit based on Circuit or Supreme Court precedent.

2.    **What happens after my case is assigned to a screening calendar?** After the Clerk assigns a case to the screening calendar, the Clerk's Office forwards the case materials to the staff attorneys. The staff attorneys then place each screening case on either an oral screening calendar or a written screening calendar.

   a.    **Oral Screening Panel Presentations**

      i.    **What happens before the panel?** Once a case is placed on an oral screening calendar, staff attorneys prepare proposed dispositions of the case, referred to as "memorandum dispositions." An authoring judge is designated for each case presented to the oral screening panel, and the writing assignment rotates among the three panel members.

      ii.    **What happens during the panel?** The staff attorneys orally present the proposed dispositions to the screening panels at periodically scheduled sessions. After the

staff attorneys present each case, the panel members discuss the proposed disposition and make any necessary revisions. If the three panel members unanimously agree with the disposition, the designated authoring judge directs the presenting attorney to certify the proposed disposition for filing pursuant to General Order 6.9.

**iii.** **What happens after the panel?** Cases presented at the oral screening panel are ordinarily decided by unpublished memorandum or order. If, in the judgment of the panel, a decision warrants publication, the resulting order or opinion is included in the Court's internal daily pre-publication report and specifically flagged as a decision arising from a motions or screening panel.

**b.** **Written Screening Panels**

**i.** **How are cases assigned to the written screening panel?** When a written screening panel indicates that it is ready for case assignments (identifying the number of cases that it is prepared to take), Court staff sends the panel the requested number of cases from a pool of cases designated for screening. The panel identifies for the Clerk's Office the judge who will have the writing assignment. The authoring judge prepares and circulates an optional bench memorandum and a proposed disposition for comment and approval.

ii. **How does the written screening panel dispose of cases?** Like dispositions from oral screening panels, cases sent to a written screening panel are ordinarily decided by unpublished memoranda. If the panel has not issued a separate order submitting the case, a footnote in the disposition indicates that the panel unanimously agrees that the case should be submitted on the briefs pursuant to Federal Rule of Appellate Procedure 34(a).

3. **Can a case be reassigned from screening?** Yes. All three judges must agree that the case is suitable for the screening program before a case is disposed of by a screening panel. Any one judge may reject a case from screening if it does not meet the screening criteria, as outlined above. If a case is rejected from screening, it is typically scheduled for the next available argument calendar.

4. **What can I do if my case was adversely decided by a screening panel?** You may file a petition for rehearing and/or rehearing *en banc*. The Clerk forwards the petition to the staff attorney who presented the case to the oral screening panel. That staff attorney then forwards to the panel: (1) a copy of the petition for rehearing and/or rehearing *en banc*; and (2) a memorandum discussing the issues raised in the petition for rehearing and/or rehearing *en banc*.

C. **WHAT HAPPENS WITH CASES SCHEDULED FOR ORAL ARGUMENT?**

1. **How are Court calendars designated?** The Clerk sets the time and place of court calendars at least six months in advance, taking into account the

availability of judges, the number of cases to be
calendared, and the hearing location required by
statute or policy. Judges are randomly assigned by
computer to particular days or weeks on the
calendars to equalize the workload among the
judges. At the time judges are assigned to panels,
the Clerk does not know which cases will be
allocated to each of the panels.

2.   **How are cases allocated to a specific calendar?**
Direct criminal appeals receive preference pursuant
to Federal Rule of Appellate Procedure 45(b)(2) and
are placed on the first available calendar after
briefing is completed. Other cases get priority
hearing dates by statute or rule, such as
applications for temporary or permanent
injunctions, recalcitrant witness appeals, certain
habeas corpus appeals, and appeals alleging
deprivation of medical care to an incarcerated
person. *See* Ninth Cir. R. 34-3. A case's designation
on the Court's calendar is a function of both the
statutory priority and the length of time it has been
pending. Pursuant to Federal Rule of Appellate
Procedure 2, the Court in its discretion may order
that any individual case receive expedited
treatment.

3.   **Are all cases randomly assigned?** Nearly all
cases are randomly assigned. However, a case heard
by the Court on a prior appeal may be set before the
same panel upon a later appeal, and capital cases
will be set before the same panel upon a later
appeal. Ninth Cir. R. 22-2(c). (If the panel that
originally heard the matter does not specify its
intent to retain jurisdiction over any further appeal,
either party may file a motion to have the case
heard by the original panel.) A matter on remand
from the United States Supreme Court is also

referred to the panel that previously heard the
matter. The Court occasionally groups together
cases with similar issues so that they can be
considered by the same panel, and, as with
individual cases, these clusters of cases are
randomly assigned to a panel.

4.  **Where are Court calendars held?** The Court
    posts the specific locations and dates of its sessions
    held in the current year and scheduled for the
    following year on its website, which can be accessed
    through this link:
    https://www.ca9.uscourts.gov/court_sessions/.
    Usually, court calendars, consisting of one week of
    multiple sittings, are held throughout the year in
    the following places:

    - Monthly in San Francisco (usually the second
      week of each month but sometimes two weeks)
    - Monthly in Pasadena (usually the first week of
      each month but sometimes two weeks)
    - 10 times annually in Seattle (usually the first
      week of each month)
    - 6 times in Portland
    - 3 times in Honolulu
    - 2 times in Anchorage and
    - On an ad hoc basis, in other federal courthouses
      throughout the Circuit such as Phoenix, Las
      Vegas, or law schools.

D.  **SELECTION OF PANELS** The Clerk sets the time and
    place of the calendars. The Clerk uses a matrix composed of
    all active judges and senior judges who have indicated their
    availability. The aim is to enable each active judge to sit
    with every other active and senior judge approximately the
    same number of times and to assign active judges an equal
    number of times to each of the locations at which the Court
    holds hearings. At present, all panels are composed of no

fewer than two members of the Court, at least one of whom is an active judge. Every year, each active judge, except the Chief Judge, is expected to sit on 32 days of oral argument calendars; one oral screening panel; one motions panel; and one Certificate of Appealability panel. Senior judges may decide how many cases they want to hear.

1.   **Why is there a judge on my panel who is not a Ninth Circuit judge?** The Court on occasion calls upon district judges and judges from other circuits to sit on panels when there are not enough Ninth Circuit judges to constitute a panel. Under Court policy, district judges do not participate in appeals from their own districts.

E.   **WHAT HAPPENS AFTER MY CASE HAS BEEN ASSIGNED TO A PANEL?** After the cases have been assigned to the panels, the briefs and excerpts of record in each case are distributed to each of the judges scheduled to hear the case. The documents are usually received in the judges' chambers twelve weeks prior to the scheduled date for hearing, and it is the policy of the Court that each judge read all of the briefs prior to oral argument.

1.   **ORAL ARGUMENT** Roughly sixteen weeks before a calendar, the Court will send a pre-calendaring notice to the parties that a case is being considered for oral argument during that particular calendar. The parties have 3 days from receiving the notice to notify the Court of any conflicts with those dates. The Clerk subsequently sends a hearing notice to all counsel of record approximately ten weeks prior to the date of oral argument. The hearing notice advises of the location and date of the argument and the amount of time allotted for argument, but does not identify the judges on the panel.

a. <u>**How long does it take from the time of the notice of appeal until oral argument**</u>? For non-priority civil, agency, or bankruptcy appeals, cases are typically scheduled for oral argument 12-18 months from the notice of appeal date. If briefing is not extended or delayed, this is generally 6-10 months from completion of briefing. For criminal appeals, cases are typically scheduled for oral argument 4-5 months after briefing is complete.

b. <u>**When are the identities of the judges on a panel disclosed**</u>? The names of the judges on each panel are released to the parties and general public on the Monday of the week preceding argument.  The panel members are listed on the oral argument calendar on the Court's website at https://www.ca9.uscourts.gov/calendar/.

c. <u>**Will my case actually get oral argument**</u>? Merits panels often decide appeals "on the briefs" (meaning without oral argument) even after they are placed on an argument calendar. If the panel determines that oral argument is unlikely to enhance their review and decision-making, the panel will notify the parties of this determination as soon as possible after the case is calendared. However, cases may in rare instances be submitted without oral argument as late as the day of argument.

F. **WHAT HAPPENS AFTER ORAL ARGUMENT?** At the conclusion of each day's argument session, the judges on each panel confer on the cases they have heard. Each judge expresses his or her tentative views, and the judges vote in reverse order of seniority. The judges reach a tentative decision regarding the disposition of each case and whether it should be in the form of a published opinion or

unpublished memorandum. The presiding judge then assigns each case to a judge for the preparation and submission of a disposition.

**G.    HOW LONG DOES IT TAKE FROM THE TIME OF ARGUMENT TO THE TIME OF DECISION?** The Court has no time limit, but most cases are decided within 3 months to a year.

**H.    CAN I SEEK REHEARING?** Yes, you may petition the Court for a rehearing of your case by the panel that decided it or a rehearing by the Court *en banc*. The process for doing so is discussed in Chapter XII of this guide (Post-Decisional Processes).

**I.    HOW LONG DOES IT TAKE TO DECIDE A PETITION FOR PANEL REHEARING OR PETITION FOR REHEARING *EN BANC*?** The Court has no time limit. A decision on a petition for rehearing *en banc* may take a few months.

**J.    IS THERE A PROCESS FOR SPECIAL MANAGEMENT OF COMPLEX CASES?** Yes, a party may request, or the Court may order *sua sponte*, special management for complex appeals. If special management is ordered, Court staff will schedule a case management conference to manage the appeal effectively and develop a briefing plan. However, case management conferences are held only in exceptional circumstances, such as complex cases involving numerous separately represented litigants or extensive district court or agency proceedings.

**IV.**
## FILING AN APPEAL IN THE NINTH CIRCUIT: HOW TO GET STARTED

> ***Practice Tip:*** **Many of the subjects covered in this section are addressed in greater detail in the Ninth Circuit's Appellate Jurisdiction Outline:**
> **http://www.ca9.uscourts.gov/guides/appellate_jurisdiction.php.**

## I.    FILING A NOTICE OF APPEAL

**A.    WHY FILE?** Filing a timely Notice of Appeal is the necessary first step to initiating an appeal in the Ninth Circuit. In essence, the filing of a notice of appeal divests the district court of jurisdiction over the appealed matter and transfers jurisdiction to the Ninth Circuit. Filing a notice of appeal is the appropriate method for initiating a direct appeal in the Ninth Circuit. The notice of appeal is the proper vehicle for appealing final judgments and certain interlocutory or collateral orders. The deadlines for filing are discussed below.

**1.    What is a final judgment?** A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). As a general matter, the following orders are final, and thus should be appealed via the filing of a Notice of Appeal:

- Orders dismissing a complaint without leave to amend;
- Orders granting summary judgment as to all claims; and
- Judgments imposing a sentence in a criminal case.

2. **Which interlocutory orders are appealable?**
Rulings that decide some issue(s) in the case, but not
the whole case, are "interlocutory orders." Certain
interlocutory orders, though not final, may also be
appealed by filing a Notice of Appeal. The most common
example is an order granting or denying a motion for
injunctive relief. Whether the motion seeks preliminary
or permanent relief, the non-prevailing party may bring
a direct appeal of the district court's order pursuant to
28 U.S.C. § 1292(a)(1). Other examples include certain
interlocutory orders in admiralty cases (28 U.S.C.
§ 1292(a)(3)), and certain interlocutory orders involving
arbitration proceedings (9 U.S.C. § 16).

3. **What is an appealable collateral order?** The
collateral order doctrine allows appeals from
interlocutory rulings (preceding final judgment) so long
as those rulings conclusively decide an issue separate
from the merits of the case and would be effectively
unreviewable after final judgment. *Cohen v. Beneficial
Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Such
rulings are deemed "final" within the meaning of 28
U.S.C. § 1291. A common example of an immediately
appealable collateral order in the Ninth Circuit is a
district court's ruling on a motion to strike brought
under California's anti-SLAPP statute, California Code
of Civil Procedure § 425.16. *See, e.g., DC Comics v. Pac.
Pictures Corp.*, 706 F.3d 1009, 1011 (9th Cir. 2013).

## B.   HOW TO FILE

1. **The Notice of Appeal** Parties must file their Notice
of Appeal with the district court, not the Ninth Circuit.
A form Notice of Appeal ("Form 1") can be downloaded
from the Ninth Circuit's website:
https://www.ca9.uscourts.gov/forms/. Pursuant to
Federal Rule of Appellate Procedure 3(c), the Notice of

Appeal must contain the following information:

- The party or parties taking the appeal;
- The judgment, order, or part thereof being appealed; and
- The name of the court to which the appeal is taken (*i.e.*, the "United States Court of Appeals for the Ninth Circuit").

In addition, the Notice of Appeal must be signed by the appealing party or the party's attorney. *See McKinney v. De Bord*, 507 F.2d 501, 503 (9th Cir. 1974). Form 1 has a fill-in field for an electronic signature at the very bottom of the page.

2. **Filing Fee** Parties in civil cases must also pay the filing fee to the district court, unless they have previously been allowed to proceed *in forma pauperis*.

3. **Representation Statement** In a civil case, a represented party filing a Notice of Appeal must contemporaneously file a Representation Statement, which identifies the parties and includes the names, addresses, and telephone numbers of the parties' respective counsel. You have the option of using Ninth Circuit Form 6 for your Representation Statement, by attaching that completed form to your Notice of Appeal for filing in the district court. Self-represented litigants and counsel in other (non-civil) cases are encouraged to file a Representation Statement, but they are not required to do so. Be sure to follow the helpful instructions that accompany Form 6. https://www.ca9.uscourts.gov/forms/. It is critical that you review the counsel and party listing for the new appeal to ensure that it accurately lists the parties and their counsel.

4. **Mediation Questionnaire** After the appellant files a
   Notice of Appeal in a civil case, the Clerk of the Court
   will distribute a Mediation Questionnaire (along with
   the Court's scheduling order). Within seven days after
   a counseled civil appeal is docketed, the appellant *must*
   and the appellee *may* complete and submit the Ninth
   Circuit Mediation Questionnaire (Form 7 available at:
   https://cdn.ca9.uscourts.gov/datastore/uploads/forms/fo
   rm07.pdf). The Mediation Questionnaire is a public
   document that will appear on the Court's docket. Once
   it is submitted for filing, the parties will receive a link
   to a webform they can use to submit additional,
   confidential information directly to the Circuit
   Mediators. In the past, civil appellants were required
   to file a Docketing Statement, which required a brief
   statement of the issues to be raised on appeal. Because
   the Mediation Questionnaire has superseded the
   Docketing Statement, appellants no longer need to file
   a Docketing Statement.

5. **Petitions for Review in Agency Cases** The process
   for reviewing an agency order in the Ninth Circuit is
   initiated by filing a Petition for Review, rather than a
   Notice of Appeal. A form Petition for Review is
   available on the Court's website:
   https://cdn.ca9.uscourts.gov/datastore/uploads/forms/fo
   rm03.pdf.

---

*Practice Tip:* Unlike a Notice of Appeal, which is filed with the
district court,  a Petition for Review must be filed with the Ninth
Circuit.

## C.    WHEN TO FILE

1.    **30-Day Deadline in Civil Case** In a civil case, the Notice of Appeal must be filed within 30 days of entry of the appealed judgment or order. Fed. R. App. P. 4(a)(1)(A). However, when one of the parties is the United States, a United States agency, or a United States officer or employee sued in an official capacity or in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf, the time to appeal is 60 days. Fed. R. App. P. 4(a)(1)(B).

> ***Practice Tip:*** The deadline for filing a Notice of Appeal is jurisdictional in civil cases, and the late filing of an NOA can doom a case (whether civil or criminal). Act promptly; there is no penalty for filing a Notice of Appeal well before the deadline.

> ***Practice Tip:*** Habeas corpus cases are considered civil cases. Accordingly, appeals from the denial of 28 U.S.C. § 2254 motions are subject to the 30-day appeal deadline. However, appeals from the denial of motions under 28 U.S.C. § 2255 are subject to the 60-day deadline because the United States is the responding party.

2.    **14-Day Deadline for Defendants in Criminal Cases** In a criminal case, the defendant must file a Notice of Appeal within 14 days of entry of the appealed judgment or order. Fed. R. App. P. 4(b)(1)(A). When the government is entitled to appeal, its Notice of Appeal must be filed within 30 days. Fed. R. App. P. 4(b)(1)(B). If the government files an appeal, the defendant has 14 days from the filing of the government's Notice of Appeal, or the time otherwise prescribed under Federal Rule of Appellate Procedure 4(a), whichever ends later, to file a notice of cross-appeal. In criminal cases, the deadline to appeal is not jurisdictional but is a claim-processing rule subject to

forfeiture. *United States v. Sadler*, 480 F.3d 932, 941-42 (9th Cir. 2007).

3. **Varied Deadlines in Agency Cases** The time limit for filing a Petition for Review varies by agency and will depend on the terms of the statute authorizing judicial review. Typical deadlines range from 30 to 60 days, but vary significantly depending on the statute. One of the most common deadlines is the 30-day deadline to appeal a final order of removal in immigration cases (8 U.S.C. § 1252(b)(1)). As in civil cases, the deadline for filing a Petition for Review is jurisdictional, and an untimely Petition will be dismissed.

D. **CROSS-APPEALS** If one party timely files a Notice of Appeal, any other party can file its own Notice of Appeal within 14 days of the filing of the first notice, or within the time otherwise prescribed under Federal Rule of Appellate Procedure 4(a), whichever period ends later. The party who files a Notice of Appeal first is the appellant for the purposes of Federal Rules of Appellate Procedure 28, 30, and 34. If notices are filed on the same day, the plaintiff in the proceeding below is the appellant. These designations may be modified by the parties' agreement or by court order.

E. **APPEALS BY PERMISSION** Prior to the entry of final judgment, district court rulings generally are not subject to appellate review. In certain instances, however, a party can seek and obtain permission to directly appeal an interlocutory ruling to the Ninth Circuit. Appeals by permission generally fall within two categories:

- Appeals in which the party seeking review first seeks *and* obtains certification from the court being reviewed (*i.e.*, the district court, bankruptcy appellate panel, or bankruptcy court);

- Appeals in which no certification from the district court is required.

Prior to receiving permission to appeal, a would-be appellant must first file a Petition for Permission to Appeal in the Ninth Circuit under Federal Rule of Appellate Procedure 5. If the Ninth Circuit grants permission, the appeal will be docketed.

> ***Practice Tip:*** Appeals by permission are distinct from interlocutory appeals and mandamus and other extraordinary writs. For example, there is an automatic right to appeal a judgment certified under Federal Rule of Civil Procedure 54(b) and a district court order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1).

## 1.    Examples of appeals by permission

a.    **28 U.S.C. § 1292(b)** A district court can certify for appeal an interlocutory ruling in a civil case that otherwise would not be appealable. For the district court to certify its order for appellate review, the order must involve "a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Immediate appellate review should "materially advance the ultimate termination of the litigation." *Id.*

- A petition for permission to appeal cannot be filed without the district court's certification, and the district court's denial of certification under Section 1292(b) is not subject to review.

- Certification by the district court alone is not enough. If the district court certifies its order, "[t]he Court of Appeals may thereupon, *in its discretion*, permit an appeal to be taken from such order ...." *Id.* (emphasis added).

- A petition for permission to appeal under 28 U.S.C. § 1292(b) must be filed in the Court of Appeals **within 10 days** of the district court's certification. This requirement is jurisdictional.

**b.**    **Class certification** A petition for permission to review a district court's order granting or denying class certification can be filed under Federal Rule of Civil Procedure 23(f). A discretionary appeal under Rule 23(f) does not require any certification by the district court. The petition must be filed in the Court of Appeals **within 14 days** of the district court's class certification order. This requirement is NOT jurisdictional but failure to file a timely petition can result in dismissal. *See Nutraceutical Corp. v. Lambert*, 139 S.Ct. 710 (2019) (Rule 23(f)'s 14-day deadline is not subject to tolling).

> ***Practice Tip***: Rule 23(f) petitions are governed by FRAP 5 and are processed like motions, such that responses are allowed under FRAP 5(b)(2) and Circuit Rule 5-2. Replies are also permissible. Although the rules are silent on replies (and thus there is no set deadline), because Rule 23(f) petitions are processed like motions, it is advisable to file any reply within the seven days prescribed by FRAP 27(a)(4).

**c.**    **Interlocutory bankruptcy appeals** Certain bankruptcy rulings can be directly reviewed by the Court of Appeals with permission from *both* the court being reviewed (*i.e.*, the district court,

bankruptcy appellate panel, or bankruptcy court) *and* the Court of Appeals under 28 U.S.C. § 158(d)(2). The petition must be filed in the Court of Appeals within 30 days of the certification order. This requirement is NOT jurisdictional but failure to file a timely petition can result in dismissal.

d. **Review of remand rulings under 28 U.S.C. § 1453(c)** Under the Class Action Fairness Act, "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed...." 28 U.S.C. § 1453(c). A discretionary appeal under 28 U.S.C. § 1453(c) does not require any certification by the district court. A petition for permission to appeal under 28 U.S.C. § 1453(c) must be filed in the Court of Appeals **within 10 days** of the district court's order granting or denying remand. This requirement is jurisdictional.

*Practice Tip:* Appeals by permission do not automatically stay the district court proceeding. A stay must be obtained from either the district court or the court of appeals.

2. **Procedure** A petition for permission to appeal is filed in the Court of Appeals. Federal Rule of Appellate Procedure 5 sets forth the requirements for filing the petition.

- No filing fee is initially required to file the petition.

- An answer in opposition or cross-petition is due 10 days after the petition is served. *Note*: There is

no requirement that an answer to the petition be filed, and the Court of Appeals can grant or deny a petition even in the absence of one.

- If the petition is granted, the appellant must pay the required fees within 14 days. There is no fee for filing a petition for permission to appeal in the Court of Appeals; the fee is payable to the District Court if permission is granted.

## F.    EXTRAORDINARY WRITS

1.    **Statutory Authority** Federal courts are empowered to issue extraordinary writs by the All Writs Act, 28 U.S.C. § 1651: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

2.    **Types of Writs** There exist a variety of writs "agreeable to the usages and principles of law," appearing under a colorful variety of Latin names. The two most commonly filed in the Court of Appeals in pursuit of a quasi-appellate remedy are writs of mandamus and prohibition. A writ of mandamus invokes the original jurisdiction of the appellate court to order an inferior tribunal (*i.e.*, a district court or, sometimes, an administrative agency over which the Court of Appeals has appellate jurisdiction) to do (or to refrain from doing) some action where the petitioner can satisfy the court that grounds for such an order exist. A writ of prohibition is similarly an order from the appellate court to the inferior tribunal that directs the inferior tribunal to cease any actions taken outside its proper jurisdiction.

3.   **Standards for Issuance of the Writ** In the Ninth Circuit, the standards for issuing the writ were set out in *Bauman v. United States District Court*, 557 F.2d 650 (9th Cir. 1977). That decision set out five "guidelines" governing whether the writ should issue: (1) whether the petitioner has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on subsequent appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression.

The first two factors must be met. The others give weight one way or the other, but are more flexible. Obviously, it would not be possible to establish both that the underlying order was clearly erroneous and that the order raises an issue of first impression.

> *Practice Tip:* Interlocutory or "piecemeal" appeals run very much against the grain of modern federal appellate jurisprudence. Therefore, possibly the most critical aspect of your petition is your demonstration that (a) the matter you want reviewed is not appealable right now; and (b) some significant loss will be suffered before a post-judgment appeal that cannot be remedied on post-judgment appeal. You may safely assume that the expense, delay, and annoyance of enduring the litigation through final judgment will not qualify as such a loss, unless petitioner has an immunity or similar right to avoid the litigation altogether.

4.   **Style of the Petition, Where Filed, and Fees**

a.   **Style** Since writs of mandamus and prohibition are original actions by the petitioner against the lower tribunal, they were historically styled "[Name of Petitioner] v. [Name of Tribunal]; [Name of opposing party in lower court], Real

Party in Interest." However, the Federal Rules of Appellate Procedure now require that they be styled "In re [name of petitioner]," Fed. R. App. P. 21(a)(2)(A), which is then followed by the traditional caption.

b.   **Where filed** Petitions for writs of mandamus and prohibition are filed in the United States Court of Appeals, NOT the lower tribunal, though a copy must be furnished to the judge of the tribunal whose order is sought to be reviewed. Fed. R. App. P. 21(a)(1). There is a $500 filing fee, payable to the Clerk of the Court of Appeals.

c.   **Form** The form of the petition is governed by Circuit Rule 21-2. The petition must be limited to 30 pages or 8,400 words (pursuant to Ninth Circuit Rule 32-3(2)). Only an original must be filed, no copies are required unless the Court directs otherwise. The petition may, but need not be filed electronically, though answers (if called for) must be filed electronically unless the filer is exempt from electronic filing requirements.

5.   **<u>Disposition of the Petition</u>** The Court of Appeals can deny the petition without more. It may call for a response. Though the Court of Appeals has theoretical power to grant a writ without first calling for a response, it very rarely does so. The opposing party should not file a response unless and until requested to do so by the Court. An immediate reply without awaiting an invitation from the Court might, however, be appropriate in cases where the petitioner also seeks a stay of proceedings in the lower tribunal. Argument in such cases should be focused on opposition to the stay (though such argument might, in some cases, unavoidably involve addressing the merits of the

petition itself).

Petitions for writs of mandamus (and others) are referred to the motions panel. The motions panel may deny the petition, call for a response and retain jurisdiction to decide the petition, direct that the petition and response be presented to a subsequent motions panel, or direct that the petition and response be referred to a merits panel for disposition.

6. **Alternative Appeals or Petitions for Mandamus** It is not always clear whether an order that is not a final judgment might be appealable under the "collateral order" doctrine, appealable by permission, or reviewable by mandamus. In such situations, it is permissible to ask the Court of Appeals to hear the matter on appeal, or, in the alternative, to treat the appeal as a writ of mandamus. Keep in mind that even in this situation, the Notice of Appeal must be filed in the district court, and the petition for a writ of mandamus must be filed in the Court of Appeals.

> ***Practice Tip:*** As noted above, a party may not file an opposition to a petition for mandamus without the court asking for a response. If, however, the party seeking mandamus also files a motion for a stay, the opposing party is not precluded from filing an opposition to the motion for a stay.

II. **ORDERING THE TRANSCRIPT** In order for the official reporter's transcript of oral proceedings before the district court to be considered by the Ninth Circuit, the parties first must order the transcript. The filing of the Notice of Appeal triggers the designation/ordering process and deadlines may arrive before an appellant is provided with a Ninth Circuit case number and schedule. Ninth Circuit Rule 10-3 establishes the rules governing the ordering of the reporter's transcript. Please note, however, that Circuit Rule 10-3.1(a) allows the parties to stipulate to the portions

of the transcript to be ordered and bypass the somewhat cumbersome designation/cross-designation process.

**A.    CIVIL APPEALS** In a civil case, and where the appellant intends to order less than the entire transcript, the first step in the process requires the appellant to serve on the appellee a statement specifying which portions of the transcript the appellant intends to order from the court reporter, as well as a statement of the issues the appellant intends to present on appeal. *See* Ninth Cir. R. 10-3.1.

> ***Practice Tip:*** If the appellant intends to order the entire transcript, he or she need not serve a transcript statement. Why? Because if the appellant is ordering all transcripts, there is no need for the appellee's input.

The notice and statement must be served on the appellee within 10 days of filing the notice of appeal, or within 10 days of the entry of an order disposing of the last timely filed post-judgment motion of a type specified in Federal Rule of Appellate Procedure 4(a)(4).

> ***Practice Tip:*** The appellant's first obligation is to communicate with the appellee—as opposed to a court or the court reporter—regarding the transcripts the appellant intends to order.

Next, the appellee may respond to the appellant's initial notice by serving on the appellant a list of any additional portions of the transcript that the appellee deems necessary to the appeal. If the appellee elects to respond, the response must be served within 10 days of the service date of the appellant's initial notice. <u>Within 30 days of filing the Notice of Appeal, the appellant must file a transcript designation order form with the district court</u>. Transcript designation order forms should be obtained or downloaded from the district court.

- 33 -

> ***Practice Tip:*** Transcript order forms must be obtained from and filed by the appellant with the district court, not the Ninth Circuit.

For civil appeals, the interval between receipt of appellee's cross-designation and the due date to designate the transcripts is intended to provide a period to contact the reporter and ascertain what advance financial arrangements are to be completed on or before the date the transcript is ordered. Per Ninth Circuit Rule 10-3.1, financial arrangements must be completed on or before the date the transcript is ordered. The transcript is considered ordered only after the designation form has been filed *and* arrangements for payment have been made with the court reporter(s).

> ***Practice Tips:*** Parties should be aware that pauper status in civil cases does not create an automatic entitlement to free transcripts. Under 28 U.S.C. § 753(f), unless the order granting pauper status includes permission to obtain transcripts at government expense, appellants in civil cases (including appeals from the denial of a 28 U.S.C. § 2255 motion) must specifically move for production of transcripts at government expense. Although the statute permits filing the motion in either the district or appellate court, it's wise to make the initial request in the district court. If the district court denies the motion, appellant may renew the motion in the appellate court.

**B.    CRIMINAL APPEALS** In a criminal case, the appellant must serve on the appellee a notice listing the portions of the transcript the appellant will order from the court reporter, as well as a statement of the issues the appellant intends to present on appeal. (If, however, the appellant is ordering the entire transcript, a statement of issues is not necessary.) This notice and statement must be served on the appellee within 7 days of the filing of the notice of appeal or within 7 days of the entry of an order disposing of the last timely filed

post-judgment motion of a type specified in Federal Rule of Appellate Procedure 4(b)(3). *See* Ninth Cir. R. 10-3.2.

Within 7 days of the service of the appellant's initial notice, the appellee may serve on the appellant a response specifying what additional portions of the transcript are necessary to the appeal.

Within 21 days from the filing of the Notice of Appeal, the appellant must file a transcript designation form in the district court. Forms should be obtained or downloaded from the district court and can vary depending on the district and whether counsel is retained or appointed. For cases where the appellant is represented by counsel under the Criminal Justice Act, the procedures for paying for the transcript are covered in the Right to Counsel chapter of this guide.

In practice, these deadlines can be missed or extended, often because of a change in counsel. If a new briefing schedule is not established, thereby allowing a delayed date for designating the transcripts, counsel should file a motion for leave to file a late transcript designation with the Ninth Circuit.

*Practice Tips:* The deadlines for ordering the reporter's transcript are shorter in criminal appeals. The parties have 7 days from the date of the filing of the Notice of Appeal, as opposed to 10, to file their respective notices. And the appellant must order the transcript within 21 days from the filing of the Notice of Appeal, as compared to 30 days in a civil case.

Attorneys appointed under the Criminal Justice Act are advised that the client's pauper status does not automatically entitle appellant to transcripts of opening and closing argument, jury instructions or jury selection. The district judge must specifically authorize preparation of those transcripts via a notation on the reporter's payment voucher. If you want those transcripts produced, check with the court reporter supervisor about any special requirements.

When the appellant is represented by retained counsel, the appellant must make arrangements with the court reporter(s) on or before the day the transcript designation form is filed with the district court to pay for the transcripts.

**C.**   **LATE TRANSCRIPTS** The Clerk of the Court will circulate a scheduling order shortly after the Notice of Appeal is filed. That order will establish a deadline for the filing of all trial transcripts. If a transcript is not filed within the time established by the scheduling order (or within any extension of time granted by the Court), the appellant must file a notice of reporter default within 21 days after the transcript due date, pursuant to Ninth Circuit Rule 11-1.2. The notice must be served on both the court reporter and the reporter's supervisor. A reporter's motion for an extension of time relieves you of the obligation to file a Rule 11-1.2 notice unless other reporters are in default.

Ninth Circuit Rule 11-1.2 establishes the requisite contents of a Notice of Reporter Default, and requires notice of when the transcripts were designated, when financial arrangements were made, the dates of hearings for which transcripts have not been prepared, and the name of the reporter assigned to those hearings. Rule 11-1.2 also requires the appellant to describe the contacts made with the reporter and the reporter's supervisor in an effort to resolve the default informally. The Court treads carefully when dealing with reporters, so including all the required recitals is important.

*Practice Tips:* Before filing a Notice of Reporter Default, the appellant is required to contact the court reporter and the court reporter's supervisor about the uncompleted transcripts. Each district is required to designate a court reporter supervisor; the supervisor can serve as an effective troubleshooter and problem solver with regard to transcript management problems.

# V.
# THE RIGHT TO COUNSEL ON APPEAL

**I.** **WHAT IS THE RIGHT TO COUNSEL ON APPEAL?** The Constitution guarantees defendants in federal criminal cases the right to be represented by counsel on a direct appeal from a federal criminal conviction, which includes the right to have an attorney appointed if the defendant cannot afford to retain one. While the Constitution does not require that counsel always be provided to petitioners in habeas corpus appeals, the Ninth Circuit has observed that, in some situations, counsel should be appointed to ensure due process. The procedures, along with additional statutory guarantees of appointed counsel for both criminal and habeas corpus cases, are set out in the Criminal Justice Act of 1964, 18 U.S.C. § 3006A ("CJA"), and Ninth Circuit Rule 4-1.

> ***Practice Tip:*** There is no constitutional or general statutory right to the appointment of counsel in civil cases. In particular, counsel cannot be appointed under the provisions of the CJA in prisoner and other civil rights cases arising under 42 U.S.C. § 1983 ("1983 actions"). The Court does, however, have a pro bono program for civil and agency appeals. If you are a *pro se* litigant and would like to have an attorney appointed to represent you, you must first have a pending appeal filed in this Court. You can then file a motion for appointment of counsel with the Clerk of the Court. For more information, see http://www.ca9.uscourts.gov/probono/.

**A.** **THE CRIMINAL JUSTICE ACT AND RULE 4-1** The CJA provides for the appointment and payment of counsel and for payment of ancillary services (interpreters, experts, paralegals, transcripts, etc.) necessary for adequate representation, including on appeal. The CJA also provides that the Court, in its discretion, may appoint attorneys to represent habeas corpus petitioners or others seeking collateral relief "when the interests of justice require."

If counsel is appointed to represent an eligible individual under the CJA, that individual continues to be entitled to representation in "every stage of the proceedings .

. . through appeal." 18 U.S.C. § 3006A(c). Whether counsel continues from the district court, or is appointed in the first instance on appeal (as happens in some habeas cases, and in criminal cases in which the defendants represented themselves in the district court), the representation continues through the resolution of any petition for writ of *certiorari* and all "ancillary matters appropriate to the proceedings." *Id*.

In habeas corpus cases arising under 28 U.S.C. § 2254, the Ninth Circuit generally appoints counsel when a certificate of appealability ("COA") has been granted by the Circuit or district court, or when a writ has been granted by the district court and the respondent initiates the appeal.

When the Ninth Circuit issues an order granting a COA, the order usually contains language providing for the appointment of counsel, but giving the habeas corpus appellant the option of retaining *pro se* status. This option is not generally available to appellants in direct criminal appeals.

> **Practice Tip:** If you are a pro se habeas petitioner and counsel has not been appointed in a case where a COA has already issued or it is a respondent's appeal from the grant of relief in the district court, you can request the appointment of counsel by filling out and signing (under penalty of perjury) a CJA 23 Form (*see* § I.C. below for link) and submitting it to the Court along with a request for the appointment of counsel.

Ninth Circuit Rule 4-1 addresses most of the important questions on the duties of counsel, the withdrawal or appointment of counsel, and self-representation on appeal. It provides that counsel appointed in the district court pursuant to the CJA shall continue as counsel on appeal unless and until relieved by the Ninth Circuit. (This continuity of counsel rule also applies to retained counsel.) Unless appointed counsel moves to withdraw, their prior appointment generally

will continue for the appeal and they will be provided a new payment voucher for handling it. No further action is required of appointment counsel for their appointment to continue.

Although Rule 4-1 is entitled "Counsel in Criminal Appeals," the provisions apply to any case where the client is entitled to the appointment of counsel under the CJA, including habeas matters.

**B.    WHO DECIDES WHETHER OR NOT TO APPEAL?**
Criminal defense counsel must consult with the client in order to determine if the client desires to pursue an appeal. If the client wants to pursue an appeal, Ninth Circuit Rule 4-1 and governing professional standards *require* that *counsel* file the notice of appeal. This is true even when the criminal case was resolved through a plea agreement that included an appellate waiver, or when the attorney believes there are no non-frivolous appellate issues.

> *Practice Tip:* Unless the mere filing of a Notice of Appeal is a breach of a favorable plea agreement, doubts as to whether to appeal should be resolved in favor of filing the notice. The appeal can be withdrawn later if appellant wishes by filing a motion for voluntary dismissal.

**C.    WHO IS COUNSEL ON APPEAL?** The Ninth Circuit follows a policy of continuity of counsel from district court to appellate court proceedings. The attorney listed as counsel of record in the district court proceedings—whether retained, appointed, or pro bono—continues as counsel for purposes of appeal unless and until relieved by the Ninth Circuit. *See* Ninth Cir. R. 4-1.

If the client was represented by CJA counsel in the district court, the finding that the client qualified for appointment of counsel under the CJA (*in forma pauperis*)

- 39 -

continues to apply for purposes of the appeal—it is not necessary to file a new financial affidavit—and the appeal can be filed without the prepayment of fees and costs or security.

If the client had retained pro bono counsel or proceeded *pro se* and was never found by a court to qualify for representation or services under the CJA, then an application for indigent status on appeal must be filed. Retained counsel, or the appellant (if he or she was *pro se* in the district court), should file a Form 23 CJA Financial Affidavit (available at this link: https://www.ca9.uscourts.gov/forms/).

Each district has a panel of attorneys qualified to handle appeals, and orders from the Ninth Circuit directing the selection of counsel are sent to the appointing authority for that district. This process helps to ensure that an attorney with relevant appellate court experience is assigned to handle the appeal.

**D.    WHAT IF COUNSEL AT THE DISTRICT COURT LEVEL WISHES TO WITHDRAW FROM THE APPEAL?** Ninth Circuit Rule 4-1(c) provides that either retained or appointed counsel who desires to withdraw from the appeal should file a motion so stating with the Clerk of the Court "within 21 days after the filing of the notice of appeal and shall be accompanied by a statement of reasons" along with:

**1.**    A substitution of counsel which indicates that new counsel has been retained to represent defendant;

**2.**    A motion by retained counsel on behalf of the client for leave to proceed *in forma pauperis* and for appointment of counsel under the Criminal Justice Act, supported by a completed financial affidavit (Form 23 CJA

Financial Affidavit, accessible here:
https://www.ca9.uscourts.gov/forms/);

**3.**    A motion by appointed counsel to be relieved and for the appointment of substitute appointed counsel;

**4.**    A motion by defendant to proceed *pro se*; or

**5.**    An affidavit or signed statement from the defendant showing that the defendant has been advised of his or her rights with regard to the appeal and expressly stating that the defendant wishes to dismiss the appeal voluntarily.

The motion must be served on the client and must provide the client's current address.

Although the Rule states that the motion is to be filed within 21 days of the filing of the Notice of Appeal, later-filed motions are generally entertained. Counsel should plan ahead and file the motion as soon as possible. Most attorneys file it as soon as a case number has been assigned to the appeal.

If after conscientious review of the record, appointed counsel believes the appeal is frivolous, on or before the due date for the opening brief, appointed counsel shall file a separate motion to withdraw and an opening brief that identifies anything in the record that might arguably support the appeal, with citations to the record and applicable legal authority. *See* Ninth Cir. R. 4-1(c)(6). The motion and brief must be accompanied by a proof of service on defendant, and the cover of the brief shall state that it is being filed pursuant to *Anders v. California*, 386 U.S. 738 (1967). Counsel should also designate all appropriate reporter's transcripts and include them in the excerpts of record. The filing of the motion, brief, and excerpts will vacate the previously established briefing schedule. The Court will

then set a briefing schedule allowing the defendant to file a *pro se* supplemental brief and directing appellee by a certain date to either file an answering brief or notify the Court by letter that no answering brief will be filed.

As a practical matter, counsel should be aware that filing an *Anders* brief can be a time-consuming process that will delay the disposition of the appeal. Counsel wishing to raise issues that may currently be foreclosed under the law are not limited to an *Anders* brief. Those issues may be included in a standard opening brief so long as counsel clearly identifies and acknowledges the contrary and controlling authority.

> ***Practice Tips:*** A common mistake made by retained counsel is failing to file the notice of appeal under their name as counsel of record, and instead filing it under the client's own name and address. It can take quite a while for the Court to catch this error, and then issue the inevitable order to counsel, referencing Ninth Circuit Rule 4-1(a), entering counsel as counsel of record on appeal, and directing counsel that they must comply with Ninth Circuit Rule 4-1(c) by filing the pertinent motion if they desire to be relieved as counsel.
>
> Unlike criminal appeals, if a *pro se* litigant files the notice of appeal in a civil case, the court assumes the appellant is *pro se* even if the litigant had counsel in the district court.

**E.    WHAT ABOUT SELF-REPRESENTATION ON APPEAL?** While criminal defendants have a constitutional right to represent themselves in the trial court, this is not the case on appeal. If an individual appellant wants to proceed *pro se*, a motion requesting this relief must be filed. Ninth Circuit Rule 4-1(d) provides as follows:

> The Court will permit defendants in direct criminal appeals to represent themselves if: (1) the defendant's request to proceed *pro se* and the waiver of the right to counsel are knowing, intelligent and unequivocal; (2) the defendant is

apprised of the dangers and disadvantages of self-representation on appeal; and (3) self-representation would not undermine a just and orderly resolution of the appeal. If, after granting leave to proceed *pro se*, the Court finds that appointment of counsel is essential to a just and orderly resolution of the appeal, leave to proceed *pro se* may be modified or withdrawn.

Permission to proceed *pro se* on appeal is granted only in rare cases, after a hearing at which the defendant appears in person or by videoconference. Counsel may be required to appear at this hearing.

**F.    POST-APPEAL DUTIES AND PROCEEDINGS** If the appeal is successful, the matter will either conclude at that stage or be remanded to the district court for further proceedings, unless the opposing party petitions for rehearing and/or rehearing *en banc* or certiorari. If the case is remanded, any change of counsel will be handled in the district court.

If the appeal is not successful, either in whole or in part, Ninth Circuit Rule 4-1(e) directs counsel, whether retained or appointed, to advise the client within 14 days after the entry of judgment or denial of a petition for rehearing and/or rehearing *en banc* of the right to initiate further review by filing a petition for writ of *certiorari* with the United States Supreme Court.

If the client wants to pursue *certiorari*, but in counsel's considered judgment there are no non-frivolous grounds consistent with the standards for filing a petition (*see* Supreme Court Rule 10), the Court directs that counsel notify the client that counsel intends to move the Court for leave to withdraw as counsel of record if the client insists on filing the petition. The rule additionally requires that any

- 43 -

motion to withdraw as counsel must be made within 21 days of the judgment or denial of rehearing and shall state what efforts have been made to notify the client. If counsel is unable to notify the client, the Court must be informed.

If counsel does not move to be relieved of his or her appointment, counsel's representation continues through filing a petition for writ of *certiorari* or providing representation when an opposing party files a petition for writ of *certiorari*, up to and including briefing and argument at the United States Supreme Court.

If a defendant with retained counsel or a defendant who has been *pro se* during the appeal is financially eligible for appointed counsel and wants the assistance of counsel for the filing of the writ, a motion for appointment of counsel with the required Form 23 CJA Financial Affidavit can be filed at this point in the proceedings.

No matter what the stage of the proceedings, the Court expects counsel to communicate with the client and provide information and updates on the status of the litigation, the possible issues to be included and addressed on appeal, and substantive and procedural choices.

**G.   GETTING PAID** Payment vouchers should be issued to appointed counsel within 2 weeks after (1) the notice of appeal is filed or (2) the date of an order appointing new or substitute counsel. Practitioners should contact the Clerk's Office if the voucher hasn't been received within 30 days after the filing of the Notice of Appeal or the date of the new or substituted counsel order.

Claims are to be submitted no later than 45 days after the final disposition of the case in this Court or after the filing of a petition for a writ of *certiorari*. Although the deadline is not mandatory and jurisdictional, late submission may delay payment.

The Court uses an eVoucher system. Instructions for utilizing the on-line voucher system may be found on the attorney page of the Court's website. Each voucher must be accompanied by an Information Summary. This form is available as a fillable PDF on the Court's website, at this link: https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000572.

The Guide to Judiciary Policies, Volume 7, has detailed information about what is and is not reimbursable and the required documentation under the Criminal Justice Act. Any attorney seeking compensation under the CJA would be well-advised to review the Guide before submitting a voucher seeking payment for services. The Guide is available at https://www.uscourts.gov/sites/default/files/vol_07.pdf.  In addition to the Guide, the Administrative Office has developed an on-line CJA reference tool which is available on the United States Courts website at https://www.uscourts.gov/rules-policies/judiciary-policies/criminal-justice-act-cja-guidelines.

# VI.
# MEDIATION IN THE NINTH CIRCUIT

## I.     OVERVIEW OF THE PROGRAM

For more than twenty-five years, the U.S. Court of Appeals for the Ninth Circuit has operated a mediation and settlement program (https://www.ca9.uscourts.gov/mediation/). Circuit mediators work with attorneys and their clients to resolve cases pending in the Court of Appeals. The Court offers this service at no cost because it helps resolve disputes quickly and efficiently, and can often provide a more satisfactory result than can be achieved through continued litigation. Each year the mediation program facilitates the resolution of hundreds of appeals.

Although the mediators are Court employees, they are shielded from the rest of the Court's operations. The Court has enacted strict confidentiality rules and practices; all who participate in one of the Court's mediations may be assured that what goes on in mediation stays in mediation.

## II.     THE MEDIATION PROGRAM

The Court established the Ninth Circuit Mediation Program pursuant to Federal Rule of Appellate Procedure 33 and Ninth Circuit Rule 33-1 to facilitate settlement of cases on appeal. *See* Ninth Circuit General Orders Chapter 7.

**A.     INCLUSION IN THE MEDIATION PROGRAM** Almost all civil cases in which the parties are represented by counsel are eligible for the Circuit Mediation Program ("Program"). The Program is not open to cases involving a *pro se* litigant absent extraordinary circumstances. *See* General Order 7.3. Consult Ninth Circuit Rules 3-4 and 15-2 for a description of cases excluded from the Program. Cases come to the Program in a variety of ways. Most often, cases come to the Program after the parties complete a mediation questionnaire and participate in the Settlement Assessment

Conference. On occasion, cases are referred by panels of judges or by Court Staff. Even if your appeal is not selected initially for inclusion in the Program, you may request that your case be considered for mediation.

1. **The Settlement Assessment Conference** The mediators look to a document called the *Mediation Questionnaire* (Ninth Circuit Form 7) to help determine whether a case might be an appropriate candidate for inclusion in the Program and to provide the best possible mediation services to the parties and their counsel. The *Mediation Questionnaire* is filed in the Ninth Circuit within seven days of the docketing of an appeal or a petition for review. A fillable version of the *Mediation Questionnaire* (Form 7) is available on the Court's Forms webpage, https://www.ca9.uscourts.gov/forms/. The *Mediation Questionnaire* is mandatory for appellants in civil appeals and must be filed, even if settlement appears unlikely. The form is optional for appellees/respondents.  Be mindful that it is filed on the public docket and is <u>not</u> confidential.  If you wish to provide confidential information to the Court's mediators, note that after Form 7 is filed, all counsel will receive a link in the Notice of Docket Activity that will allow them to separately submit relevant confidential information directly to the Circuit Mediators.

Following a review of the *Mediation Questionnaire,* the Court will in most cases order counsel to participate in a telephone conference with a circuit mediator to exchange information about the case, discuss the options the mediation program offers, and look at whether the case has settlement potential. This initial assessment conference typically lasts between thirty minutes and an hour and includes a discussion of

the case's litigation and settlement history. At the conclusion of the call, counsel and the mediator will decide whether further discussion would be fruitful. If the parties are interested in working to resolve the dispute, the mediators help devise a settlement process that meets the distinct needs of the participants in that case. If it is agreed that further settlement discussions are not warranted, then the mediator will discuss with counsel any procedural or case management issues that may require attention, such as moving the briefing schedule, or consolidating cases.

2. **Panel Referrals** Approximately fifteen percent of the Program's cases come from referrals from panels of judges and from Court Staff. When a merits panel refers a case to mediation, it is usually after oral argument but before they submit the matter for decision. Sometimes the panel will enquire whether counsel believe such a referral would be beneficial; at other times, the panel will simply refer the case.

3. **Requests From Counsel** In any counseled case, counsel may send a request to be included in the Program to the Chief Circuit Mediator. The request can be made confidentially.

B. **WHAT MAKES A CASE A GOOD CANDIDATE FOR APPELLATE MEDIATION?** In determining whether a particular case is appropriate for mediation, counsel, the parties, and the mediator will consider many factors, including the following:

1. The parties' interest in participation;

2. The likelihood that a Ninth Circuit decision will not end the dispute;

3. A desire to make or avoid legal precedent;

4.  The existence of other appeals that raise the same legal issue;

5.  The desire to preserve a business or personal relationship;

6.  The existence of non-monetary issues;

7.  The possibility that a creative resolution might provide better relief than the Court could fashion;

8.  A history of strong feelings that may have prevented effective negotiations;

9.  The possibility that one or all parties could benefit from a fresh look at the dispute;

10. A desire to open and improve communications between or among the parties; and

11. The possibility that settlement efforts could include more than the issue on appeal (*e.g.,* interlocutory appeals or cases in which portions have been remanded to state court).

> *Practice Tip:* The Program is not limited to the case on appeal in the Ninth Circuit as long as all parties are in agreement. Discussions with the mediator may include additional parties and related cases in other courts, as well as issues that are not part of any litigation.

**C.  THE MEDIATION PROCESS** If the parties are interested in working to resolve the dispute, the mediator will work with counsel to construct an effective, cost-sensitive settlement process. After the initial conference, the mediator may conduct follow-up conferences with counsel and the parties, in separate or joint sessions. These follow-up

sessions may be held in person or by videoconference or telephone. In-person mediations may be held at the Court or, in appropriate cases, other locations.

Working with the mediator, the parties will determine what issues will be discussed and how those discussions will proceed. In some cases, the focus of the mediation will be on the legal issues and possible outcomes of the appellate process. In other cases, it may be on rebuilding relationships or joint problem solving. The mediator may facilitate direct discussions between the parties, or act as an intermediary, shuttling back and forth between them. The mediator will try to resolve these various process issues in a manner that best serves the interests of all participants.

The mediator will ask questions, reframe problems, facilitate communication, and help the parties to understand each other and identify creative solutions. The mediator will not take sides, render decisions, offer legal advice, or reveal confidences.

Settlement occurs when the parties find a resolution that is preferable to continued litigation. Factors that frequently favor settlement over litigation include speed, cost, certainty, control, creativity, and flexibility.

> *Practice Tip:* When an in-person mediation is scheduled, the mediator will make every effort to hold the session in a venue that is as convenient as possible for the greatest number of participants. Mediators will travel to locations throughout the Ninth Circuit when warranted.

Mediators have the authority to provide certain procedural relief and much can be accomplished without resorting to the motions process. For example, a mediator can, with agreement from counsel, vacate or extend the briefing schedule. If counsel cannot agree, a motion must be

filed. Typically, if a case is mediated, the mediator will vacate the briefing schedule. If the case does not settle, the mediator will establish a new briefing schedule.

> **Practice Tip:** Should a case fail to be resolved through mediation, the disposition of the appeal will not be delayed because the Court schedules oral argument based on the date the Notice of Appeal is filed, not on the dates the briefs are filed. In most cases, oral argument is scheduled later than twelve (12) months after the filing of a notice of appeal, which usually allows enough time to mediate without delaying disposition of the case.

**D.    PREPARING FOR MEDIATION** The most effective and efficient mediations are those in which counsel and their clients are fully prepared. Counsel will want to make sure they know the standard of review on appeal, understand the relevant law and facts, and have a good sense of both how the appeal fits into their client's litigation strategy and how the litigation itself serves the client's larger goals.

**E.    CONFIDENTIALITY** To encourage efficient and frank settlement discussions, the Court exercises great care to ensure strict confidentiality of the settlement process. Ninth Circuit Rule 33-1 provides that settlement-related information disclosed to a Court mediator will be kept confidential and will not be disclosed to the judges deciding the appeal or to any other person outside the Program participants. In fact, any person, including a Court mediator, who participates in the mediation program, must maintain the confidentiality of the settlement process. With limited exceptions, *see* Ninth Cir. R. 33-1(c)(4)(A)-(B), this confidentiality applies to all oral and written communications made during the mediation process, including telephone conferences. Documents and correspondence related to settlement are maintained only in

the Circuit Mediation Office and are never made part of the main Ninth Circuit case file.

E-mail correspondence and documents sent directly to the mediators or to the mediation unit are maintained separately from the Court's electronic filing and case management system.

Written settlement agreements, however, are not confidential except as agreed by the parties. Ninth Cir. R. 33-1(c)(5). Moreover, this rule does not prohibit disclosures that are otherwise required by law. Ninth Cir. R. 33-1(c)(6).

> ***Practice Tip:*** Should the mediator confer separately with the participants, those discussions will also be maintained in confidence from the other participants in the settlement discussions to the extent that the communicating parties request.

F.  **IMMIGRATION CASES** The Court has used mediation to help resolve a large number of immigration cases. Although immigration cases are often seen as all-or-nothing legal disputes, experience has shown that some immigration cases are very good candidates for settlement discussions. The cases which most readily lend themselves to mediation are counseled cases in which the mediator can help the parties negotiate a procedural resolution, which is usually a stipulated remand to the Board of Immigration Appeals ("BIA") for further proceedings.

III.  **THE NINTH CIRCUIT MEDIATORS** The Program is staffed by a chief circuit mediator and seven circuit mediators who all work exclusively for the Court. Seven are resident in the Court's San Francisco headquarters; one is resident in the Court's Seattle office. The mediators are all licensed attorneys who have an average of twenty-five years of combined private-law and mediation practice. They are all experienced and highly trained in appellate mediation, negotiation, and Ninth Circuit practice and

procedure. Please visit the Court's mediation webpage
https://www.ca9.uscourts.gov/mediation/ for additional
information, answers to frequently asked questions, and the
mediators' names and contact information.

# VII.
# MOTIONS PRACTICE

## I.  IN GENERAL

**A.  WHEN IS A MOTION REQUIRED?** Pursuant to Federal Rule of Appellate Procedure 27, an application for an order or other relief must be ordinarily made by motion. That motion must be in writing unless the Court permits otherwise. Motions generally fall into one of two categories: substantive and procedural. Substantive motions include, for example, motions for summary affirmance, motions to dismiss an appeal for lack of jurisdiction, or (in the criminal context) motions to enforce an appeal waiver. Procedural motions include motions for an extension of time, or for leave to file an overlength brief. A non-exhaustive list of types of motions appears at the end of this chapter.

**B.  WHEN SHOULD I FILE A MOTION?** Although there are specific rules for specific types of motions, generally, you should file as soon as possible. Some of the specific time limits are as follows:

**1.  Motions to extend the time to file a brief** Unless you are submitting a streamlined request for an extension of time, motions to extend the time for filing a brief are due at least seven days before the brief's deadline.  You may use Form 14 in lieu of preparing your own written motion for extension of time.  Form 14 is accessible at https://www.ca9.uscourts.gov/forms/.

**2.  Motions for a stay** If a district court stays an order or judgment to permit application to the Court of Appeals for a stay pending appeal, an application for a stay must be filed in the Court of Appeals within 7 days after issuance of the district court's stay.  *See* Ninth Cir. R. 27-2.

3. **Motions challenging denials of requests to proceed *in forma pauperis* or revocations of IFP status** Under Federal Rule of Appellate Procedure 24(a)(5), appellant has 30 days from the district court's denial of the request to proceed *in forma pauperis* on appeal – or the revocation of that status – to renew the request in the appellate court.

4. **Motions to intervene** Under Federal Rule of Appellate Procedure 15(d), a prospective intervenor has 30 days from the filing of a petition for review to move to intervene in an agency case.

5. **Certificates of appealability** Under Ninth Circuit Rule 22-1(d), a petitioner/defendant has 35 days from the district court's denial of a request for a certificate of appealability to file a motion for that relief in this Court.

6. **Motions for leave to file an amicus brief** Under Federal Rule of Appellate Procedure 29(e), a motion for leave to file a friend of the Court brief is due within 7 days after the filing (not service) of the principal brief of the party the friend of the Court wishes to support. *See* Ninth Cir. R. 29-2(e) for deadlines to file amicus briefs pertaining to post-disposition proceedings.

7. **Emergency motions** See Chapter VIII, Emergency Proceedings, below, regarding motions requiring relief within 21 days.

C. **HOW DO I FILE MY MOTION?** Motions must be filed using the Court's e-filing system unless the filer is exempt. (However, the Clerk may direct a party to submit additional paper copies of a motion, response and/or reply when paper

copies would aid the Court's review of the motion. Ninth Cir. R. 27-1.)

## D.    WHAT SHOULD I INCLUDE IN MY MOTION?

1.    **Grounds and relief sought** Federal Rule of Appellate Procedure 27 requires that a motion state, with particularity, the grounds for the motion, the relief sought, and the legal argument necessary to support it. The motion may not exceed 20 pages or 5,200 words in length, not counting the corporate disclosure statement and accompanying documents authorized by Federal Rule of Appellate Procedure 27(a)(2)(B), unless the Court permits or directs otherwise. In criminal and immigration cases, in particular, you must state whether you have previously applied for the relief sought and provide the bail/detention status of defendant/petitioner. Ninth Cir. R. 27-8. Although not required by the rules, providing a criminal defendant's projected release date is helpful to the Court.

2.    **Accompanying documents**

i.    Any declaration or other papers necessary to support a motion must be served and filed with the motion. An affidavit must contain only factual information, not legal argument.

ii.    A motion seeking substantive relief must include a copy of the trial court's opinion or agency's decision as a separate exhibit.

***Practice Tip:*** Do not refer the reader to separately filed excerpts of record because the reader may not have access to those. Either attach the pertinent documents as exhibits or refer the reader to the district court docket.

3. **The opposing party's position** Per the Advisory Committee Note to Ninth Circuit Rule 27-1, you should include opposing counsel's position when possible, and if not, explain what steps you took to find out that position.

4. **The identity of the merits panel, if known** If the case has been assigned to a merits panel, you should include the information listed at Ninth Circuit Rule 25-4.

E. **WHAT SHOULD I *NOT* INCLUDE IN MY MOTION?**

1. **A notice of motion**

2. **A proposed order**

3. **Irrelevant or unnecessary documents** Remember that the Court has access to the district court docket.

F. **WHAT RULES GOVERN THE FORMATTING OF MY MOTION? (Fed. R. App. P. 27(d)(1)-(3) and 32(c)).** This is also covered in the motions checklists *infra*.

> ***Practice Tip:*** If, in addition to the primary relief you seek, you are also asking to modify the briefing schedule in your motion, the request to modify the briefing schedule should be included in the heading as well as the body of the motion for other relief.

G. **HOW AND WHEN DO I RESPOND TO A MOTION?** A response must be filed within 10 days after service of the motion unless the Court shortens or extends the time. Like the motion, it may not exceed 20 pages or 5,200 words in length. Please note that a response may include a motion for

affirmative relief, but the title of your response must alert the Court to the request for relief.

> **Practice Tip:** Under Federal Rule of Appellate Procedure 27(b), procedural motions may be decided before your time to file an opposition expires, although the Court can defer action in order to allow the response time to run. As a result, if you intend to oppose a motion, call the Clerk's Office to let them know that you will be filing an opposition.

**H.    MAY I FILE A REPLY IN SUPPORT OF MY MOTION?** Any reply to a response must be filed within 7 days after service of the response. The reply is limited to 10 pages or 2,600 words in length. A reply must not present matters that do not relate to the response.

**I.    WHAT IS THE EFFECT OF FILING MY MOTION?** Some motions will toll the briefing schedule and/or record preparation. Those include motions for dismissal; transfer to another tribunal; full remand; *in forma pauperis* status in this Court; production of transcripts at government expense; and appointment or withdrawal of counsel. Ninth Cir. R. 27-11. *Motions for reconsideration do not by themselves toll the schedule for record preparation and briefing.*

**J.    WILL THERE BE AN ORAL ARGUMENT ON MY MOTION?** No, unless the panel orders otherwise. Fed. R. App. P. 27(e).

**K.    WHO RULES ON MY MOTION?** Depending on the issues raised and the relief sought, motions may be decided by the Clerk's Office, by the Staff Attorneys' Office, by a single judge, or by a panel of judges.

    **1.    <u>Court staff and the Appellate Commissioner</u>** Most non-dispositive procedural motions in appeals or other proceedings that have not yet been

calendared are acted on by court staff under the supervision of the Clerk, the Interim Appellate Commissioner, or the chief circuit mediator. Court staff may act on procedural motions whether opposed or unopposed, but if there is any question under the guidelines as to what action should be taken on the motion, it is referred to the Interim Appellate Commissioner or the chief circuit mediator. Court staff review a wide variety of motions, *e.g.*, appointment, substitution and withdrawal of counsel, and motions for reinstatement of a previously dismissed appeal. The Interim Appellate Commissioner may deny a motion for dispositive relief, but may not grant such a request other than those filed under Federal Rule of Appellate Procedure 42(b), pursuant to the parties' signed dismissal agreement.

2.  **A single judge** Similarly, a single judge may grant or deny any motion not specifically excluded by Court order or rule, but may not dismiss or otherwise effectively determine an appeal or other proceeding. Thus, a single judge may not grant motions for summary disposition, dismissal, or remand. A single judge may, however, grant or deny temporary relief in emergency situations pending full consideration of the motion by a motions panel. In addition, some types of motions may be ruled on by a single judge by virtue of a particular rule or statute.

3.  **Motions Panels** The motions panel rules on substantive motions, including motions to dismiss, for summary affirmance, and similar motions. The motions panel also considers motions for bail and often motions for stays pending appeal.

a.    **Selection of Motions Panels** A single motions panel is appointed for the entire circuit. That panel sits in San Francisco for several days each month. If necessary, emergency motions are acted on by telephone. Judges are ordinarily assigned to the panel on a rotating basis by the Clerk for a term of one month. In the event of recusal or unavailability, the Court will draw another judge at random to consider the matter(s) in question.

b.    **Procedures for Disposition of Motions by the Motions Panel** All three judges of the motions panel participate in ruling on motions that dispose of the appeal. Other substantive motions are presented to two judges; if in agreement, they ordinarily decide the motion. The third judge participates only if (i) one of the other members of the panel is disqualified or is otherwise unavailable; (ii) the other members of the panel disagree on the disposition of a motion; or (iii) he or she is asked to participate by the other members of the panel.

*Practice Tip:* Once a case has been assigned to a merits panel, all motions go to that panel under General Order 6.3b. (Rulings by the panel prior to oral argument will be in the form of a responsive order signed by the Clerk to avoid prematurely disclosing the identity of the judges.)

L.    **WHAT IF I DISAGREE WITH THE RULING ON MY MOTION?** You can file a motion for reconsideration. However, the Court disfavors the filing of a motion for reconsideration of a motions panel order, and they are rarely granted. You should only file a motion for reconsideration if you believe that the Court has overlooked or misunderstood a point of law or fact, or if there is a change in legal or factual circumstances after the order which would entitle the movant to relief. Such motions are due within 14 days of the

order being challenged (with the exception that motions for reconsideration of dispositive orders in civil matters in which there is a federal party must be filed within 45 days). Ninth Cir. R. 27-10. Please note that you should follow the procedures set out in Ninth Circuit Rule 27-10, *not* the procedures applicable for rehearing of merits panel opinions, memorandum dispositions, and dispositive orders. An opposition to a motion for reconsideration of a motions panel order may be filed only if the Court orders the filing of such a response. Ninth Cir. R. 27-10(b). This prohibition applies solely to motions for reconsideration of a motions panel's order.

## II.    RULES PERTAINING TO SPECIFIC TYPES OF MOTIONS

A.    **CRIMINAL APPEALS** Motions filed in criminal appeals must include any previous application for the relief sought and the defendant's bail status under Ninth Circuit Rule 27-8.1.

B.    **IMMIGRATION PETITIONS** Motions in immigration cases must include any previous application for the relief sought and the petitioner's custody status under Ninth Circuit Rule 27-8.2.

C.    **MOTIONS TO FILE OVERSIZE BRIEFS** Per Ninth Circuit Rule 32-2(a), the proposed brief *must* accompany the motion – no exceptions. However, be aware that Ninth Circuit Rule 32-2(b) provides for a routine enlargement of brief size under *limited* circumstances. As such, Circuit Rule 32-2(a) notes that the Court disfavors motions to exceed the applicable limits and will grant them "only upon a showing of diligence and extraordinary and compelling need," except in capital cases.

D.    **MOTIONS TO EXPEDITE (Ninth Cir. R. 27-12.)** Motions to expedite briefing and hearing may be filed and will be granted upon a showing of good cause. "Good cause"

includes, but is not limited to, situations in which: (1) an incarcerated criminal defendant contends that the valid term of confinement does not extend beyond 12 months after the filing of the notice of appeal; (2) the projected release date for an incarcerated criminal defendant is within 12 months after the filing of the notice of appeal; or (3) in the absence of expedited treatment, irreparable harm may occur or the appeal may become moot. (Monetary loss does not generally amount to irreparable harm.) In criminal cases, the age or infirmity of a defendant may also be advanced as cause. The motion should set forth the status of transcript preparation and opposing counsel's position or reason why moving counsel has been unable to determine that position. The motion may also include a proposed briefing schedule and date for argument or submission. An expedited schedule means a court reporter is not entitled to any extensions of time to prepare the transcript.

*Practice Tip:* File any motion to expedite early! Calendars are prepared months in  advance of hearing date. Accordingly, the need for expedition should be on  counsel's check list when filing a notice of appeal, particularly in criminal appeals.  When filing such a motion, propose a briefing schedule, taking into account the fact  that, once expedited, you will likely not be able to get an extension of time, barring  truly exceptional circumstances.

E.    **MOTIONS TO SEAL (Ninth Cir. R. 27-13.)** A motion to seal must explain the specific reasons for sealing and describe the potential for irreparable injury in the absence of such relief. The Court will not seal a document based solely on the stipulation of the parties, and the fact that a document was filed under seal in district court is not a sufficient basis for filing it under seal in this Court. In the motion, you should request the least restrictive scope of sealing and limit the request in scope to only the specific documents or portion of documents that merit sealing, for example, propose redaction of a single paragraph or limit the

request to a portion of a contract. The motion and document
will be provisionally sealed pending a ruling on the motion.

1.    Under Circuit Rule 27-13, all documents – *including
those under seal* – must be e-filed unless the filer is
exempt from the electronic filing requirement. Each
document or volume of documents submitted under
seal shall include the words "UNDER SEAL" on its
cover and/or first page.

2.    **Service.** Because documents submitted under seal,
including any motion to seal or notice of sealing or
unsealing, will not be viewable to the parties via
CM/ECF or ACMS noticing, any document, notice, or
motion submitted under seal must be served on
opposing counsel in paper form or, if all parties are
registered for electronic filing, via email. *See* Circuit
Rule 25-5(f).

3.    **Sealed Excerpts.** Rather than moving to file the
entire excerpts of record under seal, a party shall
submit any document(s) it wishes to seal as a separate,
final volume. *See* Circuit Rules 27-13(c) and 30-1.4(d).

4.    **Notice of intent to file publicly.** If the documents
were under seal in the district court, but the filing
party does not intend to ask that the materials
continue under seal, file the documents provisionally
under seal, along with a notice of intent to file publicly
(see Ninth Circuit Form 20, entitled "Notice of Intent
to Unseal"), to allow any other party an opportunity to
move for appropriate relief within 21 days of the notice.

> *Practice Tip*: There may be cases in which your client benefitted from sealing in the district court, the client is not a party to the appeal (*e.g.,* because of settlement), the parties to the appeal intend to file publicly, but the client wants to maintain the seal.  In such situations, the proper procedure is to file a motion to intervene for the limited purpose of moving to seal (or maintaining the case under seal or sealing the oral argument).

Absent a motion by another party to continue the seal, or a notice pursuant to Circuit Rule 27-13(d), the provisional seal will be lifted *without notice* and the documents will be made available to the public.

5.  **Maintaining a case under seal.** A party who wants a case that was fully sealed in the district court to remain fully sealed on appeal must file a motion to continue the seal *within 21 days* of the filing of the notice of appeal. The motion must explain with specificity (1) why the entire case must be sealed on appeal and (2) why no less restrictive alternatives are available. If the sealing is required by statute or procedural rule, a motion is not required; instead, a party must file a notice that references the appropriate statute or rule within 21 days of the filing of the notice of appeal (see Ninth Circuit Form 19, entitled "Notice of Sealing"). If you do not file a motion or notice, the seal may be lifted without notice and the case in full will be made available to the public.

6.  **Notice of filing documents under seal.** Any sealed materials in the excerpts of record that are required to be maintained under seal must be submitted under seal, and must be accompanied by a notice of sealing under Circuit Rules 27-13(d) and 30-1.4(d) (when a statute or procedural rule requires that a document be filed under seal, use Ninth Circuit Form 19, entitled "Notice of Sealing").

7.    **Argument.** Except as otherwise ordered by the Court, the Court will NOT close oral argument to the public in any type of case, even when the case itself or the briefs or excerpts of record have been filed under seal. A party seeking a closed hearing must move for such extraordinary relief at least 14 days prior to the scheduled argument date and explain with specificity (1) why such relief is required and (2) whether any less extraordinary alternative is available.

8.    **Motions to unseal.** By contrast, motions to unseal may be made on any grounds permitted by law. The parties in a civil case may stipulate to the public filing in this Court of a document that was filed under seal in the district court.  *See* Ninth Cir. R. 27-13(i).

9.    **Dispositions.** The Court will presumptively file any disposition publicly, even in cases involving sealed materials. If you think that the Court's disposition should be sealed, you must file a motion seeking that relief within 28 days of the completion of briefing.

10.   **Social Security and Immigration cases.**
Documents in Social Security and Immigration cases, including administrative records, are not generally filed under seal in the Ninth Circuit. However, remote electronic access to documents is limited by rule to the parties to the case, though the documents will be available for public viewing in the Clerk's Office. *See* Fed. R. Civ. P. 5.2(c); Fed. R. App. P. 25(a)(5). Orders and dispositions in these cases are also presumed to be publicly available.

F.    **MOTIONS TO STRIKE BRIEFS AND/OR EXCERPTS** If a motion to strike is intertwined with the merits of the underlying appeal – *e.g.*, the motion seeks to strike the brief for raising issues not raised below – it is likely to be referred to the merits panel for resolution. If based on procedural

grounds – *e.g.*, the motion contends that the brief does not cite to the record or that the opposing party managed to sneak in an oversize brief in under the radar – the Court will address it. Do not use such a motion as a vehicle for arguments best advanced in your responsive brief.

**G.    MOTIONS TO REINSTATE** Per General Order 2.4, motions to reinstate an appeal should be accompanied by correction of the defect that caused the dismissal, *e.g.*, the filing of the opening brief or payment of the fee.

**H.    MOTIONS FOR VOLUNTARY DISMISSAL** In a criminal case, motions or stipulations for voluntary dismissal of criminal appeals made by or joined in by defendant's counsel must be accompanied by the defendant's written consent or counsel's explanation of why that consent was not obtained.

**I.    MOTIONS FOR INVOLUNTARY DISMISSAL**

**1.**    In criminal cases, government motions for the dismissal of criminal appeals must be served on both the defendant *and* his/her counsel, if any. If the motion is based on a claim of failure to prosecute the appeal, appellant's counsel, if any, must respond within 10 days. If appellant's counsel does not, the Clerk will notify the appellant of the Court's proposed action. If the appeal is dismissed for failure to prosecute, the Court may impose sanctions on appellant's counsel. Counsel will be provided with 14 days' notice and an opportunity to respond before sanctions are imposed.

**2.**    In civil cases, such a motion is more likely to be granted if there is a pattern of delay. However, filing a motion for involuntary dismissal may result in the appellant being given one final opportunity to prosecute his or her appeal. If you do file such a motion, focus on any prejudice caused by delay.

**J.    MOTIONS FOR A STAY OF APPELLATE PROCEEDINGS** If possible, note the position of the opposing party with respect to the stay. Per the Advisory Committee Note to Ninth Circuit Rule 27-1, it is possible to ask in the alternative for an extension of time to file your brief.

**K.    MOTIONS FOR A LIMITED REMAND** These are governed by Federal Rule of Appellate Procedure 12.1. It is possible to request a stay of appellate proceedings while the district court is considering whether to provide an indicative ruling. It is generally not fruitful to oppose remand on the basis of the merits of the motion – if the district court is inclined to consider the issue, the appellate court will generally remand to allow it to do so.

**L.    MOTIONS TO SUPPLEMENT/CORRECT RECORD** It is important to distinguish between motions types. Motions to supplement ask the Ninth Circuit to consider material not before the district court/agency. By contrast, a motion to correct notes omissions or inaccuracies in the existing district court/agency record. If, however, the district court record is incomplete, you should move the district court to correct the record. The standard for supplementing the record in civil cases is quite high, and you should cite authority to support a specific request. Consider whether it would be better to file a Federal Rule of Civil Procedure 60(b) motion in the district court, based on the additional evidence.

**M.    MOTIONS TO WITHDRAW AS COUNSEL** There are very specific procedures outlined in Ninth Circuit Rule 4-1 for criminal/habeas appeals. In civil cases, you may file a notice of withdrawal or substitution in lieu of a motion (no form or other attachment is required), but you must provide the address of the client if the client will be appearing pro se. If the client is a corporation, new counsel must first enter an appearance or you must file a motion to withdraw and

confirm that you have informed a corporate client that it may not proceed *pro se*.

**N.    REQUESTS FOR JUDICIAL NOTICE** Requests for judicial notice and responses thereto are reviewed by the panel that will consider the merits of a case. The parties may refer to the materials the request addresses with the understanding that the Court may strike such references and related arguments if it denies the request.

**O.    MOTIONS FOR AN EXTENSION OF TIME** Parties now have two options when seeking an extension of time: a streamlined request for an extension of time and a written motion for an extension of time (or Form 14, in lieu of a written motion).

1.    The streamlined process applies to due dates for opening, answering, reply, and cross-appeal briefs except where a Notice of Oral Argument has issued or the Court has otherwise directed. It does not apply to any other deadlines, including deadlines for petitions for rehearing and/or rehearing *en banc*, amicus briefs, and supplemental briefs ordered by the Court; to any briefs in Preliminary Injunction Appeals (Ninth Cir. R. 3-3), Incarcerated Recalcitrant Witness Appeals (28 U.S.C. § 1826) (Ninth Cir. R. 3-5), or Class Action Fairness Act appeals (28 U.S.C. § 1453(c)). You may seek a streamlined extension of time only if: (1) you have not previously sought an extension of time to file that particular brief; and (2) you are seeking an extension of 30 days or less. You do not need to notify opposing counsel or obtain their position before submitting a streamlined request. Streamlined extensions of time are generally not available if the Court has expedited briefing. Per the Advisory Committee Note to Ninth Circuit Rule 31-2.2, the streamlined extension of time is intended to

be the sole extension of time to file a given brief.
When submitting the streamlined request, use the
Filing Type "Streamlined Request to Extend Time to
File Brief." No form, attachment, or motion is
required with the CM/ECF or ACMS submission of a
streamlined request for extension of time.

2.    In lieu of preparing your own written motion for an
extension of time, you may use Form 14, accessible
at https://www.ca9.uscourts.gov/forms/. A written
motion (or Form 14) should be filed 7 days before the
brief is due, although that limit is not jurisdictional.
It must demonstrate diligence and substantial need,
and, if you choose to prepare your own written
motion (rather than utilizing Form 14), it must be
accompanied by a written declaration that states:

- when the brief is due;

- when the brief was first due;

- the length of the requested extension;

- the reason an extension is necessary;

- movant's representation that movant has
  exercised diligence and that the brief will be filed
  within the time requested;

- whether any other party separately represented
  objects to the request, or why the moving party
  has been unable to find out whether there is any
  objection; and

- that the court reporter is not in default with
  regard to any designated transcripts.

Ninth Cir. R. 31-2.2(b).

**P.    MOTIONS FOR RECONSIDERATION OF ORDERS ISSUED BY A MOTIONS PANEL (Ninth Cir. R. 27-10 and General Order 6.11.)** Motions for reconsideration of non-dispositive orders must be filed within 14 days in all cases. Motions for reconsideration of dispositive orders must also be filed within 14 days, except that in civil matters in which there is a federal party, motions must be filed within 45 days. Motions for reconsideration *en banc* may be denied on behalf of the full court by the motions panel without being circulated unless the challenged order was published.

**Q.    MOTIONS TO FILE AMICUS CURIAE BRIEFS** Per Federal Rule of Appellate Procedure 29(a)(3), the motion must be accompanied by the proposed brief. Federal Rule of Appellate Procedure 29(a)(3) includes other required recitals that must be included in the motion. Under Ninth Circuit Rule 29-3, the movant must describe its efforts to obtain the consent of the parties to the filing of the brief. (If all parties consent, there is no need to file a motion.) Parties can anticipate that the motions will be referred to the merits panel for resolution; that panel is in the best position to determine whether the brief would be helpful. See Ninth Cir. R. 29-2 for procedures governing amici briefs pertaining to post-disposition proceedings.

**R.    MOTIONS TO TRANSMIT PHYSICAL OR DOCUMENTARY EXHIBITS** Under Ninth Circuit Rule 27-14, if an exhibit was not recorded in the district court's electronic casefile, such as a video or audio exhibit, and a party considers review of the exhibit to be important in resolving the appeal, that party should file a motion to transmit a physical exhibit—with a notice or motion to seal or unseal the physical exhibit if the district court admitted it under seal, also paying careful attention to the procedures and requirements under Circuit Rule 27-13 (see also Ninth Circuit Forms 19 and 20). The exhibit or a copy thereof should not accompany the motion. The Court will not rule on the motion until after the principal briefs are filed; review of

the briefs will inform the decision on the motion.
Documentary exhibits that were presented to and considered
(or rejected) by the district court may be included in the
excerpts of record without a motion to transmit exhibits.

## APPENDIX: TYPES OF MOTIONS[1]

1.  Threshold Motions to Establish or Defeat Appellate Jurisdiction
    a.  Motion to Dismiss the Case (including for mootness)
    b.  Motion to Dismiss for Lack of Jurisdiction
    c.  Motion to Dismiss Case for Failure to Prosecute under Ninth Circuit Rule 42-1
    d.  Motion to Remand Case (including limited remand)
    e.  Motion to Transfer Appeal to Other Circuit
    f.  Motion for Certification to State Supreme Court

2.  Motions to Preserve Status Quo Pending Appeal (for example, Motion for Injunction Pending Appeal, Motions to Stay)

3.  Motions to Determine What Parties Are Before the Appellate Court and Which Non-Parties May Participate as Amicus
    a.  Motion to Intervene (including in agency proceeding)
    b.  Motion to Substitute Party
    c.  Motion to Participate as Amicus Curiae
    d.  Motion to Hear Case with Other Case
    e.  Motion to Consolidate Cases

4.  Motions to Speed Up, Shorten, Suspend, Terminate, or Reinstate Appeal
    a.  Motion to Expedite Case
    b.  Motions to Shorten Appeal by Obtaining Summary Ruling
        i.    Motion for Summary Disposition
        ii.   Motion for Summary Affirmance
        iii.  Motion for Summary Reversal
        iv.   Motion to Submit Case on Briefs
    c.  Motion to Stay Proceedings
    d.  Motion to Stay Proceedings Pending Settlement
    e.  Motion to Dismiss the Case Voluntarily Pursuant to Rule 42(b)
    f.  Motion to Reinstate Case After FRAP 42-1 Dismissal

---

[1] See the last chapter of the User Guide at this link for a complete list of filing types in CM/ECF: https://cdn.ca9.uscourts.gov/datastore/uploads/cmecf/ecf-user-guide.pdf.

5. Motions Pertaining to Counsel
    a. Motion for Appointment of Counsel
    b. Motion for Appointment of Pro Bono Counsel
    c. Motion to Withdraw as Counsel
    d. Motion to Substitute Counsel

6. Motions Regarding Oral Argument (these are discouraged, especially close to oral argument date)
    a. Motion to Reschedule Oral Argument
    b. Motion to Present Oral Argument by Video

7. Motions to Extend Time to Comply with Court Requirements

8. Motions to Waive / Enforce Court Requirements
    a. Motion to File Oversized Brief
    b. Motion to Strike Portion/Whole of Document

9. Motions Pertaining to the Content of the Record on Appeal
    a. Motion to Supplement Record on Appeal
    b. Motion to Take Judicial Notice
    c. Motion to Unseal Document
    d. Motion to Seal Document
    e. Motion to Transmit Physical and/or Documentary Exhibits

10. Motions for Sanctions

11. Motions Regarding Fees and Costs
    a. Motion to Proceed *In Forma Pauperis*
    b. Motion to Complete Production of Reporters Transcript at Government Expense
    c. Motion for Attorney's Fees
    d. File a Bill of Costs

12. Post-Judgment Motions
    a. Motion to Request Publication of Memorandum Disposition
    b. Request to Depublish Decision
    c. Motion to Stay the Mandate
    d. Motion to Recall Mandate

## TOP-10 TECHNICAL FLAWS IN MOTIONS

| 1 | **NO RECITAL OF BAIL OR DETENTION STATUS.** The motion does not state the defendant's current bail status or the immigrant's current detention status. Ninth Cir. R. 27-8.1, 8.2. |

| 2 | **INCORRECT OFFICIAL CAPTION OR ABBREVIATED CAPTION.** The official caption or abbreviated caption is incorrect. Fed. R. App. P. 32(a)(2)(A-D). |

| 3 | **NO REQUIRED DECLARATION OR AFFIDAVIT.** The movant does not include a required declaration or affidavit. Fed. R. App. P. 27(a)(2)(B). |

| 4 | **NO GROUNDS STATED FOR ENLARGEMENT OF TIME.** The motion does not state the grounds for an enlargement of time. Fed. R. App. P. 27(a)(2)(A); Ninth Cir. R. 31-2.2(b). |

| 5 | **INCORRECT FONT SIZE.** Font size is less than 14-point. Fed. R. App. P. 32(a)(5)(A). |

| 6 | **NO RECITAL OF PREVIOUS APPLICATIONS FOR THE RELIEF SOUGHT.** Fed. R. App. P. 8; Ninth Cir. R. 27-8.1, 8.2. |

| 7 | **INCORRECT SPACING.** The text is not double spaced. Fed. R. App. P. 27(d)(1)(D). |

| 8 | **NO STATEMENT OF OPPOSING PARTY'S POSITION.** The motion does not state whether opposing party (or any other separately-represented party) objects to the request, or why moving party has been unable to determine any such party's position. Ninth Cir. R. 27-2, 31-2.2(b)(6). |

| 9 | **NOT SEARCHABLE.** The reader must be able to electronically search the text of the document. Ninth Cir. R. 25-5(d). |

| 10 | **INCORRECT CASE NUMBERS.** |

## VIII.
## EMERGENCY PROCEEDINGS

I.  **OVERVIEW** Except as otherwise indicated in the Federal Rules
of Appellate Procedure or Circuit Rules, Ninth Circuit Rule 27-3
governs all types of civil and criminal emergency motions.

II.  **EMERGENCY OR NOT**

A.  **HOW TO CLASSIFY** How a motion is classified depends on
what the movant tells the Court regarding when it needs to
be decided. Under Ninth Circuit Rule 27-3, emergency
motions are those that a movant says must be decided
within 21 days to avoid irreparable harm. (Counsel must
certify to the Court that all such representations are true.
Counsel is encouraged to use Ninth Circuit Form 16 to
provide this certification.) The date by which relief is needed
should be specified in the caption under the legend
"Emergency Motion Per Circuit Rule 27-3."

B.  **REQUIREMENT OF SIGNIFICANT AND
IRREPARABLE HARM** Circuit Advisory Committee Notes
to Ninth Circuit Rule 27-3 specify that emergency motions
should be filed only when significant and irreparable harm
to a party will result if relief is not obtained within 21 days
of the filing. For example, the imminent removal of an
immigrant or knocking down of a building would justify the
filing of an emergency motion. If you are filing a motion
relating to specific harm that will occur more than 21 days
from the filing of the motion but by a date certain, include
that date on the caption page of the motion and explain in
the motion the nature of the harm and the significance of the
date.  The Court will do its best to provide a ruling on the

motion within the requested time if the motion justifies the request.  Circuit Rule 27-1(3).

> **Practice Tips:**  Motions seeking procedural relief (for example, for an  extension of time) should not be filed as emergency motions. Advisory Committee  Note (3) to Ninth Cir. R. 27-3.
>
>     If the district court has stayed an order or judgment to permit  application to the Circuit for a stay pending appeal, the movant must  file an application for such a stay within 7 days. Ninth Cir. R. 27-2.

## III.  PREREQUISITES, NOTICE, CONTENTS, AND HOW TO FILE

**A.  HAS RELIEF BEEN SOUGHT BELOW?** Many motions, including emergency motions, are denied without prejudice when relief was not sought below or the movant could have sought the requested relief earlier. Most motions (for example, an emergency motion for a stay of a preliminary injunction) must be filed *first* in the federal district court (or Bankruptcy Appellate Panel or agency, if relief was available). Fed. R. App. P. 8(a). You must explain why the requested emergency relief could not have been sought earlier.  *See* Ninth Cir. R. 27-3(c)(iii)  If relief was available, Ninth Circuit Rules 27-3(a)(4) and (b)(4) require the motion to specify what relief was sought and, if none was sought, why the motion should not be filed in the district court first.

**B.  HAS AN APPEAL OR PETITION BEEN FILED?** An emergency motion may be filed *only* if an appeal or petition is pending in the Court of Appeals. If the appeal or petition has been recently filed, and so counsel does not yet have a Ninth Circuit case number or access to the e-filing system, counsel should contact the court's emergency motions unit

via email (emergency@ca9.uscourts.gov) or telephone ((415) 355-8020).

C.   **HAS NOTICE BEEN PROVIDED?** Before filing an emergency motion, a movant must "make every practicable effort" to contact the Ninth Circuit Clerk (the motions unit, (415) 355-8020 or emergency@ca9.uscourts.gov) and opposing counsel, and to serve the motion, at the earliest possible time. The earliest possible time may be as soon as counsel knows that an emergency motion will be filed. If the emergency motion will require particularly quick turnaround (for example, less than 48 hours), counsel may want to call even while the request for relief is still pending in the district court. When contacting counsel for other parties, it may be useful to explore whether the parties can reach an agreement that will make the matter less urgent (for example, if a party will delay enforcement or implementation of an injunction for a week to permit the Court of Appeals to rule on an emergency stay application).

   1.   **After-Hours Notice** *Only* if a matter requires attention before the next business day, a message may be left on the main number, (415) 355-8000, after hours. That message should explain why the matter is so urgent that it cannot wait until the next business day. Messages are regularly monitored by the motions attorneys. A *true* after-hours emergency is something like an imminent execution or immigration removal.

D.   **CONTENTS OF FILING** Ninth Circuit Rule 27-3 outlines the required cover page and certificate of counsel that must follow the cover page. To facilitate proper handling, the cover page must style the motion as an "Emergency Motion Under Circuit Rule 27-3." The required Form 16, entitled "Circuit Rule 27-3 Certificate for Emergency Motion" must be completed and submitted. Otherwise, the general rules regarding contents of a motion, outlined in Federal Rule of

- 77 -

Appellate Procedure 27, apply. Any portions of the record (or, in the limited circumstances where permissible, any other evidence) that are essential to disposition of the motion should be attached to the motion as exhibits.

E. **HOW TO FILE** Motions must be filed electronically, unless the filer is exempt from the electronic filing requirements. Any original petition or other pleading submitted in paper format must be filed in the San Francisco Clerk's Office, not with a regional circuit office and not with an individual judge. Emergency motions may not be faxed or emailed unless doing so has been specifically authorized by a motions unit attorney.

## IV. WHAT HAPPENS ONCE THE MOTION IS FILED?

A. **INITIAL PROCESSING AND NOTICE TO JUDGES** Ninth Circuit motions unit attorneys process emergency motions. When an emergency motion is filed, the motions attorney will contact one or more judges on the motions panel (see discussion below).

B. **MOTIONS BRIEFING SCHEDULE** The briefing schedule for the motion will be dictated by the date that the movant requests relief. If the briefing schedule is something other than the schedule set forth in Federal Rule of Appellate Procedure 27(a), the motions attorney will notify counsel for the parties, sometimes by phone and sometimes in a written order, of a briefing schedule that will permit the judges to decide the emergency motion by the requested date. Judges may occasionally act on motions without requesting further briefing. Ordinarily there is no oral argument on motions. Fed. R. App. P. 27(e).

## C.  WHO DECIDES

1.  **Monthly Motions Panel** Ninth Circuit judges (both active and senior) serve on the motions panel on a rotating basis. Each month there is a single motions panel. The panel that will decide a motion is not necessarily the panel that sits during the month that the motion is filed; it may instead be the panel that sits during the month that the motion is ready for decision. If necessary, emergency motions may be acted on by telephone, videoconference, or written submission.

2.  **Number of Judges** Motions requesting final disposition of an appeal (for example, a motion to dismiss for lack of jurisdiction, for summary affirmance or reversal, or a petition for writ of mandamus) must be heard by three judges. Most motions are decided by two judges, who rotate from among the three judges for that month, unless those two judges disagree regarding the disposition of the motion or request the participation of the third judge. A single judge may grant temporary relief in emergency situations when necessary to allow the Court sufficient time to consider the motion on the merits, pending full consideration of the motion by a motions panel.

> *Practice Tip:* Counsel should always file the motion with the Clerk,  and not attempt to send it to an individual.

3.  **Calendared and Comeback Cases** If an appeal has already been assigned to a merits panel, motions in that appeal will be directed immediately to the merits panel. When a motion relates to a previously resolved and no longer pending appeal, counsel should mention this in the motion, and the

motions unit attorney will ask the original panel whether the motion should be directed to it or to the monthly motions panel.

## V. SPECIAL CONSIDERATIONS FOR BAIL MOTIONS (Ninth Cir. R. 9-1.1, 9-1.2).

### A. APPEALS OF ORDERS REGARDING RELEASE OR DETENTION BEFORE JUDGMENT

Appeals of district court release or detention rulings under Federal Rule of Appellate Procedure 9(a) are processed on an expedited basis, and the merits of the appeal are decided by the motions panel. Because the motions panel's ruling will be dispositive of the appeal, three judges will be on the panel. The required caption for a notice of such an appeal, the briefing schedule, and documents required to accompany the memorandum in support of the motion are set forth in Ninth Circuit Rule 9-1.1. When a notice of appeal is filed, counsel should contact the motions unit.

Ninth Circuit Rule 9-1.1 provides for an expedited briefing schedule for pretrial bail appeals and for motions for bail pending appeal, with the opposition required to be filed within ten days after the filing of the motion. While the rules allow seven days to file a reply, it is best to contact the motions attorney if a reply will be filed. Otherwise, the bail motion may be submitted to a panel for a decision immediately.

### B. APPEALS OF ORDERS REGARDING RELEASE AFTER JUDGMENT

When an appeal is already pending from an underlying criminal judgment or sentence, a party may file a motion for bail pending appeal (or for revocation thereof) under Federal Rule of Appellate Procedure 9(b). However, such a motion *must* first have been made (orally or in writing) in the district court. The filing of a motion for bail pending appeal in the Ninth Circuit automatically stays any reporting date set by the district court. Two judges may

decide the motion, which will be processed on an expedited basis. The documents required to accompany the motion and the briefing schedule are set forth in Ninth Circuit Rule 9-1.2.

## VI. SPECIAL CONSIDERATIONS FOR INTERLOCUTORY CRIMINAL APPEALS  Under Ninth Circuit Rule 27-4, parties to interlocutory criminal appeals (pretrial or midtrial) may use the emergency motion procedure in Rule 27-3 to request that the interlocutory appeal be expedited or disposed of summarily. The rule sets out specific materials that should be included with the motion regarding the ongoing criminal proceedings.

## VII. SPECIAL CONSIDERATIONS FOR CAPITAL MOTIONS (MOTIONS FOR STAYS OF EXECUTION) (Ninth Cir. Rules 22-2, 22-4, 22-6).

**A.    SUBMISSION TO LOWER COURT** A motion for a stay of execution should ordinarily be filed in district court before filing in the Court of Appeals. The motion must state whether relief was sought in the district court and on what grounds, and if it was not, why the motion should not be remanded. One exception, however, is a motion for stay of execution that is filed with an application for leave to file in the district court a second or successive ("SOS") petition. SOS applications are filed first in the Court of Appeals.

**B.    WHEN TO NOTIFY THE COURT** Counsel should notify the Clerk by telephone (415-355-8020) or e-mail (emergency@ca9.uscourts.gov) as soon as counsel is aware that emergency relief will be sought from the Court of Appeals.

**C.    WHO DECIDES** The panel that is selected to hear, or that previously heard, a direct appeal or appeal arising from a first federal habeas petition will hear all emergency motions

in the case, including motions for stays of execution or SOS applications.

**D.    HAS AN APPEAL OR PETITION BEEN FILED?** An emergency motion may be filed *only* if an appeal or petition is pending in the Court of Appeals. If the appeal or petition has been recently filed, and so counsel does not yet have a Ninth Circuit case number or access to the e-filing system, counsel should call the motions unit, (415) 355-8020.

**VIII. <u>SPECIAL CONSIDERATIONS FOR IMMIGRATION MOTIONS</u>** Under General Order 6.4(c), the filing of an initial motion or request for stay of removal or deportation temporarily stays the order of removal or deportation until further order of the Court, and so the motion for a stay need not be filed on an emergency basis. However, if a motion for a stay has previously been denied, any subsequent motions for stay or for reconsideration must be filed as emergency motions if removal is imminent. If it is necessary to file a petition for review and/or for a stay of removal on an emergency basis (*i.e.,* if removal is imminent), counsel should contact the motions unit by phone (415-355-8020) or email (emergency@ca9.uscourts.gov). Note that the filing or pendency of any motion for stay of removal no longer stays or vacates the briefing schedule.

# IX.
# DRAFTING THE BRIEF

## I.    CONTENTS OF THE BRIEF[2]

### A.    WHAT TO INCLUDE IN THE BRIEF (Fed. R. App. P. 28, 28.1, and 29 and Ninth Cir. R. 28-1, 28.1-1, and 28-2). The appellant's opening brief must include the following, with appropriate headings, in this order:

1.    **Cover** The front cover of a brief must contain: (a) the number of the case centered at the top; (b) the name of the court; (c) the title of the case; (d) the nature of the proceeding (*e.g.*, appeal, petition for review, etc.) and the name of the court, agency, or board below; (e) the title of the brief, identifying the party or parties for whom the brief is filed; and (f) the name, office address, and telephone number of counsel representing the party for whom the brief is filed. Fed. R. App. P. 32. The cover of the appellant's brief must be blue, the appellee's red, an intervenor's or amicus curiae's green, any reply brief gray, and any supplemental brief tan, but the cover of the electronic version of a brief does not need to be colored.

2.    **Disclosure Statement** Any nongovernmental corporate party to a proceeding in the Ninth Circuit must file a statement identifying any parent corporation and any publicly held corporation that owns 10% or more of its stock or stating that there is no such corporation. Fed. R. App. P. 26.1. In a criminal case, unless the government shows good cause, it must file a statement that identifies any organizational victim or the alleged criminal activity

---

²   A model "shell" brief is available here:
https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000858.

and, if the organizational victim is a corporation, must identify any parent corporation and any publicly held corporation that owns 10% or more of the organizational victim's stock, or state that there is no such corporation. In a bankruptcy case, the debtor, trustee, or appellant (if neither the debtor or trustee is a party) must file a statement that identifies each debtor not named in the caption and, for each debtor that is a corporation, discloses any parent corporation and any publicly held corporation that owns 10% or more of the organizational victim's stock or states that there is no such corporation. The disclosure statement must be included before the table of contents in the principal brief.

3. **Table of Contents** This must include page references.

> ***Practice Tip:*** Use full sentences for your table of contents headings so that your table of contents reads as an outline of your case. Some judges read the table of contents first, and you should take advantage of the opportunity to lay out your case in a concise, logical roadmap. For example, rather than using a heading like "Argument," tell the reader what your argument is.

4. **Table of Authorities** This must list all the cases (alphabetically arranged), statutes, and other authorities cited, with appropriate page references.

> ***Practice Tip:*** Although neither the Federal Rules of Appellate Procedure nor the Ninth Circuit Rules require an introduction, both allow one. Writing an introduction allows you to succinctly introduce the basic facts and law the Court needs to understand to rule your way.

5. **Jurisdictional Statement** This must set forth, in the following order, (a) the statutory basis for

subject matter jurisdiction of the district court or agency, (b) the basis for claiming that the judgment or order appealed from is final or otherwise appealable, including the statutory basis of jurisdiction in this Court, and (c) facts pertinent to timeliness, including date of entry of the judgment or order appealed from, the date of filing of the notice of appeal or petition for review, and the statute or rule under which the appeal is timely. The jurisdictional statement should include both citations to the applicable statutory provisions and the facts establishing jurisdiction under them.

6.   **Statement of the Issues Presented for Review**
     Tell the Court what the issue is in a succinct way –
     preferably one that suggests the answer you want
     without being too argumentative.

7.   **Statement of the Case** This section should
     concisely set forth the facts relevant to the issues
     submitted for review, describe the relevant
     procedural history, and identify the rulings
     presented for review, with appropriate references to
     the record. According to the Ninth Circuit's Rules,
     "*[e]very* assertion in briefs regarding matters in the
     record shall be supported by a reference to the
     location in the excerpts of record where the matter is
     to be found," unless the filer is exempt from the
     excerpts requirement. Ninth Cir. R. 28-2.8
     (emphasis added). (In immigration cases, the parties
     should cite to the certified administrative record.) A
     recent amendment to Ninth Circuit rule 28-2.8
     specifies that parties need not include record
     citations for "undisputed facts offered only for
     general background." One of the most common
     reasons cited in moving to strike a brief is the
     failure to adequately cite to the record. Similarly,
     parties sometimes cite to the original district court

record rather than to the excerpts of record; such briefs must be stricken and refiled with appropriate citations, at additional cost to the client. The commentary to Ninth Circuit Rule 28-2.8 now states that "citations directly to the underlying record are prohibited," and a recent amendment to Ninth Circuit Rule 30-1.6 sets forth specific conventions to be used when citing to the Excerpts of Record:

> Parties shall cite the initial Excerpts of Record in the following format: [volume number]-ER- [page number(s)]. If only one volume exists, the volume number shall be omitted. Multi-volume examples: 1-ER-12, 4-ER-874–76. Single-volume example: ER-26–32. The same format applies to Supplemental Excerpts of Record except that "SER" applies rather than "ER." The same format applies to Further Excerpts of Record except that "FER" applies rather than "ER."

Note that strict compliance with Rule 30-1.6's conventions will be required, most significantly the use of hyphens (-) between the volume number, ER/SER/FER abbreviation, and first page number, and then en dashes (–) to note the range in multi-page citations.

> ***Practice Tips:*** The statement of the case is your first real opportunity to draw the reader in, explain what the case is about, and convince the reader to care about it. It should read like a story of what happened, not like a minute order summarizing the proceedings below. Tell a story that is interesting, compelling, and makes the reader want to side with your client. Generally, the statement of the case should include the facts relied upon in your argument section. However, you need not include every detail in the statement of facts. You can elaborate further in the argument section when doing so will make it easier for the reader to digest the additional detail.
>
> Don't avoid inconvenient facts. If you leave out an important fact that seems to benefit your opponent, the judges will notice the omission, and they will start to wonder if you are omitting other relevant information as well. If the judges start doubting your credibility as they read your statement of the case, you will be in trouble by the time they get to your legal argument. Conversely, including all relevant facts – even those that work against your case – shows candor, honesty, and integrity.

**8.**   <u>**Summary of Argument**</u> The summary must contain a succinct, clear, and accurate condensation of the arguments made in the body of the brief, and must not merely repeat the argument headings. This is a good time to make the relationship between your various arguments clear. Thus, for example, if the Court need not reach argument B if they find for you on argument A, say so.

**9.**   <u>**Argument**</u>

**a.**   **Standard of review** For each issue, the brief must include a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues). The brief must also identify where in the record each issue was raised and ruled on. The Ninth Circuit's website includes an outline of standards of review, which can be a useful starting point

([https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000368](https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000368)).

**b.** **Objection raised below** If a ruling challenged on appeal is one to which a party must have objected at trial in order to preserve it (*e.g.*, a failure to admit or to exclude evidence or the giving of or refusal to give a jury instruction), the appellant must state where in the record the objection and ruling are set forth.

**c.** **Argument** Begin the argument section of your brief with your strongest argument. If you are the appellee, it can be helpful for the Court to have your brief follow the same approximate order as the appellant's brief. Nevertheless, you may wish to use a different structure than the opening brief to make your main point first or to address a threshold issue (such as standing) that your opponent has not. Omit implausible or weak arguments.

> *Practice Tips:* Be straightforward about the case's strengths and weaknesses, both factual and legal. In particular, you *must* disclose controlling adverse authority even if the other side has not raised it. In fact, doing so allows you to frame the relevant question and explain in the first instance why that authority does not control here.
>
> **Do** address case or statutory authority relied on by the lower court.
>
> **Do** highlight a situation where your case presents a novel issue with no Ninth Circuit law on point.
>
> **Don't** waste time arguing obvious or undisputed points.
>
> **Don't** use boilerplate, especially regarding well-established standards, but if there is a controlling standard, include it.

10.  **Conclusion** The rules require a short conclusion stating the precise relief sought. Generally, the conclusion should contain *one sentence* that tells the Court *exactly* what you want it to do. Sometimes this will be very straightforward (*e.g.*, "For the reasons stated above, the defendant respectfully requests that this Court affirm the district court's order."). Other times it may be more complex (*e.g.*, "For the reasons stated above, the plaintiff respectfully requests that this Court vacate the judgment and remand to the district court with instructions to dismiss Counts 2, 3, and 6, and to resentence defendant on an open record on Counts 1, 4, and 5."). When crafting your conclusion, imagine that your brief and argument have carried the day and the judge is drafting an opinion to give you everything you have asked for. Then ask yourself: what precisely are you asking for? The answer is your one-sentence conclusion.

11.  **Bail/Detention Status** The opening brief in a criminal appeal must address the bail status of the defendant. If the defendant is in custody, the projected release date should be included. Similarly, the opening brief in a petition for review of a decision of the Board of Immigration Appeals should state whether petitioner (1) is detained in the custody of the Department of Homeland Security or at liberty and/or (2) has moved the Board of Immigration Appeals to reopen or applied to the district director for an adjustment of status.

12.  **Statement of Related Cases** Each party must identify in a statement at the end of its initial brief (after the Conclusion and before the certificate of compliance) any known related cases pending in the Ninth Circuit. Cases are deemed "related" if they: (a) arise out of the same or consolidated cases in the

district court or agency; (b) raise the same or closely related issues; or (c) involve the same transaction or event. The statement should include the name and appellate docket number of the related case and describe its relationship to the case being briefed. *See* Ninth Circuit Rule 28-2.6. If you do not know of any other related cases in this Court, no statement is required. If you are/represent the appellee(s), you do not need to include any related cases that have already been identified by the appellant(s). Ninth Circuit Form 17 may be used in place of creating your own statement of related cases. The statement of related cases constitutes a certificate of counsel, excluded from the page and word limitations of Federal Rule of Appellate Procedure 32(f) and Ninth Circuit Rule 32-1.

13. <u>**Addendum**</u>

    a.    **Pertinent constitutional provisions, treaties, statutes, ordinances, regulations, or rules** These must be set forth verbatim and with appropriate citation either (1) following the statement of issues presented for review or (2) in an addendum introduced by a table of contents and bound with the brief or separately. If you include them in an addendum, you must indicate in the brief after the statement of issues that the authorities are set out in an addendum. If the addendum is bound with the paper copy of the brief, it must be separated from the body of the brief (and from any other addendum) by a distinctively colored page. A party need not resubmit material included in any prior brief or addendum; but the brief should include a statement indicating that "Except for the following, all pertinent statutory authorities are set out in the [indicate appellate party designation]'s previously filed [indicate brief or addendum]."

    b.    **Orders challenged in immigration cases** All opening briefs filed in counseled petitions for review of immigration cases must include an addendum with the orders being challenged, including any orders of the immigration court and Board of Immigration Appeals. The addendum should be bound with the paper copy of the brief but separated from the brief by a distinctively colored page.

14. <u>**Certificate of Compliance for Briefs**</u> The brief must include a certification that the document complies with the applicable type-volume limitation. If the filing party is using a word-count calculation

to demonstrate compliance with the type-volume limitation, the filing party must use Ninth Circuit Form 8 to certify compliance, accessible here: https://www.ca9.uscourts.gov/forms/. Fed. R. App. P. 32(f) sets forth the items in the brief that may be excluded when computing the length of the brief (for example, the statement of related cases); all other items must be included. If using a word processor's word count function to determine the brief's length, *be sure that the function is set to include words that appear in footnotes.*

15. **Certificate of Service (if required)** Where all case participants are registered for electronic filing, no certificate of service or service of paper copies upon other parties and counsel registered for electronic filing is necessary.  *See* Ninth Cir. R. 25-5(f)(1). Registration for the Appellate Electronic Filing System constitutes consent to electronic service. *See* Ninth Cir. R. 25-5(f)(2). Filings in original proceedings, petitions for review, sealed filings, and any electronically submitted filing in a case involving a pro se litigant or an attorney who is not registered for the Court's electronic filing system must be served in person or by mail pursuant to Federal Rule of Appellate Procedure 25(c)(1) and be accompanied by a certificate of service stating the date and method of service.

## B.    WHAT TO INCLUDE IN OTHER BRIEFS

1. **Answering briefs** The appellee's answering brief must include the same elements, although the appellee *may* omit the statement of the issues, the statement of the case, and the statement of the standard of review, if the appellee agrees with the appellant's formulation of them. If the appellee agrees with the appellant's statement of jurisdiction,

the appellee may state such agreement under an
appropriate heading.

2.   **Reply briefs** The reply brief must contain tables of
contents and authorities, with appropriate page
references.

> ***Practice Tips:*** Although a reply brief is optional, it is almost always
> a good idea to file one. Why give your opponent the last word if
> you don't have to?
>
> If you file a reply brief, do not rehash the same headings and
> arguments as in your opening brief. Respond directly to the
> answering brief's contentions, or you risk losing the Court's
> attention. You don't want a judge to open your reply brief, look
> at the table of contents, and conclude that there is nothing new
> there.

3.   **Cross-appeals** Federal Rule of Appellate Procedure
28.1 governs briefing in cases involving a cross-
appeal, and addresses the required contents of each
brief, the colors of the covers, and length. In
particular, parties should be aware that the
appellee's reply brief is limited to the issues raised
by the cross-appeal.

4.   **Amicus briefs** While the United States or its officer
or agency or a state may file an amicus curiae brief
without consent of the parties or leave of court, any
other amicus curiae may file a brief only by leave of
court or if the brief states that all parties have
consented to its filing. Fed. R. App. P. 29(a)(2). The
Court disfavors the filing of multiple amicus curiae
briefs raising the same points in favor of one party
and encourages amici to file a joint brief.

a.   **Motion for leave to file** If the parties do not
consent to the filing of the amicus brief, the

would-be amicus must file a motion for leave to
file the amicus brief. (If all parties consent, there
is no need to file a motion.) If a motion is
required, however, it must state that the movant
tried to get the consent of all the parties before
asking the Court for permission. Ninth Cir. R. 29-
3. The motion must be accompanied by the
proposed brief and state the movant's interest,
why an amicus brief is desirable, and why the
matters asserted are relevant to the disposition of
the case. Fed. R. App. P. 29(a)(3).

**b.**   **Contents and form** An amicus brief must
comply with Federal Rule of Appellate Procedure
32. In addition to those requirements, the cover
must identify the party or parties supported and
indicate whether the brief supports affirmance or
reversal. An amicus brief need not comply with
Federal Rule of Appellate Procedure 28, but must
include:

- A disclosure statement, if the amicus curiae
  is a corporation;

- A table of contents;

- A table of authorities;

- A concise statement of the identity of the
  amicus curiae, its interest in the case, and
  the source of its authority to file;

- Unless the amicus curiae is the United
  States, or its officer or agency, or a state, a
  statement whether a party's counsel
  authored the brief in whole or in part,
  whether a party or party's counsel
  contributed money that was intended to
  fund preparing or submitting the brief, or

whether a person other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief (and if so, identifies each person);

- An argument; and

- A certificate of compliance.

Because the Court will review the amicus briefs in conjunction with the parties' briefs, amicus briefs should not repeat arguments or factual statements made by the parties.

**c.** **Length** Except by the Court's permission, an amicus brief may be no more than one-half the maximum length authorized by the Court's rules for a party's principal brief.

**d.** **Time for filing** An amicus must file its brief, accompanied by a motion for filing when necessary, no later than 7 days after the principal brief of the party being supported is filed. An amicus that does not support either party must file its brief no more than 7 days after the appellant's or petitioner's principal brief is filed.

**e.** **Amicus briefs filed in support of, or in opposition to, a petition for panel or *en banc* rehearing or during the pendency of rehearing** An amicus curiae may be permitted to file a brief when the Court is considering a petition for panel or *en banc* rehearing or when the Court has granted rehearing. Ninth Cir. R. 29-2. As a general matter, the Court considers the filing of amicus curiae briefs related to petitions for rehearing or *en banc* review to be appropriate only when the post-disposition deliberations involve

novel or particularly complex issues. Circuit
Advisory Committee Note to Ninth Cir. R. 29-2.

    **i.**     **Format** Ninth Circuit Rule 29-2 addresses
the requirements for format, timing, and
length. In particular, amici are limited to 15
pages or 4,200 words for a brief submitted
while a petition for rehearing is pending
and 25 pages or 7,000 words for a brief
submitted after the Court has voted to
rehear a case.

    **ii.**     **Timing** An amicus brief submitted to
support or oppose a petition for rehearing
must be served (along with any necessary
motion) no later than 10 days after the
petition or response of the party the amicus
wishes to support is filed or is due. An
amicus brief that does not support either
party must be served no later than 10 days
after the petition. With respect to briefs
submitted during the pendency of
rehearing, an amicus curiae supporting the
petitioning party or not supporting either
party must serve its brief no later than 21
days after the petition for rehearing is
granted. An amicus curiae supporting the
position of the responding party must serve
its brief no later than 35 days after the
petition for rehearing is granted.

## C.   WHAT NOT TO INCLUDE IN THE BRIEF (OR TO INCLUDE SPARINGLY)

    **1.**     **<u>Unnecessary words</u>** Be concise. Do not use 20
words to say what you can say in 10. One easy way
to do this is to omit "throat-clearing" phrases (*e.g.*,

"Needless to say..."; "It should also be noted that...";
"It is interesting to note that...").

2. **Excessive string cites** For an established
proposition, one case is often sufficient; if not,
consider providing the lead case establishing the
rule and the most recent case applying it. If an issue
is less settled, cite Ninth Circuit law first and then
law from other circuits for support. Thus, for
example, for the standard of review, a single case
citation is usually enough. Unless the standard of
review is confusing, contested, or novel, make it
short and sweet.

3. **Disrespect** To quote the late Chief Judge
Browning, you can "disagree without being
disagreeable." Argue the merits of your case, not the
integrity of your opponent.

4. **Incorporating by reference** Parties must not
append or incorporate by reference briefs submitted
to the district court or agency or the Ninth Circuit in
a prior appeal, or refer the Court to such briefs for
the arguments. Ninth Cir. R. 28-1(b). (However, in a
case involving more than one appellant or appellee,
including consolidated cases, any party may adopt
by reference a part of another's brief.)

## D.   WRITING THE BRIEF – SOME ADDITIONAL PRACTICE POINTERS

1. **Proofread for misspellings, grammatical
mistakes, and other errors** Do not assume that
spellcheck will catch every error.

2. **Be clear** An effective brief has: (1) concise, direct,
and persuasive substance; (2) logical, systematic
organization; and (3) an inviting, readable style.

**a.**   Be careful with acronyms. Judges may jump into your brief in the middle because of their interest in a particular issue, and they need to be able to understand your argument without flipping back to the beginning for definitions. Descriptive phrases are better than acronyms.

**b.**   Avoid referring to the parties as "appellant" and "appellee"; instead, use descriptive terms such as "employer" or "the bank". Fed. R. App. P. 28(d).

**3.**   <u>**Be accurate**</u> Never misstate the facts or the law. When appropriate to do so, quote directly from the language in the cases and in the record as you write the argument, rather than paraphrasing. Although you should avoid block quotes, incorporating the language from the record and cases into your brief builds credibility and makes it easier for the reader to accept your representations about the record and cases.

**4.**   <u>**Be readable**</u>

**a.**   Use the active voice. For example, instead of writing "The properties were marketed by defendants," write "Defendants marketed the properties."

**b.**   Use block quotes and footnotes sparingly. Footnotes should generally be used only for tangential points.

**c.**   Use emphasis sparingly.

**5.**   <u>**Be organized**</u>

**a.** If you are the appellant, explain not only why the district court erred, but also what is the correct result under the law and why that means your client should win. Although each case is different, for each issue in the argument section, consider beginning with the applicable law, why under that law your client wins given the facts and standard of review, and then, why and how the lower court/agency erred.

**b.** If you are the appellee, do not focus solely on the other side's brief. Explain why the district court reached the correct result, which can be for reasons other than those articulated by the district court if supported by the record. After articulating why you win, it is often easier to then debunk the arguments made in the opening brief.

## II.  LOGISTICS OF FILING THE BRIEF

**A.  WHEN IS THE BRIEF DUE?** The Court will normally issue an order setting a briefing schedule for the appeal. The filing of the appellant's brief before the due date does not advance the due date for the appellee's brief. An electronic filing must be successfully completed by 11:59 p.m. Pacific Time.

**B.  WHAT IF I NEED AN EXTENSION OF TIME?** There are two options: an initial streamlined request for an extension of time and a written motion for an extension of time (or Form 14, in lieu of preparing your own written motion). Note that these procedures may be subject to change, so always check the most current version of the rules before seeking an extension. (*See also deadlines and extensions of time.*)

**1.  Initial Streamlined Extensions** The Clerk's Office may grant an initial streamlined request for a single extension of time of no more than 30 days to

file an opening, answering or reply brief, except where a Notice of Oral Argument has issued or where a case has been previously expedited. It does not apply to any other deadlines, including deadlines for petitions for rehearing, amicus briefs, and supplemental briefs ordered by the Court; to any brief in Preliminary Injunction Appeals (Ninth Cir. R. 3-3), Incarcerated Recalcitrant Witness Appeals (28 U.S.C. § 1826; Ninth Cir. R. 3-5), or Class Action Fairness Act appeals (28 U.S.C. § 1453(c)). You do not need to give notice to the opposing party before filing the request. If you have already received an extension of time, you may not use this procedure. The request can be filed up to the day the brief is due, and replaces the earlier telephonic extension system. You should make this request directly through the electronic filing system (without a form or attachment) using the Filing Type "Streamlined Request to Extend Time to File Brief." No form or motion is required with the CM/ECF or ACMS filing.

2.  **Motions for extensions of time** (*See also Motions Practice,* Chapter VII.) If you are not eligible for a streamlined initial request (for example, if you are seeking an extension of more than thirty days, or an additional extension of time), you must file a written motion for an extension of time. In lieu of preparing your own motion, you may use Form 14, accessible at https://www.ca9.uscourts.gov/forms/. A motion for an extension of time is deemed untimely if not filed 7 days before the brief in question is due. Your written motion must demonstrate diligence and substantial need, and it must be accompanied by a written declaration that states:

- when the brief is due;

- when the brief was first due;

- the length of the requested extension;

- the reason an extension is necessary;

- movant's representation that movant has exercised diligence and that the brief will be filed within the time requested;

- whether any other separately represented party objects to the request, or why the moving party has been unable to determine any such party's position; and

- that the court reporter is not in default with regard to any designated transcripts.

> **Practice Tip:** Although a motion for an extension of time is deemed untimely if not filed 7 days before the brief is due, the deadline is not mandatory and jurisdictional. However, a late filing will result in a corresponding delayed response from the Court. Do not file a motion to shorten time to alleviate the late filing.

**C.  HOW DO I FORMAT THE BRIEF?** The rules addressing the formatting of the briefs (length, typeface, cover pages, etc.) are set forth at Federal Rule of Appellate Procedure 32 and Ninth Circuit Rules 32-1 through 32-5. You should familiarize yourself with the rules well before the date of filing. (*See infra*, Drafter's Checklist for Appellate Briefs.)

**D.  HOW DO I FILE THE BRIEF?** (*See infra,* Drafter's Checklist for Appellate Briefs, and Filer's Checklist for Briefs and Records.")

**III.  AFTER THE BRIEF IS FILED**

**A.  WHAT SHOULD I DO IF I FIND AN ERROR AFTER FILING THE BRIEF?** If, after filing the brief, you discover an error other than a minor typographical error, you should

prepare and file a Notice of Errata. If, however, the errors are substantial and/or extensive you should file a substitute or corrected brief, and you will need to file a motion leave to do that. Note that in the new ACMS electronic filing system you will not have the option to file an errata even for minor errors, but in those instances, if the brief was very recently filed you may be able to ask the Clerk to replace it on the docket with the corrected version.

## TOP-10 TECHNICAL FLAWS IN BRIEFS

1. **NOT SEARCHABLE.** The brief is not an electronically searchable document because the PDF file was created by scanning the paper brief, which is prohibited. Ninth Cir. R. 25-5(d).

2. **NO ADDENDUM.** The brief does not include the required addendum. In immigration cases, the petitioner's opening brief must include an addendum comprised of the challenged orders of the immigration court and Board of Immigration Appeals. All briefs should include pertinent constitutional provisions, treaties, statutes, ordinances, regulations, or rules in an addendum to the brief. Ninth Cir. R. 28-2.7.

3. **INCORRECT FONT SIZE.** The brief, including footnotes, has a font size smaller than 14-point. Fed. R. App. P. 32(a)(5)(A).

4. **NO TABLE OF CONTENTS AND/OR AUTHORITIES.** The brief does not contain a table of contents and/or table of authorities. Fed. R. App. P. 28(a), (b), and (c).

5. **NO RECITAL OF DETENTION OR BAIL STATUS.** The brief does not state the immigrant's/defendant's current detention/bail status. Ninth Cir. R. 28-2.4.

6. **NO REFERENCES TO EXCERPTS OF RECORD.** The brief does not include citations to the excerpts of record. Ninth Cir. R. 28-2.8 and Ninth Cir. R. 30-1.

7. **BRIEF'S COVER LISTS AN INCORRECT CASE NUMBER OR INCORRECT CAPTION.** The brief's cover page lists an incorrect Court of Appeals case number or an incorrect case caption. Fed. R. App. P. 32(a)(2).

8. **INCORRECT SPACING.** The brief is not double spaced. Fed. R. App. P. 32(a)(4).

9   **NO SIGNATURE.** The brief does not have an "s/" for each signature line followed by the typed name of counsel. Ninth Cir. R. 25-5(e).

10   **WRONG BRIEF TYPE SELECTED AT FILING. The filer selected the wrong brief type when submitting the brief in the Appellate Electronic Filing System.** The Appellant's/Petitioner's principal brief is the Opening Brief. The Appellee's/Respondent's principal brief is the Answering Brief. The Appellant/Cross-Appellee's initial brief is the First Brief on Cross-Appeal. The Appellee/Cross-Appellant's response/principal brief is the Second Brief on Cross-Appeal. The Appellant/Cross-Appellee's reply/response brief is the Third Brief on Cross-Appeal. A supplemental brief filed in response to a Court order requesting supplemental briefing is a Supplemental Brief. *See* Fed. R. App. P. 28 and 28.1.

# X.
## EXCERPTS OF RECORD

In contrast to other circuits, no record Appendix to the Brief is used in the Ninth Circuit. Instead, the Ninth Circuit Rules require the parties (unless they are unrepresented or parties in an immigration petition for review) to file Excerpts of Record.

**I.     PURPOSE OF THE EXCERPTS OF RECORD** The Excerpts of Record should be a well-organized and accessible collection of all parts of the record – and *only* those parts of the record – that are necessary to understand and decide the issues on appeal. With the required documents at their fingertips, judges and their staff can spend their time considering the issues instead of trying to find relevant documents.

> ***Practice Tip:*** To create a useful Excerpts of Record, the person compiling the Excerpts must know the record *and* the legal issues on appeal. The biggest mistake lawyers make with Excerpts of Record is turning their creation over to someone without this knowledge.

**II.     CONTENT OF THE EXCERPTS OF RECORD**

**A.     WHAT TO INCLUDE IN THE EXCERPTS OF RECORD** (Ninth Cir. R. 30-1.4; *see also* Ninth Cir. R. 13-2, 17-1, 22-6(c), and 32-4.) The Excerpts of Record should include:

1.  **Cover** The cover should be identical to the cover of the brief (*see* Federal Rule of Appellate Procedure 32(a)), except that it should be white and say "Excerpts of Record" instead of "Brief of Appellant." If the Excerpts are in multiple volumes, the cover should include the volume number and the total number of volumes (e.g., "Volume 1 of 3").

2. **Index** This is a list of each document included in the excerpts and the page on which it begins. If the entire Excerpts of Record, counting all pages, including the caption (cover) page and the Index, does not exceed 300 pages, the Index may be included in a single volume with the remainder of the excerpts. But if the Excerpts of Record exceeds 300 pages, you must file the Index as a single, separately bound "Index Volume" referencing all of the documents contained in all numbered volumes of the Excerpts of Record. In the Index Volume, list each document in order, including both a citation to where the document may be found in the lower court record and a citation to the volume and page number where it may be found in the Excerpts of Record. (The reference to where the document may be found in the district court record enables the Court to verify that you are not attempting to include non-record material.) When listing the documents in the Index, use descriptive labels – e.g., "Exhibit 12 - 2018 Deposition of Jeanne Smith" – rather than generic descriptions, such as, "Exhibit 12 to Motion for Summary Judgment."

3. **The notice of appeal** This is necessary to establish that the appeal is timely.

4. **The judgment or interlocutory order to be reviewed** Include the relevant decision and the district court's or agency's reasoning with respect to every issue on appeal. If the district court rendered its decision and/or explained its reasoning orally, include the relevant portions of the transcript. If your Excerpts of Record have more than one volume, these materials should be in the first volume.

> ***Practice Tip:*** Compile what you can of the Excerpts of Record before you write your brief. Then, as you write your brief, mark all the record pages that you reference in your brief. You can then easily add them to the Excerpts of Record. Do not include briefs or motions filed below, unless essential to resolution of the appeal (most commonly to demonstrate preservation of the issue).

5. **Parts of the record relevant to your appeal** Different documents will be relevant depending on the issues raised. For example, in cases challenging a jury instruction, include the jury instruction requested and the instruction given. Note that rules governing particular kinds of cases include particularized instructions as to what must be included in the excerpts. *See* Ninth Cir. R. 13-2 (tax court cases); 17-1 (agency review); 22-6(c) and 32-4 (capital cases).

6. **All pages of the record, including any transcripts, relied on in the brief** Be sure to include enough material to place the cited point in context. For example, when citing a passage in a transcript, include several pages before and after that passage. It is generally not necessary or appropriate to include the entire trial transcript, except when your brief raises a sufficiency of the evidence or harmless error issue.

7. **Copies of all exhibits or affidavits relied on in the brief** These documents are often not accessible to the Court via the electronic record, so if you do not include them, the Court may waste considerable time trying to find them and may have no way of viewing them. *See* Ninth Cir. R. 27-14.

8. **In criminal cases, the final indictment or other charging document** Criminal dockets often include both a complaint and an indictment, and

may include one or more superseding indictments. Unless you are raising an issue that makes earlier charging documents relevant, include only the final version of the charging document.

9. **In civil cases, the final pretrial order**, or, if the final pretrial order does not set out the issues to be tried, the final complaint and answer, petition and response, or other pleadings setting out those issues.

10. **In an appeal from a district court order reviewing an agency's benefits determination**, the entire reporter's transcript of proceedings before the administrative law judge, if such transcript was filed with the district court.

11. **A complete copy of the docket sheet in the district court** This should always appear at the end of the final unsealed volume of the initial excerpts.

12. **Certificate of service on any parties of record for whom service will not be effected via CM/ECF** This certificate should state the date and method of service. You are encouraged to use Ninth Circuit Form 15 as your Certificate of Service for electronic filing when one or more parties are not registered for electronic filing, or when the filing is electronically submitted using an "under seal" document filing type. Any electronically submitted filing in a case involving a pro se litigant or an attorney who is not registered for the Court's electronic filing system must be served in person or by mail or commercial carrier pursuant to Federal Rule of Appellate Procedure 25(c)(1), and must be accompanied by a certificate of service. Form 15 is accessible here: https://www.ca9.uscourts.gov/forms/. If all parties are registered for electronic filing, no

certificate of service or service of paper copies upon other parties and counsel registered for electronic filing is necessary, per Ninth Circuit Rule 25-5(f)(1).

## B.  SINGLE- OR MULTIPLE-VOLUME EXCERPTS[3]

1.  **Single-Volume Excerpts** If the entire Excerpts of Record do not exceed 300 pages (including the cover and Index), they may be filed in a single volume pursuant to Ninth Circuit Rule 30-1.5(b).

2.  **Multiple Volume Excerpts** If the entire Excerpts of Record exceed 300 pages (or you will have more than one volume because of sealed material), you must break them up into multiple volumes, each of which does not exceed 300 pages (including the cover). When you file multiple-volume excerpts, the first volume must contain *only* the decisions being appealed, reviewed, or collaterally challenged. The remaining materials, including the notice of appeal and district court docket sheet, must be included in subsequent volumes.

3.  **Pagination of Excerpts** You should generally number the pages of each set of excerpts consecutively across all volumes – e.g., if Volume 1 ends with page 84, the cover for Volume 2 should begin with page 85. There is one exception. The separate Index Volume required by Ninth Circuit Rule 30-1.5(a) for multiple volume excerpts should be numbered separately from the remaining volumes. Please note that the Court prefers that the page numbers of the electronic and paper versions of your excerpts be the same, even though the

---

[3] Sample single- and multiple-volume civil and criminal Excerpts of Record are available here: https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000858.

electronic version assigns numbers to pages – such as the cover, blank pages, and certificates – that traditionally may not have been numbered in paper excerpts. To accomplish this, you must include *all* pages of each volume of the excerpts in the consecutive page numbering, including (but not limited to) caption pages, pages used as dividers, blank pages, and certificates of service. (You do not, however, have to *print* numbers on all of those pages.)

4.    **Ordering of Documents in Excerpts** The Court generally prefers that the documents in your excerpts be arranged by file date in reverse chronological order, across all volumes of your excerpts. There are six exceptions. First, if your excerpts have multiple volumes, the documents in the first volume should be arranged by file date in reverse chronological order as to only those documents. Second, transcripts of hearings or trials that span multiple dates or sessions should appear in chronological order for that hearing or trial, using the first day of the hearing or trial to locate it within the reverse chronological ordering of the excerpts. In fact, if your excerpts contain the complete trial transcript, you may submit the reporter's transcript as a separate volume (or volumes) after the final volume of excerpts pursuant to Rule 30-1.4(c). Third, when filing separate sealed or provisionally sealed volumes of excerpts pursuant to Rule 30-1.4(d), the documents contained in those volumes should be arranged in reverse chronological order as to only those documents. Fourth, if you include trial exhibits in your excerpts, you should group them together and place them with the trial transcripts, at the end of the final volume of unsealed excerpts (just before the notice of appeal and docket sheet), or (if appropriate) in the final volume of sealed

excerpts. Fifth, on appeal from a District Court, Bankruptcy Appellate Panel, Bankruptcy Court, or Tax Court case, the notice of appeal (along with the lower court docket sheet) shall be included at the end of the last volume in the non-sealed initial Excerpts of Record. Sixth, if you feel that reverse chronological ordering is poorly suited to a particular case, you may organize the documents in a different manner.

5.     **Sealed Material in Excerpts** If your excerpts include documents that are required to be sealed pursuant to statute or rule and are being submitted pursuant to Rule 27-13(d), or documents that are being submitted provisionally under seal pursuant to Circuit Rule 27-13(e) or (f), you must file those documents in a separate, sealed, final volume (or volumes) of your excerpts. The documents contained in these sealed or provisionally sealed volumes ordinarily shall be arranged in reverse chronological order. Do not include presentence reports or related sealed sentencing documents in these volumes; these documents must instead be filed separately using the presentence report filing event. *See* Ninth Circuit Rule 27-13(d).

## C.     THINGS *NOT* TO INCLUDE IN THE EXCERPTS OF RECORD

1.     **Briefing** Unless necessary to show that an issue was raised or waived, you should generally not include briefing (e.g., memoranda of points and authorities or other legal briefing) filed in the district court.

2.     **Presentence Reports** In criminal cases, do not include the Presentence Report or sealed sentencing memoranda. These sealed documents must be filed

separately, pursuant to Ninth Circuit Rule 27-13(d).
File your electronic version of the Presentence
Report and other relevant sealed sentencing
memoranda by using the electronic document filing
type "File Presentence Report UNDER SEAL," which
will automatically seal the document.

## D.    FORMAT OF PAPER COPIES OF EXCERPTS OF RECORD

The paper copies of all excerpts, including the Index Volume and
any separate reporter's transcript volumes, should be bound
securely on the left. They should be printed on letter-sized light-
colored paper with black ink (or colored ink where appropriate),
and their cover pages should be white. They may be printed on
both sides of the paper, but only if the method of binding allows
each volume to lie completely flat when open (such as comb,
spiral, coil, or wire binding), and the weight of the paper is
sufficient to prevent bleeding through when marked on one side in
ink or highlighter.

**III.    SUPPLEMENTAL EXCERPTS OF RECORD** If you represent
the appellee or respondent, and your answering brief refers to
documents or portions of documents that were not included in the
appellant's or petitioner's Excerpts of Record, you may file
Supplemental Excerpts of Record together with your brief. Your
Supplemental Excerpts of Record should include only documents
that were not included in the appellant or petitioner's Excerpts of
Record that you believe are necessary to decide the issues on
appeal. If the appellant or petitioner declined, pursuant to Rule
30-1.3, to file Excerpts of Record, you *must* file Supplemental
Excerpts of Record containing all of the documents that are cited
in the appellant or petitioner's opening brief or are otherwise
required to be filed by Ninth Circuit Rule 30-1.4, as well as any
other documents that are cited in your answering brief. The same

formatting rules that govern the Excerpts of Record govern the Supplemental Excerpts of Record.

**IV.**  **<u>FURTHER EXCERPTS OF RECORD</u>** If you are the appellant or petitioner, and you find it necessary to cite in your reply brief portions of the record that are not included in the Excerpts of Record or any Supplemental Excerpts of Record, you may file a Further Excerpts of Record with your reply brief. It may also be appropriate to file Further Excerpts of Record if the Court orders supplemental briefing. The same formatting rules that govern the Excerpts of Record govern the Further Excerpts of Record.

**V.**  **<u>WHEN THE EXCERPTS OF RECORD AND SUPPLEMENTAL OR FURTHER EXCERPTS OF RECORD ARE DUE</u>** You must submit an electronic version of the Excerpts of Record (or Supplemental or Further Excerpts of Record) on the same day as the corresponding brief (unless you are exempt pursuant to Rule 30-1.3). On the same day, you must serve 1 paper copy of the excerpts on any other party that is not registered for electronic filing. If the Court confirms that the excerpts conform to Rule 30-1, it may direct you to send paper copies of the excerpts to the Court. If the Court finds that the excerpts do not conform to Rule 30-1, it will instead instruct you to submit a corrected electronic version. The Court may wait until after the filing of the answering brief and any supplemental excerpts of record before directing you to send paper copies of the excerpts. If the Court decides to consider a case en banc, it will direct counsel to send additional paper copies of the excerpts.

# XI.
## ORAL ARGUMENT

## I.    LOGISTICS

### A.    HOW ARE CASES SET FOR ORAL ARGUMENT?

1.    **Pre-calendaring notices and responses** Most cases before the Court are not set for oral argument. For those that are, pre-calendaring notices identifying the month that your case is being considered for the argument calendar, along with a link to upcoming court sessions, are sent approximately 18 weeks before the anticipated calendar date. When you receive this notice, review the dates immediately to determine whether you have any conflicts. If you do, respond to the court within 3 business days by using Form 32 to advise the court of any unavoidable conflicts that would prevent you from appearing on any of the calendar dates under consideration. Each counsel who has a conflict should file Form 32, accessible at this link: https://www.ca9.uscourts.gov/forms/. If you do not have a conflict, or you will not be the attorney arguing the case, you do not need to file Form 32. File Form 32 using the electronic document filing type "Response to Case Being Considered for Oral Argument."

2.    **Hearing notices** Hearing notices scheduling the date and time of your oral argument are distributed approximately 10 weeks before the hearing date. Complete the Acknowledgment of Hearing Notice as soon as possible and submit it using that electronic filing type. No electronic or paper form (or attachment) need be filed in connection with the Acknowledgment of Hearing Notice. However, you may submit a PDF attachment with this electronic filing type when requesting a specific disability accommodation, making some other unique request in relation to oral

argument, or providing other relevant information. Once you receive the hearing notice, be sure to visit the oral argument calendar page at https://www.ca9.uscourts.gov/calendar/, which allows you to look at the entire calendar to learn what other cases will be argued that day or other days that week. You may find other cases that have related issues, thus allowing you to explore possible coordination with other counsel.

3.    **Argument schedule** On the Monday of the week before the scheduled argument, the Court will list the judges assigned to the calendar on the oral argument calendar posted to the Court's website. Having a case calendared does not mean that there will necessarily be an oral argument. If all three judges on the panel agree that the decisional process would not be significantly aided by oral argument, the case may be submitted without argument. Fed. R. App. P. 34(a)(2).

B.    **WHEN WILL MY CASE BE SET FOR ORAL ARGUMENT?** The timing of oral argument generally depends on when the notice of appeal was filed, not when briefing was completed. However, the timing of oral argument also depends on a number of other factors, including the type of case, and whether there are related cases before the Court. In general, criminal cases get first priority. Non-criminal appeals involving (1) recalcitrant witnesses (28 U.S.C. § 1826); (2) habeas corpus petitions (Title 28 U.S.C. Ch. 153); (3) applications for temporary or permanent injunctions; (4) alleged deprivations of medical care or other cruel or unusual punishment of inmates; and (5) other claims entitled to priority on the basis of good cause (28 U.S.C. § 1657) will also be accorded priority. If you believe that your case should get priority on the basis of good

cause under 28 U.S.C. § 1657, you should file a motion for expedition at the earliest opportunity.

C.  **WHERE WILL MY CASE BE SET FOR ORAL ARGUMENT?** The Court sits monthly in San Francisco, Pasadena and Seattle. The Court sits in Portland every other month, depending on caseload. The Court also hears cases three times a year in Honolulu, at least two times a year in Alaska, and occasionally in other locations. Typically, cases are heard in the administrative units in which they arise. However, to assist the Court in filling calendars in relatively remote locations, and possibly to secure an earlier argument date, the parties may notify the Clerk that they are amenable to having their case placed on any available argument calendar, regardless of location. Petitions to enforce or review orders or decisions of boards, commissions, or other administrative bodies are generally heard in the administrative unit in which the person affected by the order or decision is a resident.

1.  **What if my argument is held by video?** In the face of exigent and unusual circumstances, such as the COVID-19 pandemic, the Court may decide to conduct the oral argument remotely. If so, the notice you receive from the Court will nevertheless identify the physical courtroom to which the argument is assigned (e.g., "Courtroom 1, San Francisco CA"), but it will also note that the argument may be held remotely, with all of the judges and attorneys appearing by video or telephone, and that travel to the courthouse will not be required. If your argument is scheduled to take place remotely, Court staff will contact you at least two weeks before the scheduled argument to determine your method of connecting to the videoconference, obtain the telephone number and email address at which you may be reached on the day of the argument, and provide you with a link you may use to test your connection with the Court during designated testing

- 116 -

times. When you test your connection, you should use the equipment and location you will use for the actual argument, because the Court will use the test to confirm that your wireless connection is adequate and that you may be seen and heard clearly. The message you receive from Court staff will also contain useful tips as to how to set up the location from which you present your remote argument so as to maximize clarity and minimize distractions. Among other factors, you should ensure that your face is well-lit, that you will be positioned sufficiently close to the microphone, and that no inappropriate or distracting items are visible behind you. Remote arguments (unless sealed) will be streamed and archived on the Court's webpage as in-person arguments are. Only the attorneys arguing the case will be permitted to join the videoconference; all others must instead watch either the live feed or the archived recording. Although you may be apprehensive the first time you participate in a remote oral argument, you should be aware that arguing from the familiar environment of your office or home may be less stressful than appearing in Court. In fact, many members of the Court have commented that attorneys often perform better, possibly because they feel more relaxed, when arguing remotely.

**D.    WHO WILL HEAR THE APPEAL?** By the Monday before the week of argument, the Court will release an updated calendar listing the names of the judges who will hear each case.

**E.    WHAT IF I DON'T WANT ORAL ARGUMENT?** Any party to a case may request, or all parties may agree to request, that a case be submitted without oral argument.

Fed. R. App. P. 34(a)(1). However, this request or stipulation requires the panel's approval.

**F.     WHAT DOES IT MEAN IF THE COURT HAS SUBMITTED THE CASE FOR DECISION WITHOUT ORAL ARGUMENT?** This should not be taken as any kind of negative comment on the case or the advocacy. On the contrary, it may mean that the briefs and excerpts were competently prepared and provided the panel with all the necessary information.

**G.     WHAT HAPPENS IF I'M NOT AVAILABLE FOR A PARTICULAR CALENDAR?** Once you receive a pre-calendaring notice stating the months that your case is being considered for the oral argument calendar, along with a link to upcoming court sessions (usually sent approximately 18 weeks before the argument calendar), review the dates immediately to determine if you have any conflicts. If you do, inform the Court within 3 days by completing and filing Form 32, using the electronic document filing type "Response to Case Being Considered for Oral Argument," and be sure to follow the instructions linked to that form. Form 32 is accessible at https://www.ca9.uscourts.gov/forms/. The Court discourages motions to continue after this 3-day period. Once a case has been calendared, it is extremely difficult to change the date or location of a case. The Court will change the date or location of a hearing only for good cause, and requests to continue a hearing filed within 14 days of the hearing will be granted only upon a showing of exceptional circumstances. Ninth Cir. R. 34-2.

> ***Practice Tip:*** If it is necessary to move to continue the oral argument date, make that request as soon as possible. The closer the date of oral argument, the more time and energy the panel will have spent in becoming conversant with the case through reviewing the briefs and preparing bench memoranda. If practicable, consider requesting leave to appear telephonically or by video as an alternative. Please note, however, that if you move to continue the oral argument date, the panel may decide to submit the case without oral argument and you may lose your opportunity to argue the case.

## II.    PRIOR TO ORAL ARGUMENT

**A.    FILE YOUR ACKNOWLEDGEMENT OF HEARING NOTICE** Submit your Acknowledgment of Hearing Notice electronically using the document filing type "Acknowledgment of Hearing Notice" in CM/ECF or in ACMS for immigration cases opened in that system after May 1, 2021. No electronic or paper form or attachment is required unless you are requesting specific accommodation for a special need (e.g., a listening assistance device or a table-height podium designed to accommodate persons in wheelchairs). If you are not already counsel of record in the case, you must first submit a notice of appearance. If you will not be the attorney arguing, do not file an Acknowledgment of Hearing Notice, even if you will sit at counsel's table.

**B.    CHECK FOR NEW AUTHORITY** Relevant developments in case law, statutes, or regulations should be brought to the Court's attention prior to oral argument in a letter pursuant to Federal Rule of Appellate Procedure 28(j). That letter should be filed when such developments arise and, if at all

possible, no later than 7 days before the date of argument. Such letters and any response are limited to 350 words.

**C.    WATCH VIDEOS OF OTHER ORAL ARGUMENTS** To help aid your preparation and familiarity with the judges assigned to your oral argument panel, you are encouraged to watch video recordings of other oral arguments, accessible at https://www.ca9.uscourts.gov/media/.

**D.    CHECK THE AMOUNT OF TIME ALLOTTED TO EACH SIDE** This is included on the oral hearing calendar. Please note that if there are multiple separately represented parties on the same side, those parties may either designate a single attorney to present argument for that side, or divide their argument time among multiple attorneys. If you intend to share your argument time with counsel for parties aligned with your client, it is important to confer and agree with aligned counsel before argument on how you plan to divide issues and time. Please be aware, however, that divided argument is not encouraged, as it often leads to confusion and inefficiency. A party's intent to share argument time among multiple counsel must be noted in the acknowledgment of hearing notice.

## III.    THE DAY OF ARGUMENT

**A.    CHECK IN WITH THE COURTROOM CLERK 30 MINUTES BEFORE THE START OF THE CALENDAR** The Courtroom Clerk will be in the courtroom prior to arguments and will note your presence when you check in. If you will be arguing remotely, you must log in to the virtual "meeting" at least 30 minutes before the scheduled argument time. The Courtroom Clerk will note your "presence" and

confirm that your video and audio links are functioning before the session begins.

> **Practice Tip:** Ninth Circuit arguments are videostreamed live. Bear in mind that streaming continues between arguments and conversations in the courtroom may be picked up by the microphones before and after arguments. Similarly, if sitting in the front row, you and/or your clients may be visible (and audible) to others.

**B.    PLAN TO BE AT THE SESSION FROM THE TIME IT STARTS** Do not assume that cases will be argued in the order in which they appear on the calendar. On occasion, the presiding judge will announce that the listed cases will be heard out of order, or that listed cases have been dismissed or will be decided without argument. Moreover, you need to be present at the beginning of the session because at that time the presiding judge may announce the panel's ground rules for the session.

**C.    EXECUTION TIPS**

**1.    Answer the judges' questions** If the question calls for a "yes" or "no" answer, answer "yes" or "no" *before* explaining. The most important function of oral argument is to answer any questions the judges may have after reading the briefs. Answering the questions, rather than offering a speech, is your most effective means of aiding the Court and your client.

> **Practice Tip:** If a judge asks you a hypothetical question, don't respond by telling them that that is not this case. Answer the question and *then* explain why that scenario does or does not differ from the one presented by this case.

2.   **Know the record** The judges generally know the law, but they rely upon the advocates to educate them about the facts in particular cases. Thus, you should know your factual record.

    a.   If you are asked a question that you cannot answer (because you do not know), candidly admit that fact and offer to follow-up with a letter to the Court. Never invent an answer.

    b.   If, however, you are asked a question that you do know the answer to, but you are hesitant to answer because the fact does not appear in the record, let the Court know that your answer would fall outside of the record. Then, if the judges are receptive to your answering the question nevertheless, you may do so.

    c.   Bring your record to court. The Court may ask you to "turn to page ___ in the record," and the judges expect that you will have this material handy.

    d.   Do not repeat at length the arguments made in the briefs. The primary function of oral argument is to supplement and refine those arguments, rather than to restate them.

3.   **Keep track of time** If you are the appellant and wish to reserve time for rebuttal, do it yourself. Do not expect the panel or the clerk to keep track of your time for you. Unless the presiding judge has made clear that you may exceed your time limit, when the red light turns on, quickly finish your sentence and stop talking!

4.   **Avoid visual aids** Visual aids are strongly disfavored and may not be permitted. If, however,

you must use one, let the Clerk's Office know in advance. You may be required to file a motion. Also, check with your opponent to see if he or she has any objection to the use of a proposed visual aid. If opposing counsel is not amenable to it, a dispute may not be worth your efforts.

5. **Make sure that your cellphone or other portable electronic device is silenced** The Court's policy on use of portable electronic devices is posted outside of the courtroom.

6. **Do not try to be funny** Jokes will generally fall flat and annoy the panel.

7. **Start with your key points** Once questions start, you may not get another chance.

8. **Be candid and be brave** Concede points where candor requires it. At the same time, do not make ill-considered concessions or concessions that you do not believe appropriate, no matter how hard you are pushed.

9. **Use an outline, not a script** Reading prepared material does little to advance your position and nothing to address the issues of concern to the members of the panel, and it may cause the judges to disengage from your presentation.

10. **Maintain a steady, even pace** It is far better to make a few points clearly than to attempt to cram too much information into a short argument. Judges frequently ask fast talkers to slow down.

11. **Dress appropriately** Appellate arguments are serious business and proper respect for the Court and the process favors professional attire. Avoid

wearing anything that might be considered distracting. Also avoid any other distractions, such as pen clicking, hair adjusting, etc.

12. **Practice** If possible, gather up a group of your colleagues and practice your argument with a moot court. At a minimum, think about your case and identify weak or unclear points that are likely sources for the judges' questions. Put yourself in the shoes of a judge, and ask: "What would I want to know if I had to decide this case?"

13. **Volunteer** Law schools frequently recruit attorneys to serve as moot judges for competitions; helping law students is a great way to gain insights into what works and does not work at oral arguments.

14. **NEVER:**

    a.    Interrupt a judge or your adversary. The judges may interrupt you, but it is critical that when they start talking, you stop talking. Otherwise, you will not be able to hear the question and the panel will not hear your answer.

    b.    Shout or point your finger at the bench.

    c.    Sneer, demean your opponent or the lower court, or editorialize on your opponent's argument with head shakes or grimaces.

    d.    Say "I wasn't the trial attorney" as an excuse for not knowing your record.

## IV.  AFTER ARGUMENT

**A.  WHAT IF I MISSTATED SOMETHING AT ARGUMENT?** File a letter with the Court correcting your misstatement as soon as possible.

**B.  WHAT IF THE COURT ISSUES AN OPINION RELEVANT TO THE ISSUES IN MY CASE AFTER ARGUMENT?** You should submit a letter pursuant to Federal Rule of Appellate Procedure 28(j).

**C.  HOW CAN I OR OTHERS LISTEN TO AND/OR WATCH THE RECORDING OF MY ARGUMENT?** Video recordings of oral arguments are generally available on the Court's website within a day of argument.  Likewise, the Court posts the audio recording of the oral argument on that case's docket within a day of argument.  Live-streaming of the oral argument (while it is in progress) is available through the Court's website. The same practices apply to arguments conducted remotely.

> ***Practice Tip:*** Listen to these recordings! They are an excellent training tool. When you replay them, ask yourself if you answered the judges' questions directly and correctly. What could you do to improve your performance?

# XII.
# POST-DECISIONAL PROCESSES

I.  **OVERVIEW** An appeal does not end when the three-judge panel issues its opinion. Instead, it ends when the Court issues its "mandate" and relinquishes jurisdiction over the case. Between the panel decision and the issuance of the mandate, several more steps in the appellate process can occur—including the Court issuing a new opinion that reaches the opposite result. This chapter addresses these "post-decisional processes," what actions the losing side should consider taking (and the reasons and timing for each), and what considerations the winning side should be aware of.

II.  **PREPARE THE CLIENT WITH GOOD COMMUNICATION**

A.  **DESCRIBE THE APPELLATE PROCESS TO THE CLIENT** From the outset of the case, prepare the client for the appellate process, including the possibility of an adverse result. Discuss with your client(s): why they want to appeal; the error they believe occurred in their case; and their expectations for the appeal. Describe to the client(s) the appellate process, including the fact that the appeal entails a review of the record already made in the lower court (and not, for example, the introduction of new evidence showing that they are innocent). Make sure they understand that victory on appeal may not mean victory outright (e.g., a directed verdict in the client's favor or an order granting asylum), but rather an opportunity to continue litigating before the lower tribunal (e.g., proceeding past summary judgment to trial, or returning to the agency for further proceedings). Also, provide the client with the upcoming

appellate schedule, and explain that the Court holds oral argument in fewer than one quarter of appeals filed.

> **Practice Tip:** Gently but firmly provide the client with a "legal reality check." It can be helpful to recite the statistic that in the federal court system roughly one in every 10 appeals results in some form of reversal. For some clients, this is a negative and difficult reality to accept; other clients have stated that the chances of one in 10 are better than they had thought. Regardless, it is important to mention this reality to help prepare the client for the possibility of an adverse decision later on.

**B.    MAINTAIN COMMUNICATION** After providing the client with an overview of the appellate process, maintain communication throughout the process so that the client knows what is going on and has an understanding of the issues that will be argued in the opening brief. If the record and the law support issues the client wants argued in the opening brief, and it is strategically wise to raise them, you should do so. But if the record and the law do not support those issues, explain to the client that you cannot raise frivolous issues, and that in any case raising such issues could reduce the likelihood of winning on meritorious issues. Try to minimize the possibility that the client will be shocked by an adverse decision.

**C.    LET THE CLIENT KNOW ABOUT THE DECISION IMMEDIATELY** Once the Court issues its decision, immediately communicate the decision to the client. This is important because the timelines for responding to the decision are short. In addition, if the appeal is one that is likely to receive media attention, the client needs to be prepared to be contacted by the media.

***Practice Tip:*** The Ninth Circuit typically provides a copy of the decision to the lawyers in the appeal via the electronic filing system several hours before the decision is posted publicly on the Ninth Circuit's website.

***Practice Tip:*** It can be difficult to promptly communicate with incarcerated clients. A lawyer for an incarcerated client should consider sending a copy of the decision to the client via express mail, given the short timelines for post-decisional action and the delays in processing mail (even legal mail) in prisons. For clients that are incarcerated in the federal Bureau of Prisons (BOP), if the client has set up an e-mail account through CorrLinks, which is an e-mail system for BOP inmates, you can communicate the nature of the decision and relevant language to the client. However, CorrLinks does not permit sending attachments. Be aware, however, that CorrLinks is not a secure system, and communications sent through it will not be protected by the attorney-client privilege.

***Practice Tip:*** If the appeal is successful, counsel of an incarcerated client should consider making extra efforts to contact the client right away by, for example, contacting the client's counselor or case manager to arrange for a telephone conversation, either by direct or collect call. This is not simply because the client is entitled to get the good news as soon as possible. Unfortunately, good fortune can arouse jealousy and ill-will in other prisoners for which the client should be prepared. In addition, a client can become so excited by good news that he or she stops managing his or her own behavior in the careful manner demanded by life inside. Thus, when conveying news of a positive outcome, counsel should advise the client to remain calm and circumspect and remind the client that it could be several weeks or even months before the client can actually enjoy the effects of victory.

## III.   STEPS TO TAKE IF THE DECISION IS ADVERSE

### A.   IDENTIFY THE APPLICABLE RULES AND ORDERS RELATING TO THE POST-DECISIONAL PROCESS

The rules pertinent to the rehearing/rehearing *en banc*/*certiorari* process are:

- Federal Rule of Appellate Procedure 35 and Ninth Circuit Rules 35-1 through 35-4 (*en banc* rehearing);
- Federal Rule of Appellate Procedure 40 and Ninth Circuit Rule 40-1 (panel rehearing);
- Federal Rule of Appellate Procedure 41 and Ninth Circuit Rules 41-1 and 41-2 (mandate);
- Ninth Circuit General Orders Chapter V (*en banc* procedures); and
- Supreme Court Rules 10-16 (*certiorari*).

### B.   COMPUTE AND DOCKET THE RELEVANT DUE DATES IN THE POST-DECISIONAL PROCESS

- In general, the due date for a petition for rehearing or rehearing *en banc* is 14 days from the date of decision. Fed. R. App. P. 35(c) & 40(a)(1).

- For a civil case in which one of the parties is the United States, a United States agency, a United States officer or employee sued in an official capacity, or a United States officer or employee sued in an individual capacity for acts or omissions occurring in connection with duties performed on behalf of the United States, the due date for a petition for rehearing or rehearing *en banc* from any party (even a non-federal party) is 45 days from the date of the decision.

- A motion to extend the time for filing a petition for panel rehearing or rehearing *en banc* should be filed no later than 7 days before the due date for the petition.

- A petition for *certiorari* is due 90 days from the date of the panel's decision or 90 days from the order denying a petition for rehearing or rehearing *en banc* (whichever is later).

- If no petition for rehearing or rehearing *en banc* is filed, the mandate will issue 7 days after the deadline to file such a petition. If a petition for rehearing or rehearing *en banc* is filed and denied, the mandate will issue 7 days after the order denying the petition is filed. If a petition for rehearing or rehearing *en banc* is granted, the issuance of the mandate will await the completion of the *en banc* proceeding. A motion to stay the mandate, filed prior to issuance of the mandate, will ordinarily stay the issuance of the mandate pending resolution of that motion.

C. **DECIDE WHETHER TO SEEK AN EXTENSION OF TIME IN WHICH TO FILE A PETITION FOR REHEARING OR REHEARING *EN BANC*** If you need more than 14 days (or 45 days, in civil cases involving the federal government) to decide whether to seek rehearing or rehearing *en banc* and/or to draft such a petition, promptly seek an extension of time for filing the petition. All requests for extensions of time are directed to the panel that decided the case. Practitioners should be aware that there is no guarantee that the Court will grant the extension of time. It should also be noted that Form 14 may *not* be used to seek an extension of time for the filing of a petition for rehearing or rehearing *en banc*.

D. **EVALUATE WHETHER TO PETITION FOR REHEARING AND/OR REHEARING *EN BANC*** The next step is to decide whether to seek a panel rehearing or rehearing *en banc*. You may request both in the same

petition if you determine that your case is an appropriate candidate for both. Fed. R. App. P. 35(b)(3).

1.   **When should I file a petition for panel rehearing?** A petition for panel rehearing is appropriate if it appears that the panel may have overlooked or misunderstood a point of fact or law and the error affected how the panel resolved the case. *See* Fed. R. App. P. 40(a)(2).

2.   **When should I file a petition for rehearing *en banc*?** A petition for rehearing *en banc* is appropriate when the panel's decision generates significant legal issues that warrant the attention of a larger number of members of the Court. A case that is in conflict with decisions of the Supreme Court or other panel decisions of this Court, a case that creates a split among the federal courts of appeal, or a case that is otherwise of "exceptional importance," may warrant *en banc* reconsideration by the Court. *See* Fed. R. App. P. 35. This is a very high bar: Typically, fewer than 20 cases are reheard *en banc* per year. Nearly always these are cases involving published opinions (versus non-precedential memorandum dispositions), oftentimes in which the three-judge panel was split 2-1, that a majority of the active judges on the Court decides are not only flawed, but involve an error worthy of convening an *en banc* Court to correct. Examples of recent cases that the Court has determined warranted *en banc* rehearing can be found in the Court's regularly updated report on the status of

pending *en banc* cases:
https://www.ca9.uscourts.gov/enbanc/

> **Practice Tip:** In general, if the court resolved your case by memorandum disposition, it is probably not a strong candidate for *en banc* reconsideration. However, if it appears that the reason that the panel resolved the case in a memorandum disposition was because the significant legal issue presented has already been resolved by controlling Ninth Circuit precedent (and the court therefore had no need to write another opinion on the issue), then the case may still be a candidate for *en banc* reconsideration if the circuit precedent on which the panel relied conflicts with another decision of this circuit, or with the decisions of other circuits on the same significant legal issue, or if there are other reasons that the legal issue is of exceptional importance.

### 3.   What are the rules for filing a petition for rehearing?

a.   **Deadlines** As noted above, in general, the due date for a petition for rehearing or rehearing *en banc* is 14 days from the date of decision. Fed. R. App. P. 35(c), 40(a)(1). For a civil case in which one of the parties is the United States, a United States agency, a United States officer or employee sued in an official capacity, or a United States officer or employee sued in an individual capacity for acts or omissions occurring in connection with duties performed on behalf of the United States, the due date for a petition for rehearing and/or rehearing *en banc* is 45 days from the date of the decision.

b.   **Length** A petition for rehearing and/or rehearing *en banc* is limited to 15 pages or 4,200 words. Ninth Cir. R. 40-1(a). A petition or answer must be accompanied by Ninth Circuit Form 11, no matter its length. Ninth Cir. R. 35-4(a). Form 11 may be found on the Court's website at: https://www.ca9.uscourts.gov/forms/.

    **c.**    **Format** The cover should indicate whether you are seeking panel rehearing, rehearing *en banc*, or both. Ninth Cir. R. 35-1.

    **d.**    **Content** A petition for rehearing *en banc* should begin with a statement explaining why the case meets the criteria set forth in Federal Rule of Appellate Procedure 35(b)(1). This means that the petition must show that the panel decision conflicts with a decision of the Supreme Court or this Court, and/or the proceeding involves a question of exceptional importance. The body of the petition should focus on those criteria as well, as opposed to disputing case-specific details of the three-judge panel opinion (such as its understanding of the facts of the dispute) that are unlikely to present a question of national importance. (Factual and case-specific arguments are more properly presented in a petition for panel rehearing.) Examples of successful petitions for rehearing *en banc* can be found in the list of currently pending *en banc* cases, which is available here: https://www.ca9.uscourts.gov/enbanc/.

    **e.**    **Required Attachment** You must attach the Court's decision for which you are seeking rehearing.

**4.**    **What if the opposing party filed a petition for rehearing?** No response may be filed to a petition for panel or *en banc* rehearing unless the Court orders one. *See* Fed. R. App. P. 35(e). Where a party petitions for hearing or rehearing *en banc*, the Court will not order a hearing or rehearing *en banc* without giving the other parties an opportunity to express their views as to whether *en banc* consideration is appropriate. Ninth Cir. R. 35-2. If

the Court does order you to respond to a petition, you should not simply argue that the panel decision was correct; you should also explain why the case does not meet the standard for rehearing. Unless the Court orders otherwise, your opposition should not exceed 15 pages or 4,200 words, and must be accompanied by Ninth Circuit Form 11. Ninth Cir. R. 35-4(a), 40-1(a). Note that a response to a petition for rehearing *en banc* may be ordered at the request of just one judge of the Court, including judges not on the three-judge panel. Fed. R. App. P. 35(f); Circuit Advisory Comm. Note to Ninth Cir. R. 35-1 to 35-3. So being directed to respond may indicate that at least one judge is contemplating a vote to rehear the case *en banc*, but does not necessarily signal a likelihood that a majority of the Court will ultimately vote to rehear the case *en banc*.

5. **What if I want to file an amicus brief in support of, or opposing, the petition?** Amicus briefs may be permitted pursuant to Ninth Circuit Rule 29-2. *See supra* Chapter IX.I.B.4.e, discussing amicus briefs.

6. **How long does it take the Court to vote on a petition for rehearing *en banc*?** From the time a response to a petition for rehearing *en banc* is filed to an order granting or denying the petition can take as little as a few weeks, or as long as several months. During this time, judges of the Court may be corresponding about whether to grant rehearing via internal memoranda, and, if a judge requests a formal poll, casting their votes. *See generally* General Orders 5.4-5.5.

7. **What if the Court grants rehearing *en banc*?** If a petition for rehearing *en banc* is granted, the Chief Judge will issue an order indicating this fact. The

order will likely state that the panel opinion should not be cited as precedent.

a.  **How is the *en banc* court chosen?** The *en banc* court consists of the Chief Judge and 10 additional judges drawn by lot from the active judges of the Court. (Senior judges can elect to be eligible for the *en banc* court if they were on the original panel, and judges may remain on an en banc court if they take senior status while serving on the en banc court. *See* General Order 5.1.a.4.) In the absence or recusal of the Chief Judge, an eleventh active judge is drawn by lot, and the most senior active judge on the panel presides.

b.  **Will there be additional briefing or oral argument?** After the *en banc* court is chosen, the judges on the *en banc* court decide whether there will be oral argument or additional briefing. Cases in which *en banc* review is granted typically receive oral argument. Such oral arguments typically are held three or four times per year to coincide with the Court's quarterly meetings. The identities of the judges drawn to serve on the 11-judge *en banc* panel will be publicly released on the Monday of the week preceding the oral argument.  In contrast to oral argument, additional briefing is unlikely unless the *en banc* court sees a need for the parties to address important issues that emerged after, or were not addressed in, the existing briefing. This makes it especially important for a party drafting a petition for *en banc* rehearing to show not only that the case merits *en banc* review, but also that the issue or issues meriting review should be decided in its favor. If there is to be oral argument, the Chief Judge (or the next most senior active judge, as the case may be) will enter

an order designating the date, time, and place of argument—usually during one of the Court's quarterly *en banc* sittings in March, June, September, December, or January. If no oral argument is to be heard, the Chief Judge will designate a date, time, and place for a conference of the *en banc* court. That date will ordinarily be the submission date of the case. If any issues have been designated for specific attention, the order may also identify those issues and direct additional briefing addressing them. A party may also file a motion requesting that supplemental briefing be permitted, for example because there have been intervening changes in the law since the original merits briefs were filed, or because the briefs focused on how existing Ninth Circuit precedent should be applied, but the grant of *en banc* rehearing raises the question of whether that precedent should be overturned. As a practical matter, however, in writing your petition (or opposition), do not assume that you will be able to submit additional briefing. In most *en banc* cases, the *en banc* Court has before it only the original panel briefing, the *en banc* petition, and the response in opposition to the petition.

**c.** **What happens after *en banc* oral argument?**
Once a case has been argued before the en banc court, there is no set date by which the Court must issue an opinion. The Court's internal guidelines state that the judge selected to write a majority opinion should be able to do so within 45 days of argument, and that any dissenting or other separate opinion should be circulated within 30 days of the circulation of the draft majority opinion. *See* Ninth Circuit General Order 5.7. In practice, however, these internal

deadlines are often exceeded, and an *en banc* opinion may not issue until many months after the argument.

    **d.**    **What if you lose an *en banc* case?** If you lose an *en banc* case, and you believe the *en banc* court made a legal or factual mistake, you can follow the same process outlined above to seek rehearing before the 11-judge *en banc* court. Alternatively, you can seek rehearing *en banc* by the full Court. *See* Ninth Cir. R. 35-3. However, as a practical matter, these avenues of relief are unlikely to be fruitful. (The Court has never reheard a case before the full Court, for example.) The best course at this point is usually to evaluate whether to file a petition for certiorari (which would be due 90 days from the date of the en banc decision), and request that this Court stay the mandate if you need to maintain the status quo pending the certiorari process, as described below.

    **8.**    **<u>Alternatives to granting rehearing *en banc*</u>** In the face of a petition for rehearing, the three-judge panel may decide to simply amend its opinion to account for any concerns raised in the petition. In such a case, an order denying rehearing may be accompanied by an amended opinion, and the order will typically note whether further rehearing petitions will be entertained. Very rarely, a three-judge panel will vote to grant panel rehearing, vacate its original opinion, and set the case for re-argument before the panel.

> ***Practice Tip:*** The criteria for *en banc* reconsideration are similar to the criteria for a grant of *certiorari* by the Supreme Court. As a result, if a case truly meets the criteria for a grant of certiorari, seeking the *en banc* process may provide a faster, more economical way than certiorari to seek to reverse a panel's decision. In addition, the process of drafting a petition for *en banc* reconsideration can help with the formulation of arguments in favor of *certiorari*, should that step become necessary.

> ***Practice Tip:*** When a case is argued before the *en banc* court, the parties' roles remain the same as they were during the initial argument. That is, the appellant argues first before the *en banc* court and the appellee argues second, even if it is the appellee who lost before the three-judge panel and petitioned for rehearing *en banc*.

> ***Practice Tip:*** If you will be arguing a case before the *en banc* court, it can be helpful to review the videos of prior *en banc* arguments, which are available under the "audio and video" tab on the Court's website.

## E.   EVALUATE WHETHER TO PETITION FOR *CERTIORARI*

A case could be a good candidate for Supreme Court review if it creates or exacerbates a "circuit split" (i.e., a disagreement among the federal courts of appeals) on an issue of law of substantial importance; if it creates a split of authority between federal court of appeals and state courts of last resort on an important federal question; if it decides an important question of federal law that has not been, but should be, settled by the Supreme Court; if it decides an important federal question in a way that conflicts with relevant Supreme Court decisions; or if, in reaching the decision, this Court deviated so far from the accepted and usual course of judicial proceedings that Supreme Court intervention is warranted. *See* Sup. Ct. R. 10. For a detailed discussion of what the Supreme Court

considers in determining whether to grant certiorari (and discussions of all other practical aspects of Supreme Court practice), *see* Eugene Gressman *et al.*, Supreme Court Practice (10th ed. 2013).

## F.    SPECIAL CONSIDERATIONS FOR LEGAL COUNSEL IN CRIMINAL APPEALS REGARDING PETITIONING FOR *CERTIORARI*

Ninth Circuit Rule 4-1(e) addresses the unique considerations that apply to post-appeal proceedings for court-appointed counsel in criminal appeals decided adversely to the client. Within 14 days after entry of this Court's judgment or denial of the petition for rehearing and/or rehearing *en banc*, counsel must advise the client of the right to initiate further review by filing a petition for a writ of *certiorari* in the Supreme Court. Although the client often believes that his or her case is Supreme Court-worthy, or that legal counsel must pursue every possible remedy no matter how lacking in merit, Ninth Circuit Rule 4-1(e) states:

> If in counsel's considered judgment there are no grounds for seeking Supreme Court review that are non-frivolous and consistent with the standards for filing a petition, *see* Sup. Ct. R. 10, counsel shall further notify the client that counsel intends to move this Court for leave to withdraw as counsel of record if the client insists on filing a petition in violation of Sup. Ct. R. 10. * * * If requested to do so by the client, appointed or retained counsel shall petition the Supreme Court for *certiorari* only if in counsel's considered judgment sufficient grounds exist for seeking Supreme Court review. *See* Sup. Ct. R. 10.

Rule 4-1(e) further specifies that any motion to withdraw must be made within 21 days of the judgment or denial of rehearing, must set forth the efforts made by counsel to notify the client, and must be served upon the client. Unless counsel is relieved of his or her appointment, the

appointment continues through resolution of certiorari proceedings.

> **Practice Tip:** When counsel for a defendant in a criminal appeal determines that no sufficient grounds exist for seeking Supreme Court review, but the client insists that the same be filed, send the client written correspondence notifying him/her of that determination and the application of Ninth Circuit Rule 4-1(e), and advising that counsel will have to file a motion to withdraw. Counsel should inform the client that he or she will need to file a petition for writ of *certiorari* on a *pro se* basis – if he/she insists on going forward. Also, provide the client the relevant provisions of the Supreme Court rules concerning filing a petition for *certiorari* (Sup. Ct. R. 10-16), including emphasis that under Rule 13 the petition must be filed within 90 days of entry of the Ninth Circuit's judgment.

## G. DETERMINE WHETHER YOU NEED TO MOVE TO STAY THE MANDATE

The mandate officially causes this Court's decision to take effect, and transfers jurisdiction from this Court back to the district court or agency. The filing of a petition for rehearing and/or rehearing *en banc* automatically stays the mandate until this Court has ruled on the petition. However, the filing of a petition for *certiorari* does not stay the mandate. As a result, if you intend to seek *certiorari* and do not want the case to be returned to district court or agency before the Supreme Court has ruled on the petition for *certiorari*, you must move to stay the mandate. This is generally necessary if this Court's decision would alter the *status quo* if it were to go into effect, and you wish to maintain the *status quo* pending Supreme Court review. A motion to stay the mandate might be appropriate, for example, if (a) you obtained an injunction in the district court that would be vacated if this Court's decision were to take effect; (b) you prevailed at trial but the judgment would be reversed and a new trial begun if the case were to be returned to the district court; or (c) this Court stayed an order of removal but the stay would dissolve upon the

issuance of the mandate, possibly causing your client to be deported while a petition for certiorari is pending. A motion to stay the mandate will automatically stay the mandate pending disposition of that motion. Because the mandate generally issues automatically 7 days after the time to seek rehearing has passed or a petition for rehearing has been denied, however, a motion to stay the mandate should be filed *promptly* after the denial of a petition for rehearing. *See generally* Fed. R. App. P. 41(b); Ninth Cir. R. 41-1; Circuit Advisory Committee Note to Rule 41-1.

**IV.    OTHER CONSIDERATIONS IF YOU RECEIVE A FAVORABLE DECISION** If the decision from the three-judge panel is favorable, the primary things to consider are: (1) seeking attorney's fees and costs; and (2) if you represent a defendant in a criminal case or the petitioner in a habeas corpus case, whether and how to effectuate the decision in your client's favor, including expeditiously obtaining your client's release, if that is the inevitable consequence of the decision.

**A.    ATTORNEY'S FEES AND COSTS ON APPEAL**

**1.    Costs on appeal**

**a.    Applicable statutes, rules and orders** The applicable statutes, rules and order are:

- 28 U.S.C. §§ 1920 and 2412;

- Fed. R. App. P. 39;

- Ninth Cir. R. 39-1.1 - 1.5; and

- Ninth Circuit General Order 4.5e.

For legal counsel appointed under the Criminal Justice Act, please see subparagraph 2, below.

**b.** **Entitlement to costs** A prevailing party is presumptively entitled to costs—a limited category (defined below) including fees and costs of filing and printing, but not attorney's fees or the filing fees for the appeal. Costs are taxed in favor of appellee/respondent when a case is dismissed or a district court/agency decision affirmed. Costs are taxed in favor of the appellant/petitioner when a district court/agency is reversed. Note that costs are taxed as ordered by the Court when the district court/agency order is affirmed in part, reversed in part, modified or vacated. Per Ninth Circuit General Order 4.5e, such dispositions are to include a statement regarding the allocation of costs. If the statement is absent and a party wishes to request costs, a cost bill may be filed along with a letter to the panel requesting an award of costs. There are several common exceptions to the presumption of entitlement to costs by a prevailing party, including:

- Unsuccessful party of modest means raises close public policy issues. *Stanley v. University of Southern California*, 178 F.3d 1069, 1079-80 (9th Cir. 1999);

- Statutes may bar the taxation of costs against an unsuccessful litigant absent a showing of frivolity in some types of appeals. *See, e.g., Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189-90 (9th Cir. 2001) (Americans with Disabilities Act cases); *Ocean Conservancy v. Nat'l Marine Fisheries Servs.*, 382 F.3d 1159, 1161-62 (9th Cir. 2004) (Endangered Species Act cases); and

- Costs are unlikely to be assessed where an indigent petitioner unsuccessfully appeals

the denial of a habeas corpus petition. *Sengenberger v. Townsend*, 473 F.3d 914, 914-15 (9th Cir. 2006).

c.  **Timelines for submitting cost bill** A party eligible for costs must submit the bill of costs on Ninth Circuit Form 10 (available at https://www.ca9.uscourts.gov/forms/), no later than 14 days after entry of judgment (i.e., the date on which the Court's opinion or memorandum is filed). Fed. R. App. P. 39(d)(1). This deadline is strictly enforced. *Mollura v. Miller*, 621 F.2d 334 (9th Cir. 1980). A party objecting to the bill of costs must file a response within 14 days after service of the bill of costs. Fed. R. App. P. 39(d)(2).

> *Practice Tip:* Filing a petition for rehearing or rehearing *en banc* **does not** toll the time for filing a cost bill. However, the panel may not act on the cost bill until the completion of the rehearing stage of the case.

d.  **What can be claimed as costs and where should they be claimed?** In this Court, the following costs can be claimed: cost of copying briefs and excerpts of record (actual copying costs, not to exceed 10 cents per page); and docket fees for petitions for review or mandamus. Ninth Cir. R. 39-1.1 and 1.3; Fed. R. App. P. 39(e). In the district court, the following costs can be claimed: reporter's transcripts; docketing/filing fees for a notice of appeal; premiums for appeal bond; and costs of preparation and transmission of the record. Fed. R. App. P. 39(e). These costs must be claimed pursuant to the pertinent district court's procedures.

2.    <u>**Attorney's fees on appeal**</u>

a.    **Civil Appeals** Ninth Circuit Rule 39-1.6 governs requests for attorney's fees on appeal. In general, a request for attorney's fees on appeal must be submitted no later than 14 days after the deadline for filing a petition for rehearing. If a timely petition for rehearing is filed, then a request for attorney's fees must be submitted no later than 14 days after the Court's decision on the petition for rehearing. The fee request must be supported by (a) a memorandum explaining why the party seeking fees is legally entitled to recover fees on appeal; and (b) the Court's Form 9, available at https://www.ca9.uscourts.gov/forms/, or a document providing substantially similar information detailing the work performed and the reason the rates charged are legally justified, accompanied by an affidavit attesting that the information is accurate. Please note:

- All applications for fees must contain a statement that the request is timely.

- Fee requests must be filed separately from any bill of costs

- Under Ninth Circuit Rule 39-1.7, any objection to a request for fees must be filed within 10 days of service of the fee request; and any reply to a response must be filed within 7 days of service.

- If the Court awards fees on appeal and a party objects to the amount of fees claimed, the Court may refer the fee request to the Circuit Mediators and/or Staff Attorneys'

Office to determine the appropriate amount of fees.

- Additionally, Ninth Circuit Rule 39-1.8 authorizes any party to an appeal who is or may be entitled to attorney's fees on appeal to request that the consideration of fees on appeal be transferred to the district court or administrative agency from which the appeal originated. Such a request must be filed within the time limits for filing a request for attorney's fees with this Court.

**Practice Tip:** Counsel appointed through the Ninth Circuit *Pro Bono Program* may seek attorney's fees against the non-prevailing party if a statute provides for recovery of attorney's fees by the prevailing party.

    **b.**    **Criminal Appeals** Counsel who have been appointed under the Criminal Justice Act (18 U.S.C. § 3006A) (CJA) to represent a criminal defendant on direct appeal, or a petitioner in a habeas corpus appeal, should submit their completed voucher for fees and costs within 45 days after the final disposition of the case in this Court, or after filing a petition for *certiorari*, whichever is later. CJA counsel are referred to the "National CJA Voucher Reference Tool," available at https://cjaresources.fd.org/cjaort/index.html.

## B.    EFFECTUATING FAVORABLE APPELLATE DECISIONS

    **1.**    **<u>Effectuating a favorable decision</u>** The decision will become effective when the mandate issues. If there is a need to immediately effectuate the decision—for example, if the reversal of a sentencing

calculation error would mean that your client is likely already due to be released, or if this Court's opinion reverses an injunction that is causing your client irreparable harm while it is in place, a party can file a motion requesting that the Court issue the mandate "forthwith" (immediately).

2. **Steps to take to effectuate a favorable decision in criminal and habeas cases** How to effectuate a favorable decision in a criminal appeal depends upon the specific issue the appellate court ruled on. Therefore, effectuating a favorable decision from this Court on your client's fate is case-specific. For example, criminal direct appeals often concern sentencing issues. A favorable sentencing decision by this Court may result in a reversal or vacatur of the sentence imposed, and a remand to the district court for a resentencing consistent with this Court's decision. Assuming the government does not seek rehearing in this Court or review by the Supreme Court, your case will return to the district court for further sentencing proceedings.

A favorable decision in a habeas corpus appeal generally means that this Court reverses the district court's denial of the appellant's habeas corpus petition under 28 U.S.C. § 2254 or motion under 28 U.S.C. § 2255. This results in a remand of the case to the district court for proceedings consistent with that reversal, which could include an evidentiary hearing under the applicable section of the statute (i.e., § 2254 or § 2255) concerning the issues raised, or simply a direction to issue the writ and order the state or the government to either release or retry the defendant or petitioner within a designated period of time. It may be necessary to follow up on an order to retry or release a petitioner in the state courts.

# XIII.
## REVIEW OF IMMIGRATION DECISIONS
## BEFORE THE NINTH CIRCUIT[4]

## I.   INTRODUCTION

Immigration cases have made up a significant percentage of the Ninth Circuit's docket in recent years. These cases arise in two procedural contexts. First, an individual may petition for review of Board of Immigration Appeals (BIA) removal decisions, and, in limited circumstances, may seek review of Immigration and Customs Enforcement (ICE) removal orders. Such cases require special procedures, reviewed *infra*. Second, either the individual or the government may appeal from district court decisions involving immigration, such as decisions concerning relative visa petitions or habeas corpus actions filed by detained individuals. Appeals from these district court decisions follow the same procedure as appeals in other areas of civil law.

This chapter will focus on petitions for review of BIA removal decisions. Its purpose is to inform practitioners of some of the special provisions related to handling these petitions for review.

The petition for review, rather than a notice of appeal, is the initial document in review of BIA removal orders. The requirements for petitions for review are set out in Section 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252. Rule 15 of the Federal Rules of

---

[4] Note: The substantive guidance in this chapter has not been updated in several years, so the case law cited and discussed may not be the most current available and may since have changed. The Ninth Circuit's Office of the Staff Attorneys, however, has published an immigration outline (most recently updated in January 2020) that synthesizes procedural and substantive principles relating to immigration law in the Ninth Circuit. https://www.ca9.uscourts.gov/guides/immigration_outline.php. The outline should be consulted to confirm the substantive guidance in this chapter.

Appellate Procedure, the corresponding Ninth Circuit rules, and Ninth
Circuit General Order 6.4 contain additional requirements for petitions
for review. Outside of these rules, the remaining Federal Rules of
Appellate Procedure and accompanying Circuit Rules apply to review of
BIA decisions, except Rules 3-14, 22, and 23 and the accompanying
Circuit rules. For this purpose, the term "appellant" includes the term
"petitioner," the term "appellee" includes the term "respondent," and
the term "appeal" includes the term "petition." Fed. R. App. P. 20; Ninth
Cir. R. 20-1.

## II.    THE PETITION FOR REVIEW

### A.    TIMING AND PROCESS FOR FILING PETITIONS
FOR REVIEW The petition for review in an immigration
case is filed with the circuit court, rather than with the BIA.
Fed. R. App. P. 15(a)(1). It must be received by the circuit
court no more than thirty days from the date of the final
administrative decision in the case. 8 U.S.C. § 1252(b)(1).
This requirement is jurisdictional, meaning that the Court
has no ability to extend the filing deadline. *Stone v. INS*, 514
U.S. 386, 405 (1995) (the deadline for filing a petition for
review is mandatory and jurisdictional and not subject to
equitable tolling); *Abdisalan v. Holder*, 774 F.3d 517, 521
(9th Cir. 2014), *as amended* (Jan. 6, 2015) (en banc) (same);
*see also* Advisory Committee Note to Circuit Rule 25-2
(reminding litigants that a commercial carrier's failure to
deliver a document within the anticipated interval does not
excuse the failure to meet a mandatory and jurisdictional
deadline).

In some cases, the individual may not have received
the BIA's decision within the thirty days for filing the
petition for review. If this happens, the individual may ask
the BIA to rescind and reissue its decision, thereby starting
a new thirty-day period for filing the petition for review. To
support such a motion, the individual must submit evidence
demonstrating that the BIA's decision was not timely
received. If the failure to timely file was based upon ineffective

assistance of counsel, the individual may also consider filing a motion to reopen with the BIA, based upon ineffective assistance. *See* American Immigration Council Practice Advisory, *Suggested Strategies for Remedying Missed Petition for Review Deadlines or Filings in the Wrong Court* (April 20, 2005), at https://www.americanimmigrationcouncil.org/sites/default/files/practice_advisory/lac_pa_042005.pdf

## B.     CONTENTS OF THE PETITION FOR REVIEW

A petition for review of an agency order must:

- name each party seeking review either in the caption or the body of the petition, Fed. R. App. P. 15(a)(2);

- specify the order or part thereof to be reviewed, *id*.;

- name the Attorney General as respondent, INA § 242(b)(3), 8 U.S.C. § 1252(b)(3);

- state whether any court has upheld the validity of the order and, if so, the date of the court's ruling and the type of proceeding, § 242(c), § 1252(c);

- include (as a separate PDF) a copy of the final administrative order, *id*., Ninth Cir. R. 15-4;

- include the petitioner's alien registration number in the caption, Ninth Cir. R. 15-4;

- state whether the petitioner is detained in DHS custody or at liberty, *id.;*

- state whether the petitioner has moved the BIA to reopen, *id*.; and

- state whether the petitioner has applied for adjustment of status, *id*.

If their interests make joinder practicable, two or more persons may join in the petition for review. Fed. R. App. P. 15(a)(1). Thus, for example, a family whose cases were consolidated in the removal proceedings may file a single petition for review. The petition for review must list each petitioner by name and alien registration number, rather than listing only the principal respondent before the agency or using "et al." *Id.*

You may elect to use Ninth Circuit Form 3 as your petition for review, or you may create your own. Sample petitions for review are also included in the American Immigration Council's Practice Advisory *How to File a Petition for Review*, a link to which is provided above.

## C.    FILING AND SERVICE OF THE PETITION FOR REVIEW

The respondent in a petition for review is the Attorney General. INA § 242(b)(3)(A), 8 U.S.C. § 1252(b)(3)(A). The petition must be served on the Attorney General and on the ICE officer or employee in charge of the district in which the final order of removal was entered. *Id*. This will generally be the District Director.

The address for service on the Attorney General is:

U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001.

To find the name and address of the officer in charge of the ICE district where the removal order was issued, go to the list of ICE field offices, at https://www.ice.gov/contact/field-offices. It is a good idea to call the field office to get the name of the District Director and to confirm that the listed address is the correct one for the District Director.

The Attorney General is represented in petitions for review by the Office of Immigration Litigation, and it is recommended that counsel send a copy of the petition for review to that Office, as well. The mailing address is:

> Office of Immigration Litigation
> U.S. Department of Justice/Civil Division
> P.O. Box 878
> Ben Franklin Station Washington, D.C. 20004.

(The physical address is 450 5th Street, Washington D.C. 20001.)

The petition for review must have a certificate of service showing service upon the Attorney General and the ICE officer in charge. Fed. R. App. P. 25(d); Ninth Cir. R. 25-5(f). This certificate should be included at the end of the petition for review in the same PDF, but it can reference all of the motions filed with the petition for review, even though each such motion must be submitted individually as a separate PDF (including any motion to stay removal).

New petitions for review filed by an attorney on or after May 1, 2021 must be submitted electronically, using the Ninth Circuit's new Appellate Case Management System (ACMS). *See* Administrative Order regarding ACMS. For counseled cases, all pleadings filed after the petition for review is opened must also be filed electronically, using the system in which the petition was originally opened (which would be CM/ECF for cases opened in the Ninth Circuit prior to May 1, 2021). Ninth Cir. R. 25-5(a). Under both systems, after the case has been opened, service upon case participants registered for electronic filing in the Ninth Circuit occurs upon filing and no certificate of service is required. Ninth Cir. R. 25-5(f).

**D.     FILING FEE AND *IN FORMA PAUPERIS*** The filing fee for a petition for review is currently $ 500.00 and is paid to

the circuit court directly. Counsel may pay the fee online
with a credit card when the petition is submitted, or may
submit the petition without payment. The petitioner may
ask leave to proceed *in forma pauperis* under 28 U.S.C. §
1915, by filing a motion and supporting affidavit with the
Court. Fed. R. App. Proc. 24(b). Any such motion submitted
by counsel with the petition for review must be in a single
PDF containing only the motion and supporting affidavit.

**E.**   **VENUE FOR THE PETITION FOR REVIEW** The
petition for review must be filed in the judicial circuit in
which the Immigration Judge (IJ) completed the removal
proceedings. INA § 242(b)(2), 8 U.S.C. § 1252(b)(2).

## III.   <u>EVALUATING THE RECORD ON REVIEW</u>

It is not uncommon for a petitioner in an immigration case to
have additional avenues of relief available, outside of those raised
in the administrative proceedings. For example, a young person
may now be eligible for relief under the Deferred Action for
Childhood Arrivals program (DACA), or an individual removable
based on a criminal removal ground may have been able to
ameliorate the conviction so that it no longer carries immigration
consequences. As a further example, a petitioner may have a U.S.
citizen or lawful permanent resident relative who is now able to
apply for a relative visa petition for the petitioner. Moreover, in
sympathetic cases, the DHS may offer the petitioner prosecutorial
discretion, allowing the petitioner to remain in the United States
for an indeterminate period.

These remedies may be better, or more certain, than the
relief sought through the petition for review. For this reason, it is
critical to review the record and the petitioner's situation carefully
for any possible alternative forms of relief.

The procedure for requesting alternative forms of relief
varies upon the specific form of relief in question. Certain forms of
relief, such as DACA, require an application to Citizenship and

Immigration Services, while others, such as adjustment based on a relative visa petition or termination of removal proceedings based upon amelioration of a criminal conviction, must be adjudicated at the agency level and require a remand order or a motion to reopen before the BIA. It may be possible to hold the Ninth Circuit proceedings in abeyance while counsel explore the possibility of alternate relief.

If alternative relief exists, counsel for the Office of Immigration Litigation may agree, and in some cases may propose, that the case be stayed before the Ninth Circuit or remanded to the agency for adjudicating the alternative relief. In such a case, counsel may file a joint motion to remand to the agency. The Court generally preserves any stay of removal during the remand.  The Court's Mediation Program can assist the parties in exploring these other avenues.  Counsel should email the Chief Circuit Mediator if the Program's involvement may be helpful to the parties.

## IV.  **JURISDICTIONAL CONSIDERATIONS**

As in all appeals, counsel must evaluate whether the Court has jurisdiction over the petition for review. Fed. R. App. P. 28(a)(4); Ninth Cir. R. 28-2.2. Particular jurisdictional considerations apply to petitions for review of BIA decisions, however, and these requirements are often major issues in the case. While an exhaustive discussion of these considerations is beyond the scope of this guide, the following is an overview of the jurisdictional aspects of which counsel must be aware. The *Ninth Circuit Immigration Outline*, a link to which appears above, provides a much more extensive explanation of these considerations.

> **Practice Tip:** Jurisdictional questions may be raised by the Court itself, through an order to show cause, General Order 6.4(c)(5), or through a dispositive motion from the Government. The Court regularly dismisses petitions for review for lack of jurisdiction summarily, prior to the briefing schedule. Thus, counsel must be prepared to respond fully to the jurisdictional issues raised in the order to show cause or dispositive motion, since, if the case is summarily dismissed, no appellate briefs will be filed and there will be no further opportunity to make the arguments.

**A.  FINAL ORDER OF REMOVAL** The circuit courts have jurisdiction over final administrative decisions only. INA § 242(a)(1), 8 U.S.C. § 1252(a)(1).

Final administrative decisions are defined as administrative orders concluding that an individual is removable or ordering removal. 8 U.S.C. § 1101(a)(47)(A). They include an actual order of removal, as well as decisions denying relief from removal. They also include BIA denials of motions to reopen. *Meza-Vallejos v. Holder*, 669 F.3d 920, 923 (9th Cir. 2012). In addition, ICE decisions to reinstate removal orders under § 241(a)(5), 8 U.S.C. 1231(a)(5), are reviewable directly in the circuit court. *Castro-Cordova v. INS*, 239 F.3d 1037, 1043-44 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). The BIA's denial of asylum in "asylum-only" proceedings for alien crewmembers also constitutes a final order of removal. *Nian v. Holder*, 683 F.3d 1227, 1230 (9th Cir. 2012). Similarly, where an individual asserts a reasonable fear of persecution as a basis for relief from reinstatement of a prior removal order, the reinstated removal order does not become final until the reasonable fear of persecution proceedings are complete, including, if requested, the IJ's review of an administrative finding of no reasonable fear. *Ortiz-Alfaro v. Holder*, 694 F.3d 955 (9th Cir. 2012). The Immigration and Nationality Act provides only limited review of expedited removal orders under § 235(b)(1), § 1252(b)(1).

Because the requirement of filing the petition for review within thirty days after the final administrative order is jurisdictional and mandatory, *Stone v. INS*, 514 U.S. at 405; *Abdisalan*, 774 F.3d at 521, the determination of when an order becomes final is critical. This determination can be complex in situations in which the BIA's decision resolves some issues administratively, but remands to the IJ for determination of other matters. For example, in *Abdisalan*, the BIA affirmed the IJ's denial of asylum but reversed the IJ's denial of withholding and remanded to the IJ for background checks related to the withholding grant. The Court found that, in the immigration context, the agency's adjudication of an individual's claims could not be considered final while background checks or other remanded proceedings which have the potential to affect the disposition are still in progress. *Abdisalan*, 774 F.3d at 526. *But see Pinto v. Holder*, 648 F.3d 976 (9th Cir. 2011) (holding that a BIA order remanding to the IJ for consideration of voluntary departure only was a final order for purposes of the Court's jurisdiction), and *Rizo v. Lynch*, 810 F.3d 688, 691 (9th Cir. 2016) (holding that *Abdisalan* did not overturn *Pinto* and noting that the Court is precluded by Congressional mandate under 8 U.S.C. § 1299c(f) from reviewing a grant or denial of voluntary departure).

The BIA's decision on a motion to reopen may affect finality. A motion to reopen is a form of discretionary administrative review. INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7); 8 C.F.R. §§ 1003.2, 1003.3. It is an "important safeguard" that "ensure[s] proper and lawful disposition" of immigration proceedings. *Dada v. Mukasey*, 554 U.S. 1, (2008). Motions to reopen request that the last administrative body hearing the case (either the BIA, if the case was appealed, or the IJ, if it was not appealed) reopen the case to consider new facts or new evidence that could change the outcome in the case.

The BIA's denial of a motion to reopen is a final order of removal for purposes of a petition for review. *Meza-Vallejo v. Holder*, 669 F.3d at 923. On the other hand, a grant of a motion to reopen is not a final administrative order permitting review in this Court because the administrative agency is again considering the case. Moreover, the grant of a motion to reopen or reconsider removes the finality of the underlying removal order. If a motion to reopen or reconsider is granted while a matter is pending on petition for review, the parties are required to notify the Court. *Timbreza v. Gonzales*, 410 F.3d 1082, 1083 (9th Cir. 2005) (order). Counsel should also determine whether a voluntary motion to dismiss the petition for review is appropriate. *Id*. Review can be sought, of course, from the BIA's final decision following the grant of the motion to reopen. *See Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002) (if the BIA decides to reinstate the order of removal, the petitioner will be able to appeal that final removal decision on *any* ground which he has raised before the BIA before the final order of removal, not just the one that caused reopening).

If the petitioner files a motion to reopen during the pendency of a petition for review and the BIA denies the motion, the petitioner may file a separate petition seeking review of the denial. (Note that a separate petition for review must be filed from each BIA decision, whether it is a final order of removal or a decision denying a motion for reopening or reconsideration.) In such a case, the petitioner must notify the Court that the new petition concerns a case already pending before the Court, and the Court will consolidate the two cases. INA § 242(b)(6), 8 U.S.C. § 1252(b)(6).

**B.    LIMITATIONS ON JUDICIAL REVIEW OF CERTAIN TYPES OF ISSUES** The circuit courts are prohibited from reviewing decisions raising certain types of issues. These prohibited types of decisions include discretionary decisions, INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B), and cases

- 156 -

involving criminal inadmissibility grounds under INA
§ 212(a)(2), 8 U.S.C. § 1182(a)(2), or certain criminal
deportation grounds under INA § 237(a)(2), 8 U.S.C.
§ 1227(a)(2).

Despite the jurisdiction-limiting provisions, Congress
has determined that the prohibition on review of
discretionary and certain criminal decisions does not
preclude judicial review of constitutional claims or questions
of law. 8 U.S.C. § 1252(a)(2)(D); *Rodriguez-Castellon v.
Holder*, 733 F.3d 847, 852 (9th Cir. 2013); *Ramirez-Perez v.
Ashcroft*, 336 F.3d 1001 (9th Cir. 2000). These questions may
arise in regard to removability or in regard to an application
for relief from removal. Thus, although adjudication of an
application for relief from removal, such as cancellation of
removal, requires the exercise of discretion and thus would
not be reviewable, legal errors made in the denial, such as
application of an incorrect standard of law, would be
reviewable. *See, e.g.*, *Vilchez v. Holder*, 682 F.3d 1195, 1198
(9th Cir. 2012) (reviewing argument that IJ failed to
consider evidence in adjudicating application for cancellation
of removal). Under Ninth Circuit jurisprudence, questions of
law extend to questions involving the application of statutes
or regulations to undisputed facts, sometimes referred to as
mixed questions of fact and law. *Taslimi v. Holder*, 590 F.3d
981, 985 (9th Cir. 2010); *Ramadan v. Gonzales*, 479 F.3d
646, 648 (9th Cir. 2007) (per curiam).

Asylum decisions are excepted from the bar on
reviewing discretionary decisions. INA § 242(a)(2)(B)(ii), 8
U.S.C. § 1252(a)(2)(B)(ii). Even in cases of asylum, however,
the circuit courts lack jurisdiction over claims that the
individual established changed circumstances or
extraordinary circumstances regarding a delay in filing for
asylum. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3).

Discretionary decisions raise particular questions.
First, the determination of which decisions are discretionary

is not always simple, and counsel must research the issue in each case. Second, not all discretionary decisions are non-reviewable; instead, only those decisions committed by Congress to the discretion of the agency are non-reviewable. *Kucana v. Holder*, 558 U.S. 233 (2010); *Delgado v. Holder*, 648 F.3d 1095, 1099-1100 (9th Cir. 2011) (*en banc*). Other types of discretionary decisions may be subject to a deferential standard of review, but are not precluded from review.

**C.    EXHAUSTION OF ADMINISTRATIVE REMEDIES** The circuit courts have jurisdiction to review orders of removal only if the petitioner has exhausted all administrative remedies available as of right. 8 U.S.C. § 1252(d)(1). Particularly where the petitioner was not represented in administrative proceedings, he or she may not have raised clearly all of the issues presented in his or her case. For individuals appearing *pro se* in removal proceedings, the Ninth Circuit does not require precise legal language and construes the exhaustion requirement liberally in the petitioner's favor. *Ren v. Holder,* 648 F.3d 1079 (9th Cir. 2011); *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008).

Issues may be exhausted other than by the petitioner. For example, where the BIA has addressed an issue, the issue has been exhausted. *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 852 (9th Cir. 2013); *Kin v. Holder*, 595 F.3d 1050, 1055 (9th Cir. 2010). In addition, where an issue was presented to the IJ, and the BIA affirms the IJ's decision citing *Matter of Burbano*, 20 I & N Dec. 872 (BIA 1994), the issue is deemed exhausted. *Mutuku v. Holder*, 600 F.3d 1210, 1213 (9th Cir. 2010). A *Burbano* affirmance signifies that the BIA has conducted an independent review of the record and has determined that its conclusions are the same as those articulated by the IJ.

If the petitioner files no brief and relies entirely on his or her notice of appeal to the BIA for exhaustion of his or her claims, then the notice of appeal serves in lieu of a brief for purposes of exhaustion. *Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009). If the petitioner does file a brief with the BIA, however, the brief must raise all issues for which the petitioner seeks review, and the notice of appeal cannot fill any gaps. *Id.*

There are certain exceptions to the exhaustion requirement. These include substantive constitutional challenges to the immigration laws, regulations, and procedures, and claims made under international law, since the BIA lacks jurisdiction to hear those claims. *Padilla-Padilla v. Gonzales*, 463 F.3d 972 (9th Cir. 2006). They also include nationality claims brought under § 242(b)(5), § 1252(b)(5). *Theagene v. Gonzalez*, 411 F.3d 1107, 1111 (9th Cir. 2005).

**D.    JURISDICTIONAL CONSIDERATIONS: PHYSICAL LOCATION OF THE PETITIONER** Prior to the Illegal Immigration and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C., 110 Stat. 3009-546 (Sept. 30, 1996), Circuit Courts lacked jurisdiction to review administrative deportation orders of individuals who had left the United States. *See* former 8 U.S.C. § 1105a(c). To protect the Court's ability to review administrative decisions, an automatic stay of removal took place upon the service of a petition for review. *Id.* IIRIRA changed this scheme, however, by removing the jurisdictional bar to claims of individuals who had departed the United States. IIRIRA § 306(b), 110 Stat. 309-612 (repealing 8 U.S.C. § 1105a(c)); *see Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1172 (9th Cir. 2003) (recognizing that individuals, whether removed or

departing under voluntary departure, may continue their cases from abroad).

Thus, an individual may seek review of a BIA decision even after departure or removal from the United States. Because the Court does not lose jurisdiction when the petitioner leaves, there is no longer an automatic stay of removal upon filing the petition for review. As explained below, however, the petitioner may move for a stay of removal.

> *Practice pointer*:  What should you do if a petition for review is granted after the individual departs? As noted above, a petitioner's departure from the United States does not divest the Court of jurisdiction over the petition for review. DHS provides information on returning to the United States after a petition for review is granted, at https://www.ice.gov/ero/faq-return-certain-lawfully-removed-aliens. Under that guidance, ICE will facilitate the individual's return if the case is remanded for further proceedings before the BIA or IJ and the individual's presence is "necessary for continued adjudication" of the case. The guidance also provides that "ICE may explore other options in lieu of facilitating [the individual's] return, such as arranging for video teleconferencing or telephonic testimony, if appropriate." If the BIA or IJ enters a final and unreviewable decision that permits the individual to be physically present in the United States, however, "ICE will facilitate [the individual's] return" and the individual will be able to obtain the status granted by the BIA or IJ.

## V.    REQUESTING A STAY OF REMOVAL

No automatic stay arises either within the thirty-day period to file the petition for review or upon filing the petition for review. INA § 242(b)(3)(B), 8 U.S.C. § 1252(b)(3)(B). Indeed, ICE can remove the petitioner immediately upon the BIA's final order of removal. Because, as noted earlier, removal or departure does not end the circuit court's jurisdiction to review, it is not generally necessary for jurisdictional purposes that the petitioner request a stay. However, if the removal would work hardship or place the petitioner in danger, then the petitioner will want to request a stay. In most cases, petitioners want a stay of removal.

Because there is no restriction on removal immediately following the BIA decision, any motion for stay of removal should be made with the petition for review, but it *must* be submitted as a separate motion in a separate PDF, not in the body of or attached to the petition for review.

In the Ninth Circuit, filing an initial motion for a stay of removal automatically invokes a temporary stay until the Court can rule on the motion. Ninth Circuit General Order 6.4(c)(1). This temporary stay is in effect whether or not the Court issues an order confirming the stay. *DeLeon v. INS*, 115 F.3d 643 (9th Cir. 1997).

The electronic certified administrative record shall be filed with the Court within 35 days from the filing of the petition for review. The respondent shall file its response to the motion for stay within 21 days from the due date of the administrative record. Any dispositive motions respondent seeks to file should be filed at the same time the response is due. General Order 6.4(c)(3). During this time, the petitioner is covered by the temporary stay described above. The government's failure to respond within the time set is deemed a statement of non-opposition. General Order 6.4(c)(5). The petitioner may file a reply seven days from service of the response. General Order 6.4(c)(4). The grant of a stay, or the continuation of the temporary stay pursuant to government non-opposition, continues in effect during the pendency of the petition for review or until further order of the Court. General Order 6.4(c)(5). It does not operate as a stay on, or suspension of, the briefing schedule.

A briefing schedule will be established upon the filing of the petition for review, whether or not a motion for stay is filed. The petitioner must serve and file a brief within 60 days after the due date for the administrative record. The respondent must serve and file a brief within 60 days after the petitioner's brief is served. The petitioner may serve and file a reply brief within 21 days after service of the respondent's brief. *See* General Order 6.4(c)(6).

Stays of removal are not granted as a matter of course. When adjudicating a motion for stay of removal, Circuit Courts apply the traditional criteria governing stays. These are (1) whether the stay applicant has made a strong showing that he or she is likely to succeed on the merits; (2) whether the applicant would be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies. *Nken v. Holder,* 556 U.S. 418 (2009); *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011).

For this reason, the motion for a stay requires a detailed analysis of the facts of the petitioner's case, the legal issues raised in the case, and the specific hardships that the petitioner would suffer if removed. This can be challenging for counsel who did not represent the petitioner before the agency, as the motion for stay will be made prior to receipt of the administrative record. In this regard, counsel should note that the Ninth Circuit allows fourteen days from the filing of the initial motion for stay in which to supplement the motion regarding the merits of the petition and the potential hardships removal would cause the petitioner. General Order 6.4(c)(2).

When a motion for stay is filed, counsel should contact the Office of the General Counsel for the district where the petition for review is filed or, if the petitioner is detained, for the district where the petitioner is detained, to notify the OGC that a motion for stay has been filed, so that the petitioner may not be removed.

## VI. **THE RECORD ON REVIEW**

The petitioner in a petition for review of a BIA decision does not prepare excerpts of record. Ninth Circuit Rule 17-1.2(b). Instead, the BIA prepares a Certified Record of Proceedings and files it with the circuit court within 35 days of service of the petition for review (rather than the 40 days provided in Federal Rule of Appellate Procedure 17). *See* General Order 6.4(c)(3) & (6).

The record is then available on the Ninth Circuit's electronic docket report for the case.

> ***Practice Tip:*** Under its General Order 6.4, the Ninth Circuit has modified the time periods set out in the Federal Rules of Appellate Procedure for filing the administrative record and for certain pleadings. The time periods given in this section are those set forth in the General Orders.

The certified record of proceedings consists of (1) the order involved; (2) any findings or report on which it is based; and (3) the pleadings, evidence, and other parts of the proceedings before the agency. Fed. R. App. P. 16(a). The parties may by stipulation supply any omission from the record or correct a misstatement. Fed. R. App. P. 16(b). If necessary, the Court may direct that a supplemental record be prepared and filed. *Id.*

Documents in immigration cases, including administrative records, are generally not filed under seal in the Ninth Circuit. However, remote electronic access to documents is limited by rule to the parties to the case, though the documents will be available for public viewing in the Clerk's Office. *See* Fed. R. Civ. Proc. 5.2(c), Fed. R. App. P. 25(a)(5). Under the same rule, orders and dispositions in these cases are publicly available.

## VII. MOTIONS IN PETITIONS FOR REVIEW

A number of motions may be appropriate in petitions for review. These range from a motion for stay of removal, discussed above, to motions to dismiss for lack of jurisdiction. In general, motions in petitions for review must comply with all requirements under Federal Rule of Appellate Procedure 27 and the accompanying Ninth Circuit Rules. These require that every motion in a petition for review of a BIA decision must recite any previous application for the relief sought and inform the Court whether the petitioner is detained in DHS custody or at liberty.

Ninth Cir. R. 27-8.2. Certain motions, for example, a motion to dismiss, a request to proceed *in forma pauperis*, and a request for appointment of counsel, automatically stay the briefing schedule. Ninth Cir. R. 27-11. The Government should file any dispositive motions at the time its response to any motion for stay is due. General Order 6.4(c)(3).

## VIII. <u>BRIEFS IN PETITIONS FOR REVIEW</u>

The required components of a brief are set out at Federal Rules of Appellate Procedure 28 and 32 and accompanying Ninth Circuit Rules. *See also supra*, Chapter IX, Drafting the Brief. The Ninth Circuit requires certain additional information in briefs on petitions for review. These are:

- whether the petitioner is in DHS custody;
- whether the petitioner has filed a motion to reopen;
- whether the petitioner has filed an application for adjustment of status; and
- how the petitioner has exhausted the administrative remedies.

Ninth Cir. R. 28-2.4(b). In addition, the petitioner's opening brief must include an addendum, bound with the brief, containing all orders of the Immigration Court and BIA that are being challenged. Ninth Cir. R. 28-2.7.

> *Practice Tip:* While the final administrative order is that of the BIA, the Court sometimes reviews the IJ's decision. For example, if the BIA has issued a summary decision and does not expressly conduct de novo review, the Court may review the IJ's decision as a guide to the BIA's decision. *Bassene v. Holder*, 737 F.3d 530, 536 (9th Cir. 2013). Similarly, where the BIA issues its own decision but relies in part on the IJ's decision, the Court reviews both decisions. *Flores-Lopez v. Holder*, 685 F.3d 857, 861 (9th Cir. 2012).

> ***Practice Tip:*** It is sometimes possible to resolve immigration cases through mediation, particularly where there is some form of relief for which the petitioner is eligible (such as adjustment of status). *See, supra,* section III, on possible alternative forms of relief. Under Ninth Circuit Advisory Committee Note to Rule 15-2, petitions for review of BIA decisions are not subject to the requirement of filing a mediation questionnaire. However, in the Circuit Advisory Committee Note, the Circuit Mediator invites parties in petition for review cases to contact the Court Mediation Unit if there is a potential for mediation. The Advisory Committee Note recognizes that a resolution by mediation may take into account remedies and information not present in the record.

## IX.  POST-DECISION PROCEEDINGS AND MOTIONS TO STAY THE MANDATE

Post-decision measures, such as petitions for rehearing and the issuance and possible stay of the Court's mandate, are discussed in Chapter XII of this Practice Guide. It is worth noting, however, that immigration cases often raise compelling issues that may support a motion for stay of the Court's mandate. If the Court has granted a stay of removal, that stay remains in effect until issuance of the mandate. Thus, if the Court denies the petition for review, leaving the petitioner subject to removal, and if there are strong reasons why the petitioner needs to remain longer in the country, counsel should consider requesting that the Court stay its mandate.

## XIV.
## HABEAS CORPUS PROCEEDINGS

I.  **TYPES OF HABEAS CASES** Generally speaking, there are
three kinds of habeas corpus cases that may involve appellate
proceedings in the Ninth Circuit:

- Challenges by state prisoners to state court criminal
judgments, brought on federal constitutional grounds (known
as "2254 petitions," because they are governed by 28 U.S.C.
§ 2254).

- Challenges to criminal judgments by persons in federal
custody. (These arise under 28 U.S.C. § 2255 and are referred
to as "2255 motions"). As a general matter, these must be
limited to claims that could not have been raised on direct
appeal.

- Various other sorts of cases brought by prisoners under the
"general habeas statute" (28 U.S.C. § 2241) – including, for
instance, challenges to detention orders in immigration cases;
mental health commitments; claims by federal prisoners
regarding how their sentences are being computed; and some
suits by federal and state prisoners regarding the
circumstances of their imprisonment. Section 2241 is also
available, under very limited circumstances, to federal
prisoners with claims that would normally be brought in a
Section 2255 motion, if Section 2255 could not provide an
"adequate" remedy – such as when the prisoner makes a
claim of actual innocence but did not have an "unobstructed
procedural shot" at presenting that claim before the time for
filing a Section 2255 motion ran out.

In addition to these habeas corpus procedures – each of
which is specifically governed by federal statute, and all of
which require that the petitioner or movant be in custody at
the time the case is first filed – the federal courts permit the
use of the traditional, non-statutory post-conviction

procedure known as coram nobis. It can only be used to remedy the most fundamental errors, and only when other procedures are not available – usually because the petitioner is no longer in federal custody.

While these are all governed by the same general framework of laws and rules, there are specific rules and limitations that apply to each type of habeas case – *see, e.g.,* Rules Governing § 2254 Cases in the United States District Courts; Rules Governing § 2255 Cases in the United States District Courts.

II.     **WHEN THE APPEAL MUST BE FILED** Habeas proceedings are considered "civil" cases for purposes of Federal Rule of Appellate Procedure 4. This means that a party wishing to appeal the district court's final determination of a habeas case must file a notice of appeal within 30 days if the petitioner is in state custody, and within 60 days if the petitioner is in federal custody.

III.    **CERTIFICATES OF APPEALABILITY** To appeal a district court's final decision in almost all cases involving Section 2254 petitions or Section 2255 motions, all Section 2241 cases brought by state detainees and prisoners, and most Section 2241 cases brought by federal detainees and prisoners, the petitioner or movant must obtain a "Certificate of Appealability," or "COA." Neither the federal government nor a state government needs to seek a COA in order to appeal from an adverse ruling by the district court.

> ***Practice Tip***: The COA requirement does not apply in coram nobis cases. It is not uncommon, however, for pro se litigants and even practitioners to present cases as "coram nobis" when those cases do not meet the very specific requirements for that writ, and are in fact simply Section 2254 motions. (For the coram nobis requirements, *see United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005).) If the case does not qualify as a coram nobis proceeding, the COA requirement applies, regardless of how the pleadings have been denominated.

A.     **WHAT IS THE STANDARD FOR A COA?** The COA may be granted as to all claims, or as to some, or denied entirely.

In order to obtain a COA, the petitioner or movant must make "a substantial showing of a constitutional right." *See* 28 U.S.C. § 2253(c). This is said to be a "modest standard" – requiring only that "the issues are debatable among jurists of reason." *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000). Nonetheless, COAs are denied in their entirety in the great majority of cases.

> ***Practice Tip***: Even if the district court dismissed the petition or motion on procedural grounds, and the issues on appeal will be limited to those procedural questions, the petitioner or movant must also show that one or more of the underlying claims in the petition or motion meets the standard for issuing a COA.

**B.    WHO DECIDES WHETHER TO GRANT A COA?** The determination as to whether or not to grant a COA is first made by the district court, at the time it issues its final decision. If the district court denies the COA, the petitioner or movant can file a motion in the Court of Appeals, requesting that a COA be granted.

> ***Practice Tip***: Filing a request for a COA is not a substitute for filing a Notice of Appeal. Even if a petitioner or movant files a motion in the Court of Appeals requesting a COA, he or she should also be sure to file the Notice of Appeal within the required time period. Similarly, even if the district court grants a COA (making it unnecessary to file a COA request in the Court of Appeals), he or she must still file a Notice of Appeal. The Court does, however, make an exception for pro se appellants, and routinely treats their COA requests, filed in the district court, as also being Notices of Appeal.

In the Ninth Circuit, COA requests are heard by a panel of two judges; the panel usually meets once or twice a month, and it is composed of different judges each month. Because of the high volume of COA requests, the Court has a staff of specially trained attorneys to prepare the requests for presentation to the panel, which can decide as many as 100 to 150 COA requests in a single session. If either one or both of the two judges on the panel vote to grant the request, the COA is issued.

> ***Practice Tip***: Although the Court will treat a Notice of Appeal as also being an implied motion for a COA (*see* Fed. R. App. P. 22(b)(2)), the petitioner is well advised to make a separate motion setting out his or her best arguments as to why a COA should be granted.

**C.    WHAT IF THE COURT DENIES MY REQUEST FOR A COA?** If a petitioner's request is denied in the Ninth Circuit (as, again, most are), the petitioner may file a motion for reconsideration asking that it be considered one more time. The motion for reconsideration will be heard by a two-judge panel composed of different judges than the ones who previously denied the COA request, either one of which could grant the request. A petitioner denied a COA by the Court of Appeals may also seek review of that denial by filing a petition for writ of certiorari in the Supreme Court. *Hohn v. United States*, 524 U.S. 236 (1998).

> ***Practice Tip:*** A reconsideration motion should not just repeat the arguments made in the initial COA request, but should focus on what the petitioner believes the panel missed when it denied that initial request.

**D.    MAY I STILL ADDRESS UNCERTIFIED CLAIMS IN MY BRIEF?** As noted, either the district court or the Court of Appeals may grant a COA but limit it to only one or a few of the claims presented in the habeas petition. Regardless of whether the COA is ultimately limited to less than all of the claims, the appellant/petitioner may still include the other, "uncertified" claims in his or her appellate brief – but he or she must do so in a separate section under the heading "Uncertified Issues" that follows the part of the brief setting out and arguing the "certified" claims.

Uncertified issues will be construed as a motion to expand the COA and will be addressed by the merits panel to the extent the panel deems appropriate. However, the respondent/appellee is not required to address "uncertified" claims unless directed to do so by the Court. The Court will

not grant exceptions to the word/volume limits in the rules to allow additional space for briefing "uncertified issues" (*see* Ninth Cir. R. 22-1(e) & (f)), but if the merits panel – when reviewing the briefs – takes particular interest in an uncertified issue it may order additional briefing on that issue.

> ***Practice Tip***: If the petitioner has been granted relief in district court and the respondent appeals, it is generally not necessary for the petitioner to file a cross-appeal or obtain a COA to preserve her or his right to argue alternative theories or claims rejected below. Rather, the petitioner can defend the favorable judgment on the basis of any theory or claim asserted in district court – even if the district court rejected that particular claim – so long as the alternate claim would not entitle the petitioner to greater relief than he or she was granted in the judgment. (An obvious exception would be if the petitioner asserts a claim that the trial evidence was constitutionally insufficient – which, if successful, would bar retrial – when the judgment granting habeas relief only required that petitioner be provided a new trial.)

**IV.  APPOINTMENT OF COUNSEL**  Most appeals in habeas cases are brought by prisoners proceeding pro se. Although the Court is not required to appoint counsel in such cases, the Criminal Justice Act provides the Court with discretion to do so. If a COA is granted by the Ninth Circuit, and the petitioner/appellant qualifies as indigent under the CJA, the Court often will appoint an attorney to represent him or her. The procedures governing appointment of counsel – including whether and when the appointment of counsel in the district court continues into the appellate process – are addressed in Chapter V of this guide, "The Right to Counsel on Appeal."

> ***Practice Tip:***  Indigent Section 2254 appellants are entitled to the production of transcripts at the government's expense.  28 U.S.C. § 753(f). However, indigent Section 2255 appellants are not; instead, they must move for the production of transcripts at government expense. *Id.* The Ninth Circuit prefers that the request be made initially before  the district court; if the district court denies the motion, appellant may  renew the motion in the Court of Appeals.

**V.**  <u>**SPECIAL LIMITATIONS ON THE COURT'S
CONSIDERATION OF HABEAS APPEALS ("AEDPA")**</u> The
federal habeas corpus statutes, and particularly the amendments
to those statutes known as the "Antiterrorism and Effective Death
Penalty Act of 1996," or "AEDPA," place unique restrictions on the
federal courts' consideration of Section 2254 petitions – cases
brought by state prisoners challenging their convictions and
sentences on federal constitutional grounds – and, to a lesser
extent, Section 2255 motions brought by federal prisoners.
(AEDPA does not apply to Section 2241 cases.)

In addition to the COA requirements (discussed above) and
the restrictions on "second or successive petitions" (which will be
described below), AEDPA also contains stringent statute of
limitations and exhaustion requirements, and it severely limits
the extent to which federal courts can interfere with state court
criminal judgments – even when a federal constitutional violation
has occurred.

While even a summary of those restrictions and limitations
would be beyond the scope of this guide, it is important for parties
in habeas appeals to remember that they must be understood and
addressed. Simply arguing that a constitutional wrong has been
done does not assist the Court and is not enough to win an appeal.

> ***Practice Tip:*** The leading treatise, and an invaluable resource in
> navigating the minefield of federal habeas corpus, is R. Hertz & J.
> Liebman, Federal Habeas Corpus Practice and Procedure, 6th  Ed.
> (Lexis  Nexis).

**VI.**  <u>**"SECOND OR SUCCESSIVE PETITIONS"**</u> If a habeas
petitioner, challenging a state or federal criminal judgment, has
previously challenged that same judgment in an earlier Section
2254 petition or Section 2255 motion, the new habeas case (with
very few exceptions) will be considered a "second or successive

petition" and must satisfy the extremely stringent requirements set out in 28 U.S.C. § 2244.

> **Practice Tip:** The "second or successive petition" requirements do not apply to 2254 petitions that were previously dismissed without prejudice for failure to exhaust state remedies.

As a practical matter, this means that a prisoner seeking to bring a second habeas challenge to her or his conviction must first get permission from the Court of Appeals, before he or she can even begin litigating the new petition in the district court. That permission is rarely given. To get it, the habeas petitioner must file an application demonstrating that the new petition is either (a) based on new rule of constitutional law that was made retroactive by the Supreme Court, or (b) is based on facts that were not known to the petitioner and could not have been discovered "through the exercise of due diligence" and that, if proven, "would be sufficient to establish by clear and convincing evidence" that "no reasonable factfinder would have found the [petitioner] guilty . . . ."  28 U.S.C. §§ 2244(b)(2), 2255(h).

There is a unique procedure for considering motions for leave to file "second or successive petitions": They are considered by a three-judge motions panel, and if they are denied, no petition for rehearing may be filed. No filing fee is required.

***Practice Tip:*** Because of Section 2254's strict time limits, some petitioners submit the petition to the district court while the motion for leave to file the petition is still pending in the Court of Appeals, so that – if the petition is deemed *not* to be "second or successive" *after* the time for filing a regular petition has run – the petition will still be timely. However, this practice runs the risk of angering the district court, the Court of Appeals, or both. An alternative is to include, within the application for permission to file a "second or successive" petition, a request that if the Court of Appeals deems the petition not to be "second or successive, the case be transferred to the appropriate district court to be treated as a regular habeas proceeding and be deemed to have been filed in the district court on the date the application was filed in the Court of Appeals.

# XV.
# DRAFTER'S CHECKLIST FOR
# APPELLATE MOTIONS

**CAPTION** (Fed. R. App. P. 27(d)(1)(B)):

☐ Case number.

☐ Name of the court.

☐ Title of the case.

☐ Brief descriptive title indicating the motion's nature and by whom it is filed (*i.e.*, "Appellant's Motion to Voluntarily Dismiss Appeal").

**FORMAT** (Fed. R. App. P. 27(d)(1)):

☐ Motions and responses not to exceed 20 pages or 5,200 words; replies not to exceed 10 pages or 2,600 words.

☐ Text (except block quotes more than two lines in length) must be double-spaced; headings and footnotes may be single-spaced.

☐ Typeface requirements are identical to briefs (Fed. R. App. P. 32(a)(5)) (proportionally spaced font at 14-point or monospaced font with not more than 10.5 characters per inch).

☐ Single-sided documents only.

☐ Margins: at least 1 inch on all sides. Page numbers may be placed in the margins, but no text may appear there.

**CONTENTS** (Fed. R. App. P. 27(a)(2)):

☐ Must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it. Fed. R. App. P. 27(a)(2)(A).

☐ If unopposed, must say so. Ninth Cir. R. 27-1(2). Unless precluded by time urgency, contact opposing counsel and include opposing counsel's position or an explanation regarding the efforts taken to learn that position. Advisory Committee Note to Ninth Cir. R. 27-1(5).

☐ Must be accompanied by affidavits (containing only factual information) or other papers necessary to support the motion. Fed. R. App. P. 27(a)(2)(B).

☐ In criminal appeals and in immigration cases, the motion must recite any previous application for relief and the bail/detention status of the defendant/petitioner. Ninth Cir. R. 27-8.

**RESPONSE AND REPLY** (Fed. R. App. P. 27(a)(3)):

☐ Response must be filed within 10 days after service of motion; reply, within 7 days after service of response. Procedural motions may be acted on before any response is filed.

☐ If response or reply requests affirmative relief, the document's title must say so. Fed. R. App. P. 27(a)(3)(B).

**MOTIONS WITH SPECIAL RULES:**

**Motions to stay a district court or agency order**: Must confirm that the motion was initially filed with the district court/agency or explain why doing so would be impracticable. Fed. R. App. P. 8(a)(2)(A) and 18(a)(1) and (2).

**Motions for extensions of time to file briefs**: Must provide the position of all opposing parties, or explain why this information cannot

be supplied. Must confirm completion of transcripts; and must include other recitals in the rule. Ninth Cir. R. 31-2.2(b).

**Motions to expedite**: Must provide the position of all opposing parties, or explain why this information cannot be supplied; must confirm completion of transcripts; and must include the other six recitals stated in the rule. Ninth Cir. R. 27-12.

**Emergency Motions**: Emergency motions must include certification that relief is needed *within* 21 days to avoid irreparable harm. They must have a cover page bearing the legend "Emergency Motion Under Circuit Rule 27-3," and providing the date by which relief is needed underneath that legend, and a special "Circuit Rule 27-3 Certificate for Emergency Motion" (Form 16, found at https://www.ca9.uscourts.gov/forms/). You do not have to use Form 16; you may write your own certificate instead. But keep in mind that using Form 16 is encouraged. You must notify the Emergency Motions department of the Clerk's Office before filing any emergency motion. Call (415) 355-8020 and leave a message if your phone call is not answered or e-mail emergency@ca9.uscourts.gov

For additional information on the requirements for emergency motions, counsel is encouraged to take into account the proposed changes to Circuit Rule 27-3, available on the Court's website at http://cdn.ca9.uscourts.gov/datastore/general/2019/06/26/Proposed%20Rules%20Final%20set%20for%20public%20comment.pdf.

**Motions for limited remand**: Must state that the district court has expressed willingness to consider the post-judgment motion. Fed. R. App. P. 12.1.

**Motions for a certificate of appealability**: Must be filed initially with the district court. Ninth Cir. R. 22-1. A notice of appeal acts as a request for a certificate of appealability if no separate document is filed. Fed. R. App. P. 22(b)(2).

**Motions for bail**: Must be filed initially with the district court.

# XVI.
# FILER'S CHECKLIST FOR APPELLATE MOTIONS

## APPELLATE FILING FUNDAMENTALS:

☐ Motions must be filed via CM/ECF (or ACMS for immigration cases opened on or after May 1, 2021).

☐ All documents must be in PDF format; native PDF format is strongly preferred.

☐ All PDF documents must be searchable.

## BEFORE FILING:

☐ For emergency or sealed motions, *see* Ninth Circuit Rules 27-3 and 27-13. *See also* the proposed changes to Rule 27-3, available at http://cdn.ca9.uscourts.gov/datastore/general/2019/06/26/Proposed%20Rules%20Final%20set%20for%20public%20comment.pdf.

☐ Have attorney username and password.

☐ Motion, declaration, and certificate of service (only if required by Circuit Rule 25-5(f)) must have "s/" followed by typed name of the attorney on signature lines.

☐ Convert motion, declaration, any certificate of service, and any other attachments to PDF documents by publishing to PDF from the original word processing file to permit the electronic version of the document to be searched. Refer to Ninth Circuit Rule 25-5(e) for specifics.

☐ Make sure each PDF document is searchable.

☐ Make sure attachments do not exceed the permitted size. (Once logged into CM/ECF, click the Court Information link. In the page

that opens, the Maximum PDF File Size shows you what the
current limit is.) If they do, they must be divided into sub-
volumes. *See* Ninth Cir. R. 25-5(e).

## FILING:

Detailed instructions for filing documents, including motions, on
CM/ECF are available at:
http://cdn.ca9.uscourts.gov/datastore/uploads/cmecf/ecf-user-
guide.pdf

Detailed information about filing in ACMS is available at:
https://www.ca9.uscourts.gov/efiling/view.php?pk_id=0000001080

## NOW WHAT?

Other party(s) may file a response to the motion within 10 days
from the date of service of the motion, unless the Court shortens
or extends the time. *See* Fed. R. App. P. 27(a)(3). Any reply to a
response must be filed within 7 days after service of the response.
*See* Fed. R. App. P. 27(a)(4). Once fully briefed, the Court will
issue its order.

# XVII.
## DRAFTER'S CHECKLIST FOR APPELLATE BRIEFS

**COVER OF BRIEF** (Fed. R. App. P. 32(a)(2)):

☐   Ninth Circuit case number.

☐   Heading: "United States Court of Appeals for the Ninth Circuit."

☐   Title of case.

☐   Nature of proceeding and name of court (or agency) below.

☐   Title of brief (example "Government's Answering Brief").

☐   Name(s) and address(es) of counsel filing the brief.

**CONTENTS** (Fed. R. App. P. 28; Ninth Cir. R. 28-2; briefs in cross-appeals are governed by Fed. R. App. Pro. 28.1(c); capital appeals by Ninth Cir. Rule 32-4.):

☐   Disclosure statement, if required

☐   Table of Contents.

☐   Table of Authorities with page references (cases alphabetically arranged, statutes and other authorities numerically arranged).

☐   Optional (but strongly recommended): Introduction

☐   Jurisdiction, Timeliness, and
        - For criminal cases, Bail Status

- For immigration cases, Detention and Post-
  Petition Filings

☐    Issue(s) Presented.

☐    Pertinent constitutional provisions, treaties, statutes, ordinances, regulations or rules, or statement that provisions are included in addendum to the brief.

☐    Statement of Case **with references to the excerpts of record**, with citations formatted as prescribed in Ninth Cir. Rule 30-1.6.

☐    Summary of Argument.

☐    Standard(s) of Review [*if not included within each argument section*].

☐    Argument with references to record and citations to case law, statutes, and other authorities.

☐    Conclusion.

☐    Signature block including date.

☐    Statement of Related Cases, if applicable, Ninth Cir. Form 17.

☐    Certificate of Compliance, using Ninth Cir. Form 8, if required.

☐    Certificate of Service, using Ninth Cir. Form 15, if required.

☐    Addendum of orders challenged in immigration cases and/or pertinent constitutional provisions, treaties, statutes, ordinances, regulations or rules.

**TYPEFACE AND LENGTH** (Fed. R. App. P. 32(a)(5) and (a)(7) and Ninth Circuit Rule 32-1):

- [ ] Typeface proportionally spaced font at 14 point (such as Times New Roman or CG Times) or monospaced type with no more than 10.5 characters per inch.

- [ ] Length for principal briefs (*i.e.*, Opening and Answering briefs): up to 14,000 words OR 50 pages (if brief handwritten or typewritten).

- [ ] Length for reply briefs: up to 7,000 words OR up to25 pages (if brief handwritten or typewritten).

- [ ] Briefs **must** include word or line count in the Certificate of Compliance pursuant to Fed. R. App. P. 32(a)(7)(C)).

**MISCELLANEOUS:**

- [ ] Personal information such as social security numbers must be redacted from the brief. *See* Fed. R. App. P. 25(a)(5) for specifics. When filing a brief, the CM/ECF or ACMS system will require attorneys to verify that personal information has been redacted.

- [ ] Margins: at least 1-inch on all sides. To account for page number, bottom margin can be set at .5 inch.

- [ ] Text double-spaced (headings, footnotes, and block quotations may be single-spaced).

- [ ] Pages serially paginated.

- [ ] Footnotes must be in the same font size as the body of brief (14 point font).

# XVIII.
## DRAFTER'S CHECKLIST FOR EXCERPTS OF RECORD
## AND SUPPLEMENTAL EXCERPTS OF RECORD

**COVER OF EXCERPTS OF RECORD** (Ninth Cir. R. 30-1.5(d))

- [ ] Identical to the brief cover prepared pursuant to Federal Rule of Appellate Procedure 32(a), except "Excerpts of Record" (or "Supplemental Excerpts of Record" or "Further Excerpts of Record") is substituted for "Brief of Appellant" (or "Answering Brief" or "Reply Brief").

- [ ] White cover.

- [ ] Include volume number in title.

- [ ] Each volume must contain a cover page.

**CONTENTS** (Ninth Cir. R. 30-1.4)

Documents to include in the initial Excerpts:

- [ ] Complete index that lists the name of each document in order, including a citation to where the document may be found in the lower court record, and the volume and page number where it may be found in the excerpts. If the entire Excerpts of Record, counting all pages, including the caption (cover) page and the Index, does not exceed 300 pages, the Index may be included in a single volume with the remainder of the Excerpts of Record. If the entire Excerpts of record exceeds 300 pages, file the Index in a single, separately bound Index Volume referencing all of the documents contained in all volumes of the Excerpts of Record, and do not include an index in any other volume of the excerpts.

☐ The complete trial court docket sheet.

☐ Notice of appeal.

☐ Judgment or interlocutory order appealed from.

☐ Any opinion, findings of fact, or conclusions of law relating to the judgment or order appealed from.

☐ Any other orders or rulings, including minute orders, sought to be reviewed (if the ruling was made orally, include the transcript pages containing the ruling and any discussion or findings pertinent to that ruling).

☐ Any jury instruction given or refused that is at issue in the appeal, together with any pertinent pages of the transcript at which the instruction is discussed and ruled upon.

☐ If the appeal involves matters decided at a suppression hearing, change of plea hearing, or sentencing hearing, the pertinent pages of the transcript of the hearing.

☐ If the appeal involves a challenge to the admission or exclusion of evidence at trial, the transcript pages at which the evidence is discussed (including any offers of proof), objected to, or ruled upon.

☐ All pages of the transcript cited in the brief, plus sufficient pages on either side to provide context.

☐ Copies of all written exhibits or affidavits cited in the brief. If copies cannot be produced, explain why in your brief. (*See* Ninth Circuit Rule 27-14 for instructions for transmitting physical exhibits.)

☐ Certificate of service showing service on all parties of record (if required under Ninth Circuit Rule 25-5(f)) at the end of the Excerpts of Record.

☐ In a criminal appeal, or an appeal from the grant or denial of a 28 U.S.C. § 2255 motion, the

☐ final indictment

☐ or other charging document.

☐ In a civil appeal:

The final pretrial order, or, if the final pretrial order does not set out the issues to be tried, the final complaint and answer, petition and response, or other pleadings setting out those issues.

Where the appeal is from the grant or denial of a motion, the specific portions of any affidavits, declarations, exhibits or similar attachments submitted in support of or in opposition to the motion that are essential to the resolution of an issue on appeal.

Where the appeal is from a district court order reviewing an agency's benefits determination, the entire reporter's transcript of proceedings before the administrative law judge, if such transcript was filed with the district court.

☐ Sealed documents must be contained in separate, sealed, final volume(s). This does not include Presentence Reports and sealed sentencing memoranda, which are submitted electronically by selecting the CM/ECF electronic filing type "File Presentence Report UNDER

SEAL." The CM/ECF system will automatically seal documents filed in this manner.

In a capital appeal, Ninth Circuit Rule 32-4 requires that the Excerpts of Record include all final orders and rulings of all state courts in appellate and post-conviction proceedings, and all final orders involving the conviction or sentence issued by the Supreme Court of the United States.

Documents to include in any Supplemental Excerpts of Record:

☐ Anything from the record that you rely upon in your brief and that is not in the initial Excerpts of Record.

☐ Anything that should have been, but was not, included in the initial Excerpts of Record

Documents to include in any Further Excerpts of Record:

☐ Anything from the record that you rely upon in your brief and that is not in the initial or any supplemental Excerpts of Record.

**MULTIPLE VOLUMES** (Ninth Cir. R. 30-1.4): If the excerpts are less than 300 pages, including the Index and caption (cover) page, one volume may be used. If the excerpts exceed 300 pages, the following requirements apply:

☐ Each volume must be no more than 300 pages, including the cover, blank pages, and any certificates. However, each volume is not *required* to contain exactly 300 pages, and you may break the volumes up where appropriate.

☐ The first volume must contain only the decisions being appealed, reviewed, or collaterally challenged, whether oral or written, final or interim. Ninth Cir. R. 30-1.4(a). Where such

decisions were rendered orally, this may include transcripts. In view of this limitation, the first volume will often be shorter than other volumes.

☐ All additional documents, including the notice of appeal and district court docket sheet, should be included in subsequent volumes.

☐ Number the pages consecutively across all volumes (e.g., if Volume 1 ends with page 84, Volume 2 should begin with page 85). However, if you file a separate Index Volume pursuant to Rule 30-1.5(a), number its pages separately from the remaining volumes. Be sure to assign a number to *all* pages, including covers, blank sheets, and certificates (even if you don't print the number on each of those pages), so that the page numbers of the electronic and papers versions will match.

## MISCELLANEOUS:

☐ Paper copies of the excerpts should be bound securely on the left.

☐ Paper copies of the excerpts should be printed on letter-sized, light-colored paper with black ink (or colored ink where appropriate).

☐ Paper copies of the excerpts may be printed on both sides of the paper, but only if (i) the method of binding allows each volume to lie completely flat when open, such as comb, spiral, coil, or wire binding, and (ii) the weight of the paper is sufficient to prevent bleeding through when marked on one side in ink or highlighter.

☐ Normally, transcripts and documents should be arranged in reverse-chronological order, such that the transcript or document with the most recent filing date appears first. For this purpose, transcripts should be placed by hearing date, except that hearings or trials that span multiple dates or sessions should appear in chronological order for that hearing or trial, using the first day of the hearing or trial as the relevant date. Alternative

organization of the excerpts is acceptable if better suited to a particular case. But a transcript spanning a multi-day hearing or trial should be arranged in chronological order, with the first date of the hearing or trial determining the transcript's location within the excerpts.

☐ The notice of appeal and docket sheet should be at the end of the last non-sealed volume of the initial Excerpts. Ninth Cir. R. 30-1.4(f).

☐ Page numbers should be prominently displayed on the bottom right corner of the page. Make sure that page numbers are not obscured by other text or images; if necessary, move the page number to another location on the page to ensure that it is clearly visible. This will prevent judges and their staff from having to hunt to find the applicable page number.

If a pro se appellant or petitioner files no Excerpts of Record, and you are counsel for the appellee or respondent, you must file Supplemental Excerpts of Record that contain the documents cited in the pro se litigant's opening brief, any other documents required to be in the Excerpts of Record by Ninth Circuit Rule 30-1.4, and any further documents cited in your brief.

## XIX.
## COMPILER'S CHECKLIST FOR EXCERPTS OF RECORD AND SUPPLEMENTAL OR FURTHER EXCERPTS OF RECORD

## CREATE AN EXCERPT OF RECORD FILE

☐ **Create a new folder entitled "ER," "SER," or "FER." You will add all items that need to be included in the excerpts to that folder**

☐ **Compile district court records and transcripts into the folder.**

**Option I      Copy and paste**
If you have kept PDF copies of the district court documents, paste the ones you need into the folder

**Option II     Using Pacer**
If you don't have a local PDF copy of each document you need, retrieve them from Pacer and save them to the folder. *See* Pacer User Manual:
(https://www.pacer.gov/documents/pacermanual.pdf).

**Option III    Using Lexis/Nexis Courtlink**

**STEP 1**     Log into **Lexis/Nexis Courtlink**.

**STEP 2**     Select **[New Docket Number Search]** under My Courtlink tab.

**STEP 3**     Select appropriate court system, court type, and court case.
- Enter district court number.
- Click **[Submit Search]**.

**STEP 4**     Click on box to the left of each document you need for your excerpts.
- Click [Retrieve Documents].
- Click **[Order Documents]**.



- Click [Finish and View List].

**STEP 5**  Open each document that you retrieved from the district court docket and save in the folder.

## Create PDF copy of docket report

**STEP 1**  Log in to Pacer and bring up the case

**STEP 2**  Select the "Report" tab at the top and then select "Docket Sheet"

**STEP 3**  Enter case number

**STEP 4**  Click the box next to "PDF (paginated)" under the "Format" options, change the "Sort by" option to "Most recent data first," then click the "Run Report" button at the lower left:



**STEP 5**     When the report opens, save it to the folder.

☐   **Put it all together**[5]

**STEP 1**     Using Adobe Acrobat Pro, combine all documents into
one PDF with decisions of the district court on review
first, the docket sheet last, the notice of appeal and all
the other documents in between in reverse
chronological order.

- From your   folder, click and hold "Ctrl" and click
to select all of the documents you want to include
in Volume 1. Right-click on any of the selected
files, and from the window that opens, select
"Combine supported files in Acrobat..."



- At this point, a "Combine Files" window will
open:

---

[5] For more guidance on creating PDFs that will be accepted by the
Court, please consult the Court's Technical Guide for Working with
PDFs:
https://cdn.ca9.uscourts.gov/datastore/uploads/guides/Electronic%20Fili
ng%20Guide%20(2020).pdf.



- To arrange these files in the order you want, simply click-and-drag the individual files into place, or select a file and use the "Move Up" and "Move Down" buttons. (**Tip:** If you begin your document names with ordinal numbers or yyy.mm.dd, you can simply click the Name field heading to sort the documents into your predetermined order.)

- When you are finished, click "Combine Files" button in the lower right of the window, then name and save the resulting document in the folder

  o If the method above doesn't work with your setup, try this alternative:

    ▪ Open the first file that will be in Volume 1. In the upper left menu bar, click "File," then "Combine," then "Merge Files into a Single PDF." A window will open, with the first file in Volume 1 already in it. Click the "Add Files" box in its upper left corner and click on "Add Files." If the directory that comes up is not the one where the rest of the excerpts documents are, navigate to the excerpts folder. Control-click the other files you want to add. Then click "Add Files."

Then arrange the files, combine, save, and name as above.

**STEP 2**    Number the pages (and add header or footer text, if any) to Volume 1.

- Open (or leave open) your Volume 1 documents file in Acrobat.

- Click on the "Tools" option on the left of the screen. Note: If "Tools" is not on the left of the screen, it may be under the "View" tab.

- Click "Pages" and under "Edit Page Design," click the "Bates Numbering" drop-down arrow and select "Add Bates Numbering . . ."



- Acrobat's "Bates Numbering" window will now open.

- Click the "Add Files" button, and then select "Add Files."

- Select your combined documents file (yes, even though you already have it open).

- Click "Add Files."

- Click "OK."

- Now the "Add Header and Footer" window opens:



- In this window:

    o Change the font characteristics to "Times New Roman" and 14-point font.

    o Type any text into any of the header or footer boxes where you want the text to appear. (Keep in mind that any headers will probably be obscured by the circuit court's docket stamp once the excerpts are filed.)

- To enter page numbers using the Bates Numbering method:

    o Click inside the "Right Footer Text" box.

    o Click "Insert Bates Number."

    o A "Bates Numbering Options" box will appear. Set these options as appropriate and click "OK."

    o This will insert code into the box, which looks (depending on your selected format) something like this:



- Re-save the document with the newly added Bates numbers:

  o  Click "File" tab at top.

  o  Click "Save As."

  o  Select "PDF."

  o  In the "Save As" window, locate the document you just named and click on it once to select.

  o  A dialog box will open telling you that this file already exists and asking if you want to replace the existing file. Click "Yes."

- **Optional (but recommended):** Shrink the document pages so that your page numbers don't get obscured by other document text. To do this, click "Appearance Options . . ." (just above the Left Header Text box), then in the window that comes up check the box next to "Shrink document to avoid overwriting the document's text and graphics." Then, click "OK." The "Appearance Options . . ." window will close, and you will see the changes reflected in the Preview portion of the "Add Header and Footer" window.

  o  **Caveat 1:** Once you save the (now shrunken) document, the shrinking cannot be undone! Therefore, you might want to have a backup copy before you do the shrinking so you can go back to the previous one and make changes if necessary. You can do this by giving the (now shrunken) document a different name.

o **Caveat 2:** If after saving the document you make further adjustments to the header and footer, be sure to **UNCHECK the "Shrink" box** before you save those changes. If you do not, the box will remain checked, which means that the document will be reshrunk every time you save changes to the header and footer.

- Look at the Preview, make any further adjustments necessary, and then click "OK" and save the file as a new file name. Your combined PDF now has page numbers.

**STEP 3:**    **Repeat steps for subsequent Volumes – with one exception**

Because you are running numbers through all of your volumes and not starting each volume with page 1, in in addition to everything in STEP 2, you will have to set the page start number for each subsequent volume. Here's how:

- In the "Add Header and Footer" window, click "Page Number and Date Format."

- Enter the number in the "Start Page Number Box." (When you click the "Insert Page Number" box, it will enter <<Bates Number#3#1#ER >> in the text box, but the actual start number you entered will be reflected in the Preview.

**Prepare cover page, index, and certificate of service (if required)**

**STEP 1:**    Prepare a cover page for each volume of excerpts.

**STEP 2:**  Prepare a complete index, including describing each document, the district court ECF No., and all page number references.

**STEP 3:**  Prepare a certificate of service (if required) for each volume of excerpts.

**STEP 4:**  Convert all caption pages and certificates to PDF and save them to your ER folder.

### Assemble the Volumes

**STEP 1:**  In the ER folder, select the PDF files you created for the caption for Volume 1, index, the combined ER documents for Volume 1, and the certificate of service (if required) for Volume 1.

**STEP 2:**  Right-click on any of the selected files, then select "Combine supported files in Acrobat . . ."

**STEP 3:**  Arrange files in the following order:
1. Caption for Volume 1
2. Combined ER documents for Volume 1
3. Certificate of Service (if required) for Volume 1

**STEP 4:**  Click "Combine Files," then name as FullLastNameFirstIntitial_**ER_Vol 1_final** and save the volume in the ER folder.

**STEP 5:**  Repeat for each subsequent volume.

**Your volumes are now ready to be e-filed.**

**See filing instructions:** Filer's Checklist for Excerpts of Records

Excerpts of Record Frequently Asked Questions: https://www.ca9.uscourts.gov/cmecf/faqs/er/

## XX.
## FILER'S CHECKLIST FOR APPELLATE
## BRIEFS AND EXCERPTS OF RECORD

### APPELLATE FILING FUNDAMENTALS:

☐ Briefs and excerpts must be filed via CM/ECF (or ACMS) in separate transactions. Do not attach excerpts to a brief.

☐ All documents must be in PDF format; briefs must be in native PDF format and searchable.

☐ The Court strongly prefers excerpts to be in searchable PDF format, produced by using optical character recognition (OCR) technology whenever this can be accomplished without distorting the documents.

☐ In consolidated cases and cross-appeals, keep all consolidated/cross-appeal case numbers selected, even if counsel is on only one of the case numbers. All consolidated/cross-appeal case numbers must be on the covers of the brief and excerpts.

### BEFORE FILING:

☐ Make sure you have a username and password.

☐ Make sure that signature lines in briefs have "s/" followed by the typed name of the attorney.

☐ Convert briefs, any certificate of service (if required), and any other attachments to PDF documents by publishing to PDF from the original word processing file to permit the electronic version of the document to be searched. Refer to Ninth Circuit Rule 25-5(d) for specifics. Scanning a paper brief to create the PDF file is **prohibited**. The Court strongly prefers the brief and its certificates and addenda to consist of a single PDF file.

☐   Make sure each PDF document is searchable.

☐   Check whether PDF attachments exceed the permitted size. (Once logged into CM/ECF, click the Court Information link. In the page that opens, the Maximum PDF File Size shows you what the current limit is.) If they do, break them up into smaller PDF files and indicate that in the description when you upload the files by adding a part number – for example, "ER Vol 1 Part 1."

## FILING THE BRIEF:

Detailed instructions for filing documents, including briefs and excerpts, on CM/ECF are available at: http://cdn.ca9.uscourts.gov/datastore/uploads/cmecf/ecf-user-guide.pdf.

Detailed instructions for filing briefs and addenda in immigration cases opened after May 1, 2021 in ACMS are available at: https://www.ca9.uscourts.gov/efiling/view.php?pk_id=0000001080

Follow the Court's instructions for the descriptions you give in CM/ECF or ACMS for each PDF you upload (this is not the same as the file name of your document).

- In the Description field for the brief, accept the default description (Main Document).

- In the Description field for each volume of excerpts, change the default description to "ER Vol" followed by the volume number (for example, "ER Vol 1"). If you need to upload a single volume by breaking it up into separate PDF files, indicate that in the description by adding a part number, for example, "ER Vol 1 Part 1."

*For more detailed step-by-step instructions, see the Ninth Circuit's CM/ECF User Guide at* :

http://cdn.ca9.uscourts.gov/datastore/uploads/cmecf/ecf-user-guide.pdf.

## NOW WHAT?

The Court will review the brief and excerpts and generally order their filing within 24-48 hours of submission. If the Court finds deficiencies in the brief or excerpts, it will send an email or post a deficiency notice describing the errors and instructing you to submit a corrected brief or excerpts. You should not submit paper copies of the brief or excerpts until directed to do so by the Clerk. Paper copies of briefs submitted to the Court must be accompanied by a certification (or Form 18, https://www.ca9.uscourts.gov/forms/) attached to the end of each copy of the brief stating that the brief is identical to the version submitted electronically.

# XXI.
# RESOURCES FOR NINTH CIRCUIT PRACTICE

I. **THE FEDERAL RULES OF APPELLATE PROCEDURE AND THE NINTH CIRCUIT RULES** Appellate counsel should consult, in the first instance, the Federal Rules of Appellate Procedure and the Ninth Circuit Rules. Most questions, especially procedural ones, are answered by these rules. Beyond that, many questions regarding circuit procedure are answered by the Ninth Circuit General Orders.

II. **ELECTRONIC RESOURCES**

   A. **UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT (www.ca9.uscourts.gov)** The Circuit website contains HTML and PDF versions of the FRAP, the Ninth Circuit Rules, and the General Orders. The Circuit website also contains links to Ninth Circuit Model Civil and Criminal Jury Instructions, outlines regarding certain specific legal topics prepared by members of the Ninth Circuit staff, including standards of review, and immigration law and procedure, and social security law. These outlines are a useful starting point for legal research. The website provides downloadable forms needed for processing civil and criminal appeals. The website also contains some guidance to the rules, namely a form entitled "After Opening a Case." The "Attorneys" page provides information about the Court's pro bono program, which is an excellent way to gain experience handling federal appeals. And for attorneys who are new to federal appellate practice, the "Attorneys" page also includes a link to a mentoring program that will match new lawyers with experienced federal appellate attorneys who may be able to assist with research guidance, writing, editing, and/or preparing a case for oral argument.

   B. **SUPREME COURT OF THE UNITED STATES (www.supremecourt.gov)** The Supreme Court's website

contains a variety of useful material, including the Supreme
Court Rules, recent slip opinions, and a directory.

**C.    AMERICAN BAR ASSOCIATION
(www.americanbar.org/)** The American Bar Association
provides on-line merits briefs of cases pending before the
Supreme Court. This valuable resource is extremely useful
in evaluating and briefing federal circuit appeals.

**D.    FEDERAL PUBLIC DEFENDER WEBSITES** The Office
of the Federal Public Defender for the Central District of
California, www.fpdcacd.org contains links to various federal
and state court websites, as well as websites for state and
federal government. Among other things, it contains a list of
FAQs regarding federal appeal issues and procedures. CJA
attorneys may obtain access (via secure login) to a private
section, which includes directories for the Ninth Circuit and
district courts, and various training materials. Each Office of
the Federal Public Defender has its own website:
www.ndcalfpd.org, www.cae-fpd.org, www.fdsdi.com,
www.fdsidaho.org, www.wawfpd.org, www.fdewi.org,
www.fdom.org, https://az.fd.org, www.nvx.fd.org.

**E.    CORNELL LAW LIBRARY** Includes free access to
published opinions, statutes and regulations:
https://law.library.cornell.edu/

**F.    FINDLAW** Free public access to federal Supreme Court and
Ninth Circuit opinions: https://caselaw.findlaw.com/

**G.    THE FEDERAL BAR ASSOCIATION** Hosts a website
that includes articles about federal practice, judicial profiles,
and local chapter membership and activity information:
http://www.fedbar.org/

**H.    LAWPROSE.ORG** Hosted by Bryan A. Garner, offers legal
writing tips along with videotaped interviews about

appellate advocacy with the Supreme Court justices, and many appellate judges.  http://www.lawprose.org/

## III.  <u>TREATISES</u>

Moore's Federal Practice, 3d ed. (Michie-Lexis/Nexis 1997 and frequent updates): This comprehensive, multi-volume treatise has chapters devoted to appellate practice in the federal courts.

C. A. Wright, A. Miller and M. K. Kane, Federal Practice and Procedure (West 1978 and annual updates): Also a comprehensive, multi-volume treatise with chapters devoted to federal appellate practice.

Chris Goelz, Meredith Watts and Cole Benson, Ninth Circuit Civil Appellate Practice (Rutter Group 1995 and annual updates)

Mayer Brown, LLP, P. Lacovara, ed., Federal Appellate Practice (BNA 2008)

M. Tigar and J. Tigar, Federal Appeals: Jurisdiction and Practice, 3d ed. (West 1999 & pocket part updates).

R. Aldisert, Winning on Appeal: Better Briefs and Oral Argument, 2d ed. (NITA 2003): A classic book written by a Senior Judge of the Third Circuit with tips on appellate brief writing and argument.

Ulrich, Paul G., Federal Appellate Practice: Ninth Circuit (West 2d ed.)

Hertz, Randy and Liebman, James, Federal Habeas Corpus Practice and Procedure (Lexis Nexis 6th ed. 2011)

## IV.  <u>ARTICLES</u>

Appellate Practice Tips from Ninth Circuit Judges –

(Practice Tips From Judges Hug, Rawlinson, and Bybee)
Nevada Lawyer Magazine https://www.nvbar.org/wp-content/uploads/NevLawyer_Oct_2012_Appellate_Tips-1.pdf

"Keep the Briefs Brief, Literary Justices Advise," by Adam Liptak, New York Times, May 21, 2011 https://www.nytimes.com/2011/05/21/us/politics/21court.html

Kozinski, Alex, The Wrong Stuff, 1992 Brigham Young University Law Review 325

Ninth Circuit Judge Richard Clifton's Practice Pointers and Other Tips on Brief Writing and Oral Arguments https://www.recordonappeal.com/record-on-appeal/2013/04/ninth-circuit-judge-richard-cliftons-practice-pointers-and-other-tips-on-brief-writing-and-oral-argu.html

Pregerson, Harry & Painter-Thorne, Suzianne D., The Seven Virtues of Appellate Brief Writing: An Update from the Bench, 38 Sw. L. Rev. 221 (2008).

Pregerson, Harry, The Seven Sins of Appellate Brief Writing and Other Transgression, 34 University of California Los Angeles Law Review 431 (1986)

## V.    LIVE ASSISTANCE

**A.    SUBSTANTIVE MOTIONS AND EMERGENCY MATTERS** For questions that cannot be answered by consulting the rules, contact the Ninth Circuit's Motion Unit and ask for the duty attorney. The telephone number is 415-355-8020.  For questions involving emergency matters, you also have the option of sending an e-mail to emergency@ca9.uscourts.gov

**B.    PROCEDURAL MATTERS AND GENERAL QUESTIONS** If your question or problem is not resolved by

consulting the rules, contact the Clerk's Office at
questions@ca9.uscourts.gov or call 415-355-8000.

**C.    APPELLATE LAWYER REPRESENTATIVES'
MENTORING PROGRAM** This program offers general
assistance regarding federal appellate practice, as well as
special focus on two substantive areas of practice –
immigration law and habeas corpus petitions. Mentors are
volunteers who have experience in immigration, habeas
corpus, and/or appellate practice in general.

This program is limited to counseled cases. Interested
lawyers should contact the Court at
mentoring@ca9.uscourts.gov.

## VI.    SPECIAL RESOURCES FOR CRIMINAL AND HABEAS CORPUS APPEALS:

Generally, most Federal Public Defender offices take questions
from criminal defense attorneys appointed pursuant to the Criminal
Justice Act. Some Federal Public Defender offices also handle habeas
corpus appeals, and may be available to answer questions from counsel
appointed in those cases. Try calling the office and asking for the
appellate duty attorney. If the office lacks an appellate unit, ask for the
general duty attorney.