UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION, | Case No.: 21MD2992-GPC(MSB) **ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION** **[REDACTED – ORIGINAL FILED UNDER SEAL]** **[Dkt. No. 503.]** |
|---|---|

Before the Court is Defendant's motion for reconsideration of the Court's prior order denying in part Defendant's motion for a protective order precluding the deposition of its two top executives, Brian Moynihan ("Mr. Moynihan"), Chief Executive Officer ("CEO"), and Thomas Montag ("Mr. Montag"), former Chief Operating Officer ("COO") and former President of Global Banking and Markets. (Dkt. No. 503.) Alternatively, BANA asks the Court to certify its order for interlocutory appeal. (*Id.*) Class Plaintiffs filed an opposition, (Dkt. No. 526), and Defendant replied, (Dkt. No. 544). Based on the reasoning below, the Court DENIES Defendant's motion for reconsideration, and also DENIES its alternative motion to certify the order for interlocutory appeal.

/ / /

/ / /

1

**Procedural Background**

This multidistrict litigation ("MDL") arises from numerous class and individual actions brought against Defendant Bank of America, N.A. ("BANA") over its administration of the electronic benefits payment system for California's Employment Development Department ("EDD") during the COVID-19 pandemic. EDD, the administrator of unemployment benefits in California, entered into an exclusive contract with BANA, to distribute those benefits through bank-issued and bank-administered prepaid debit cards which are linked to individual bank depository accounts. (Dkt. No. 406, Third Amended Master Consolidated Complaint ("TAMCC") ¶¶ 1, 2, 39.)

Due to the unprecedented and significant increase in applications and eligibility for unemployment benefits during the COVID-19 pandemic, these bank-issued and bank-administered prepaid debit cards were subject to rampant third-party fraud and tens of millions of dollars have been stolen from these bank accounts. (*Id.* ¶¶ 75-78.) According to Class Plaintiffs, in order to combat the fraud, on September 28, 2020, BANA implemented a Claim Fraud Filter ("CFF") to automatically deny error claims, freeze, and/or block EDD prepaid accounts without adequate investigation. (*Id.* ¶¶ 89-96.) In addition, they claim that BANA intentionally made it difficult for cardholders to report unauthorized transactions by understaffing its call centers. (*Id.* ¶¶ 87-88.) As such, Class Plaintiffs seek punitive damages for their due process, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing causes of action.

Since January 2024, the parties have been engaged in protracted disputes as to discovery requests propounded on Mr. Moynihan and Mr. Montag. Initially, the dispute concerned discovery of Mr. Moynihan and Mr. Montag's electronically stored information ("ESI"), and more recently the deposition notices of Mr. Moynihan and Mr. Montag. (*See* Dkt. Nos. 209, 212, 214, 215, 268, 278, 287, 292, 298, 387, 389, 400, 437, 453, 465, 472, 488.)

According to Class Plaintiffs, Mr. Moynihan and Mr. Montag were personally involved in critical decisions and communications concerning approval and

implementation of the CFF and the understaffing of its call centers, and as such, their knowledge, motive and intent in adopting these policies are relevant to support punitive damages. (Dkt. No. 465 at 5.[1]) BANA seeks to preclude the depositions of Mr. Moynihan and Mr. Montag under the apex deposition doctrine. This issue was first addressed on December 23, 2024 when Magistrate Judge Berg held a discovery conference, (Dkt. No. 400), and issued a tentative ruling granting BANA's request for a protective order because Class Plaintiffs had not exhausted efforts to take the discovery through less burdensome means by deposing individuals involved in the development, approval, and implementation of the CFF and directed Class Plaintiffs to take further depositions of witnesses involved in the development, approval and implementation of the CFF before he would reconsider Class Plaintiffs' request to depose Mr. Moynihan and Mr. Montag. (Dkt. No. 454, Riffee Decl. ¶ 25.) The parties agreed to the tentative ruling. (*Id.*)

In response to Magistrate Judge Berg's ruling, Class Plaintiffs deposed the following four mid-level executives who were involved in the "initial development, implementation, and /or approval of the Claims Fraud Filter", (Dkt. No. 468-7, Riffee Decl., Ex. 7, BANA's Interrog. Resp. No. 11 at 5): (1) Paul Simpson, Managing Director of Global Operations; (2) William Fox, Global Head of Global Financial Crimes ("GFC"), the group primarily responsible for the development of the fraud filter; (3) Jennifer Ehresman, Head of Consumer Client Protection, the group responsible for overseeing claims; and (4) Melissa Ramirez (formerly Gargagliano), a business banking operations executive in Commercial Card Fulfillment, Service, & Operations. (Dkt. No. 453 at 9; Dkt. No. 454, Riffee Decl. ¶ 26; Dkt. No. 465 at 7-8; Dkt. No. 455, Ruiz Decl. ¶¶ 18, 19, 20, 21.) During this time, Class Plaintiffs also deposed Faiz Ahmad, Head of Global Transaction Services ("GTS"), responsible for the prepaid card business, and who

---

[1] Page numbers are based on the CM/ECF pagination.

reported to Mr. Montag; and Anne Holt, Director of GFC. (Dkt. No. 453 at 9; Dkt. No. 454, Riffee Decl. ¶ 26; Dkt. No. 468-7, Riffee Decl., Ex. 7, BANA's Interrog. Resp. No. 11 at 5.)

After completing these depositions, Class Plaintiffs, on March 7, 2025, indicated they still sought to depose Mr. Moynihan and Mr. Montag and BANA renewed its request for a protective order barring their depositions. (Dkt. No. 454, Riffee Decl. ¶ 28.) The parties submitted additional informal briefing and Magistrate Judge Berg held another informal discovery conference on March 12, 2025, (Dkt. No. 417), and issued a tentative ruling allowing Class Plaintiffs to depose Mr. Moynihan for two hours and Mr. Montag for one hours with both depositions limited to the issue of punitive damages. (Dkt. No. 454, Riffee Decl. ¶ 30.) Later that day, Class Plaintiffs rejected the tentative ruling and requested formal briefing with this Court. (*Id.* ¶ 31.) After full briefing on BANA's motion for protective order, the Court granted in part and denied in part Defendant's motion for protective order ruling that Class Plaintiffs may depose Mr. Moynihan for no more than four hours and may depose Mr. Montag for no more than two hours solely on the issue of punitive damages. (Dkt. No. 488 at 19.)

## Discussion

### A.  Legal Standard on Motion for Reconsideration

A motion for reconsideration is an extraordinary remedy and is applicable when "the district court [1] is presented with newly discovered evidence, [2] committed clear error, or [3] if there is an intervening change in the controlling law." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). The Court has discretion in granting or denying a motion for reconsideration. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991). A motion for reconsideration should not be granted absent highly unusual circumstances. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

"Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cty.*

*Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). To find "clear error," the error must be "manifestly unjust." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). "A manifest injustice is defined as an error in the trial court that is direct, obvious, and observable." *Brooks v. Tarsadia Hotels*, No. 3:18-cv-2290-GPC-KSC, 2020 WL 601643, at *5 (S.D. Cal. Feb. 7, 2020) (internal quotations marks omitted) (quoting *Smith v. City of Quincy*, No. CV-09-328-RMP, 2011 WL 1303293, at *1 (E.D. Wash. Apr. 5, 2011) (quoting Black's Law Dictionary, 8th Ed., 2009)).

**B.    Analysis**

BANA argues that the Court's order included multiple clear errors of law and fact. (*See* Dkt. No. 503.) First, it contends that the Court applied the wrong standard by placing the burden on BANA to show why the depositions should not go forward by requiring it to demonstrate prejudice. (Dkt. No. 503-1 at 8-11.) Class Plaintiffs argue that the Court considered these arguments and BANA's disagreement with the Court's application of law placing the burden on the moving part is not a basis for reconsideration. (Dkt. No. 526 at 11-16.)

In the prior order, the Court concluded that BANA, the moving party seeking a protective order, had the initial burden to demonstrate specific prejudice or harm if the protective order is not granted, and because it had not, it weighed against Defendant's motion. (Dkt. No. 488 at 9.) The Court recognized that the Ninth Circuit has not ruled on any aspect of the apex deposition doctrine that has developed among district courts and the rulings among district courts vary on who bears the initial burden on a Rule 26(c)(1) motion for protective order seeking to preclude an apex deposition. (*See* Dkt. No. 488 at 6.) The Court carefully considered precedent addressing the burdens in seeking a protective order under Rule 26(c)(1), the judicially created apex doctrine, and relevant Ninth Circuit precedent where the court addressed the depositions of high-level executives of a newspaper and an airline company. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (publisher of newspaper); *Anderson v. Air W., Inc.*, 542

F.2d 1090, 1092-93 (9th Cir. 1976) (sole shareholder of airline).  Because the Court's ruling is guided and supported by caselaw, it is not "left with the definite and firm conviction that a mistake has been committed." *See Smith*, 727 F.3d at 955.  BANA merely disagrees with the Court's decision to rely on cases that have applied the initial burden on the party seeking a protective order precluding depositions under Rule 26(c)(1), and such a challenge is not a basis for reconsideration.[2]  *See Garcia v. Bitter*, 195 F. Supp. 3d 1131, 1133 (E.D. Cal. 2016) (Rule 59(e)'s purpose "is not to give an unhappy litigant one additional chance to sway the judge."); *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (affirming denial of Rule 59(e) motion which "presented no arguments that had not already been raised in opposition to summary judgment").  Recognizing the unsettled law on this issue, the Court additionally determined that even if the burden was switched, Class Plaintiffs had met their burden showing Mr. Moynihan and Mr. Montag had "unique first-hand, non-repetitive knowledge of the facts at issue in the case." (*Id.* at 9 n.5.)  Therefore, even if the Court erred by placing the initial burden on BANA, it nonetheless considered BANA's argument.  Furthermore, even though BANA failed to articulate any prejudice or harm, the Court continued to address whether Class Plaintiffs had shown that the deponents have "unique first-hand, non-repetitive knowledge of the facts at issue in the case." (Dkt. No. 488 at 9-18.)  BANA's first challenge is not a basis for the Court to reconsider its ruling.

Second, BANA argues that even if the Court invoked the correct standard on apex depositions, it's interpretation and application of the apex doctrine was clear error arguing it applied either a low burden on Plaintiffs to show or too high a burden on Defendant to refute that its top two executives possessed the requisite knowledge.  (Dkt.

---

[2] Defendant's additional argument that prejudice or harm is inherent when invoking the apex deposition doctrine is not soundly supported.  (Dkt. No. 544 at 8 (citing *Greer v. Cnty. of San Diego*, Case No.: 19-cv-378-JO-DEB, 2022 WL 2134601, at *1 (S.D. Cal. June 14, 2022).)  *Greer* is not applicable because it addressed the apex deposition of a head of a government agency which the Ninth Circuit has stated "[is] not normally subject to deposition." *Id.* (quoting *Green v. Baca*, 226 F.R.D. 624, 648 (C.D. Cal. 2005) (quoting *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979)).

No. 503-1 at 11-13.) Class Plaintiffs argue that a district court taking a slightly different approach based on the facts and circumstances does not justify reconsideration. (Dkt. No. 526 at 16.) The application of the apex deposition doctrine was raised in the underlying motion and disputed. Because the Court's ruling that the "record need only be sufficient to create an inference that the apex deponent has 'unique first-hand, non-repetitive knowledge'" is supported by case law, BANA has not shown the Court committed clear error. (*See* Dkt. No. 488 at 10-11.) Thus, the Court concludes BANA's argument is not a basis for reconsideration because it is merely rearguing its contentions below and disagrees with the Court's application of the legal standard to support the apex deposition doctrine.

Third, BANA argues that the Court did not address whether Class Plaintiffs satisfied the second prong of the apex deposition doctrine[3] requiring a showing that less burdensome means were exhausted before seeking the apex depositions. (Dkt. No. 503-1 at 12-13.) Class Plaintiffs contend that BANA has expressly waived such an objection and also claim that they deposed a total of 16 fact witnesses and 9 of the 13 individuals identified in Interrogatory No. 11 satisfying the less burdensome means factor. (Dkt. No. 526 at 17-18.) In the prior order, the Court concluded that the parties did not dispute whether Plaintiff had exhausted less intrusive discovery methods and relied on the parties' conduct in the underlying discovery with Magistrate Judge Berg. (*See* Dkt. No. 488 at 9 n.4.)

On December 23, 2024, the parties agreed to Magistrate Judge Berg's tentative order granting BANA's request for a protective order because Class Plaintiffs had not exhausted efforts to take the discovery through less burdensome means by deposing individuals involved in the development, approval, and implementation of the CFF and

---

[3] "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citations omitted).

directed Class Plaintiffs to take further depositions of witnesses involved in the development, approval and implementation of the CFF before he would reconsider Plaintiffs' request to depose Mr. Moynihan and Mr. Montag. (Dkt. No. 454, Riffee Decl. ¶ 25.) In response to Plaintiff's First Set of Interrogatory No. 11, BANA identified individuals "who were primarily involved in the initial development, implementation, and/or approval of the Claims Fraud Filter [to] include: Faiz Ahmad, Jennifer Boussuge, Christine Channels, John Denning, Jennifer Ehresman, William Fox, Bradley Garfield, Melissa Gargagliano, Ruchira Ghosh, Anne Holt, John Lawlor, Michael Letson, and Paul Simpson." (Dkt. No. 468-7, Riffee Decl., Ex. 7 at 5 (UNDER SEAL).) According to Class Plaintiffs, as part of the agreement to depose four of the mid-level executives, the Bank represented that it "would not object to the depositions of Mr. Moynihan or Mr. Montag on the basis that Plaintiffs failed to take the deposition of other individuals identified in response to Interrogatory No. 11." (Dkt. No. 526 at 17 (citing (Dkt. No. 454-4, Riffee Decl., Ex. 4).) Because the parties agreed to Magistrate Judge Berg's tentative order, it appeared that the second factor was not at issue.

Nonetheless, BANA argues that Class Plaintiffs failed to ask certain key, relevant questions to certain mid-level employees, and failed to depose other mid-level employees. However, the record revealed that deposing additional mid-level employees may be fruitless because the key mid-level executives that were deposed did not recall who authorized implementation of the CFF or what was discussed at different meetings. (*See* Dkt. No. 488 at 15.) Specifically, BANA argues that Class Plaintiffs made no effort to depose Cathy Bessant, members of the MTM, and Jose Firpi[4]; however, these individuals were not named as been involved in the development, implementation and/or approval of the CFF in response to Interrogatory No. 11. In reply, BANA argues that Class Plaintiffs knew of Ms. Bessant and MTM members' existence for years as they

---

[4] The Court did not rely on Jose Firpi's emails in its order.

appeared in a detailed organizational chart and their ESIs were produced early on in discovery. (Dkt. No. 544 at 9-10.) It is not clear to the Court whether Class Plaintiffs were aware of the extent of Ms. Bessant and MTM members' involvement in the development, implementation and/or approval of the CFF to warrant a deposition notice. Based on the Court's knowledge of the record, the organizational chart that was produced spanned pages and did not identify who was involved in the implementation and approval of the CFF. Further, it is not clear whether the ESI produced would have alerted Class Plaintiffs of the importance of deposing Ms. Bessant and MTM members. Finally, if Ms. Bessant ███████████████████████████████████████, it is not clear why she was not named in BANA's response to Interrogatory No. 11. Therefore, even if the Court ignored Class Plaintiff's failure to exhaust in its prior order, the Court concludes that Class Plaintiffs exhausted less burdensome means by deposing mid-level executives as ordered by Magistrate Judge Berg. Defendant has not shown otherwise.

Finally, BANA argues that on the facts, the Court misinterpreted and/or ignored key relevant facts and testimony. (Dkt. No. 503-1 at 14-19.) Class Plaintiff disagrees relying on the analysis in the Court's order. (Dkt. No. 526 at 19-25.)

For instance, BANA argues that because the Court's order relies on discussions or meetings that BANA employees had with Mr. Moynihan or Mr. Montag, it necessarily means that their testimony would be neither unique nor non-repetitive. (Dkt. No. 503-1 at 14.) However, testimonies from Mr. Moynihan and Mr. Montag would be unique and non-repetitive if mid-level BANA employees who were deposed had no recollection of the meetings, no recollection of what was discussed at the meetings and no recollection of who authorized the implementation of the CFF. (Dkt. No. 488 at 15 (citing Dkt. No. 465 at 28).)

BANA also claims that the Court erred in concluding that Mr. Moynihan ███████████████████████████████████████████████████████████████████████████████████. (Dkt. No. 488 at 12.)

1  The Court acknowledges that it overlooked evidence in BANA's reply showing that Mr.
2  Moynihan ███████████████████████████████████████████████████████████ .
3  (*See* Dkt. No. 471 at 6-7 & n.2.)  Nonethless, the communications on September 28, 2020
4  still suggests that Mr. Moynihan may have been involved in the approval of the CFF.
5  (*See* Dkt. No. 488 at 13-14.)  A chat conversation between ███████████████████
6  ███████████████████████████████████████████████████████████████████████
7  ███████████████████████████████████████████████████████████████████████
8  ███████████████████████████████████████████████████████████████████████
9  ████████████████  (*Id.* at 13.)  This chat creates a reasonable inference of Mr. Moynihan's
10 involvement in the approval of the CFF.  On top of that, on the same evening, ████
11 ███████████████████████████████████████████████████████████████████████
12 ███████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████
14 ██████████████████████████████████████████████████████████████████████ .  (*Id.*
15 at 14.)  While the Court noted, in the prior order, that there is no evidence about the
16 relationship between Mr. Moynihan and the MTM and how decisions were made
17 amongst them and directed to the mid-level executives, and whether a reference to one is
18 synonymous to the other, MTM members include Mr. Moynihan and his "direct reports",
19 (Dkt. No. 469-51, Danitz Decl., Ex. 51, Fox Depo. at 22:6-10), suggesting Mr. Moynihan
20 directs the conduct of the MTM members.  Further, BANA employees use of
21 "MTM/BTM" in emails could suggest the relationship between Mr. Moynihan and the
22 MTM members is a close one, or one and the same.  (*See* Dkt. No. 469-5, Danitz Decl.,
23 Ex. 5; Dkt. No. 469-13, Danitz Decl., Ex 13 at 3.)  Therefore, any reference to MTM
24 could indicate a reference to Mr. Moynihan.  The communications of September 28, 2020
25 create an inference that Mr. Moynihan may have been involved in the decision to approve
26 the CFF.  The Court sees no clear error in interpreting the evidence presented.
27        As to the customer service call center issue, BANA argues that the Court erred
28 because there is no direct evidence that Mr. Moynihan and Mr. Montag had knowledge of

the alleged policy of understaffing its customer call center and long customer wait times or that they even directed the understaffing of the customer call centers. (Dkt. No. 503-1 at 18.) While there is no direct evidence, there is evidence that Mr. Moynihan ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Mr. Montag ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 488 at 16.) The Court concluded these decisions support an inference that Mr. Moynihan and Mr. Montag, when making these decisions, may have been aware and/or taken into consideration the long wait times with the customer call center, customer complaints about the long wait times, and whether their decisions endorsed this alleged understaffing policy to reduce fraud claims. (*Id.* at 16-17.) The Court sees no clear error in making that inference from the record.

Accordingly, BANA is merely relitigating the record below and disagrees with the Court's conclusion based on the evidence presented and has not shown that the Court clearly erred. *See e.g., Steiny and Co., Inc. v. Local Union 6, Intern. Broth. of Elec. Workers*, No. C–91–0155–DLJ, 1991 WL 516835, at * 3 (N.D. Cal. Dec. 19, 1991) (denying motion to reconsider where the party agued that court did not give the evidence sufficient weight as the court did not ignore or misinterpret any facts presented). Therefore, the Court DENIES BANA's motion for reconsideration.[5]

/ / /
/ / /
/ / /
/ / /

---

[5] In reply, BANA argues that if the Court allows the depositions of Mr. Moynihan and Mr. Montag to proceed, it asks that the length of the depositions be reduced to the time Magistrate Judge Berg initially proposed of two hours for Mr. Moynihan and one hour for Mr. Montag. (Dkt. No. 544 at 12 n.6.) Because this request is made for the first time in a reply, the Court declines to address it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) "[D]istrict court[s] need not consider arguments raised for the first time in a reply brief.") (citation omitted).

C. **Motion to Certify the Order for Interlocutory Appeal under 28 U.S.C. § 1292(b)**

Alternatively, BANA moves to certify the Court's order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Dkt. No. 503-1 at 19-24.) Class Plaintiffs oppose. (Dkt. No. 526 at 26-31.)

Under the final judgment rule, a court of appeal has jurisdiction over appeals from all final decisions of the district courts of the United States. 28 U.S.C. § 1291; *Couch v. Telescope*, 611 F.3d 629, 632 (9th Cir. 2010). "Thus, parties may appeal only from orders which end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Couch*, 611 F.3d at 632 (citing *Romoland Sch. Dist. v. Inland Empire Energy Ctr.*, 548 F.3d 738, 747 (9th Cir. 2008)). A narrow exception to the final judgment rule exists when the district court determines: (1) that there is a controlling question of law; (2) that there is substantial ground for difference of opinion as to that controlling question; and (3) that an immediate resolution of the question may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b)[6]; *see ICTSI Oregon, Inc. v. Int. Longshore and Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citing *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)).

"The decision to certify an issue for interlocutory appeal is discretionary . . . and the district court should apply the requirements strictly and certify for interlocutory appeal only when exceptional circumstances justify a departure from the well-established policy of postponing appellate review until after a final judgment." *Stiner v. Brookdale*

---

[6] When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such order.

28 U.S.C. § 1292(b).

*Sr. Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal. 2019) (internal quotation marks and citations omitted). The party seeking the interlocutory appeal bears the burden of demonstrating that the certification requirements. *Couch*, 611 F.3d at 633.

### 1. Controlling Questions of Law

BANA identifies the following controlling questions of law for interlocutory appeal: "(1) which party bears the burden when a party seeks an apex deposition; (2) whether an apex deposition requires that the apex deponent possess uniquely relevant information; (3) whether seeking punitive damages under California law suffices for an apex deposition; and (4) whether the party seeking to preclude the deposition must show specific prejudice to the witness." (Dkt. No. 503-1 at 20.) Class Plaintiffs argue that these questions involve mixed questions of law and fact and not controlling questions of law. (Dkt. No. 526 at 27.)

On the first factor, the controlling question must be one of law, not fact, and "its resolution must materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. This means that questions involving issues collateral to the basic issues of the case are not "controlling," as those words are used in the statute. *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959). Even if BANA raises questions of law, the questions raised regarding taking the apex depositions for purposes of punitive damages are collateral to the merits of this case which concern violations of the Electronic Funds Transfer Act ("EFTA") and related violations of state law. Even BANA acknowledges the ancillary nature of this dispute. (*See* Dkt. No. 503-1 at 24 (in support of its request for a stay pending appellate review BANA argues "Plaintiffs seek punitive damages for common law claims . . . that are unlikely to survive summary judgment, and are ancillary to their primary cause of action, for violation of EFTA, for which punitive damages are not available.").) Therefore, BANA has not shown it is raising controlling questions of law on interlocutory appeal. *See Martin v. Am. Int'l Knitter Corp.*, Civ. A. No. 91–0027, 1992 WL 108832, at *3 (N. Mar. I. Sup. Ct. Feb. 3, 1992) (question of whether punitive damages allowable under federal statute

is not a controlling question of law but ancillary to the main issues for purposes of motion for interlocutory appeal).

### 2. Materially Advance the Termination of the Litigation

BANA contends that an appeal or a reversal of the court's order may advance the termination of the litigation as it would allow the parties to focus on the relevant facts and law rather than Plaintiffs' attempt to use executive discovery to push settlement. (Dkt. No. 503-1 at 20.) In opposition, Class Plaintiffs argue that an interlocutory appeal will delay the resolution of this more than four and a half year old case where discovery is already complete. (Dkt. No. 526 at 27.)

Material advancement is closely linked to the question of whether an issue of law is "controlling," because the district court should consider the effect of a reversal on the management of the case. *In Re Cement Antitrust Litig.*, 673 F.2d at 1026; *Ambrosio v. Cogent Commc'ns, Inc.*, No. 14-cv-02182-RS, 2016 WL 777775, at *3 (N.D. Cal. Feb. 29, 2016) (An appeal must be "likely to materially speed the termination of the litigation."). However, an interlocutory appeal will not "materially advance the ultimate determination of the litigation" where certification "might well have the effect of delaying the resolution of a litigation." *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988). Material advancement may be found where reversal on interlocutory appeal may remove a defendant or claims in the litigation. *Reese,* 643 F.3d at 688. "When litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-cv-1166-IEG, 2010 WL 743750, at *4 (S.D. Cal. Feb. 25, 2010) (quoting *White v. Nix*, 43 F.3d 374, 378–79 (8th Cir. 1994)); *see Wang v. Zymergen Inc.*, 759 F. Supp. 3d 1002, 1011 (N.D. Cal. 2024) (materially advance prong does not need to result in a final, dispositive order but looks at whether an appeal would minimize the total burdens of litigation on the parties and the court accelerating or at least simplifying trial court proceedings).

Here, a decision by the Ninth Circuit will not materially advance the termination of the case. The depositions of Mr. Moynihan and Mr. Montag are for the limited purpose of supporting Plaintiffs' claim for punitive damages on their due process, breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing causes of action. If the Ninth Circuit were to reverse the Court's ruling, the case will still proceed with or without these apex depositions. Instead, allowing an appeal of the Court's ruling will only delay resolution of the case. Therefore, BANA has not shown that precluding these depositions will materially advance the termination of the case.

Because Defendant have failed to show there is a controlling question of law and that an appeal may materially advance the ultimate termination of the case, the Court need not address whether there are substantial grounds for difference of opinions. *See Couch*, 611 F.3d at 633 ("Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met."); *McFall v. Perrigo Co.,* Case No. 2:20-cv-07752-FLA (MRWx), 2021 WL 3185083, at *3 (C.D. Cal. June 15, 2021) ("As Perrigo fails to establish a controlling question of law, . . . the court need not address the parties' remaining arguments regarding the second and third elements."). Because BANA has failed to demonstrate the factors to support certification, the Court DENIES Defendants' motion to certify its order for interlocutory appeal.

### Conclusion

Based on the reasoning above, the Court DENIES BANA's motion for reconsideration and DENIES its alternative motion to certify its order for interlocutory appeal. The hearing date set for September 16, 2025 shall be **vacated.**

IT IS SO ORDERED.

Dated: September 10, 2025

Hon. Gonzalo P. Curiel
United States District Judge