JAMES W. MCGARRY (*pro hac vice*)
*JMcGarry@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel. +1 617 570 1000
Fax: +1 617 523 1231

SABRINA M. ROSE-SMITH (*pro hac vice*)
*SRoseSmith@goodwinlaw.com*
MATTHEW L. RIFFEE (*pro hac vice*)
*MRiffee@goodwinlaw.com*
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

Attorneys for Defendant
**BANK OF AMERICA, N.A.**

[*ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK*]

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO DIVISION

| | |
|---|---|
| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION | Case No. 21-MD-02992-GPC-MSB |
| | **DEFENDANT BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| | Date:      April 17, 2026<br>Time:      1:30 p.m.<br>Ctrm:      12A – 12th Floor<br>Judge:     Hon. Gonzalo P. Curiel |
| | ORAL ARGUMENT REQUESTED |
| | FILED PROVISIONALLY UNDER SEAL PURSUANT TO STIPULATED PROTECTIVE ORDER |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 4

Factual History ................................................................................................ 4

    A.    EDD Benefits and Pandemic Unemployment Assistance .......................... 4

    B.    The Pandemic Benefits Scams ................................................................. 5

    C.    The Claim Fraud Filter ............................................................................. 7

    D.    The Account-Freeze Response .................................................................. 9

    E.    The Call-Center Onslaught ..................................................................... 10

    F.    Magnetic Stripes and EMV Chips .......................................................... 11

Procedural History ........................................................................................ 11

    A.    The *Yick* Complaint and MDL Centralization ....................................... 11

    B.    The Regulatory Settlement ..................................................................... 11

    C.    The Motion to Dismiss .......................................................................... 12

    D.    The Third Amended Consolidated Complaint and Certified Classes ........ 13

STANDARD OF LAW .................................................................................... 15

ARGUMENT .................................................................................................. 15

I.    Summary Judgment Is Warranted On EFTA for Lack of Damages. ............... 15

    A.    The Principal Amount Is Not Actual Damages. ...................................... 16

    B.    Plaintiffs' Damages Model Cannot Prove Actual Class Damages. ............ 17

    C.    Plaintiffs Cannot Prove The CFF Caused Recoverable Damages. ............ 21

    D.    Plaintiffs Have No Evidence To Support Treble Damages. ...................... 22

        1.    There are no actual damages to treble. .................................................... 22

        2.    Plaintiffs cannot satisfy EFTA's requirements for trebling. ................... 24

II.    The CCPA Imposed No Obligation to Issue EMV Chip Cards. ..................... 26

III.    The UCL Claim Fails as a Matter of Law. .................................................... 30

IV.    Plaintiffs Cannot Recover Paid Contract Damages as Negligence Claims. ..31

Goodwin Procter LLP
ATTORNEYS AT LAW

i

V.    Plaintiffs Abandoned the Negligent Hiring and Contract Claims. ................... 35

VI.    There Is No Evidence Any Implied Duty Was Breached or of Bad Faith ..... 35

VII.    No Fiduciary Duty Existed as a Matter of Law and None Was Breached. ... 37

VIII.    No "Due Process of Law" Was Owed, But Ample Process Was Offered. 39

   A.    BANA Was Not A State Actor. ................................................................. 39

   B.    EDD Cardholders Were Not Denied Procedural Protections. ................... 41

IX.    Plaintiffs Cannot Obtain Punitives Under California Civil Code § 3294. ...... 44

   A.    Plaintiffs Must Show Oppression, Fraud, Or Malice by Officers,
         Directors, or Managing Agents by Clear and Convincing Evidence. ........ 44

   B.    Plaintiffs Cannot Obtain Punitive Damages. ............................................. 46

X.    Plaintiffs Cannot Obtain Punitives on Their Federal Due Process Claim. ...... 49

CONCLUSION ....................................................................................................... 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbit v. ING USA Annuity & Life Ins. Co.*,
2016 WL 4542204 (S.D. Cal. Aug. 30, 2016) ................................................... 27

*Ace Am. Ins. Co. v. Accellion, Inc.*,
2022 WL 2341155 (N.D. Cal. Apr. 11, 2022) .................................................. 32

*Across Am., Inc. Ins. Servs. v. Bank of Am., N.A.*,
2018 WL 5906674 (C.D. Cal. Sept. 24, 2018) ................................................. 33

*Aguilar v. Dixon*,
1995 WL 319621 (N.D. Ill. May 25, 1995) ...................................................... 49

*Ahussain v. GNC Franchising, LLC*,
2009 WL 10672353 (C.D. Cal. Mar. 18, 2009) ............................................... 27

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) ...................................................................... 30

*Altheide v. Klenczar*,
2019 WL 3413845 (D. Nev. July 29, 2019) ..................................................... 44

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ............................................................................................ 40

*Bamberger v. Marsh USA, Inc.*,
2015 WL 11257577 (C.D. Cal. Mar. 11, 2015) ............................................... 34

*Bartashnik v. Bridgeview Bancorp, Inc.*,
2005 WL 3470315 (N.D. Ill. Dec. 15, 2005) ................................................... 21

*Bazan v. Wal-Mart Assocs., Inc.*,
2025 WL 2231034 (C.D. Cal. July 21, 2025) .................................................. 45

*Bd. of Govs. of Fed. Rsrv. Sys. v. DLG Fin. Corp.*,
29 F.3d 993 (5th Cir. 1994) ........................................................................ 41, 43

*Beatty v. PHH Mortg. Corp.*,
2021 WL 6116957 (N.D. Cal. Dec. 27, 2021) ............................................ 30, 36

*Belue v. Keefe Commissary Grp.*,
  LLC, 2021 WL 1197749 (D. Idaho Mar. 29, 2021) ................................... 39, 40

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001) ................................................................................. 39

*Caldwell v. OS Rest. Servs., LLC*,
  2021 WL 3264306 (C.D. Cal. May 13, 2021) .......................................... 24

*Chamberlin v. Hartog, Baer & Hand, APC*,
  2022 WL 1502587 (N.D. Cal. May 12, 2022) .......................................... 46

*Clark v. Experian Info., Inc.*,
  233 F.R.D. 508 (N.D. Ill. 2005) ............................................................... 17

*Clark v. Experian Info. Sols., Inc.*,
  2006 WL 2224049 (N.D. Ill. Aug. 2, 2006) ........................................ 21, 24

*Coll. Hops. Inc. v. Super. Ct.*,
  8 Cal. 4th 704 (1994) ............................................................................... 45

*Collins v. Home Depot USA, Inc.*,
  2023 WL 9019037 (C.D. Cal. Oct. 30, 2023) .......................................... 36

*Conde v. Sensa*,
  2018 WL 4297056 (S.D. Cal. Sept. 10, 2018) ......................................... 30

*Copesky v. Super. Ct.*,
  229 Cal. App. 3d 678 (1991) .................................................................... 38

*Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*,
  2010 WL 2132378 (C.D. Cal. May 24, 2010) .......................................... 18

*Dang v. Cross*,
  422 F.3d 800 (9th Cir. 2005) ................................................................... 50

*Deckers Outdoor Corp. v. It's Friday, Inc.*,
  2024 WL 5481221 (S.D.N.Y. Oct. 31, 2024) ........................................... 22

*Diaz v. Nationstar Mortg. LLC*,
  2024 WL 4800703 (C.D. Cal. Sept. 17, 2024) ......................................... 30

*FDIC v. Mallen*,
  486 U.S. 230 (1988) ............................................................................ 41, 43

Goodwin Procter LLP
ATTORNEYS AT LAW

*In re First All. Mortg. Co.*
    471 F.3d 977 (9th Cir. 2006) ................................................................. 30

*Gardiner v. Walmart Inc.*,
    2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ...................................... 28

*Gerlinger v. Amazon.Com, Inc.*,
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ................................................ 34

*Gershfeld v. Teamviewer US, Inc.*,
    2021 WL 3046775 (C.D. Cal. June 24, 2021) ..................................... 28

*Gilmore v. Garner*,
    157 N.C. App. 664 (2003) ................................................................... 37

*Graham-Sult v. Clainos*,
    2015 WL 13655771 (N.D. Cal. Oct. 6, 2015) ..................................... 39

*Grasshopper House, LLC v. Clean & Sober Media, LLC*,
    2021 WL 3702243 (9th Cir. Aug. 20, 2021) ....................................... 20

*Guillen v. Johnson*,
    2024 WL 4903295 (9th Cir. Nov. 27, 2024) ....................................... 33

*Haggarty v. Wells Fargo Bank, N.A.*,
    2012 WL 4742815 (N.D. Cal. Oct. 3, 2012) ....................................... 36

*Hall v. Marriott Int'l, Inc.*,
    2023 WL 9692466 (S.D. Cal. June 6, 2023) ....................................... 27

*Johnson v. Canyon Cnty.*,
    2020 WL 5077731 (D. Idaho Aug. 27, 2020) ..................................... 24

*Johnson v. U.S. Bank N.A.*,
    2012 WL 12995323 (W.D. Wis. Dec. 17, 2012) ...................... 17, 18, 45

*Landmark Dev. Corp. v. Chambers Corp.*,
    752 F.2d 369 (9th Cir. 1985) .............................................................. 35

*Lawrence v. Bank of Am.*,
    163 Cal. App. 3d 431 (1985) .............................................................. 37

*U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan*,
    343 F. App'x 279 (9th Cir. 2009) ....................................................... 26

Goodwin Procter LLP
Attorneys at Law

*Maag v. U.S. Bank, N.A.*,
   2021 WL 6018361 (S.D. Cal. Apr. 15, 2021) ............................................... 28, 29

*In re Margery Kekauoha-Alisa*,
   2008 WL 4181347 (Bankr. D. Haw. Sept. 3, 2008) ......................................... 24

*Marino v. Ocwen Loan Serv., LLC*,
   978 F.3d 669 (9th Cir. 2020) ........................................................................... 26

*Masterson Mktg., Inc. v. KSL Recreation Corp.*,
   2007 WL 935728 (S.D. Cal. Mar. 9, 2007) ...................................................... 34

*Nero v. Uphold HQ Inc.*,
   688 F. Supp. 3d 134 (S.D.N.Y. 2023) ............................................................. 21

*Newman v. JP Morgan Chase Bank, N.A.*,
   2024 WL 3227094 (S.D.N.Y. June 27, 2024) ............................................. 17, 18

*Opperman v. Path, Inc.*,
   2016 WL 3844326 (N.D. Cal. July 15, 2016) .................................................. 20

*Orshan v. Apple Inc.*,
   2024 WL 4353034 (N.D. Cal. Sept. 30, 2024) ................................................. 20

*In re Pac. Fertility Ctr. Litig.*,
   2021 WL 2476799 (N.D. Cal. June 17, 2021) .............................................. 47, 48

*Peterson Dev. Co. v. Torrey Pines Bank*,
   233 Cal. App. 3d 103 (1991) ........................................................................... 38

*Potts v. Ford Motor Co.*,
   2021 WL 2014796 (S.D. Cal. May 20, 2021) .................................................. 30

*Razuki v. Caliber Home Loans, Inc.*,
   2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ................................................. 30

*In re Rivera*,
   345 B.R. 229 (Bankr. E.D. Cal. 2005) ............................................................ 50

*Robledo v. Bautista*,
   2023 WL 35026 (D. Ariz. Jan. 4, 2023) .......................................................... 41

*Rodriguez v. ACL Farms, Inc.*,
   2010 WL 4683743 (E.D. Wash. Nov. 12, 2010) .......................................... 22, 24

Goodwin Procter LLP
ATTORNEYS AT LAW

*Rodriguez v. Bank of the W.*,
  162 Cal. App. 4th 454 (2008) ................................................................ 32

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
  732 F. Supp. 2d 952 (N.D. Cal. 2010) .......................................... 35, 36

*Rowland v. Christian*,
  69 Cal. 2d 108 (1968) ............................................................................ 32

*In re San Francisco 49ers Data Breach Litig.*,
  2024 WL 3849336 (N.D. Cal. Aug. 15, 2024) .................................. 30

*Sandoval v. Mercedes-Benz USA, LLC*,
  2012 WL 12884684 (C.D. Cal. May 29, 2012) ................................. 35

*Schertzer v. Bank of Am., N.A.*,
  2025 WL 1447388 (S.D. Cal. May 20, 2025) ................................... 22

*Scotten v. First Horizon Home Loan Corp.*,
  2012 WL 3277104 (E.D. Cal. Aug. 9, 2012) .................................... 38

*Sheen v. Wells Fargo Bank, N.A.*,
  12 Cal. 5th 905 (2022) .................................................................... 31, 32

*Simi Mgmt. Corp. v. Bank of Am., N.A.*,
  930 F. Supp. 2d 1082 (N.D. Cal. 2013) ............................................ 37

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ............................................................... 31

*Spiegel v. Ryan*,
  946 F.2d 1435 (9th Cir. 1991) ...................................................... 41, 42

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ............................................................ 21

*Terpin v. AT&T Mobility LLC*,
  118 F.4th 1102 (9th Cir. 2024) .......................................................... 32

*United States v. Various Slot Machines*,
  658 F.2d 697 (9th Cir. 1981) ........................................................ 19, 20

*Van v. LLR, Inc.*,
  962 F.3d 1160 (9th Cir. 2020) ...................................................... 16, 17

Goodwin Procter LLP
ATTORNEYS AT LAW

*Vertus v. Citibank, N.A.*,
  2013 WL 12084490 (S.D. Fla. Apr. 16, 2013) .................................................... 26

*Waine-Golston v. Time Warner Ent.-Advance/New House P'ship*,
  2013 WL 1285535 (S.D. Cal. Mar. 27, 2013) .................................................... 15

*Wallis v. Super. Ct.*,
  160 Cal. App. 3d 1109 (1984) .................................................................... 37, 38

*Weinberg v. Whatcom Cnty.*,
  241 F.3d 746 (9th Cir. 2001) ............................................................................ 20

**Statutes**

15 U.S.C. § 1693f ...................................................................................... *passim*

15 U.S.C. § 1693m ............................................................................. 16, 21, 23

15 U.S.C. § 9021 ....................................................................................... 4, 5

31 U.S.C. § 3729 ......................................................................................... 26

31 U.S.C. §§ 5310-5330 ............................................................................... 7

Cal. Civ. Code § 1798.81.5 ..................................................................... 27, 28

Cal. Civ. Code § 1798.150 ........................................................ 26, 28, 29, 30

Cal. Civ. Code § 3294 .................................................................. 44, 45, 47, 48

**Other Authorities**

12 C.F.R. § 1005.11 ................................................................................. 8, 24

16 C.F.R. § 314.3 ........................................................................................ 33

16 C.F.R. § 314.4 ........................................................................................ 33

Fed. R. Civ. P. 56 ....................................................................................... 15

The COVID-19 pandemic had a dramatic impact on California's unemployment-insurance (UI) system and the prepaid debit-card program that the State contracted with Bank of America (BANA) to administer. Responding to record unemployment rates, federal Pandemic Unemployment Assistance (PUA) mandated unprecedented expansions in benefits eligibility while eliminating longstanding safeguards against fraud and abuse, ballooning the unemployment rolls for which the California Employment Development Department (EDD) was responsible. Immediately, California's unemployment benefits program became a target for fraudulent actors ranging from organized crime networks and international money launderers to petty thieves and opportunists. Criminals stole tens of billions of dollars from the State using ███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████. Even legitimate UI recipients took part in these scams, ████████████████ ████████████████████████████████████████████████████████

This multidistrict litigation (MDL) originated in a putative class complaint by alleged victims of the frauds, asserting that BANA had not done enough "to stop criminals from breaching" their accounts and "siphoning off millions of dollars of EDD benefits one account at a time." *See Yick v. Bank of Am., N.A.*, No. 21-0376, ECF 1 ¶ 1 (N.D. Cal.). Through a series of amendments, consolidations, and replacements of the representative Plaintiffs, the theory of liability and even the parties asserting it have changed to assert exactly the *opposite* complaint, that BANA did *too much* to stop criminals from breaching their accounts—allegedly freezing suspicious accounts and denying transaction disputes with insufficient justification.

In just the first year of the pandemic, BANA helped deliver approximately ████████████████████████ to over ████████████████. The process with which Plaintiffs presently take issue was a Claim Fraud Filter (CFF) that ██████████████ ████████████████████████. As designed, the ███████████████████████████

Goodwin Procter LLP
Attorneys at Law

████████████████████████████████████████████████████████████████

██████████████████████████████████████. Recognizing that it was indeed effective in catching fraud, Plaintiffs abandoned their challenge to most of the CFF criteria. The claims they persuaded the Court to certify for class treatment challenge a single criterion, which denied disputes of withdrawals from ATMs that ████████████████████████████████████████████████████████████████

Although BANA believed that these claims and accounts were fraudulent, ████████ ███████████████████████████████████. And it is undisputed that every single class member ████████████████████████████████ and that all have been ████████████████████████████████████ ███████████████—even though some unknown (and unknowable) number of them were almost certainly efforts to defraud the bank that the filter caught correctly.

Despite this, a regulatory settlement ██████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ for a broad swath of cardholders, demonstrably including some who were perpetrators of fraud (not victims of it). Plaintiffs define their primary class as coterminous with the plan's beneficiaries (and their other classes as subsets of them), so they are in the unusual position of seeking compensation for people who, by definition, have already received full compensation. On this ground and others, BANA is entitled to summary judgment.

Actual damages are an essential element of Plaintiffs' primary claim for relief under the Electronic Funds Transfer Act (EFTA). The only evidence they present in support of their damages claim is a trio of experts opining that Plaintiffs are entitled to amounts they have already received. This does not carry Plaintiffs' legal and evidentiary burdens. Judge Burns already determined that the actual damages for "fully reimbursed" Plaintiffs are the consequential harms they attribute to the "delay" in getting reimbursed ECF 126 at 23. But the record now reflects that any ████████████████████████████████████████ so there is nothing left for

1   Plaintiffs to recover. Independently of this, Plaintiffs have no evidence that the
2   measure of consequential harm they propose actually applies to anyone (much less
3   everyone) in the class. Their experts propose to measure it by the rates it would cost
4   to borrow money on credit cards, but admit they have *no idea* how many class
5   members actually borrowed money or paid any interest at that rate, or at *any* rate.
6   Plaintiffs cannot recover damages they have no evidence of incurring.

7        The same defects, among others, warrant summary judgment on Plaintiffs'
8   other claims. Plaintiffs' Unfair Competition Law (UCL) and California Consumer
9   Protection Act (CCPA) claims seek the same legally invalid and unevidenced
10  damages (reframed as "restitution" for UCL purposes). The remaining claims involve
11  a jumble of additional causes of action on a jumble of additional theories on behalf
12  of assorted jumbles of five different classes. Many fail as a matter of law; others fail
13  for lack of any evidence in support; some do both. All of them boil down to Plaintiffs'
14  grievance that their transaction disputes should have been immediately approved,
15  plus a few other grievances arising from their alleged frustrations dealing with
16  BANA's customer service agents and a theory—completely lacking in supporting
17  evidence—that every alleged unauthorized use of their card is BANA's fault because
18  the cards' magnetic stripes left them "vulnerable" to skimming attacks.

19       One thing (perhaps the only thing) uniting all of these claims is the assumption
20  that BANA's main failing was insufficient foresight—that BANA should have been
21  more prepared for millions of fraudulent actors exploiting a once-a-century global
22  pandemic to steal billions in fraudulent benefits claims and fraudulent transactions,
23  with fraudsters and legitimate beneficiaries alike overwhelming its customer service
24  teams' capacity to address it all. Nobody predicted this, but the undisputed evidence
25  is that when it happened, BANA responded in good faith—designing the fraud filter
26  ██████████████████████████████████████████████████████████████████
27  ██████████████████████████████████████████████████████████████████
28  ████████████████████████████████████████████████████. This record of

good faith cannot support Plaintiffs' claims, and certainly cannot support the additional treble and punitive damages they seek.

## BACKGROUND

### Factual History

#### A. EDD Benefits and Pandemic Unemployment Assistance

EDD administers UI benefits in California and contracted with BANA to issue prepaid cards to distribute benefits to recipients who did not opt to collect them by paper check. SUF ¶ 1.[1] ███████████████████████████████████
███████████████████████. *Id.* ¶¶ 6, 9, 118. BANA charged EDD nothing, and EDD benefited financially from the arrangement, ████████
███████████████████████████████████████████████████████
█████████████████████ was shared 50/50 with EDD. *Id.* ¶¶ 18-19.

In March 2020, the pandemic drove the economy into a sudden and deep recession that caused unemployment to spike from 4% to nearly 16%. *Id.* ¶ 34. In response, the federal CARES Act funded PUA as a unique benefits program expanding benefits to workers traditionally deemed ineligible (*e.g.*, self-employed, contract workers, gig workers, and the *under*-employed). 15 U.S.C. § 9021; SUF ¶¶ 35-36. This allowed claimants to file for benefits without customary barriers to fraud like a wage or salary history or former employment verification. SUF ¶ 37. At the same time, California loosened its own verification requirements, prioritizing rapid distribution at the acknowledged cost of fraud. *Id.* ¶ 38. But California was not remotely prepared for just how much fraud would occur. *See id.* ¶¶ 46-69.

The number of active EDD prepaid cards spiked from ████████████
███████████████████████████████████████████████████████
████████████████████████████. *Id.* ¶¶ 39-41; *see also id.* ¶ 42. BANA employees described ███████████████████████████████████
███████████████████████████████████████████████████████

---

[1] SUF refers to BANA's Statement of Undisputed Material Facts, filed herewith.



*Id.* ¶¶ 43-44. ███████████████████

████████████████████████████. *Id.* ████

███████████████████████████████████

████████████████████████. *Id.* ¶ 220. ████████

█████████████████████████████████. *Id.* ¶ 22.

## B. The Pandemic Benefits Scams

Contributing to the challenges was a massive criminal fraud wave targeting EDD and BANA, which Congress, federal regulators, and California's own auditor determined EDD did nearly nothing to prevent. *See id.* ¶¶ 38, 46-54. Dispensing hundreds of billions in benefits while simultaneously eliminating traditional safeguards against fraud had dire results. Some estimated that California incurred approximately $32 billion in fraud losses, and the California Legislative Analyst's Office attributed the "[o]verwhelming majority" of fraud to PUA's "lower standard of identity and wage information" "due to federal policymakers' decision to prioritize immediate assistance." *Id.* ¶ 47. The Department of Labor (DOL) reported an improper payment rate of 35.9%. *Id.* ¶ 48. Others estimated nationwide losses as high as $400 *billion*—a staggering 40% loss rate for taxpayers. *Id.* ¶ 49.

The frauds occurred nationwide, but California was unique, and EDD was not without fault in exacerbating it. EDD adopted a "pay and chase" policy, instructing its agents not to let eligibility verification delay getting benefits out the door. *Id.* ¶ 50. It let claimants *self-certify* their prior wages and employment history, failed to ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *Id.* ¶¶ 37, 38, 51, 68. The State Auditor also discovered that EDD had mailed at least 51 million documents to UI claimants between 2017 and 2020 that included their full Social Security numbers, exposing them to identity theft. *Id.* ¶ 52. Criminals used the information ████████████████████

████████████████████████████████████ *Id.* ¶¶ 53-54.

1    The U.S. Secret Service issued an alert about fraud against UI programs in

2  May 2020. *Id.* ¶¶ 53-54. Soon after, ████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████████

4  *Id.* ¶ 54. ████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████ *Id.* ¶¶ 57-60.

7  ████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████

9  ████████████████████████ *Id.* ¶¶ 58-60.

10    BANA deployed ████████████████████████████. *Id.* ¶ 55. ████████

11  ████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████ *Id.* ¶¶ 8-9. Still,

14  what it found was substantial. For example, ████████████████████████████████

15  ████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████. *Id.*

17  ¶ 65. ████████████████████████████████████████████████████████████████ *Id.*

18  ¶¶ 65-66. BANA's efforts saved billions, but it could not singlehandedly prevent the

19  theft of tens of billions more in state and federal funds. *See id.* ¶¶ 46-49, 63-67.

20    Separately, ██████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████. *Id.* ¶¶ 76, 92. ████████████

23  ████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████. *Id.* ¶¶ 58-60.

26    EFTA protects prepaid-card users from certain losses if the use of the card was

27  unauthorized. *Id.* ¶ 70; 15 U.S.C. § 1693f. ██████████████████████████████████

28  ████████████████████████████████████████████████████████████████████████

1     █████████. SUF ¶ 71. █████████████████████████████████

2     ████████████████████████████████████████████████████████

3     ███████████ *Id.* ████████████████████████████████████████

4     ████████████████████████████████████████████████ *See id.*

5     ¶¶ 72-76. ██████████████████████████████████████████████

6     ████████████████████████████████████████████████████████

7     █████████████████████████████████████████████████████████.

8     *Id.* ¶¶ 72-73. ██████████████████████████████ *Id.* ¶ 74. ████

9     ██████████████████████████████████████ *See id.* ¶¶ 75-76.

### C. The Claim Fraud Filter

Anti-money-laundering laws require BANA to monitor transactions, report on suspicious financial activity, and deter criminals where fraud is suspected. SUF ¶ 77; 31 U.S.C. §§ 5310-5330. Regulators also impose safety-and-soundness obligations that require banks to respond to frauds directed at them. *See* SUF ¶ 78. Further, BANA had contractual obligations to EDD to "flag . . . account[s] for further review" to "alert [EDD] of the possibility of benefits enrollment fraud and allow [EDD] to conduct further investigation." *Id.* ¶ 7. Thus, BANA deemed itself obligated to implement strategies to prevent the misuse of its systems for money laundering and fraud. *Id.* ¶¶ 77-86; *see also id.* ¶¶ 8-9, 117, 122. And because the frauds targeted federal and state funds, BANA also considered itself obligated to take measures to protect taxpayers, and attempted to collaborate with EDD to do so. *Id.* ¶¶ 45, 56.

One of those measures was the CFF, first implemented on September 28, 2020, that is now the main subject of this case. *See id.* ¶¶ 77-103, 109, 115-35. ████

24    ████████████████████████████████████████████████████████

25    ████████████████████████████████████ *Id.* ¶ 93. █████████

26    ████████████████████████████████████████████████████████

27    ███████████████████████████████████. *See id.* ¶¶ 74-76, 79-92.

28    ████████████████████████████████████████████████████████



*Id.* ¶ 94.

*Id.* ¶¶ 84, 117.

. *Id.* ¶¶ 85, 94.

Indicators of fraudulent claims under the CFF included disputes of ATM withdrawals

. ¶¶ 81-82. CFF-1, the ATM indicator,

*Id.* ¶¶ 82, 87-92. The abundant benefits frauds made this tactic common,

. *Id.* ¶ 92.

*Id.* ¶ 88. The Account Agreement required cardholders to keep their PIN confidential, and

*Id.* ¶¶ 88-90, 247.

Upon a claim denial, BANA timely furnished cardholders with notice in compliance with EFTA and Regulation E (Reg E). *Id.* ¶ 95. Recognizing that no antifraud strategy can achieve 100% perfection, BANA

(in addition to the careful design of the CFF itself). *Id.* ¶¶ 97-98. It honored all cardholder requests to reconsider claim denials—which is *not required* by Reg E (*see* 12 C.F.R. § 1005.11(e))—

. SUF

1  ¶¶ 95-97, 148. ███████████████████████████████████████████

2  ██████████████████████████████████████████. *Id.* ¶¶ 119, 132, 148.

3  ███████████████████████████████████████████████████████████

4  ███████████ *See id.* ¶ 103. ███████████████████████████████

5  ██████████████████████████████████████████████. *Id.* ¶ 100.

6  ███████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████

8  ████████████. *Id.* ¶¶ 99-101. Meanwhile, FinCEN and the Secret Service continued

9  issuing alerts about rising benefits fraud, encouraging financial institutions to

10  perform additional inquiries and investigations to identify "red flags" indicating

11  fraud, including suspicious, rapid disbursements from benefits accounts. *Id.* ¶ 69.

12  **D.  The Account-Freeze Response**

13  As BANA observed how the CFF strategy was working, ████████████

14  ███████████████████████████████████████ *See* SUF ¶¶ 115-

15  47. ██████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████

18  ██. *Id.* ¶ 121; *see also id.* ¶¶ 77-92, 117.[2] ██████████████████

19  ███████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████

21  ████████████████ *Id.* ¶ 122. Beginning on December 3, 2020 through March

22  17, 2021, ████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████

24  ███████████████████████. *Id.* ¶¶ 123-24. ████████████████

25  ██████████████████████████████████████████████. *Id.* ¶ 119.

26

2  _____

27  ████████████████████████████████████████████████████████████

28  ███████████████████████████████████████████. *Id.* ¶¶ 115, 120.



1  ███████████████████████████████████████████████████████

2  ████████████████████████████████████████████████. *Id.* ¶¶ 116, 119.

3  ███████████████████████████████████████████████████████

4  ██████ *Id.* ¶ 125. ████████████████████████████████████

5  ███████████████████████████████████████ *Id.*

6  ███████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████

8  ████████████████████ *Id.* ¶¶ 126-27. ████████████████████

9  ███████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████

11 *Id.* ¶¶ 118, 129-35. ████████████████████████████████████

12 █████ *Id.* ¶ 127. ███████████████████████████████████████

13 ███████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████

15 ████████████████████████████████████. *Id.* ¶ 128.

### E.  The Call-Center Onslaught

In March 2020, BANA's call centers for its UI prepaid cards were staffed with ████ full-time equivalents (FTEs) handling approximately ████ calls per month, with average hold times ████████████. *Id.* ¶ 212. By September 2020, monthly call volumes had increased ████████, peaking at over ████████ calls. *Id.* ¶ 213. The Claims Call Center—which handled calls related to unauthorized transactions and billing errors—was particularly overwhelmed. In February 2020, the Claims Call Center was staffed with ██████ handling under ██████ calls per month. *Id.* ¶ 216. By October 2020, call volumes increased ████████ peaking at more than ████████ incoming calls in October. *Id.* All of this occurred while the call centers ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████ *Id.* ¶¶ 210-11. Further complicating matters, many state and local government

offices temporarily closed, 

. *Id.* ¶¶ 250-50A. BANA nonetheless managed to grow its call-center agents

by nearly ▮▮▮ in less than nine months, with the Claims Call Center growing from

▮ FTEs to ▮ by December 13, 2020. *Id.* ¶¶ 216-17. As a result, ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮. *Id.*

### F. Magnetic Stripes and EMV Chips

EMV chips were not standard or common industry practice in prepaid cards as

of 2020, and were not included on any of BANA's prepaid cards—including for its

commercial clients (save one of them). *Id.* ¶¶ 232-34. EDD cards in particular lacked

chips because BANA's contract with EDD provided for magnetic stripe security and

EDD had not authorized BANA to deviate from the contractual specifications. *Id.* ¶¶

11-15. ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ *Id.* ¶¶ 236-37. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ *Id.* ¶¶ 235, 238-39.

## Procedural History

### A. The *Yick* Complaint and MDL Centralization

This matter originated in ten lawsuits complaining of "rampant fraud on EDD

cards and accounts" and accusing BANA of an "ineffective response to the rampant

fraud." *Yick*, No. 21-0376, ECF 1, ¶¶ 39, 50. They accused BANA of being "either

unwilling or unable to stop criminals from breaching [its] systems and controls" and

proposed a class of every EDD cardholder on the dubious premise that BANA's

efforts to address fraud had somehow harmed *everyone* without catching a single

fraudster. *Id.* ¶¶ 1, 68. The cases were centralized and assigned to Judge Burns.

### B. The Regulatory Settlement

In July 2022, BANA entered into consent orders with the CFPB and the OCC

concerning its prepaid card services for certain UI programs. *Id.* ¶ 151. Among other

things, the settlement included a remediation plan ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████ SUF ¶¶ 152-67, 170-71.

Importantly, this does not mean that every settlement beneficiary was actually

*entitled* to compensation. ███████████████████████████

███████████████████████████████████████████████

███████████████████ *See id.* ¶¶ 154-56. ████████████

███████████████████████████████████████████████

███████████████████████████ *Id.* ¶ 156; *see id.* ¶¶

152-59, 161-63. ████████████████████████████████

███████████████████████████████████████████████

███████████████████████ *Id.* ¶ 155; *see also id.* ¶ 163. ████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████ *See id.* ¶¶ 149, 161, 179. ██████████████

███████████████████████████████ *Id.* ¶¶ 150, 156, 161, 180-

83. ██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ *Id.* ¶¶ 180-83. █████████████

███████████████████████████████████████████████

███████████████████████████████████ *Id.* ¶¶ 162-63, 176.

**C.  The Motion to Dismiss**

On May 25, 2023, Judge Burns granted in part and denied in part a motion to

dismiss. *See* ECF 126. The Court dismissed 83 Plaintiffs from the case for a variety

of different reasons, including one Plaintiff (Misty Pointer) who received a prompt

credit on her transaction dispute and therefore "lack[ed] a concrete injury sufficient for Article III standing." *Id*. at 23. The Court recognized that many additional Plaintiffs had also conceded being "fully reimbursed," but held that they could still claim an injury in the form of "the actual damages [] suffered as a result of the delayed reimbursements," which it deemed sufficient for Article III standing purposes. *Id*.

On the elements of Plaintiffs' EFTA claim challenging the adequacy of BANA's investigations into their disputes, the Court also held that Plaintiffs had pled enough to survive dismissal by alleging "information which, if reviewed, would have led BANA to grant Plaintiffs' claims"—such as a Plaintiff's allegations of "overseas transactions" he was not likely to have made in person. *Id*. at 20. The Court did remark, however, that others "could be more detailed as to what specific information should have been reviewed." *Id*. The Court also cited Plaintiffs' challenge to the reliability of the CFF, but having already found their allegations of an inadequate records review sufficiently pleaded, determined that it "d[id]n't need to consider whether the use of the [CFF] alone constituted a violation of the EFTA." *Id*. at 21.

## D. The TAMCC and Certified Classes

Plaintiffs filed the operative Third Amended Master Consolidated Complaint (TAMCC) on January 24, 2025. ECF 406. On June 16, 2025, the Court certified five Plaintiff classes to pursue the following claims: EFTA and Regulation E (Count 1); CCPA (Count 2); UCL (Count 4); negligence (Count 5); breach of implied covenant of good faith (Count 9); breach of fiduciary duty (Count 10); and federal and state due process (Counts 13-14). The classes are defined as:

- A "**Claim Denial Class**" of people who had their disputes denied "based solely" on an ATM withdrawal triggering CFF-1 between September 28, 2020 and June 8, 2021, asserting claims under Counts 1, 4, 5, 9, and 10.
- A "**Credit Rescission Class**" of people whose credits were rescinded based on CFF-1 during the same period, asserting claims under Counts 1, 4, 5, 9, 10, 13, and 14.
- An "**Account Freeze Class**" of people whose accounts were frozen at any time from September 28, 2020 through March 17, 2021 "based solely" on CFF-1 and subsequently unfrozen or unblocked, asserting claims under Counts 4, 5, 9, 10, 13, and 14.

- A "**Customer Service Class**" of people who called BANA's Claims Call Center from September 13, 2020 through November 21, 2020—regardless of the outcome, but claiming they spent too much time on hold—asserting claims under Counts 5 and 9.
- An "**EMV Chip Class**" (EMV Class) of everyone in the Claim Denial and Credit Rescission Classes, alleging it was negligent to issue cards without EMV chips, asserting claims under Counts 2, 5, and 10.

ECF 494, at 96-97. For the Court's convenience, a reference table summarizing which classes are asserting which claims is included as **Attachment A**.

Plaintiffs rely on the CFPB remediation plan to determine class membership. *See* ECF 494 at 97; SUF ¶¶ 168-69. They make no inquiry into whether BANA was correct or incorrect to deny a dispute from a member of the Claim Denial Class. Rather, they simply assume that if a cardholder ███████████████████████ ███████████████████████████████████████████████████████████, with no effort needed to determine who has a legitimate injury and who does not. *See* SUF ¶¶ 168-69. The effect of this is that every class member has received full compensation for the full amount of all denied claims ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████ *Id.* ¶¶ 168-72, 176-83; *see also id.* ¶¶ 162-64, 176-77, 184-207.

Relatedly, in certifying the class, the Court considered two different methods proposed by Plaintiffs for calculating consequential damages—accepting one as sufficient at the certification stage, but rejecting the other. "Methodology 1" proposed adding "a compound interest rate" to the "amount of each claim denied" to reflect the "time value of money." ECF 494 at 86. The Court found this a potentially permissible method, though subject to factual disputes about the proper rate to use. *Id.* "Methodology 2" also proposed to apply an interest rate to the amount of each denied claim, but proposed to base the rate on "the financial cost of borrowing substitute funds"—which Plaintiffs defended as permissible because it was the same approach taken by the remediation plan. *Id.* at 87. The Court ruled that this was *not* a permissible method for "measur[ing] damages across the entire class" because the

"assumption" that "impacted cardholders would likely have needed alternative funds to mitigate the inability to access their funds" was not "supported . . . with evidence showing that these assumptions are true as to most or even any of the EDD cardholders' experience." *Id*. at 87-88. And it found the remediation plan's use of a similar method insufficient to carry Plaintiffs' burden because the remediation plan was "based on assumptions rather than evidence establishing each cardholder's experience." *Id*. at 87. Now at the summary-judgment phase, the record *continues* to lack the requisite "evidence establishing each cardholder's experience." *Id*.

## STANDARD OF LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party can satisfy its initial burden "by demonstrating that [Plaintiffs] failed to make a showing sufficient to establish an element of [their] claim on which [Plaintiffs] will bear the burden of proof at trial." *Waine-Golston v. Time Warner Ent.-Advance/New House P'ship*, 2013 WL 1285535, *2 (S.D. Cal. Mar. 27, 2013) (Curiel, J.). (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). To survive summary judgment, Plaintiffs "cannot rest on [ ] mere allegations," but rather must "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citing *Celotex Corp.*, 477 U.S. at 324).

## ARGUMENT

## I.    Summary Judgment Is Warranted on EFTA for Lack of Damages.

Summary judgment should be entered for BANA on Plaintiffs' claims for damages under EFTA because Plaintiffs have no evidence of actual damages (and, therefore, no actual damages to treble). It is undisputed that all class members have been fully compensated for their claim amounts ███████████████████ ███████████████████████████████████ They do not even have evidence of actual damages of *that* much, as the Court previously recognized in its ruling that the remediation plan payments were based on assumptions about credit

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

card use that were not necessarily true "as to most or even any" class members. ECF 494 at 87-88. Plaintiffs *still* furnish no evidence supporting these assumptions, instead relying on inadmissible "experts" opining—without reviewing the records of any individual class representative or member—that some class members *probably* experienced some harm, and it was *probably* worth as much as what they might have paid in credit card interest. This is not competent evidence of classwide damages. *Id.* Nor is there any basis to *treble* damages Plaintiffs fail to evidence in the first place.

## A.    The Principal Amount Is Not Actual Damages.

EFTA limits Plaintiffs' recovery to the "actual damage sustained" by them "as a result" of the alleged violation, along with a slice of statutory damages (not at issue in the present motion). 15 U.S.C. §§ 1693m(a)(1), (a)(2)(B). BANA previously moved for dismissal of those "Plaintiffs who have been fully reimbursed" on the ground that they have no actual damages. ECF 126 at 23. Judge Burns denied the motion as to "all but one" Plaintiff on the ground that, despite the reimbursement, they had still alleged "actual damages" cognizable as the harms and expenses they allegedly "suffered as a result of the delayed reimbursements." *Id*. The Court relied on *Van v. LLR, Inc.*, 962 F.3d 1160, 1161-62 (9th Cir. 2020), for the proposition that even a fully reimbursed plaintiff could claim actual damages based on "the lost time value of money" (ECF 126 at 24), on the basis of which *Van* had ruled that the plaintiff had "at least $3.76" in damages (measured by the interest she could have earned while awaiting a $531.25 reimbursement). *Id.* at 1161-62. Judge Burns also cited alleged consequential damages, such as a Plaintiff who "allege[d] that, due to BANA's failure to make provisionally credited funds available during the investigation, she had to sell her home after missing a $1,200 mortgage payment and was unable to pay her electric, gas, water, and cell phone bills." ECF 126 at 23-24.

At the summary-judgment stage, this Court should start from the premise Judge Burns already established: Plaintiffs' only conceivable EFTA damages are those they can evidence "suffer[ing] as a result of the delayed reimbursement." *Id*.

Plaintiffs *cannot* recover as actual damages the principal claim amounts that have already been refunded to them. *See Van*, 962 F.3d at 1161-62; *see also*, *e.g.*, *Newman v. JP Morgan Chase Bank, N.A.*, 2024 WL 3227094, *3 (S.D.N.Y. June 27, 2024) (plaintiff's EFTA "claim for actual damages" under § 1693f(e) "is moot as Chase Bank has now fully reimbursed her for the entire $46,975 that was transferred from her account"); *Johnson v. U.S. Bank N.A.*, 2012 WL 12995323, *3-5 (W.D. Wis. Dec. 17, 2012) ("complete relief" makes EFTA claim "moot"); *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005) ("amount of recovery" must be reduced for class members who "received a refund directly from defendants or via a settlement entered into between the FTC and defendants"), *aff'd,* 256 F. App'x 818 (7th Cir. 2007). What is true as a matter of law is also true as a matter of economic fact. Economic damages are measured by the difference between actual outcomes and the outcomes in the "but-for" world where the challenged conduct never happened. SUF ¶ 173. But Plaintiffs have their principal claim amounts in hand in *both* worlds. *Id.* ¶¶ 168, 172. The relevant difference is not between a world where they were paid back and one where they were not; the but-for world is simply a world in which they were paid back sooner—many just *slightly* sooner. *See infra* at 21-24.

### B.     Plaintiffs' Damages Model Cannot Prove Actual Class Damages.

When it comes to claiming damages "suffered as a result of the delayed reimbursement" (ECF 126 at 24), Plaintiffs face two fatal problems. The first is that any such damages have already been recompensed. The second is that Plaintiffs have no classwide evidence of them in the first place.

As already shown, in addition to the principal amounts, Plaintiffs were paid ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████. *See* SUF ¶¶ 162-72. These reimbursed amounts collectively ████████████████ ████████████████████████ *Id.* ¶ 171. That renders their claims for actual damages

Goodwin Procter LLP
Attorneys at Law

moot. *See Newman*, 2024 WL 3227094, *3; *Johnson*, 2012 WL 12995323, *3-5.

Second, Plaintiffs have no evidence of suffering those damages in the first place. As the Court ruled in rejecting Plaintiffs' proposed method of ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ and Plaintiffs "have not demonstrate[d] that this method measures damages across the entire class" or that the underlying "assumptions are true as to most or even any" class members. ECF 494 at 87-88; *see also supra* at 12. Now at summary judgment, Plaintiffs' failure to demonstrate this is fatal.

Plaintiffs *continue* proposing the same damages methodology rejected at the certification stage. *See* ECF 494 at 87-88. In addition to Greg Regan, the CPA they relied on then, they proffer two economists to do the same thing Regan did—quantify "the financial cost of borrowing substitute funds." *Id*. at 87; SUF ¶¶ 184-88. None have any evidence class members ever incurred those costs, and none even agree on the actual quantification. SUF ¶¶ 189-207. Regan expresses no opinion on the cost, but states that 10% is consistent with the statutory rate for prejudgment interest under California law—which is irrelevant[3]—and that 20% would be "reasonable" based on available credit card interest rates and the (unsupported) assumption that "the most likely source of funds accessible to an impacted cardholder would have been increased credit card utilization." SUF ¶ 186. David Levine also proposes to measure damages based on the credit card interest rate on the unsupported assumption that "[w]hen [UI] payments disappear, most [UI] recipients turn to credit cards to cover those expenses," but proposes a rate of 15.9%. *Id*. ¶ 187. Chloe East, too, proposes to use credit card interest rates and again grounds the proposal on the unsupported assumption that "most" class members will have "turn[ed] to borrowing" in response

---

[3] *See Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*, 2010 WL 2132378, *1 (C.D. Cal. May 24, 2010) ("state law governs the applicability of prejudgment interest on [] state claims, and federal law governs the applicability of prejudgment interest on all federal claims").

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

to the temporary loss of access to funds, except she proposes an interest rate of 20.8% instead of Levine's 15.9% or Regan's 10% or 20%. *Id.* ¶¶ 186-88.

As set forth in the accompanying motions to exclude these opinions pursuant to Fed. R. Evid. 702, none are admissible evidence of any Plaintiff's damages or of damages classwide. *See also* ECF 494 at 87-88. None assert—or would have any *basis* for asserting—that any class member paid any interest at the rates they propose, or at any other rate. SUF ¶¶ 186-206; *accord* ECF 494 at 88 (finding no "evidence showing these assumptions are true as to most or even any of the EDD cardholders"). Critically, the only evidence is to the contrary. ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ *See id.* ¶¶ 189-98. ████████

████████████████████████████████████████████████████████████

██████████████████ *Id.* ¶ 190. ██████████████████████████████

████████████ *See id.* ¶¶ 191-98. ████████████████████████████

██████████████████████████ *Id.* ¶¶ 192, 196-98. ████████████

████████████████████████████████████ *Id.* ¶¶ 193-95.

"[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts." *United States v. Various Slot Machines*, 658 F.2d 697, 700 (9th Cir. 1981). No such "specific facts" in the record establish credit card interest classwide. Plaintiffs' experts admit what the Court already found—that they have no idea how many class members needed to borrow money or pay any credit card interest, or even whether any class members did so. SUF ¶ 199. They further concede that their damages methods do not apply to all class members and that they overstate the damages for some unknown (and unknowable) number of them. *Id.* ¶¶ 200-05. And they finally concede that their proposed damages method is not capable of evidencing the damages suffered by any specific class member or members, including the class representatives themselves. *See id.* ¶¶ 199-205.

Instead, their position is that *it does not matter*, because some class members

*probably* experienced some harm, and whatever that was, it was *probably* worth as much as whatever they would have paid in credit card interest. *See id*.; *see also id.* ¶¶ 186-88. And they justify using credit card interest rates not because they think it produces an accurate result, but because they think it produces a "conservative" result. *Id.* ¶ 204. This is not competent evidence of classwide damages. *See* ECF 494 at 87. A damages model must be "reliable and relevant, not . . . conservative." *Orshan v. Apple Inc.*, 2024 WL 4353034, *3 (N.D. Cal. Sept. 30, 2024). And it must "apply to all class members," not merely some of them (not that Plaintiffs have any evidence that their experts' damages measures apply to most, or any, class members). *See*, *e.g.*, *Opperman v. Path, Inc.*, 2016 WL 3844326, *14-15 (N.D. Cal. July 15, 2016) (rejecting damages model that "would overcompensate some class members while undercompensating others"); *accord* ECF 494 at 88 (ruling methodology invalid for failure to "measure[] damages across the *entire class*") (emphasis added).

To the extent Plaintiffs continue to rely on ████████████████████ ████████████████████████████████████████████ ███████████████████████ the Court has already found that "the Remediation Plan does not support a damages model that satisfies *Comcast*." ECF 494 at 87. ████ █████████████████████████████████████████████████ █████████ but this was "based on assumptions rather than evidence." *Id*. Plaintiffs have no evidence these assumptions are true classwide. As Plaintiffs have no *other* evidence of actual damages beyond the inadequate expert opinions, summary judgment on the EFTA claim is appropriate. *See*, *e.g.*, *Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 751 (9th Cir. 2001) ("summary judgment is appropriate where [plaintiffs] have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages"); *Grasshopper House, LLC v. Clean & Sober Media, LLC*, 2021 WL 3702243, *2 (9th Cir. Aug. 20, 2021) (after exclusion of damages expert, "Plaintiff lacked sufficient evidence to create a genuine issue of disputed fact as to damages").

### C.    Plaintiffs Cannot Prove the CFF Caused Recoverable Damages.

Plaintiffs also cannot establish actual damages because they leave an essential part of the question unanswered: whether the claimed damages were "sustained . . . *as a result* of [a] failure" to comply with EFTA. 15 U.S.C. § 1693m(a)(1) (emphasis added); *accord Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) ("a plaintiff must show that the claimed actual damages were 'as a result of' the violation, that is, he must show a causal connection between the EFTA violation and the claimed actual damages"); *Nero v. Uphold HQ Inc.*, 688 F. Supp. 3d 134, 147 (S.D.N.Y. 2023) ("to recover actual damages under the EFTA, the plaintiffs must first establish that there is a substantial nexus between the violation and the loss").

Again, Plaintiffs' problems are twofold. First, there is no record evidence that could prove a blanket failure to comply with EFTA classwide that "result[ed]" in "actual" harm—and, specifically, that each individual actually made a legitimate claim, given that ███████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ SUF ¶¶ 149, 153-61, 178-83.

Second, even for those with legitimate disputes, Plaintiffs cannot show that all their alleged harms were the *result* of the alleged EFTA violation as opposed to their own actions. ████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████ *Id.* ¶¶ 95-97, 131. Thus, "the only evidence in the record supports the conclusion that either [Plaintiffs] received a full refund or that a full refund would have been available to [Plaintiffs] from the defendants if [they] requested it." *Clark v. Experian Info. Sols., Inc.*, 2006 WL 2224049, *3 (N.D. Ill. Aug. 2, 2006), *aff'd*, 256 F. App'x 818 (7th Cir. 2007) (granting summary judgment for defendant on Consumer Fraud Act claim requiring a showing of "actual damages"); *see also*, *e.g.*, *Bartashnik v. Bridgeview Bancorp, Inc.*, 2005 WL 3470315, *3 (N.D. Ill. Dec. 15, 2005) (recognizing "failure to mitigate actual damages" as an EFTA defense).

Some class members, like the dismissed Plaintiff Pointer, ███████

████████████████████████████████████████████████████████ *See* SUF ¶¶ 100, 174; *supra* § I.A. Others, some of whom likely recognized BANA's determination as correct, ███████████████████████████. *See* SUF ¶¶ 100-01, 157-61, 174. Had they done so, ██████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ *See id.* ¶¶ 148-50, 158, 174, 180-83, 209. In *either* case, the "delay" in reimbursement they claim as their damages could have been shortened or, in some cases, eliminated entirely. Plaintiffs cannot claim actual damages of sums they failed to mitigate. *See Schertzer v. Bank of Am., N.A.*, 2025 WL 1447388, *4 (S.D. Cal. May 20, 2025) ("Damages could [] be reduced class-wide in light of the amount that could have been mitigated if each member had made a claim in [prior settlement].");* Rodriguez v. ACL Farms, Inc.*, 2010 WL 4683743, *2 (E.D. Wash. Nov. 12, 2010) ("Assuming actual damages can be awarded . . . , the next question then is whether that plaintiff reasonably mitigated his damages. It is necessary to consider mitigation on a plaintiff-by-plaintiff basis in order to fairly and accurately determine the amount of actual damages to which a particular plaintiff is entitled.").

Plaintiffs also had an opportunity to recover ████████████████████

████████████████████████████████████████████████████████

████████. SUF ¶ 165. The vast majority of class members declined to do so. *Id.* ¶ 166. ████████████████████████████████████████████████████

████████████████████████. *Id.* ¶ 167. Either way, this forecloses any claim that there is evidence of uncompensated harms that could be recompensed now.

**D.    Plaintiffs Have No Evidence To Support Treble Damages.**

**1.    There are no actual damages to treble.**

Where "there is no evidence on which the Court could base any award of actual damages," "there is nothing to treble." *Deckers Outdoor Corp. v. It's Friday, Inc.*, 2024 WL 5481221, *10 (S.D.N.Y. Oct. 31, 2024). That is dispositive of Plaintiffs'

treble damages claim.

Plaintiffs will likely argue the contrary by reference to the Court's offset discussion in its class-certification ruling. *See* ECF 494 at 83-84. However, as the Court acknowledged, the issue was "not expressly argued or analyzed" at the certification stage (*id.* at 83), and the Court's assumption that the principal claim amounts could be recoverable as actual damages was not based on (1) an analysis of EFTA's prescription for what "actual damages" are intended to cover (15 U.S.C. §§ 1693m(a)(1)), (2) ██████████████████████████████ ██████████████ (SUF ¶¶ 95-99), or (3) any failures on class members' part to mitigate damages (*see supra* § I.C). Nor did the Court consider the motion-to-dismiss decision and its holding that "actual damages" *do not* include reimbursed principal. ECF 126 at 23. But these all preclude the treble-damages demand.

As a matter of plain statutory text, EFTA provides that treble damages are to be "determined under section 1693m(a)(1)." 15 U.S.C. § 1693f(e). Section 1693m(a)(1) states that a financial institution shall be "liable to [a] consumer in an amount equal to" "any *actual damage* sustained by such consumer *as a result of*" the alleged failure. 15 U.S.C. § 1693m(a)(1) (emphasis added). Since the only damage suffered "as a result of" the alleged failure is the "delay" in reimbursement, not the full amount of the claim (ECF 126 at 24), the full amount of the claim cannot, as a matter of law, be subject to trebling. *Supra* § I.A.

Further, as the CFF was designed and implemented, and in practice for all class members, ██████████████████████████████████████ SUF ¶¶ 95-99, 148, 174. Every class member was told how to get reconsideration. *Id.* ¶¶ 95-97, 131. Those who did receive their principal amount, ████████ ██████████████ (*id.* ¶¶ 149, 158, 161), were not actually damaged in the principal amount.[4] *Supra* § I.A. Those who did not promptly seek (or never sought)

---

[4] Nearly ███ of the Claim Denial Class members w████k advantage of BANA's offer for a ███matic reconsideration were paid within ██████ or less of initiating their error claim, which is less time than Reg E requires for an investigation. *See* SUF ¶

reconsideration cannot blame the "result" on the CFF when it resulted from their own failure to mitigate. *See supra* § I.C; *Clark*, 2006 WL 2224049, *3. For the same reason, they cannot *treble* damages resulting from their own failure to mitigate. *See In re Margery Kekauoha-Alisa*, 2008 WL 4181347, *2 (Bankr. D. Haw. Sept. 3, 2008) ("trebling must be applied only to the plaintiff's actual damages, not to an amount that exceeds the plaintiff's true loss"); *Rodriguez*, 2010 WL 4683743, *2.

### 2. Plaintiffs cannot satisfy EFTA's requirements for trebling.

Independently of this, summary judgment should also be entered against Plaintiffs on treble damages for failure to satisfy the statutory requirements. To collect treble damages, Plaintiffs must produce evidence that BANA (1) "did not make a good faith investigation of the alleged error" or "have a reasonable basis for believing that the consumer's account was not in error," or (2) "knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." 15 U.S.C. § 1693f(e)(1)-(2).

With respect to the Credit Rescission Class, Plaintiffs have no evidence to support any of the prongs because ███████████████████████████████████ ██████████████████████████████████████████████████████ (SUF ¶¶ 104-108)—which cannot support a treble damages claim. *See Caldwell v. OS Rest. Servs., LLC*, 2021 WL 3264306, *11 (C.D. Cal. May 13, 2021) (granting summary judgment for defendant on claim requiring "willful" conduct where actions were result of "mistake or clerical error"); *Johnson v. Canyon Cnty.*, 2020 WL 5077731, *3 (D. Idaho Aug. 27, 2020) ("conduct that is the result of a mistake is not willful").

For the Claim Denial Class, Plaintiffs have no evidence of bad faith or any

---

174; 12 C.F.R. § 1005.11(c)(2) (financial institution has 45 days to complete investigation). This confirms that many class members understood the decision was appealable and were abl██████████████ access to their funds. And at minimum, it further precludes the ████████████ of cardholders who received prompt repayments from claimin███████████ resulting from the CFF-1 in the principal amount of their claim. *Supra* § I.A.

knowing, willful intent to deny Plaintiffs' claims when the evidence available would have counseled otherwise. For EFTA purposes, intent and state of mind are based on the evidence available *at the time* of the alleged dispute, not in hindsight based on the ultimate outcome of reconsiderations (manual or otherwise). *See* 15 U.S.C. § 1693f(e)(1)-(2). ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████ *See* SUF ¶¶ 46-94. Further, it is undisputed that ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████ *Id.* And it is undisputed that █████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ *Id.* ¶¶ 81-94, 99-101. Beyond this, Plaintiffs have no way of showing what "conclusion[s] could [] reasonably have been drawn" about each account (much less that BANA's decision was wrong)—as they must to warrant treble damages. 15 U.S.C. § 1693f(e); *supra* §§ I.C-I.D.1.

    With respect to CFF-1 specifically, it is undisputed that ████████████████

███████████████████████████████████████████████

███████████████████████████ SUF ¶¶ 81-92. It is also undisputed that ███████

███████████████████████████████████████████████

███████████████████████████████████████████ *Id.* The transactions necessarily required ███████████████—not easy to obtain from legitimate cardholders (██████████████████████████████████████

███████████████████), ███████████████████████████████

███████████████████████████████████████████████

██████████████ *Id.* Finally, it is undisputed that █████████████████

███████████████████████████████████████████████



1 ██████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ████████████████████. *Id.* ¶¶ 95-98, 148-50; *see also id.* ¶¶ 115-36.

Based on the totality of these facts and circumstances, which arose during a once-in-a-lifetime global pandemic that triggered unprecedented benefits and claims fraud, Plaintiffs cannot show BANA possessed the requisite bad faith or knowing or willful intent necessary to support a treble damages award. *See*, *e.g.*, *Vertus v. Citibank, N.A.*, 2013 WL 12084490, *3-4 (S.D. Fla. Apr. 16, 2013) (recognizing the fact that "each of the transactions at issue required the use of Plaintiff's PIN number, which was not written down or accessible without Plaintiff's provision" as evidence the "Defendant conducted its investigation in good faith").[5] Plaintiffs can, and do, argue that the CFF violated EFTA for purposes of their liability case (which BANA disputes), but treble damages are subject to a higher bar, and a claim—even if evidenced—that an investigation failed to comply with the statute is not the same as a showing that it was in bad faith or knowingly, willfully unreasonable for treble-damages purposes. *See* 15 U.S.C. § 1693f(d) (requiring showing of lack of "good faith" or "knowing[]" or "willful[]" act).[6] And Plaintiffs have no evidence of that.

## II. The CCPA Imposed No Obligation to Issue EMV Chip Cards.

The CCPA creates a right of action for a consumer whose "nonencrypted or nonredacted personal information . . . *is subject to an unauthorized access and exfiltration*, theft, or disclosure *as a result of* the business's violation of the duty to implement and maintain reasonable security procedures." Cal. Civ. Code § 1798.150(a)(1) (emphasis added). Plaintiffs' CCPA claim (Count 2) is based on the

---

[5] *See also*, *e.g.*, *Marino v. Ocwen Loan Serv., LLC*, 978 F.3d 669, 673 (9th Cir. 2020) (affirming summary judgment for defendants and distinguishing between evidentiary showing necessary to prove liability under FCRA and additional, heightened, showing of "willfulness" necessary to obtain enhanced damages).

[6] *See also U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan*, 343 F. App'x 279, 281 (9th Cir. 2009) (holding that defendant's good faith interpretation did not give rise to False Claims Act liability, which requires a showing of "knowing" or "willful[]" (*see* 31 U.S.C. § 3729(a)(1)-(2)), "because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met").

theory that BANA was required to issue the EDD cards with EMV chips, and is accordingly asserted only by the EMV Class. *See* ECF 494 at 36.[7] Thus, the relevant "personal information" here is the "debit card number *in combination with any required security code, access code, or password*." Cal. Civ. Code § 1798.81.5(d)(1)(A) (emphasis added).

The claim is unsustainable as a matter of law and undisputed fact because Plaintiffs cannot: (1) establish any requirement to use EMV chips as a matter of law; (2) show that the alleged failure to do so caused the exfiltration of their personal information; or (3) establish that the lack of an EMV chip is the cause of their disputed transactions. Further, Plaintiffs are not entitled to statutory damages because they cannot show that they provided BANA with the notice required under the CCPA.

First, no statute, regulation, or rule required financial institutions to issue cards with EMV chips. To the contrary, the CFPB advised months *after* BANA entered into its 2015 contract with EDD that EMV chips were not required in *any type of card*, and explicitly noted the expense and slow adoption by merchants as factors that may be considered by financial institutions in deciding whether to include chips. *Id.* ¶ 232A. And it is undisputed that BANA was authorized (if not required) specifically to issue "ISO 7811-compliant high coercivity magnetic strip[e]" cards—not EMV cards—under its contract with EDD. *Id.* ¶¶ 11, 13. There is no dispute that BANA's prepaid cards met this standard. *Id.* ¶ 12. Because there is no evidence of a violation of any statute, regulation, or rule, and because the issuance of mag-stripe only cards

---

[7] The TAMCC alleges another theory that BANA's subcontractors did not do enough to protect personal information. ¶ 553. Because it was not certified, Plaintiffs cannot pursue this claim on behalf of any class, and summary judgment is required as to all absent class members. *See Abbit v. ING USA Annuity & Life Ins. Co.*, 2016 WL 4542204, *4-5 (S.D. Cal. Aug. 30, 2016) (granting summary judgment on uncertified claim); *Ahussain v. GNC Franchising, LLC*, 2009 WL 10672353, *5 (C.D. Cal. Mar. 18, 2009) (same); *see also Hall v. Marriott Int'l, Inc.*, 2023 WL 9692466, *1 (S.D. Cal. June 6, 2023) (liability theory "abandoned" where plaintiffs did not seek to certify a class on that basis). Summary judgment would be independently warranted on this theory because Plaintiffs have no evidence that BANA subcontractors failed to maintain the security of their information or caused any specific harm. *Infra* § V.

1  was *specifically authorized* by BANA's contract with EDD, Plaintiffs' CCPA claim

2  should fail. *See, e.g., Gershfeld v. Teamviewer US, Inc.*, 2021 WL 3046775, *2 (C.D.

3  Cal. June 24, 2021), *aff'd*, 2023 WL 334015 (9th Cir. Jan. 20, 2023) (dismissing

4  CCPA claim because defendant's disclosure of information "in a nonencrypted and

5  nonredacted fashion" was authorized by contract and not "caused by [d]efendant's

6  failure to implement reasonable security procedures and practices").

7     To the extent Plaintiffs argue the Court can still impose a duty irrespective of

8  the contract and without any explicit law supporting that EMV chips were "industry

9  standard," EMV chips were *not* "industry standard" in *prepaid* cards prior to or

10 during the EMV Class period. SUF ¶¶ 232-34. Undisputed Federal Reserve payment

11 studies show that between 2019 and 2020, *65%-74% of all in-person prepaid card*

12 *transactions* were completed *without an EMV chip. Id.* ¶ 234. And again, the CFPB

13 advised that EMV chips were not required or "industry standard" for *any type of card*

14 in 2015 when BANA and EDD entered into their contract renewal. *See id.* ¶¶ 232,

15 232A. Thus, Plaintiffs cannot establish a violation of any duty by BANA under the

16 CCPA. *See Maag v. U.S. Bank, N.A.*, 2021 WL 6018361, *2 (S.D. Cal. Apr. 15, 2021)

17 (dismissing CCPA claim because there were no factual allegations of how procedures

18 were insufficient compared with industry standards).

19    Second, Plaintiffs have no evidence that the lack of an EMV chip caused any

20 unauthorized access and exfiltration, theft, or disclosure of the EMV Class's personal

21 information. *See* Cal. Civ. Code § 1798.150(a)(1); *id.* § 1798.81.5(d)(1)(A). The

22 EMV Class's claim is premised on the theory that their cards were skimmed and they

23 were then harmed through fraudulent ATM transactions. *See* TAMCC ¶¶ 550, 553,

24 556; ECF 499 at 34-35. But it is undisputed that to use an EDD card at an ATM, ████

25 ███████████  SUF ¶ 246. ████████████

26 ████████████████████████ *Id.* ¶¶ 247-48.

27 Thus the requisite "combination" of the card number *and* required password (the

28 PIN) is absent. *See Gardiner v. Walmart Inc.*, 2021 WL 2520103, *3 (N.D. Cal. Mar.

5, 2021) (dismissing CCPA claim because no "disclosure of a credit or debit card or account number, and the required security or access code to access the account").[8]

Relatedly, and just as dispositively, Plaintiffs have no evidence that any EMV Class members ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. *See* SUF ¶¶ 90, 241-48; *supra* §§ I.A, I.C. The record contains ████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████. Some may have involved █████████████████████████ ███████████████████████████████████████████████████████████. *See id.* ¶¶ 89-92, 242-48. Others involved ████████████████████████████████████████████████ ██████████████████████████. *Id.* ¶¶ 91-92. In any of these scenarios, the CCPA claim must fail. *See, e.g., Maag*, 2021 WL 5605278, *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim where plaintiff failed to allege "PII was accessed 'as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.'").[9]

In any event, Plaintiffs have no evidence of the unreasonable or willful conduct necessary to obtain statutory damages under the CCPA. *See* Cal. Civ. Code § 1798.150(a)(1)-(2).[10] The record evidence—all undisputed—is that BANA provided cards in compliance with its contract with EDD, reasonably believed it did not have the authority to implement EMV chips without EDD approval, ███████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. SUF ¶¶ 10-16, 232-39.

Lastly, Plaintiffs are barred from seeking statutory damages under the CCPA

---

[8] ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████. Plaintiffs' only "evidence" of causation for the EMV Class is unreliable and inadmissible testimony from Jane Cloninger, which BANA has moved to exclude.
[10] For the same reason, Plaintiffs cannot seek punitive damages based on their EMV chip theory for any of their other claims. *See infra* at 49.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

because they did not provide necessary notice prior to filing this case. The CCPA requires a 30-day notice-and-cure procedure prior to initiating an action. Cal. Civ. Code § 1798.150(b). Plaintiffs allege notice to BANA by January 26, 2021 (TAMCC ¶¶ 559-60), but those notices *post-date* the filing of the *Yick* lawsuit that initiated this action. *See In re San Francisco 49ers Data Breach Litig.*, 2024 WL 3849336, *3 (N.D. Cal. Aug. 15, 2024) (notice after litigation precludes statutory damages).

## III. The UCL Claim Fails as a Matter of Law.

"[T]he remedies for violation of the UCL are limited to injunctive relief and restitution—a plaintiff may not recover monetary damages." *Potts v. Ford Motor Co.*, 2021 WL 2014796, *7 (S.D. Cal. May 20, 2021). Plaintiffs' claim for injunctive relief "is now moot" because BANA no longer provides prepaid card services for EDD. ECF 297 at 11-12; *see also* SUF ¶¶ 23-26. Their claim for restitution is equally moot because class members have already received full restitution, and therefore have been "restore[d] [to] the status quo"—which is all the UCL is meant to do. *In re First All. Mortg. Co.* 471 F.3d 977, 996 (9th Cir. 2006). Specifically, the Claim Denial, Credit Rescission, and Account Freeze Classes asserting this claim have indisputably received (1) the full principal amount of their claims, (2) the full amount of their frozen account balances (if any), and (3) ███████████████████ ███████████████████ *See* SUF ¶¶ 107-08, 143, 168-72, 175-76; *supra* § I. Thus, Plaintiffs' UCL claim must fail because they cannot demonstrate an injury for which they have not already been compensated. *E.g.*, *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 6018361, *3 (S.D. Cal. Nov. 15, 2018) (no injury to provide restitution for because "reversed" transaction restored plaintiff to status quo); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 455 (S.D. Cal. 2014) (purchasers "have no claims" where they "have already received refunds"); *Conde v. Sensa*, 2018 WL 4297056, *17 (S.D. Cal. Sept. 10, 2018) (same).[11]

---

[11] *See also Beatty v. PHH Mortg. Corp.*, 2021 WL 6116957, *13 (N.D. Cal. Dec. 27, 2021) (granting summary judgment where plaintiff failed to prove damages); *Diaz v. Nationstar Mortg. LLC*, 2024 WL 4800703, *5 (C.D. Cal. Sept. 17, 2024) (same).

Even if they could, summary judgment would still be warranted because the amounts Plaintiffs seek are based on "same amount of money for the exact same harm" they allege in other claims, and no UCL claim exists where plaintiffs have an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); ECF 126 at 31-33. The UCL claim survived dismissal because Plaintiffs said they lacked a legal remedy for "conduct that is determined not to be 'unlawful' but to nonetheless violate the UCL because it is 'unfair.'" TAMCC ¶ 584. Plaintiffs' negligence claim, however, seeks recovery of the *same amounts* of "EDD benefits" and "accrued interest thereon" as a result of *precisely the same conduct* underlying the UCL claim. *Compare, e.g.,* TAMCC ¶ 581 *with* ¶ 587.[12]

## IV.    Plaintiffs Cannot Recover Paid Contract Damages as Negligence Claims.

Plaintiffs' negligence and negligence per se claims (Count 5) are precluded as a matter of law by the economic-loss rule, and also because Plaintiffs have no evidence that (1) the challenged actions breached any duty of care, or (2) that any of BANA's purported breaches caused them recoverable harm.

The economic-loss rule bars these claims because "there is no recovery in tort for negligently inflicted 'purely economic losses.'" *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (quoting *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019)). Underlying this doctrine is that economic losses "are primarily the domain of contract . . . rather than of negligence." *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 402. The rule "functions to bar claims in negligence for pure economic losses in deference to a contract between litigating parties." *Sheen*, 12 Cal. 5th 905 at 922. And it is

---

[12] The TAMCC also contains UCL allegations about customer service and EMV chips (*e.g.*, ¶ 581), as well as BANA's subcontractors (*e.g.*, ¶ 578). Plaintiffs did not seek or obtain certification of any of these claims. *See* ECF 494 at 36. Thus, like their many other uncertified claims, Plaintiffs cannot pursue uncertified UCL theories on behalf of any class, and summary judgment is required as to all absent class members. *Supra* at 27 n.7. Further, for the reasons explained above and below, Plaintiffs also cannot pursue these alternative UCL theories on behalf of themselves or anyone else because the remedies they could seek are now moot, and because they have no evidence to show BANA engaged in unlawful or unfair conduct. *See supra* §§ I-II; *infra* §§ IV-X.

undisputed that Plaintiffs' relationship with BANA was governed by contract.

In ECF 126 (at 37), the Court found Plaintiffs' allegations of a special relationship between BANA and putative class members sufficient to overcome the economic-loss rule at the pleading stage. To do so, it applied the factors set forth in *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968) and similar cases. ECF 126 at 37-41. But those cases have been superseded by *Sheen* (*supra*), which was issued after motion to dismiss briefing was completed. As the California Supreme Court has since explained, where parties are in privity of contract, the economic loss rule applies with particular force with only two exceptions. *See id.* at 922. Neither applies here.

Specifically, *Sheen* holds that the special relationship factors "[do] not displace the contractual economic loss rule when that rule squarely applies" and "do not apply when the plaintiff and defendant are in contractual privity for purposes of the suit at hand." 12 Cal. 5th 905 at 937.[13] There is no dispute that Plaintiffs assert only economic losses,[14] that BANA and Plaintiffs were in contractual privity, and that this action "arise[s] from" and "[is] not independent of" their Account Agreements. *Sheen*, 12 Cal. 5th at 929; TAMCC ¶ 71. There also is no dispute that the only two categories of business transactions that may subject contracting parties to tort liability—"insurance" or "professional services"—do not apply here. *See Sheen*, 12 Cal. 5th at 930. Thus, the economic-loss rule bars the negligence claim as a matter of law. *See Terpin v. AT&T Mobility LLC*, 118 F.4th 1102, 1116 (9th Cir. 2024) (affirming summary judgment based on the economic loss doctrine).

Separately, Plaintiffs have no evidence that the complained-of actions constitute a breach of any purported duty. "A bank's basic duty of care—to act with reasonable care in its transactions with its customers—arises out of the bank's contract with its customer." *Rodriguez v. Bank of the W.,* 162 Cal. App. 4th 454, 460

---

[13] *See also Ace Am. Ins. Co. v. Accellion, Inc.*, 2022 WL 2341155, *7 (N.D. Cal. Apr. 11, 2022) (recognizing *Sheen* and dismissing negligence claim, holding "the special relationship exception to the [economic loss] rule does not apply to contracting parties").

[14] The Court ruled all alleged injuries are purely economic. ECF 126 at 34-35.

(2008). Plaintiffs must therefore "tie [their] alleged breaches . . . to the duties arising out of the contractual basis of the bank-depositor relationship." *Across Am., Inc. Ins. Servs. v. Bank of Am., N.A.*, 2018 WL 5906674, *5 (C.D. Cal. Sept. 24, 2018). The Court has already substantially dismissed Plaintiffs' contract claims (ECF 126 at 49-54), and the Court certified no classes with respect to them (ECF 494 at 35-36). Unsurprisingly, therefore, Plaintiffs have no evidence that BANA breached any of its contractual obligations under the Account Agreement.

Plaintiffs' negligence *per se* theory does not help them. Plaintiffs initially premised this theory on four separate statutory violations of the GLBA, CCPA, California Financial Information Privacy Act (CFIPA), and California Records Act (CRA). Plaintiffs have since abandoned the CFIPA and CRA theories. *See Guillen v. Johnson*, 2024 WL 4903295, *1 (9th Cir. Nov. 27, 2024) ("[The] district court dismissed . . . claims with leave to amend. Plaintiff abandoned the claims by not repleading them in the amended complaint."). The CCPA theory fails because there is no evidence of a violation and because Plaintiffs did not seek to certify a class concerning BANA's purportedly deficient vendor hiring practices or any alleged data breach. *See supra* § II. As for the GLBA and its Safeguard Rule, it does not—as Plaintiffs suggest (TAMCC ¶ 589(c))—mandate that banks issue EMV chip cards or undertake certain hiring practices. Rather, the rule simply requires financial institutions to maintain a written information security program. *See* 16 C.F.R. §§ 314.3, 314.4; TAMCC ¶ 589(a). The undisputed evidence is clear that BANA had such a program, so Plaintiffs' GLBA theory cannot be sustained. *See* SUF ¶ 249.

Lastly, Plaintiffs cannot establish that BANA's purported breaches were the proximate cause of a recoverable harm. Plaintiffs have not and cannot prove actual damages resulting from CFF-1. *Supra* § I. With respect to EMV chips, Plaintiffs cannot prove that the lack of chips proximately caused the challenged transactions. *Supra* § II. Nor is there any evidence to support the customer service theory that alleged delays caused class members recoverable harm, as (1) each class member

reached BANA and submitted a claim that was repaid with interest (SUF ¶¶ 168-72, 176-77, 231)), and (2) Plaintiffs have no competent evidence of actual harm as a matter of law.[15] Finally, BANA is entitled to summary judgment because it has already paid class members everything they seek,[16] and Plaintiffs have no evidence that there is any more to recover. *Supra* § I; SUF ¶¶ 148-77; *Bamberger v. Marsh USA, Inc.*, 2015 WL 11257577, *6 (C.D. Cal. Mar. 11, 2015) (granting summary judgment on negligence where damages "have already been paid" by defendants).

To the extent Plaintiffs seek the return of "BANA's unjustly earned profits" (ECF 494 at 93) as disgorgement, "[a] plaintiff may recover for unjust enrichment only where there is no contractual relationship between the parties." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). It is undisputed one exists here (*see* SUF ¶¶ 27-33), so disgorgement is not an available remedy. *See Gerlinger*, 311 F. Supp. 2d at 856 (dismissing unjust enrichment claim where plaintiff sought disgorgement of defendants' "ill-gotten gains" because "a valid express contract covering the same subject matter exists between the parties").

Another fundamental reason Plaintiffs cannot recover BANA's "profits" as damages is because there were none. The only evidence Plaintiffs offer in support of BANA's alleged profits is speculative, inadmissible, and must be stricken for the reasons stated in BANA's motions to exclude Regan's and Minnucci's opinions. Further, it is undisputed that ███████████████████████████ ██████████████████████████████████. SUF ¶¶ 21-22; 208. Under these facts, disgorgement does not save this claim. *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 2007 WL 935728, *3 (S.D. Cal. Mar. 9, 2007) (granting summary judgment where plaintiff "failed to offer any nonspeculative evidence" "to support his claim that the [challenged actions] increased defendants' profits").

---

[15] Plaintiffs' only evidence of damages for the Customer Service Class relies entirely on Jay Minnucci, whose opinions BANA has also concurrently moved to exclude as unreliable, irrelevant, and unsupported by the record. *See also* SUF ¶¶ 228-31.
[16] *See* TAMCC ¶ 592 (seeking "EDD benefits" and "accrued interest thereon").

## V.    Plaintiffs Abandoned the Negligent Hiring and Contract Claims.

The Court did not certify any classes for Plaintiffs' negligent hiring and contract claims (Counts 6 and 7). Thus, Plaintiffs cannot pursue them on behalf of any classes, and summary judgment is required as to all class members. *Supra* at 27 n.7. Separately, summary judgment would still be warranted on the negligent hiring and supervision claim because Plaintiffs have no evidence that BANA's vendor's hiring practices caused any compromise of any Plaintiff's personal information, or that anyone was harmed as a result.[17] *See* SUF ¶¶ 250-52; *Sandoval v. Mercedes-Benz USA, LLC*, 2012 WL 12884684, *7 (C.D. Cal. May 29, 2012) (granting summary judgment for lack of evidence supporting negligent hiring theory).[18]

## VI.    There Is No Evidence Any Implied Duty Was Breached or of Bad Faith.

Summary judgment should be entered on Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count 9) on multiple grounds.

First, like their other claims, Plaintiffs have no evidence of a recoverable harm. Plaintiffs and class members have been more than fully compensated (*supra* at 16-24, 30, 33-34), disgorgement is not available (*supra* at 34), and there is no evidence to support punitive damages (*infra* §§ IX-X). This alone requires summary judgment. *See Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 373 (9th Cir. 1985) (affirming summary judgment on breach of implied covenant claim where claimant "offered no proof of measurable damages" and "was fully paid").

Second, Plaintiffs cannot demonstrate that BANA "unfairly interfered with Plaintiffs' rights to receive the benefits of the contract," as they must to prove this claim under California law. *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). Plaintiffs must show *with evidence* that BANA's

---

[17] No class representative claims injuries caused by "a series of internal data breaches committed by TTEC employees." TAMCC ¶ 598. And none of Plaintiffs' experts opine as to harm caused by any alleged data breach. *See* SUF ¶ 252.

[18] This motion is directed at class and class representative claims only. Thus, it does not further address the breach of contract claim because it was alleged by only two individuals whose claims are not the subject of this motion. *See* TAMCC ¶¶ 603-10.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

conduct demonstrates a "failure or refusal to discharge contractual responsibilities, prompted *not* by an honest mistake, bad judgment or negligence but rather by a *conscious* and *deliberate* act." *Beatty*, 2021 WL 6116957, *6. (emphasis added). Here, Plaintiffs have all but abandoned their contract claim, and they cannot prove that the CFF-1 or call center staffing decisions were made in bad faith.[19] *See supra* § V; *infra* at 48-49. This, too, requires summary judgment for BANA. *Collins v. Home Depot USA, Inc.*, 2023 WL 9019037, *3 (C.D. Cal. Oct. 30, 2023) (granting summary judgment where "[defendant's] decision to deny Plaintiff a full refund was consistent with [contract] and not bad faith"). Further, to the extent Plaintiffs challenge the rescission of certain permanent credits, █████████████████████████████ (SUF ¶¶ 104-08), and thus cannot support this claim. *Beatty*, 2021 WL 6116957, *8 (no "conscious or deliberate interference" for corrected "honest mistake").

Third, the Account Freeze class claim further fails as a matter of law because it purports to "impose substantive duties or *limits* on the contracting parties beyond those incorporated in the *specific* terms of their agreement." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (emphasis added). This issue was not fully considered by ECF 126,[20] and it is undisputed that the Account Agreement expressly grants BANA sole discretion to freeze accounts. SUF ¶¶ 28-29. California law is clear: "the implied covenant of good faith and fair dealing does not override that express grant of plenary discretion." *Haggarty v. Wells Fargo Bank,*

---

[19] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████. *See id.* ¶¶ 17, 33.

[20] The Court did not previously consider California law's proscription against using the covenant to "limit" express contractual requirements. *See* ECF 126 at 55-57 (assessing only whether Plaintiffs' implied covenant claim would impose "new obligations"). Plaintiffs have since amended their claim regarding customer service (*id.*), which seeks to impose a *new* obligation to provide a level of customer service beyond what the Account Agreement requires. *See* TAMCC ¶ 622.b.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

1  *N.A.*, 2012 WL 4742815, *6 (N.D. Cal. Oct. 3, 2012).[21]

2  **VII.    No Fiduciary Duty Existed as a Matter of Law and None Was Breached.**

3      The Court certified a breach of fiduciary duty (BFD) claim (Count 10) for the

4  Claim Denial, Credit Rescission, Account Freeze, and EMV Classes. ECF 494 at

5  36.[22] This claim fails because: (1) it is preempted by the Account Agreement,

6  (2) BANA did not have a "special relationship" with EDD cardholders, and (3) there

7  is no evidence the purported breaches caused class members any recoverable harm.

8      Under California law, "[a] bank has limited duties to its customers," such that

9  "[t]he relationship between the two is not fiduciary, but rather is contractual in

10  nature." *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1100 (N.D.

11  Cal. 2013).[23] Plaintiffs do not dispute this. ECF 126 at 58-59. Nor could they because

12  the Account Agreement governed BANA's relationship with EDD cardholders, and

13  expressly permitted BANA to take initiative to prevent fraud, "freeze" accounts for

14  suspicious activity, and deduct funds a cardholder was not entitled to keep. SUF

15  ¶¶ 27-32. Further, neither the Account nor the EDD Agreement contained any

16  requirement to issue cards with EMV chips. SUF ¶¶ 10-14, 16, 33; *supra* § II.

17      To the extent Plaintiffs allege the BFD claim arises from a "special

18  relationship," the allegation is not backed by any evidence. In ECF 126, the Court

19  found that a special relationship *could* exist (1) if BANA "affirmatively offer[ed]

20  trust and other specifically fiduciary services," or (2) if BANA's relationship with

21  EDD cardholders bore certain characteristics under the requirements set forth in

22  *Wallis v. Superior Court*, 160 Cal. App. 3d 1109, 1118 (1984). ECF 126, at 59.

---

[21] For this motion, BANA does not contest Plaintiffs' claim that the EDD Agreement is governed by California law. But if North Carolina law were applied, the implied covenant claim would still fail. *See Gilmore v. Garner*, 157 N.C. App. 664, 667 (2003) (affirming summary judgment because "[n]o meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions" of a contract).
[22] The BFD claim for the Customer Service Class was not certified (ECF 494 at 36, n.11), so summary judgment is required as to call center allegations. *Supra* at 27 n.7.
[23] *See also Lawrence v. Bank of Am.*, 163 Cal. App. 3d 431, 437 (1985) ("under ordinary circumstances the relationship between a Bank and its depositor . . . is not a fiduciary one").

1    Undisputed facts demonstrate that no such relationship exists.

2        There is no evidence that BANA affirmatively offered EDD cardholders
3    "specifically fiduciary services." BANA did not represent in the Account Agreement
4    (or otherwise) that it would "act in [their] best interests or offer[] [them] any specific
5    fiduciary services" or agree to "favor [cardholders'] interests over [its] own." *Scotten*
6    *v. First Horizon Home Loan Corp.*, 2012 WL 3277104, *3 (E.D. Cal. Aug. 9, 2012).
7    Further, BANA was not "required . . . to hold EDD Cardholders' funds in [a] trust"
8    specifically for the benefit of *EDD cardholders*, as would be required for BANA to
9    have offered "specifically fiduciary services." *See* ECF 126 at 62. Rather, the EDD
10   Agreement specified that a "Trust Account" for prepaid account funds would be used
11   "[f]or the purpose of calculating [*EDD's*] revenue share." SUF ¶ 20. On these facts,
12   there is no material dispute that BANA *did not* offer EDD cardholders "trust"
13   services and therefore is "in no sense a true fiduciary." *Peterson Dev. Co. v. Torrey*
14   *Pines Bank*, 233 Cal. App. 3d 103, 119 (1991).

15       Plaintiffs also cannot establish a "special relationship" using the *Wallis*
16   requirements. As with negligence, California courts generally limit recovery for BFD
17   claims between contracting parties to *insurance* transactions. *Copesky v. Super. Ct.*,
18   229 Cal. App. 3d 678, 689-90 (1991) (citing *Wallis*, 160 Cal. App. 3d at 1118). For
19   this reason,"[i]n the usual [bank-depositor] case, the 'special relationship' found in
20   insurance cases and evaluated by the *Wallis* standards *would be lacking*." *Copesky*,
21   229 Cal. App. 3d at 690 (emphasis added). Plaintiffs' claim is no exception. In its
22   motion to dismiss order (ECF 126 at 58-62), the Court found only that Plaintiffs had
23   *alleged* facts sufficient to support a special relationship, but many of those allegations
24   turned out to be untrue. Most basically, Plaintiffs and class members did not lack
25   "bargaining power," as it is undisputed that each EDD cardholder had the ability to
26   *refuse* BANA's services by opting to receive benefits via check, and some did. SUF
27   ¶¶ 2-3, 144-47. Nor can Plaintiffs prove BANA breached the "trust" of any
28   cardholder; rather, the evidence shows that BANA exercised its rights under the

Account Agreement—which EDD cardholders voluntarily accepted—to take action to prevent fraud. *See id.* ¶¶ 27-30, 46-94.

In any event, even if it were not precluded as a matter of law, the BFD claim still fails because there is nothing more to recover. *Graham-Sult v. Clainos*, 2015 WL 13655771, *12 (N.D. Cal. Oct. 6, 2015) (granting summary judgment on BFD claim because "Plaintiffs cannot prove any damages"). Class members have already been fully compensated (*supra* at 16-24, 30, 33-34), disgorgement is not available (*supra* at 34), and there is no evidence to support an award of punitive damages (*infra* § IX).

## VIII. No "Due Process of Law" Was Owed, But Ample Process Was Offered.

Plaintiffs press due-process claims (Counts 13 & 14) on the theory that BANA—a private actor—somehow violated the U.S. and California *Constitutions* by freezing accounts it reasonably suspected to be compromised by fraud ████ ██████████████████████████████████████████████████ These claims fail for multiple reasons, but none more fundamental than the fact that the due-process clauses apply *to the State*, and BANA is not the State.

### A.    BANA Was Not A State Actor.

A private party is not a state actor unless "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Plaintiffs do not even claim this, much less evidence it. And if they believed it at all, they would have sued the State, too. Instead, they assert that BANA nonetheless counts as a state actor "because it performs a function that is both traditionally and exclusively governmental." TAMCC ¶ 654. That was obviously not the case. "[M]aintaining or managing financial accounts is not a function that is traditionally and exclusively performed by the government." *Belue v. Keefe Commissary Grp.*, LLC, 2021 WL 1197749, *3 (D. Idaho Mar. 29, 2021).

Plaintiffs survived the pleading stage only by persuading the Court they "plausibly allege[d] that EDD presents BANA debit cards as the 'exclusive means'

to receive EDD benefits." ECF 126 at 68. But as the record shows beyond dispute, that allegation was not true. BANA prepaid cards were *not* the "exclusive means" to receive EDD benefits. It is undisputed that every cardholder had the opportunity to opt for benefits by paper check (SUF ¶ 2), and many did (*see e.g., id.* ¶¶ 2, 144-47). Also undisputed ███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████  *Id.* ¶¶ 136-37, 144-47.

It follows that the record can likewise no longer sustain Plaintiffs' theory that BANA is a state actor on the asserted ground that the "distribution" of EDD benefits is "traditionally and exclusively governmental." ECF 126 at 68. Nothing about Plaintiffs' claims takes issue with the "distribution" of benefits. They contest the manner in which BANA serviced their prepaid card accounts *after* the benefits were already distributed—something which has *never* been a government function. *See Belue*, 2021 WL 1197749, *3. The Supreme Court's ruling in *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 48 (1999), rejecting claims that private insurers were state actors "in withholding workers' compensation benefits without predeprivation notice and an opportunity to be heard," is instructive. The respondents argued that the insurers performed traditional state functions because "workers' compensation benefits are state-mandated 'public benefits'" and "the State has delegated to insurers the traditionally exclusive government function of determining whether and under what circumstances an injured worker's medical benefits may be suspended." *Id.* at 55. The Court ruled that "neither argument has merit" because the mere fact that the State mandated the benefits did not alter the fact that "withhold[ing] payment for disputed medical treatment pending a determination that the treatment is, in fact, reasonable" was "an insurer's traditionally private prerogative." *Id.* at 57. By the same token, freezing payment card accounts on reasonable suspicion of fraud pending a contrary determination is a card issuer's traditionally private prerogative, distinct from the government function of issuing the benefits in the first place.

**B.    EDD Cardholders Were Not Denied Procedural Protections.**

Beyond the threshold defect, this claim has at least three additional defects.

First, the use of the CFF to rescind permanent credits ████████████, and Plaintiffs have no evidence to the contrary. SUF ¶¶ 104-05. Thus, it cannot support a due process claim. *Robledo v. Bautista*, 2023 WL 35026, *5 (D. Ariz. Jan. 4, 2023), *aff'd*, 2025 WL 1202216 (9th Cir. Apr. 25, 2025) (granting summary judgment on procedural due process claim because it was premised on "negligence, incompetence, or a mistake, none of which support a due process violation").

Second, Plaintiffs' due process claims also fail because there is no genuine dispute over the strong public interest in halting the fraud attacks on EDD funds, and the classes asserting these claims received all the procedural protections that were constitutionally due. Under Supreme Court precedent, pre-deprivation process may be postponed where "[a]n important government interest" is "accompanied by a substantial assurance that the deprivation is not baseless or unwarranted." *FDIC v. Mallen*, 486 U.S. 230, 240 (1988). At the pleading stage, the Court allowed for the possibility that "facts uncovered during discovery will demonstrate that this exception applies here." ECF 126 at 74. This is exactly what happened: there is no material dispute that this is one of the "limited cases demanding prompt action" that the Supreme Court was referring to in *Mallen* that would "justify postponing the opportunity to be heard until after the initial deprivation." *Mallen*, 486 U.S. at 240.

As the Ninth Circuit (among others) has recognized, preventing suspected fraudsters from stealing from banks, and thus preserving the integrity of financial institutions, is "[a]n important government interest" under *Mallen. See Spiegel v. Ryan*, 946 F.2d 1435, 1440 (9th Cir. 1991) (*Mallen* allows "prompt action" in freezing bank account of suspected fraudster); *Bd. of Govs. of Fed. Rsrv. Sys. v. DLG Fin. Corp.,* 29 F.3d 993, 1001 (5th Cir. 1994) (*Mallen* applies where "the government has an important interest in maintaining the public confidence in the integrity of financial institutions"). And there is no genuine dispute that BANA's response to the

fraud attack was "not baseless or unwarranted." *E.g.*, SUF ¶¶ 46-94, 115-24.

The Court has already recognized that "BANA, acting on behalf of the State of California, obviously has a strong interest in preventing fraud." ECF 126 at 73. There is no material dispute that the actions Plaintiffs say violated their procedural due process rights were undertaken in direct response to the explosion of fraud targeted at the EDD benefits cards BANA was charged with administering for California. *See* SUF ¶¶ 46-94. There is further no material dispute that, when it deployed the CFF, ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ *Id.* ¶¶ 77-92, 98-103, 115-24. It is also undisputed that the Account Agreement expressly allowed BANA to freeze accounts if it "suspect[ed] irregular, unauthorized, or unlawful activities involved" in the account, and further allowed BANA to maintain the freeze "until the end of its investigations into its suspicions." ECF 126 at 52-53 (quoting Account Agreement, § 2). And it is undisputed that the EDD Agreement *required* BANA to "flag…account[s] for further review" to "alert [EDD] of the possibility of benefits enrollment fraud and allow [EDD] to conduct further investigation." SUF ¶ 7. Finally, there is no material dispute that prompt action was necessary to stem the fraud attack ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ *See id.* ¶¶ 46-94. These circumstances clearly satisfy *Mallen*.

Indeed, the Ninth Circuit invoked *Mallen* under similar circumstances, and held that the government's interest in preventing fraud justified the freezing of a bank account "in order to avoid the risk that [the account-holder] would dissipate his assets or attempt to put them beyond the government's reach." *Spiegel*, 946 F.2d at 1440. Similarly, the Fifth Circuit has held that the *Mallen* exception allowed assets to be encumbered without a pre-deprivation hearing because "the government's interest in maintaining public confidence in banking institutions" was "of sufficient

importance" to overcome the general requirement of pre-deprivation hearing and notice. *DLG Fin. Corp.,* 29 F.3d at 1001. Here, there is no genuine dispute that BANA ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ *Supra* at 5-10, 24-26. Accordingly, the undisputed record shows that the brief deprivation experienced by the Account Freeze Class was not "baseless" or "unwarranted," but rather was anticipated and necessary to prevent criminal and fraudulent activity. *Mallen,* 486 U.S. at 240.

Lastly, summary judgment should be granted because Plaintiffs cannot prove, with evidence, that they were denied post-deprivation procedures, or that BANA's post-deprivation procedures were constitutionally inadequate. *See* ECF 126 at 70 (Plaintiffs must show they were "deni[ed] adequate procedural protections"). There is no material dispute that BANA employed procedures to provide Plaintiffs with notice and opportunities to regain access to their accounts. Specifically:

- There is no material dispute ███████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████ SUF ¶ 123; *see also id.* ¶ 95.
- There is no material dispute that ████████████████████████
  ███████████████████████████████████████████ *Id.* ¶ 124.
- There is further no material dispute ███████████████████████
  ███████████████████████████████████████████████████████
  ████████████ *Id.* ¶¶ 124-26; *see also id.* ¶ 120.
- *Finally,* each member of the Credit Rescission Class ████████████
  ████████████ and every member of the Account Freeze Class
  ███████████████████████████████████████████ *Id.* ¶¶ 106-08, 136-43.

The class representatives themselves further demonstrate the post-freeze process that BANA made available. For example, of the seven class representatives

for the freeze class, 

████████████████████████ SUF ¶¶ 138-40. Two others' ████

██████████████████████████████████████ *Id.* ¶¶

141-42. But ██████████████████████████████████████████

████████████████████████████████ (*id.* ¶ 7), cannot support

a due process claim against BANA. *See Altheide v. Klenczar*, 2019 WL 3413845, *5

(D. Nev. July 29, 2019) (granting summary judgment on due process claim because

"Plaintiff cannot show that the deprivation of property was committed *by* any of the

Defendants," but rather by a third party). Further, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ SUF ¶¶ 125-35.

████████████████████████████████████████████████████

██████████████████████████████ *Id.* ¶¶ 141-42.

This case presents the circumstances contemplated in *Mallen* that would obviate the necessity of pre-deprivation due process. Further, the post-deprivation procedures were sufficient to satisfy constitutional requirements. Therefore, summary judgment should be granted for BANA.

## IX. Plaintiffs Cannot Obtain Punitives Under California Civil Code § 3294.

BANA is entitled to summary judgment on Plaintiffs' request for punitive damages because Plaintiffs have no evidence that anyone at BANA acted with the requisite ill-intent in approving or implementing CFF-1, making staffing decisions for the call centers, or making decisions as to whether to implement EMV chips in EDD cards—let alone clear and convincing evidence that BANA's top executives intentionally did so as necessary to be entitled to punitive damages under California law. *See* ECF 487 at 9-10 (articulating California standard).

### A. Plaintiffs Must Show Oppression, Fraud, or Malice by Officers, Directors, or Managing Agents by Clear and Convincing Evidence.

Plaintiffs seek punitive damages based on Cal. Civ. Code. § 3294 for breach

of fiduciary duty and the implied covenant of good faith and fair dealing (Counts 5 and 9), and for a California due process claim (Count 14). *See* TAMCC ¶ 667(4); ECF 494 at 91. Punitive damages cannot be awarded under section 3294 unless Plaintiffs can prove by "clear and convincing evidence" that BANA engaged in "oppression, fraud, or malice," and that such "oppression, fraud, or malice" was "perpetrated, authorized, or knowingly ratified by an *officer, director, or managing agent*" of BANA. ECF 487 at 10 (quoting Cal. Civ. Code. § 3294(a) and (b)).

"Oppression is defined as despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Bazan v. Wal-Mart Assocs., Inc.*, 2025 WL 2231034, *15 (C.D. Cal. July 21, 2025) (quoting Cal. Civ. Code § 3294(c)(2)). "Fraud is an 'intentional misrepresentation, deceit or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.'" *Id.* (quoting Cal. Civ. Code § 3294(c)(3)). "Malice is . . . 'conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.'" *Id.* (quoting Cal. Civ. Code. § 3294(c)(1)). The "despicable conduct" required to establish oppression or malice is "conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people" and has "the character of outrage frequently associated with crime." *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 332-33 (2019). The standard requires "more than a willful and conscious disregard of the plaintiffs' interest." *Coll. Hops. Inc. v. Super. Ct.*, 8 Cal. 4th 704, 725 (1994). "When there is no evidence the defendant intended to harm the plaintiff, there must be evidence of conduct that is both willful *and* despicable." *Johnson*, 37 Cal. App. 5th at 332. Further, this standard "requires a finding of high probability so clear as to leave no substantial doubt; sufficiently strong to command the unhesitating assent of every reasonable mind." *Bazan*, 2025 WL 2231034, *14.

Goodwin Procter LLP
Attorneys at Law

45

As Plaintiffs effectively conceded in moving to compel the depositions of BANA's top two executives, there was no other evidence or testimony in the record that could meet this extremely high standard. ECF 465 at 2 (arguing executives "have unique, highly relevant information about [punitive damages] that the Bank's other employees and executives do not have"). Plaintiffs consistently maintained, and the Court has recognized, that the evidence they need to potentially meet their burden "can only be obtained" from BANA's top two executives, CEO Brian Moynihan and former COO Thomas Montag. ECF 487 at 3; *see also* ECF 298 at 11. Those depositions confirmed there is no evidence in the record that any alleged "oppression, fraud, or malice" was "perpetrated, authorized, or knowingly ratified by" Moynihan or Montag (or any other BANA officer, director, or managing agent).

### B.    Plaintiffs Cannot Obtain Punitive Damages.

**CFF-1.** Plaintiffs cannot obtain punitive damages based on the rescission of permanent credits because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUF ¶¶ 104-07). *Chamberlin v. Hartog, Baer & Hand, APC*, 2022 WL 1502587, *7 (N.D. Cal. May 12, 2022) (holding "a mistake . . . cannot support punitive damages").

Plaintiffs also cannot obtain punitive damages based on CFF-1 because there is no evidence that BANA's officers, directors, or managing agents authorized or knowingly ratified its use with the intent to oppress, fraudulent intent, or malice. It is undisputed that the CFF was put in place by BANA's antifraud experts—*not officers, directors, or managing agents*—in response to "unprecedented, enormous large-scale fraud" targeting BANA and EDD. ECF 494 at 6; *supra* at 5-10, 24-26, 41-42. Further, there is no material dispute that the CFF was implemented based on ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶¶ 46-95, 122. There also is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 84-85, 94, 117. It is further undisputed that in

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ██████████████████████ *See id.* ¶¶ 99-101.[24] And it is undisputed that, because no

4 fraud strategy can be perfect, BANA sought to balance the interests of potentially

5 legitimate cardholders by, among other things: ████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ██████ *Id.* ¶¶ 95-99, 119-36.

10      This evidence alone would doom Plaintiffs' claim for punitive damages under

11 an even lesser standard than California's because Plaintiffs have no evidence to prove

12 fraud, oppression, or malice by *anyone* at BANA. And Plaintiffs certainly cannot

13 satisfy the higher burden under section 3294 because there is simply no evidence that

14 CFF-1 was "authorized" or "knowingly ratified" by BANA's officers, directors, or

15 managing agents with oppression, malice, or fraudulent intent.

16      Under California law, in order to pursue punitive damages, "the evidence must

17 permit a clear and convincing inference that within the corporate hierarchy

18 authorized persons acted despicably in willful and conscious disregard of the rights

19 or safety of others." *In re Pac. Fertility Ctr. Litig.*, 2021 WL 2476799, *2 (N.D. Cal.

20 June 17, 2021). Here, the purported "inferences" about the involvement of BANA's

21 top two executives that allowed Plaintiffs to take their depositions were flatly refuted

22 by the testimony. ████████████████████████████████████

23 ████████████████████████████████████████████████

24 SUF ¶ 110. Further, he testified ████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████ *Id.* ¶ 111.

27 [24] ████████████████████████████████████████████

28 ████████████████████████████████████ *See* SUF ¶ 121.

1  ▮▮▮▮▮ *Id.* ¶ 112. ▮▮▮

2  ▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮ *Id.* ¶ 113. ▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮

5  ▮ *Id.* ¶ 114.

6  ▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮

8  ▮▮▮ Plaintiffs are left where they were before the depositions: with

9  nothing but speculation, which cannot support a claim under section 3294. *See In re*

10  *Pac. Fertility Ctr.*, 2021 WL 2476799, *2 (rejecting punitive damages claim based

11  on emails referencing potential discussions with management, without any evidence

12  of whether those discussions actually occurred or what information was conveyed).

13  **Call centers.** Summary judgment also must be entered for BANA because

14  there is simply no evidence that any BANA officer, director, or managing agent

15  authorized or ratified understaffing of the Claims Call Center, much less that they did

16  so with oppression, malice, or fraudulent intent. ▮▮▮▮

17  ▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮

20  SUF ¶ 222; *see also id.* ¶¶ 212-20, 225. ▮▮▮

21  ▮▮▮▮▮▮▮▮

22  ▮▮ *See id.* ¶¶ 212-27. Rather, ▮▮▮

23  ▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮

25  ▮▮ *Id.* ¶ 226. ▮▮▮

26  ▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮ *Id.* ¶¶ 212-20. ▮

1 ██████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 ████████████████████████████████████████ *Id.* ¶¶ 212-

5 27.[26]

6      **EMV chips.** Summary judgment also must be entered for BANA with respect

7 to any claim for punitive damages based on the lack of EMV chips. There is simply

8 no evidence that anyone at BANA—much less its officers, directors, or managing

9 agents—intentionally withheld EMV chips from EDD cardholders with oppression,

10 malice, or fraudulent intent. Rather, the undisputed record shows that BANA did not

11 include EMV chips on EDD cards because the EDD Agreement did not require them,

12 and because ███████████████████████████████████████████

13 ████████████████████ *Id.* ¶¶ 11-16, 232-40; *supra* § II. On this record,

14 Plaintiffs clearly cannot satisfy their burden to show entitlement to punitive damages.

15 **X.    Plaintiffs Cannot Obtain Punitives on Their Federal Due Process Claim.**

16      Plaintiffs' request for punitive damages based on their federal due process

17 claim (Count 13) on behalf of the Credit Rescission and Account Freeze Classes fares

18 no better. Punitive damages cannot be awarded on this claim unless Plaintiffs can

19 prove that BANA's conduct was "driven by evil motive or intent, or . . . involved a

20 reckless or callous indifference" to Plaintiffs' federal constitutional rights. ECF 487

21 at 9 (quoting *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005)). Plaintiffs have failed

22 to present any evidence that could satisfy this standard.

23 ████████████████████████████████████████████ SUF

24 ¶¶ 104-05. This precludes the claim itself and, of course, punitive damages too.

25 [25] *See* Class Cert. Mot. at 12 (citing PX 77 and PX 134)

26 [26] ████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████████████████ SUF ¶¶ 223-24; *see also id.* ¶¶ 43-44, 212-227.



1  *Aguilar v. Dixon*, 1995 WL 319621, *3 (N.D. Ill. May 25, 1995) (punitive damages

2  under § 1983 "not assessed . . . for mere negligence or mistake.").[27]

3         With respect to the Account Freeze Class, there is simply no evidence to

4  support any "evil motive or intent, or . . . reckless or callous indifference" by BANA

5  to freeze accounts. *Supra* at 5-10, 23-24, 41-44. To the contrary, there is no material

6  dispute that █████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████ *Id*. Further,

9  there is no material dispute that BANA attempted to balance the interests of

10 potentially legitimate cardholders by, among other things, ████████████

11 ███████████████████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████ *Supra*

14 at 9-10, 43-44. Based on this record, summary judgment must be entered for BANA

15 because Plaintiffs cannot show that it acted with evil motive or intent, or reckless or

16 callous indifference to EDD cardholders' rights. *See Dang*, 422 F.3d at 807.

17                                    **<u>CONCLUSION</u>**

18         For each and all of the foregoing reasons, summary judgment should be

19 granted for BANA on the aforementioned claims.

20

21 ////

22 ////

23 ////

24 ─────────────────────

25 [27] █████████████████████████████████████████████████████

26 ████████     ████████████████████████████████████████████

27 ████████████████████████████████████████████ *Id.* ¶ 108.
   Such voluntary, prompt remedial measures further preclude punitive damages. *See*

28 *In re Rivera,* 345 B.R. 229, 235 (Bankr. E.D. Cal. 2005) ("prompt remediation of the
   problem mitigates against the imposition of punitive damages").

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

BANA'S MEM. ISO MOT. FOR PARTIAL SJ          CASE NO. 21-MD-02992-GPC-MSB

Dated: October 17, 2025          Respectfully submitted,

                        By:    */s/ James W. McGarry*

                               JAMES W. MCGARRY (*pro hac vice*)
                               *JMcGarry@goodwinlaw.com*
                               **GOODWIN PROCTER LLP**
                               100 Northern Avenue
                               Boston, MA 02210
                               Tel.: +1 617 570 1000
                               Fax: +1 617 523 1231

                               SABRINA M. ROSE-SMITH (*pro hac vice*)
                               *SRoseSmith@goodwinlaw.com*
                               MATTHEW L. RIFFEE (*pro hac vice*)
                               *MRiffee@goodwinlaw.com*
                               KEITH LEVENBERG (*pro hac vice*)
                               *KLevenberg@goodwinlaw.com*
                               **GOODWIN PROCTER LLP**
                               1900 N St. NW
                               Washington, DC 20036
                               Tel: +1 202 346 4000
                               Fax: +1 202 346 4444

                               LAURA G. BRYS (SBN 242100)
                               *LBrys@goodwinlaw.com*
                               **GOODWIN PROCTER LLP**
                               601 S Figueroa St., Suite 4100
                               Los Angeles, CA 90017
                               Tel.: +1 213 426 2500
                               Fax: +1 617 346 4444

                               VALERIE A. HAGGANS (*pro hac vice*)
                               *VHaggans@goodwinlaw.com*
                               LINDSAY E. HOYLE (*pro hac vice*)
                               *LHoyle@goodwinlaw.com*
                               **GOODWIN PROCTER LLP**
                               620 Eighth Avenue
                               New York, NY 10018
                               Tel: +1 212 813-8800
                               Fax: +1 212 355-3333

                               YVONNE W. CHAN (*pro hac vice*)
                               *YChan@jonesday.com*
                               **JONES DAY**
                               100 High Street
                               Boston, MA 02110
                               Tel.: +1 617 960 3939
                               Fax: +1 617 449 6999

                               JANICE P. BROWN (SBN 114433)
                               *jbrown@myersnave.com*
                               MATTHEW B. NAZARETH (SBN 278405)
                               *mnazareth@myersnave.com*
                               **MEYERS NAVE**

600 B Street, Suite 1650
San Diego, CA 92101

Attorneys for Defendant
BANK OF AMERICA, N.A.

## ATTACHMENT A

|  | Claim Denial | Credit Rescission | Account Freeze | Customer Service | EMV Chip |
|---|:---:|:---:|:---:|:---:|:---:|
| Count 1 EFTA | ✓ | ✓ |  |  |  |
| Count 2 CCPA |  |  |  |  | ✓ |
| Count 3 CCRA | (abandoned in TAMCC) | | | | |
| Count 4 UCL | ✓ | ✓ | ✓ |  |  |
| Count 5 Negligence | ✓ | ✓ | ✓ | ✓ | ✓ |
| Count 6 Negligent Hiring, Etc. | (not certified for class treatment) | | | | |
| Count 7 Breach of Contract | (not certified for class treatment) | | | | |
| Count 8 Breach of Implied Contract | (abandoned in TAMCC) | | | | |
| Count 9 Breach of Implied Covenant | ✓ | ✓ | ✓ | ✓ |  |
| Count 10 Breach of Fiduciary Duty | ✓ | ✓ | ✓ |  | ✓ |
| Count 11 Breach of Contract | (abandoned in TAMCC) | | | | |
| Count 12 Breach of Implied Covenant | (abandoned in TAMCC) | | | | |
| Count 13 Due Process (Federal) |  | ✓ | ✓ |  |  |
| Count 14 Due Process (California) |  | ✓ | ✓ |  |  |

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the clerk of the court for the United States District Court for the Southern District of California by using the CM/ECF system on October 17, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify under penalty of perjury that the foregoing is true and correct.

Executed:    October 17, 2025    /s/ *James W. McGarry*