JAMES W. MCGARRY (*pro hac vice*)
*JMcGarry@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax: +1 617 523 1231

SABRINA M. ROSE-SMITH (*pro hac vice*)
*SRoseSmith@goodwinlaw.com*
MATTHEW L. RIFFEE (*pro hac vice*)
*MRiffee@goodwinlaw.com*
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

Attorneys for Defendant
**BANK OF AMERICA, N.A.**

[*ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK*]

# UNITED STATED DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION | Case No. 21-MD-02992-GPC-MSB<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    April 17, 2026<br>Time:    1:30 p.m.<br>Ctrm:    12A – 12th Floor<br>Judge:    Hon. Gonzalo P. Curiel<br><br>ORAL ARGUMENT REQUESTED<br><br>FILED PROVISIONALLY UNDER SEAL PURSUANT TO STIPULATED PROTECTIVE ORDER |

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

**Page**

I.      THE EDD AGREEMENT AND ACCOUNT AGREEMENTS ..................... 1

II.     PUA EXPANDED BANA'S EDD PREPAID CARD PROGRAM. ............. 6

III.    PUA WAS TARGETED BY FRAUDSTERS. ................................................ 8

    A. Fraudsters Targeted EDD and PUA. ........................................................ 8

    B. Fraudsters Targeted BANA's Claims System. ....................................... 12

IV.     BANA'S CLAIM FRAUD FILTER ....................................................... 14

V.      THE ACCOUNT-FREEZE RESPONSE ................................................ 21

VI.     THE COMPENSATION PAID TO CLASS MEMBERS ........................... 26

VII.    PLAINTIFFS' EXPERTS' OPINIONS ................................................. 34

VIII.   BANA'S CALL CENTERS ................................................................ 39

IX.     MAGNETIC STRIPES AND EMV CHIPS ........................................... 42

X.      PLAINTIFFS' REMAINING ALLEGATIONS ........................................ 45

Pursuant to Fed. R. Civ. P. 56(c) and L.R. 7.1(f)(1), Defendant Bank of America, N.A. (BANA) submits this separate statement of undisputed material facts (SUF) in support of its Motion for Partial Summary Judgment.[1]

| UNDISPUTED MATERIAL FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| **I. THE EDD AGREEMENT AND ACCOUNT AGREEMENTS** | |
| 1. The Employment Development Department (EDD) administers federal and state unemployment insurance (UI) in California. <br> DX 39 at -2355-56, -2373, -2412; DX 40.A at -1500. | |
| 2. EDD made benefits available in two ways: via paper check or via a prepaid debit card (prepaid card) issued by BANA. <br> DX 14.B 32:10-14, 76:22-24; RJN 13 at 6; *see, e.g.*, DX 14.AF 58:19-60:13; DX 16 at No. 3; DX 14.T 83:5-84:1; DX 14.W 242:1-7; DX 14.AC 61:8-12. | |
| 3. EDD benefits recipients could choose whether to receive benefits via check or via a prepaid card. <br> RJN 13 at 6; *see, e.g.*, DX 14.B 32:10-14, 76:22-24; DX 14.AF 60:9-13; DX 16 at No. 3; DX 14.T 83:5-84:1; DX 14.W 242:1-7; DX 14.AC 61:8-12. | |
| 4. In 2010, EDD issued a Request for Proposal (RFP) with requirements for prepaid card services for its UI program. BANA submitted a proposal, EDD selected BANA, and EDD and BANA entered into a contract. <br> DX 1 ¶ 5; *see* DX 14.B 54:19-24. | |
| 5. In 2015, EDD issued an RFP to extend the contract and to specify new requirements for its prepaid card program. BANA submitted a proposal, | |

---

[1] DX # are exhibits to the Declaration of Laura G. Brys in Support of BANA's Mot. for Partial Summary Judgment. RJN # are exhibits to the Declaration of Laura G. Brys in Support of BANA's Request for Judicial Notice (RJN).

Goodwin Procter LLP
Attorneys at Law

| | |
|---|---|
| EDD selected BANA, and EDD and BANA entered into a new contract. The 2010 contract, as modified by the 2015 RFP, collectively, are the EDD Agreement.<br><br>DX 39 at -2286, -2349-523, -2524-837; DX 14.B 54:12-55:20; DX 1 ¶ 6. | |
| 6. ███████████████████<br><br>DX 157 at -0333; DX 14.Q 72:22-73:2, 112:16-20; DX 11.B ¶¶ 17, 29-30; DX 1 ¶ 7; *see* DX 39 at -2356, -2373, -2694; DX 14.Y 52:21-53:8. | |
| 7. The EDD Agreement stated that BANA should "flag . . . account[s] for further review" to "alert [EDD] of the possibility of benefits enrollment fraud and allow [EDD] to conduct further investigation."<br><br>DX 39 at -2760. | |
| 8. BANA typically ████████████<br><br>DX 4 ¶ 16; DX 159 at -2326; DX 11.B ¶ 49; DX 14.Y 165:8-166:16. | |
| 9. BANA did not ██████████████<br><br>DX 4 ¶ 16; DX 159 at -2326; DX 11.B ¶ 49; *see* DX 14.Y 51:25-52:20, 165:8-166:16. | |
| 10. The EDD Agreement did not require | |

| | | |
|---|---|---|
| 1 | EMV chips. | |
| 2 | DX 39 at -2462, -2741; DX 14.S 65:15-20, 78:13-22; *see* DX 5 ¶ 11. | |
| 3 | 11. The EDD Agreement stated that EDD prepaid cards must be equipped with "no less than an ISO 7811-compliant high coercivity magnetic strip." | |
| 4 | | |
| 5 | | |
| 6 | DX 39 at -2462, -2741; DX 1 ¶ 17. | |
| 7 | 12. Throughout the EMV Class period, BANA's EDD prepaid cards included no less than ISO 7811-compliant high coercivity magnetic stripes. | |
| 8 | | |
| 9 | DX 39 at -2741, -2850; DX 14.C 120:14-16, 125:12-127:1; DX 14.N 182:15-22,183:11-184:2. | |
| 10 | | |
| 11 | 13. ISO 7811 does not require EMV chips. | |
| 12 | | |
| 13 | DX 39 at -2850; DX 14.C 120:14-16, 125:12-126:12. | |
| 14 | 14. The EDD Agreement stated that any "significant change . . . to the project scope" or amendment to the EDD Agreement required EDD's prior approval and an executed modification. | |
| 15 | | |
| 16 | | |
| 17 | DX 39 at -2423, -2651; DX 14.B 186:8-188:4. | |
| 18 | | |
| 19 | 15. Based on the contract provisions referenced in SUF ¶ 14. ███████████ | |
| 20 | ████████████████████ | |
| 21 | DX 1 ¶ 18; DX 14.B 186:8-188:4; DX 39 at -2423, -2462, -2651, -2741; DX 14.S 65:15-20, 78:13-22; *see* DX 117 at -8289. | |
| 22 | | |
| 23 | 16. In March 2021, EDD and BANA entered into a letter agreement to modify the "ISO 7811-compliant" requirement. It stated that ███████████ | |
| 24 | | |
| 25 | | |
| 26 | ████████████████████ | |
| 27 | | |
| 28 | DX 39 at -2850; *see* DX 14.B 187:22- | |

| | |
|---|---|
| 190:17. | |
| 17. In August 2020, ███████████████ | |
| DX 39 at -2845-49; DX 54; DX 14.B 68:17-70:5. | |
| 18. BANA did not charge EDD for its services under the EDD Agreement. | |
| DX 39 at -2286, -2413, -2458, -2738; DX 1 ¶ 13. | |
| 19. The EDD Agreement provided for a "revenue share," derived from the ███████████████ which was split 50/50 between EDD and BANA. | |
| DX 14.B 46:11-49:11; DX 1 ¶ 13; *see* DX 170; DX 55. | |
| 20. The EDD Agreement stated that a "Trust Account" for EDD prepaid funds would be used "[f]or the purpose of calculating [EDD's] revenue share." | |
| DX 39 at -2482, -2518, -2832-37. | |
| 21. BANA's estimated total losses in support of the EDD program ███████████ were approximately ███████. | |
| DX 155; DX 55; DX 1 ¶ 12. | |
| 22. BANA's expenses for the EDD prepaid program in ███ were approximately ███████ and its losses were approximately ███████. | |
| DX 1 ¶ 12; DX 170; DX 154; DX 125. | |
| 23. In late 2023, EDD and BANA agreed that the EDD Agreement would not be renewed, and that BANA would cease providing prepaid cards for EDD. | |
| DX 3 ¶ 15; RJN 9. | |
| 24. EDD stopped funding benefits | |

| | |
|---|---|
| through BANA-issued cards on February 15, 2024. | |
| DX 3 ¶ 17; RJN 9. | |
| 25. By April 30, 2024, BANA closed all EDD prepaid cards and accounts. | |
| DX 1 ¶ 10; *see* RJN 9. | |
| 26. The EDD Agreement expired in July 2025. | |
| DX 1 ¶ 10. | |
| 27. BANA had a contract (Account Agreement) with each EDD benefits claimant that was provided with each prepaid card and was also available online. | |
| DX 40.A; DX 40.B; DX 1 ¶ 8. | |
| 28. The Account Agreement said that BANA could freeze EDD prepaid cards if it "suspect[ed] irregular, unauthorized or unlawful activities may be involved with [the] Account," and that BANA could maintain the freeze "pending an investigation of such suspected activities." | |
| DX 40.A § 2. | |
| 29. The Account Agreement also said "[BANA] may restrict access to your Card if [BANA] notice[s] suspicious activity." | |
| DX 40.A § 3. | |
| 30. The Account Agreement stated "[i]f funds to which you are not entitled are deposited to your Account by mistake or otherwise, [BANA] may deduct these funds from your Account." | |
| DX 40.A § 2. | |
| 31. Section 5 of the Account Agreement stated "[y]ou will . . . [n]ot disclose your PIN or record it on your Card or otherwise make it available to any one else." It further stated "you will . . . [p]romptly notify us of any loss or theft of your Card or PIN[] and [b]e liable for | |

| | |
|---|---|
| the authorized or permitted use of your Card and PIN." DX 40.A § 5. | |
| 32. The Account Agreement limited BANA's liability for unauthorized transactions to the "face amount of any unauthorized card transaction," and stated that BANA is "not liable for any claims of special, indirect or consequential damages." DX 40.A § 9. | |
| 33. The Account Agreement did not include requirements for call centers or cards with EMV chips. DX 40.A. | |
| **II. PUA EXPANDED BANA'S EDD PREPAID CARD PROGRAM.** | |
| 34. The U.S. unemployment rate rose from 4.4% in March 2020 to 14.8% in April 2020, and to over 16% in California. RJN 7 at 7; RJN 15 at 6-7. | |
| 35. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which created the Pandemic Unemployment Assistance program (PUA). RJN 12 at 14-15; DX 11.B ¶ 25; DX 8.A ¶¶ 25-26. | |
| 36. PUA extended unemployment benefits to those not previously eligible under traditional unemployment systems, including self-employed individuals, contract workers, gig workers, and under-employed workers. RJN 12 at 14-15; DX 11.B ¶ 25; DX 8.A ¶¶ 25-26; RJN 15 at 5-6. | |
| 37. PUA allowed claimants to file for benefits without former employer verification of wage or salary history. *See* DX 4 ¶ 20; RJN 12 at 25; DX 11.B ¶¶ 25-26; DX 8.A ¶ 27. | |

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

BANA'S SUF ISO MOT. FOR PARTIAL SJ                    CASE NO. 21-MD-02992-GPC-MSB

| | |
|---|---|
| 38. Beginning mid-March 2020, EDD loosened its own requirements for verification of former employment, prioritizing rapid distribution of benefits even though it acknowledged the cost of an increased risk of fraud. <br><br> RJN 12 at 28-29; DX 11.B ¶¶ 26-27. | |
| 39. In March 2020, there were approximately ▇▇▇ active EDD prepaid cardholders, with a total monthly fund load of about ▇▇▇ <br><br> DX 167; DX 11.B ¶ 31; DX 111 at -4701. | |
| 40. By ▇▇▇, the total monthly fund load on EDD prepaid cards was over ▇▇▇. <br><br> DX 167. | |
| 41. By ▇▇▇, there were approximately ▇▇▇ active EDD prepaid cardholders. <br><br> DX 111 at -4701; DX 11.B ¶ 31. | |
| 42. Between ▇▇▇, BANA loaded approximately ▇▇▇ in benefits onto more than ▇▇▇ EDD prepaid cards. <br><br> DX 119. | |
| 43. Brad Garfield, the executive responsible for overseeing commercial cards product management, testified ▇▇▇ <br><br> DX 14.I 21:15-18, 25:18-28:11, 133:19-134:6, 203:18-205:16. | |
| 44. In Spring 2020, ▇▇▇ <br><br> DX 106; DX 137; DX 1 ¶ 22; DX 14.B 31:8-32:9. | |

| | |
|---|---|
| 45. In Spring 2020, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ DX 14.B 31:8-32:22, 78:19-79:7; DX 1 ¶ 23; *see* DX 110; DX 166; DX 138; DX 93; DX 115 at -7034. | |

## III. PUA WAS TARGETED BY FRAUDSTERS.

### A. Fraudsters Targeted EDD and PUA.

| | |
|---|---|
| 46. Congress, federal regulators, and California's State Auditor (CA Auditor) all concluded that the PUA and failings by UI benefits administration agencies (including EDD) resulted in fraud losses that other agencies estimated reached at least $200 billion. *See* RJN 12 at 28-46, RJN 2 at 1-3; DX 11.B ¶¶ 32-36. | |
| 47. Some estimated that California incurred approximately $32 billion in fraud losses, and the CA Legislative Analyst's Office attributed the "[o]verwhelming majority" of fraud to PUA's "lower standard of identity and wage information" "due to federal policymakers' decision to prioritize immediate assistance." RJN 16; RJN 11 at 5; *see also* DX 11.B ¶ 21. | |
| 48. The Department of Labor (DOL) reported that PUA had an improper payment rate of 35.9%. RJN 12 at 6, 22, 27. | |
| 49. The U.S. House Ways and Means Committee reported in 2025 that improper PUA payments were estimated to be up to $400 billion nationwide, approximately a 40% loss. RJN 14 at 1; RJN 19 at 1, 4. | |
| 50. In September 2024, the U.S. House Oversight Committee reported that "EDD | |

| | |
|---|---|
| staff . . . adopted a 'pay and chase' model and processed incoming claims quickly; EDD staff understood that less time should be spent on checking eligibility of claimants as this would slow down paying out benefits. This led to many bad actors like international organized crime and individual criminals cashing in while eligible claimants were unable to obtain their benefits." <br><br> RJN 12 at 7, 28. | |
| 51. The CA Auditor reported in January 2021 that EDD failed to implement fraud detection or identity verification technology until late October 2020, ignored repeated warnings from DOL's Office of Inspector General, and approved approximately $10.4 billion in benefits with no identity verifications. <br><br> RJN 2 at 1, 8-9, 14-17, 20, 29. | |
| 52. The CA Auditor discovered and reported that EDD had mailed at least 51 million documents to benefits claimants between 2017 and 2020 that included their full Social Security numbers. <br><br> RJN 1 at 1-2. | |
| 53. The Secret Service issued an alert in May 2020 stating that a Nigerian fraud ring was exploiting the pandemic to commit "large-scale fraud against state unemployment insurance programs." <br><br> RJN 5; DX 4 ¶ 13. | |
| 54. By Summer 2020, BANA was notified by federal, state, and local law enforcement that personal information stolen during past data breaches at other companies and sold on the dark web was being used by fraudsters to apply for PUA and other UI benefits. ▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ <br><br> RJN 5; RJN 4 at 1; DX 134 at -2982; DX 136 at -0162; DX 4 ¶¶ 11-15; DX 11.B ¶¶ 32-36. | |

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

BANA's SUF ISO Mot. for Partial SJ    CASE NO. 21-MD-02992-GPC-MSB

| | |
|---|---|
| 55. BANA deployed ███████ ████████████████ ███████ | |
| DX 151; DX 14.B 99:16-19. | |
| 56. Because the pandemic-related fraud targeted federal and state funds, BANA considered itself obligated to take measures to protect taxpayers. | |
| *See* DX 134 at 2981-83; DX 53; DX 153; DX 134; DX 100; DX 80. | |
| 57. BANA's antifraud experts in its Global Financial Crimes (GFC) group conducted their own investigation into the reports of pandemic-related fraud. By Summer 2020, GFC observed that the fraud was facilitated by: ████████████ ████████████████████████ ████████████████████████ ███████████████████ | |
| DX 14.Q 113:4-113:8; DX 102; DX 4 ¶ 20; DX 11.B ¶¶ 25, 32-36. | |
| 58. GFC, along with BANA's Global Information Security (GIS) team, conducted research that revealed ████████████████████ ████████████████████████ ████████████████████████ ███████████████████ | |
| DX 4 ¶¶ 17-20; DX 102; DX 88; DX 87; DX 11.B ¶ 46. | |
| 59. By Summer 2020, ████████████ ████████████████████████ ████████████████████████ | |
| DX 4 ¶ 18; *see* RJN 22; RJN 21; DX 11.B ¶ 46. | |
| 60. In Summer 2020, ████████████ ████████████████████████ ████████████████████████ ████████████████████████ | |

DX 4 ¶ 18; RJN 22; RJN 21; RJN 12 at
45; DX 11.B ¶ 46.

61. In Summer 2020, GFC analyzed data
to identify

*See, e.g.*, DX 98, DX 136, DX 83;
DX 14.H 15:9-17:1; DX 14.Q 134:4-10;
DX 14.AD 31:9-20, 35:3-18; DX 4
¶¶ 17-20; DX 11.B ¶¶ 50-51.

62. In July 2020, based on GFC's
investigations,

DX 79; DX 134 at -2985; DX 14.B
82:13-25; DX 1 ¶ 26; DX 4 ¶ 21.

63. Beginning in July 2020,

DX 4 ¶ 21; DX 134 at -2985; *see, e.g.*,
DX 77; DX 161; DX 162; DX 14.B
124:16-19; DX 11.B ¶ 41.

64. BANA came to the belief by August
2020 that

DX 4 ¶ 22; DX 14.Q 105:8-109:15;
DX 14.B 126:13-127:12; DX 168; *see*
RJN 15 at 15, 49-55.

65. On September 18, 2020,

DX 77; DX 161; DX 162; DX 142; DX 14.B 124:16-19; DX 134 at -2985; DX 100 at -4522; *see also* DX 61; DX 97; DX 4 ¶ 21.

66. On September 25, 2020, on EDD's direction, BANA froze approximately ███ EDD accounts ███████████

DX 14.B 124:16-24; DX 134 at -2985; DX 11.B ¶ 41.

67. ███████████████████████

DX 79 at -6223; DX 11.B ¶ 41.

68. In mid-September 2020, California's governor shut down EDD for two weeks, so that EDD could ████████████████████

RJN 8; DX 84 at -7750; DX 112; DX 4 ¶ 22; DX 14.Q 109:7-109:10; *see also* DX 11.B ¶ 26.

69. Throughout the pandemic, FinCEN and the Secret Service issued alerts to BANA and others about rising UI fraud, encouraging banks to perform additional inquiries and investigations to identify "red flags" indicating fraud, including suspicious, rapid disbursements from benefits accounts.

*See e.g.*, RJN 3; RJN 5; *see* SUF ¶ 53.

## B. Fraudsters Targeted BANA's Claims System.

70. EFTA and Reg E protect prepaid card users from certain losses if the use was unauthorized. Unauthorized transaction claims, and certain other account errors,

are defined by Reg E as "error claims."
*See* 15 U.S.C. § 1693 *et seq.*; 12 C.F.R. pt. 1005; *see also* DX 10.A ¶¶ 20-22.

71. Prior to the pandemic and through September 2020, ███████████████
█████████████████████████
█████████████████████████
█████████████████████████
█████████████████████████
█████████████████████████
█████████████████████████
DX 14.E 59:8-61:9; DX 50 at -2863-66; DX 14.G 19:6-12; DX 14.Y 142:3-25.

72. In January 2020, BANA received approximately ███ error claims per week from EDD prepaid cardholders; by September 2020, BANA received approximately █████ error claims per week, █████████████████████
DX 30.A at No. 32; DX 14.E 60:25-61:9.

73. ████████████████████████
█████████████████████████
█████████████████████████
DX 14.E 59:8-61:9; DX 14.G 32:12-33:3; DX 14.M 55:13-58:8; DX 14.Y; *see* DX 10.A ¶ 46.

74. ████████████████████████
█████████████████████████
*See* DX 4 ¶¶ 26, 30; DX 14.Q 145:4-149:19; DX 14.E 60:25-61:9; DX 133; DX 145 at -0517; DX 11.B ¶ 46.

75. BANA's investigations determined many EDD error claims were likely fraudulent based on certain factors including: ███████████████████
█████████████████████████
█████████████████████████
█████████████████████████
█████████████████████████

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

| | |
|---|---|
| DX 62; DX 98; DX 136; DX 83; DX 146; DX 86. | |
| 76. By late Summer 2020, BANA's investigations determined that ███████████████████████████████████████████████████ DX 84; DX 171 at -7599-60; DX 140; DX 14.Q 145:4-149:19; DX 14.AD 131:9-132:2; DX 14.L 293:12-15; DX 4 ¶ 26; DX 11.B ¶ 48; DX 10.A ¶ 43; DX 14.Y 204:13-22. | |
| **IV. BANA'S CLAIM FRAUD FILTER** | |
| 77. AML laws require BANA to monitor transactions, report on suspicious financial activity, and deter criminals where fraudulent activity is suspected. 31 U.S.C. §§ 5311-5336; 12 U.S.C. §§ 1829b, 1951-1960; 31 C.F.R. pt. 1020; DX 14.H 16:18-17:12; DX 4 ¶ 4; DX 11.B ¶¶ 16, 22. | |
| 78. BANA also has safety-and-soundness obligations that require it to respond to frauds directed against BANA itself. 12 C.F.R. pt. 30; DX 10.A ¶¶ 14-19; DX 14.Y 169:24-170:2. | |
| 79. By late Summer 2020, ████████████████████████████████████████████ DX 4 ¶¶ 26-29; DX 14.Q 75:9-77:18, 98:14-21, 145:4-149:19; DX 14.AD 131:9-132:2; DX 14.L 293:12-15; DX 84; DX 11.B ¶ 48. | |
| 80. In late Summer 2020, GFC and GIS were tasked with ████████████ | |

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

█████████████████████████████████

DX 75; DX 14.Q 42:22-45:3, 299:12-301:19; DX 14.L 173:2-174:9; DX 14.S 136:17-137:3, 138:17-140:7, 141:15-142:21, 143:10-144:9, 145:24-146:12; DX 14.A 136:3-137:14; DX 4 ¶ 29; *see* DX 83, DX 146.

81. Based on █████████████████ GFC and GIS determined that the following characteristics were indicative of fraud:

█████████████████████████████████

DX 83; DX 146; DX 86; DX 62; DX 98; DX 136; DX 4 ¶ 30; *see* SUF ¶ 31.

82. The indicia of fraud identified by GFC and GIS were ultimately developed into the fraud strategy known as the Claim Fraud Filter (CFF). █████████████████████████

DX 145; DX 14.Q 97:17-99:20, 177:1-181:13; DX 14.H 52:3-53:8; DX 14.AA 31:17-22; DX 4 ¶¶ 31-32.

83. The development of the CFF was led by █████████████████

DX 14.H 16:18-17:12, 43:13-25; DX 14.Q 73:40-75:3; DX 14.AD 71:21-78:9,

| | |
|---|---|
| 1 | 235:15-23. |
| 2 | 84. Based on their research and review of claim and account data, ███████ |
| 3 | ████████████████████ |
| 4 | ████████████████████ |
| 5 | ████████ |
| 6 | DX 14.H 27:5-23, 47:5-17; DX 4 ¶ 33; DX 14.Y 55:2-56:19; DX 11.B ¶ 52; *see* DX 149. |
| 7 | |
| 8 | 85. ██████████████████ |
| 9 | ████████████████████ |
| 10 | ████████████████████ |
| 11 | ████████████████████ |
| 12 | ████████ DX 14.E 18:17-25; *see* DX 149. |
| 13 | 86. ██████████████████ |
| 14 | ████████████████████ |
| 15 | ████████████████████ |
| 16 | ████████████████████ |
| 17 | ████████████████████ |
| 18 | DX 4 ¶ 34; DX 149; DX 14.H 68:10-76:11; DX 14.A 128:8-130:7. |
| 19 | |
| 20 | 87. ███████████████. One— known as CFF-1 or Indicator 1—was triggered if a cardholder claimed that a |
| 21 | ██████ ATM transaction was |
| 22 | unauthorized ████████████ |
| 23 | DX 28 at No. 28; DX 86; DX 143; |
| 24 | DX 71 at -7488; DX 158 at -0209; DX 14.AA 30:3-6. |
| 25 | 88. ██████████████████ |
| 26 | ████████████████████ |
| 27 | ████████████████████ |
| 28 | ████████████████████ |

| | |
|---|---|
| DX 85; DX 86; DX 101; DX 14.L 192:14-194:8; DX 14.H 52:3-53:8; DX 14.Q 187:10-24; DX 4 ¶ 30. | |
| 89. For BANA EDD prepaid cards, ███████████████████ *See* DX 14.E 289:7-20; DX 144. | |
| 90. ███████████████████ *See* DX 14.S 50:22-51:7; DX 12.A ¶ 103; DX 12.B ¶¶ 39, 43-44. | |
| 91. GFC determined that ███████████████████ DX 139 at -6913-14; DX 79 at -6222; DX 86; DX 136; DX 14.Q 97:6-98:21, 115:9-117:24; DX 4 ¶¶ 26-28; *see* DX 11.B ¶ 52. | |
| 92. GFC also determined that ███████████████████ DX 139 at -6913-14; DX 79 at -6222; DX 63 at -9846, -9850; DX 156; DX 183; DX 4 ¶¶ 32-33; DX 14.Q 145:4-147:6; DX 14.L 228:11-229:2; DX 14.D 125:23-127:14; *see also* SUF ¶ 65. | |
| 93. From September 28, 2020 through on or around June 8, 2021, BANA applied the CFF ███████████████████ DX 28 at No. 28; DX 14.E 18:9-19:17; DX 14.Q 19:16-20:1. | |
| 94. Because BANA believed that ███████████████████ | |

DX 14.Q 178:1-181:25; DX 62; DX 14.H 27:20-22; *see* DX 4 ¶¶ 33, 35.

95. After the claim was closed, BANA mailed the cardholder a letter informing them of the claim decision and the reasons for it, and told the cardholder they could request reconsideration of the claim if they disagreed.

DX 28 at No. 28; DX 52.

96. BANA's

DX 177 at -5876; DX 14.E 247:16-248:14; *see also* 12 C.F.R. § 1005.11(e).

97. The claim denial letter sent to EDD cardholders whose claims triggered the CFF said: "If you contact us by phone or in writing, you may request that we reopen your claim for further consideration. You will be asked to give us information, including any documents you may have, to support your claim."

DX 52; *see* DX 14.E 276:14-277:19.

98. BANA recognized no fraud strategy can be 100% effective at identifying only fraudulent activity.

DX 14.L 274:4-20; DX 4 ¶ 7; DX 10.D 240:18-25; *see* DX 14.Q 165:1-10; DX 11.B ¶ 59.

99.

DX 14.L 226:11-227:16; *see* DX 14.Q 284:18-285:13; DX 4 ¶ 35.

100.

DX 109; DX 4 ¶ 35; *see also* DX 95 at -7099; DX 97 at -8437; DX 107.

101. ███████████████████████
██████████████████████████████
█████████████████████

DX 109; DX 4 ¶ 35; *see also* DX 95 at -7099; DX 97 at -8437; DX 107.

102. ███████████████████████
██████████████████████████████
██████████████████████████████
█████████████

DX 180; DX 4 ¶ 35.

103. ███████████████████████
██████████████████████████████
██████████████████████████████
████████████

DX 4 ¶ 31.

104. On September 28, 2020, the CFF was ████████████████████████
██████████████████████████████
██████████████████████████

DX 76 at -7224; DX 135 at -8995; DX 14.I 246:13-249:14; DX 14.G 113:25-114:8.

105. The September 28, 2020 rescission of permanent credits ███████████
██████████████████████████████

DX 135 at -8995; DX 14.I 246:13-249:8; DX 14.G 113:25-114:8.

106. BANA corrected the ████████████
██████████████████████████████

DX 31 at No. 39; DX 76 at -7224.

107. Every member of the Credit Rescission Class, by definition, has been re-credited for the full amount of their rescinded permanent credit and also ████████████████████████████
██████████████████████████████

ECF 494 at 42; DX 14.AB.1 ¶¶ 32, 36, 65; DX 43.A at -2557; DX 7 ¶ 6c; SUF ¶¶ 106, 172.

| | |
|---|---|
| 108. All Credit Rescission Class members' whose accounts were accidentally frozen on September 28, 2020 were ███████████. DX 92; *see* DX 27 at Nos. 2&6; SUF ¶¶ 106-107. | |
| 109. BANA stopped using the CFF to ███████████████████. DX 28 at No. 28; DX 4 ¶ 37. | |
| 110. BANA CEO Brian Moynihan testified ████████████████ ████████████████ ████████████████ DX 14.X 14:18-21, 72:18-24, 73:9-19, 81:16-83:17, 88:14-89:20, 91:7-92:25, 105:4-12, 107:23-111:6, 132:23-133:15, 138:14-23, 139:4-8; *see id.* 97:1-8, 130:8-131:13, 198:7-9, 232:7-233:4. | |
| 111. Moynihan testified ████████ ████████████████ ████████████████ DX 14.X 53:6-54:2; *see id.* 63:8-13. | |
| 112. BANA COO Thomas Montag testified ████████████████ ████████████████ DX 14.V 11:9-12:3, 50:17-51:15; *see id.* 13:6-11. | |
| 113. Montag testified ████████ ████████████████ DX 14.V 17:20-20:3. | |
| 114. Montag testified that ████████ ████████████████ | |

DX 14.V 17:20-18:6.

## V. THE ACCOUNT-FREEZE RESPONSE

115. When the CFF was implemented on September 28, 2020 through ███████

DX 5 ¶¶ 5-6; DX 1 ¶ 30; DX 30.B at 17; *see also* DX 14.S 159:15-18; DX 40.A § 2; DX 60 at -5435.

116. ███████

DX 14.S 226:17-228:9; DX 5 ¶ 5; DX 60 at -5435; *see* DX 14.AE 83:14-18; *see* DX 30.B at 17.

117. ███████

DX 5 ¶ 5; DX 14.H 27:5-23, 47:9-17; DX 14.Q ¶ 33; DX 14.S 227:19-228:9; DX 11.B ¶ 52; DX 149; DX 14.Y 55:2-56:13; SUF ¶ 116; *see also* DX 60 at -5435.

118. ███████

SUF ¶ 6; DX 5 ¶ 5; *see* DX 60 at -5435.

119. ███████

DX 60 at -5435; DX 91 at -7343; DX 5 ¶ 5.

120. ████████████████████████

DX 78; DX 92; DX 182; DX 1 ¶¶ 31-32.

121. Between October 4, 2020 and December 2, 2020, ████████ During that time, if a cardholder called BANA ████████

DX 14.B 52:2-53:1, 92:15-94:1; DX 14.S 132:20-133:3, 223:10-17; DX 30.B at 17; DX 14.E 231:11-233:2; DX 14.L 226:21-227:16; *see* DX 11.A ¶ 27.

122. During Fall 2020, BANA determined that ████████

DX 14.H 26:12-20; DX 14.S 227:19-228:9; DX14.L 105:3-25, 269:18-270:3; DX 129.

123. Beginning on December 3, 2020 through March 17, 2021, ████████

DX 59 ; DX 1 ¶ 33; DX 14.B 18:11-19:5; DX 52; DX 30.B at 18; *see* DX 150 at -0173.

124. From December 3, 2020 through March 17, 2021, ████████



DX 14.B 18:11-19:5; DX 1 ¶ 33; *see* DX 150.

125. After several months.

DX 14.S 306:9-308:8; DX 5 ¶ 6.

126. BANA first

BANA also

DX 14.S 232:13-20, 234:4-6; DX 14.E 264:5-266:2; DX 30.B at 17; DX 81 at -6931; DX 122; DX 82.

127. Beginning on March 18. 2021 through June 8, 2021,

DX 43.A at -2556; DX 14.S 307:14-308:8; DX 57; DX 5 ¶ 6; DX 4 ¶ 37.

128. Beginning on March 18. 2021, BANA

DX 30.B at 18; DX 5 ¶ 6; *see* DX 57.

129.

DX 14.S 30:25-31:3, 268:2-4; DX 5 ¶ 4.

| | |
|---|---|
| 130. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 14.S 30:25-31:3; DX 14.H 83:24-84:17; DX 5 ¶ 7. | |
| 131. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 58; DX 30.B at 12-13. | |
| 132. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 184 at -5282. | |
| 133. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 14.S 307:14-308:8; DX 30.B at 18. | |
| 134. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 5 ¶ 7; DX 14.H 83:24-84:17. | |
| 135. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 5 ¶ 7. | |
| 136. EDD testified that it was EDD's policy to convert UI benefits payments to paper checks following an account freeze, to the extent the claimant remained eligible for benefits. DX 14.AF 37:15-23; *see also* | |

| | |
|---|---|
| DX 14.AB.1 ¶ 83. | |
| 137. BANA understood that EDD ███████████████████ ███████████████████ <br> DX 43.A at -2563; DX 30.B at 16. | |
| 138. Account Freeze Class representative Chong's EDD prepaid account was ███████████████ <br> DX 65 at PDF p. 10. | |
| 139. Account Freeze Class representative Moore's EDD prepaid account was ███████████████████ ███████████████████ <br> DX 68 at PDF p. 6. | |
| 140. Account Freeze Class representative Yuan's EDD prepaid account was ███ ███████████████████ ███████████████████ ███████████████████ <br> DX 69 at PDF p. 6. | |
| 141. Account Freeze Class representative Koole's EDD prepaid account was ███ ███████████████████ ███████████████████ ███████████████████ ███████████████████ <br> DX 66 at PDF p. 6; DX 33; *see* DX 14.S 244:4-8. | |
| 142. Account Freeze Class representative Moon's EDD prepaid account was ███ ███████████████████ ███████████████████ | |

DX 67 at PDF p. 14; DX 34; DX 35;
DX 36; DX 37; *see* DX 14.S 244:4-8.

143. All Account Freeze Class members
regained full access to their prepaid
accounts ████████████████
DX 14.AB.1 ¶ 73; DX 7.A ¶ 90; *see* DX
14.AB 131:6-13, 132:4-16, 133:12-134:1;
ECF 349 at 37; DX 27 at No. 4.

144. Upon request to EDD, Account
Freeze Class representative Koole ████

DX 16 at No. 3.

145. Upon request to EDD, Account
Freeze Class representative McClure ████

DX 14.T 83:5-84:1.

146. Account Freeze Class representative
Moon ████████████

DX 14.W 242:1-7.

147. Upon request to EDD, ████████

DX 14.AC 61:8-20.

## VI. THE COMPENSATION PAID TO CLASS MEMBERS

148. BANA reconsidered error claims
denied by the CFF if ████████████

DX 126; DX 91; DX 184; DX 51 at -
5518; DX 14.E 232:8-233:2; DX 14.M
42:18-43:3, 176:16-177:2; DX 14.Y

| | |
|---|---|
| 73:8-15, 302:17-303:9, 304:9-16. | |
| 149. Some error claims ███████ ████████████████████████ ████████████████████████ ████████████████████████ █████████████████ DX 31 at No. 39; DX 14.AG 101:22-102:2; DX 14.M 232:12-22; DX 14.Y 61:1-20; DX 3 ¶ 7. | |
| 150. Other error claims ███████ ████████████ DX 43.A at -2557-58; DX 3 ¶ 7; *see also* DX 31 at No. 39. | |
| 151. BANA entered into consent orders with the OCC and CFPB in July 2022. DX 41; DX 42; DX 3 ¶ 3; *see* DX 14.P 57:20-58:20. | |
| 152. In connection with the consent orders, BANA submitted a Remediation Plan and Addenda ██████████████ ██████████. DX 43.A; DX 43.B; DX 43.C; DX 14.P 57:20-60:19; DX 3 ¶ 4. | |
| 153. Among other things, the Remediation Plan ████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████ DX 43.A; DX 14.P 61:2-17, 66:4-67:10, 68:5-70:22, 93:16-25; DX 3 ¶ 5. | |
| 154. ██████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ██████████████ DX 43.A at -2556; *see* DX 14.P 86:6- | |

87:20, 90:19-91:1, 93:1-95:12; DX 3 ¶ 6.

155. The Remediation Plan was ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DX 43.A at -2556, -2563, -2566; *see* DX 14.P 65:25-66:21, 77:7-25, 78:14-79:6, 86:6-87:20, 90:19-91:1, 109:9-22; DX 3 ¶¶ 6, 9.

156. BANA's priority in designing the Remediation Plan was to ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DX 43.A at -2558 n.16; *see also* DX 14.P 58:16-60:10, 66:4-21, 69:16-25, 77:7-25; DX 14.D 239:25-242:7; DX 14.Z 172:2-173:3; DX 3 ¶ 12.

157. Pursuant to the Remediation Plan, ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DX 43.A at -2556 n.6, -2556-64; DX 41 § IX(2)(b)(i); DX 42 §VIII(95)(b).

158. As referenced in SUF ¶¶ 148-150, prior to the implementation of the Remediation Plan, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

| | |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮. DX 31 at No. 39; DX 43.A at -2561, -2563-64; DX 14.P 78:14-79:20, 87:13-20, 90:19-91:1, 93:1-8; 298:1-18; DX 3 ¶ 7. | |
| 159. Pursuant to the Remediation Plan, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 43.A at -2557, -2558 n.9 & n.14, -2559, -2561, -2563-64; DX 14.P 285:23-286:8; DX 3 ¶ 8. | |
| 160. Pursuant to the Remediation Plan, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 43.A at -2559; DX 3 ¶ 8; DX 14.P 129:6-23. | |
| 161. Pursuant to the Remediation Plan, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DX 3 ¶ 9; DX 43.A at -2558; DX 14.P 108:21-111:5, 317:2-20. | |
| 162. Pursuant to the Remediation Plan, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

BANA's SUF ISO MOT. FOR PARTIAL SJ          CASE NO. 21-MD-02992-GPC-MSB

DX 43.A at -2561, -2564; *see also*
DX 9.A ¶ 33.

163. BANA █████████████████████

DX 43.A at -2561 & n.25.

164. Pursuant to the Remediation Plan, ██████████

DX 43.A at -2562-64; *see* DX 9.A ¶ 33.

165. Pursuant to the Remediation Plan, ██████████

DX 43.A at -2556, -2566; *see* DX 14.P
95:20-96:11, 127:5-19; DX 3 ¶ 11.

166. As of September 29, 2025, only
███ of ██████ class members ██████

DX 7 ¶ 6f.

167. As of September 29, 2025, ██████ of
the ██████ class members ██████

DX 7 ¶ 6g.

168. As defined, every Claim Denial
Class member received payment for their
claim(s) that triggered CFF-1 ██████

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

DX 7 ¶ 6b, d, e; DX 14.AG 122:18-123:6; DX 14.AB 112:11-113:10, 122:9-24; DX 43.A at -2557; ECF 494 at 96-97.

169. The Credit Rescission, Account Freeze, Customer Service, and EMV Chip Classes are defined as subsets of the Claim Denial Class.

ECF 494 at 96-97; DX 14.AB.1 ¶¶ 4, 88, 89, 97, 98.

170. As of September 29, 2025, pursuant to the Remediation Plan,

DX 7 ¶ 6d.

171. [redacted][2]

DX 7 ¶ 6d; DX 14.AB.1 ¶¶ 50, 69, 85.

172. All members of the Claim Denial and Credit Rescission Classes

---

[2] The calculations included in SUF ¶¶ 170-171 are provided pursuant to FED. R. EVID. 1006. As explained in the Stango Declaration, the calculations are based on data produced in BANA's Second Revised Second Supplemental Response to Interrogatory Nos. 2, 4, 5, 6, 14 and 15 (Set 1) (DX 27), First Supplemental Response to Interrogatory No. 21 (Set 3) (DX 28.A), and First Supplemental Response to Interrogatory No. 46 (Set 7) (DX 31.B), and reflect calculations for the certified class members, applying Plaintiffs' expert Regan's proposed methodology for identification, as of September 29, 2025. BANA represents that the three exhibits to BANA's Updated Responses (Exs. 1, 4, and 5) and the three exhibits to BANA's Revised Supplemental Set 1, 3, and 7 Responses (Exs. 3, 6, and 16) contain source data in voluminous excel documents that cannot be conveniently filed using the Court's ECF system. *See* DX 27.A, DX 27.B, DX 27.C, DX 27.D, DX 28.A.1, DX 31.B.1. Copies of BANA's Updated Responses and the accompanying exhibits have been served and made available to Plaintiffs. Should the Court desire to review the source data contained in BANA's Updated Responses, BANA will provide it to the Court electronically in its preferred medium and at its convenience.

DX 27 at Nos. 2&6; DX 27.A; DX 7 ¶ 6b; *see* DX 14.AB 122:17-123:8.

173. BANA's expert economist Victor Stango opined that the measure of "economic damages" or "the difference between actual consumer outcomes and consumer outcomes in a 'but-for' hypothetical world absent the at-issue conduct" does not include repaid principal amounts when "a consumer has not lost funds, but rather has lost access to funds for some period of time." Therefore, Stango opines that it would be "economically illogical" to treat principal claim amounts already received as actual damages sustained as a result of CFF-1.

DX 7.A ¶¶ 31-32.

174. Nearly ███ of the Claim Denial Class members were paid ███████ ████ of initiating their error claim.

DX 7.A ¶ 64.

175. All members of the Account Freeze Class were ████████████████████████████████████████████████████████████████.

DX 14.S 294:23-302:25; DX 89; DX 175; DX 104; DX 105.

176. All members of the Claim Denial, Credit Rescission, and Account Freeze Classes ████████████████████████████████████████████████████████████████████████████████

DX 43.A at -2557-28, -2560-64; ECF 394 at 96-97; DX 7 ¶ 6e.

177. All members of the Customer Service and EMV Chip Classes are also members of at least one of the Claim Denial, Credit Rescission, or Account Freeze Classes, and so ████████████

| | |
|---|---|
| ██████████████████ | |
| DX 14.AB.1 ¶¶ 88, 98. | |
| 178. ████████████████<br>████████████████<br>████████████<br>██. | |
| DX 43.A at -2560-61; DX 14.P 65:17-<br>66:25, 77:7-25, 79:21-81:14; DX 3 ¶ 14;<br>DX 7.A ¶ 67. | |
| 179. █████████████████<br>████████████████<br>████████████████<br>███████████████<br>███████████████<br>████████ | |
| DX 9.A ¶¶ 13, 16, 47 n.73 & n.74;<br>DX 27 at Nos. 2&6; DX 31 at No. 39. | |
| 180. ████████████████<br>████████████████<br>████████████████<br>███████████████ | |
| DX 43.A at -2557; DX 14.P 65:25-66:21,<br>77:7-25, 78:14-79:6, 109:9-22, 298:2-18;<br>DX 14.Z 172:2-173:3; DX 3 ¶ 12;<br>ECF 350-9 ¶ 11; ECF 350-8 ¶ 11. | |
| 181. ████████████████<br>████████████████<br>████████████████<br>███████████████<br>███████████████<br>███████████ | |
| ECF 350-8 ¶¶ 8-12, 14, 16-21; *see also*<br>DX 5 ¶ 7. | |
| 182. With respect to error claims that<br>triggered CFF-1, BANA determined to | |

■ ■ ■

*ECF 350-8 ¶¶ 9, 14, 16-21; see also*
DX 9.A ¶¶ 51-54.

183. For many error claims that triggered
CFF-1, ■ ■ ■

*ECF 350-8 ¶¶ 9, 14; DX 14.Z 215:4-13;*
*DX 9.A ¶¶ 51-54.*

## VII. PLAINTIFFS' EXPERTS' OPINIONS

184. Plaintiffs offer damages opinions
from three expert witnesses: Greg Regan,
David Levine, and Chloe East.

*See DX 14.AB.1; DX 14.R.1; DX 14.F.1;*
DX 14.AB 12:17-18:20; DX 14.R 153:3-
154:23; DX 14.F 23:14-24:8.

185. Plaintiffs' experts purport to
quantify the consequential harm suffered
by the Claim Denial, Credit Rescission,
and Account Freeze Classes by
estimating the cost of borrowing
substitute funds during the time class
members were without access to their
EDD benefits.

DX 14.AB.1 ¶¶ 9, 13, 17, 40-51, 66-69,
78-86; DX 14.R.1 ¶¶ 10-13, 17-18, 31-
32, 34, 44; DX 14.F.1 ¶¶ 9-10, 14, 21,
28-31, 35; DX 14.AB 135:6-17, 136:18-
140:14, 159:10-161:24, 184:13-185:15,
225:16-227:8; DX 14.R 22:3-12, 23:17-
25:20, 41:16-42:6; DX 14.F 58:19-62:4,
126:14-129:2, 132:21-133:5, 135:9-
136:22, 172:18-177:15.

186. Regan does not offer an opinion on
the appropriate interest rate to estimate
class members' consequential damages,
but states that 10% is consistent with

| | |
|---|---|
| California law and that 20% would be "reasonable" based on available credit card interest rates during the class period and the assumption that "the most likely source of funds accessible to an impacted cardholder would have been increased credit card utilization." | |
| DX 14.AB 12:17-18:20, 30:23-31:3, 56:15-57:1,165:17-167:5, 168:12-18; *see also* DX 14.AB 144:18-145:2, 153:23-154:16; DX 14.AB.1 ¶¶ 46-51. | |
| 187. Levine opines that the appropriate interest rate to estimate consequential damages is 15.9% based on the assumption that "[w]hen UI payments disappear, most UI recipients turn to credit cards to cover those expenses." | |
| DX 14.R.1 ¶¶ 12, 45; *see also* DX 14.R 69:9-19, 135:7-136:20. | |
| 188. East opines that the appropriate interest rate to estimate consequential damages is 20.8% based on the assumption that "most" class members will have "turn[ed] to borrowing" in response to the temporary loss of funds. | |
| DX 14.F.1 ¶¶ 10b, 10f, 36; *see also* DX 14.F 59:22-62:4, 133:16-134:14. | |
| 189. BANA's Interrogatory (ROG) No. 14 to Class Representative Plaintiffs asked that they state ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ | |
| *See, e.g.*, DX 15 at No. 14; DX 18 at No. 14; DX 19 at No. 14. | |
| 190. In response to ROG No. 14, class representative Moore said ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ | |
| DX 19 at No. 14. | |
| 191. In response to ROG No. 14, class representative Moon said ▮▮▮▮▮ | |

DX 18 at No. 14.

192. In response to ROG No. 14, class
representative Chong said he

DX 15 at No. 14.

193. In response to ROG No. 14, class
representative Koole said she

DX 16 at No. 14.

194. In response to ROG No. 14, class
representative McClure said she

DX 17 at No. 14.

195. In response to ROG No. 14, class
representative Rivera said she

DX 21 at No. 14.

196. In response to ROG No. 14, class
representative Oosthuizen said he

DX 20 at No. 14.

197. In response to ROG No. 14, class
representative Willrich said he

DX 22 at No. 14.

198. In response to ROG No. 14, class
representative Yuan said he

| | |
|---|---|
| DX 23 at No. 14. | |
| 199. Regan, Levine, and East testified that they do not know how many class members needed to borrow money or pay credit card interest, or if any did. DX 14.AB 171:1-176:14; DX 14.R 71:13-16, 140:17-141:4; DX 14.F 141:12-143:21. | |
| 200. Regan, Levine, and East testified that not all class members paid credit card interest, or any interest, at the rates they proposed. DX 14.AB 160:22-161:24, 182:9-185:24, 214:23-215:5; DX 14.R 44:24-46:12, 140:16-141:3; DX 14.F 152:2-14, 176:15-177:15. | |
| 201. Regan, Levine, and East testified that their damages methods did not reflect the consequential harm suffered by any specific class member or members, including class representatives. DX 14.AB 48:19-49:15, 167:7-17, 169:16-172:25, 190:9-21, 197:10-25; DX 14.R 71:13-16, 74:8-75:25, 123:2-18; 140:17-141:4; DX 14.F 30:16-31:7, 59:17-62:4, 103:1-4, 109:13-110:7, 118:1-23. | |
| 202. Regan, Levine, and East testified that their damages methods overstated the consequential harm suffered by at least some class members. DX 14.AB 186:16-187:5, 223:21-224:16; DX 14.R 35:21-43:1, 43:12-46:12; DX 14.F 122:23-123:18, 124:14-24, 136:4-22. | |
| 203. Regan, Levine and East testified that their damages methods likely understated the consequential harm suffered by some class members. DX 14.AB 184:13-185:15; DX 14.R 94:17-97:2; DX 14.F 124:14-24. | |
| 204. Regan, Levine and East stated their methods are a "conservative" estimate of | |

| | |
|---|---|
| class members' consequential harm.<br><br>DX 14.AB.1 ¶¶ 9, 13, 17, 19, 49, 51, 69, 86, 93; DX 14.R.1¶¶ 11-14, 31-32, 43-45, 53; DX 14.F.1 ¶¶ 10e, 37; DX 14.AB 143:8-20, 156:9-157:20, 227:9-20; DX 14.R 19:19-20:1, 40:8-23, 42:14-20, 43:12-44:1, 48:16-49:21, 50:25-54:17, 72:14-73:20, 79:20-80:9, 85:8-25, 88:6-25, 143:3-144:23; DX 14.F 59:2-24, 146:13-147:21, 162:18-164:3. | |
| 205. Regan, Levine, and East testified that they did not review any record evidence of consequential harm suffered by class members.<br><br>DX 14.AB 48:7-49:7, 59:7-14, 139:25-140:14, 171:1-172:2, 173:16-176:14, 180:4-181:15, 182:9-25, 190:9-21; DX 14.R 30:4-32:6; DX 14.F 142:6-24, 150:25-153:8. | |
| 206. None of Plaintiffs' experts offer any proposed methodology to identify, assess, calculate, or quantify emotional distress or any other alleged consequential harms for the classes beyond (1) alleged interest rate charges, and (2) alleged lost opportunity costs while members of the Customer Service Class were on hold.<br><br>DX 14.AB 117:14-118:14; DX 14.F 59:2-11; *see generally* DX 14.AB.1; DX 14.R.1; DX 14.F.1; DX 14.F 23:14-24:8, 27:16-28:2, 29:10-15, 35:2-12, 41:1-7, 42:1-13; DX 14.R 153:3-154:23; DX 14.AB 12:17-18:20, 30:23-31:3, 56:15-57:1. | |
| 207. The consequential harm damages Regan calculated for the EMV Chip Class overlap with the consequential harm damages he calculated for the Claim Denial and Credit Rescission Classes because they are based on the same fully reimbursed claims.<br><br>DX 14.AB.1 ¶¶ 40-51, 69, 99; DX 14.AB 303:2-13, 304:15-305:1. | |
| 208. Regan purports to quantify the | |

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

| | |
|---|---|
| 1<br>2<br>3 | amount that BANA allegedly profited by providing EDD prepaid cards without EMV chips during the EMV Chip Class period as ████████<br><br>DX 14.AB.1 ¶ 101; *see* DX 55 at -4101. |
| 4<br>5<br>6<br>7<br>8 | 209. Plaintiffs' expert witness Daniel Kreis opined that BANA's ██████████████ were consistent with industry standards and compliant with EFTA.<br><br>DX 14.O.1 ¶¶ 1, 10, 36-39; DX 14.O 17:11-21, 28:17-30:11. |
| 9 | **VIII. BANA'S CALL CENTERS** |
| 10<br>11<br>12<br>13 | 210. BANA's call centers transitioned from a ████████████████ ███████████ .<br><br>DX 14.J 278:17-20; DX 118; DX 116; DX 128. |
| 14<br>15<br>16<br>17 | 211. The change to a work-from-home environment created ████████████ ████████████ .<br><br>*See* DX 121; DX 124; DX 178. |
| 18<br>19<br>20<br>21<br>22 | 212. In March 2020, BANA's call centers for its EDD prepaid card program were staffed with approximately ███ full-time equivalents (FTEs) handling approximately ██████ calls per month.<br><br>DX 2 ¶ 7; *see also* DX 173; DX 174; DX 25; DX 24. |
| 23<br>24<br>25<br>26<br>27 | 213. Between March 2020 and September 2020, call volumes for BANA's prepaid call centers ████████ ████████████ .<br><br>DX 2 ¶ 7; *see also* DX 173; DX 174; DX 25; DX 24. |
| 28 | 214. By the end of 2020, BANA's call |

| | |
|---|---|
| centers for its prepaid cards were staffed with ███ FTEs representing ████ ██████████████████ from March to December 2020.<br><br>DX 2 ¶ 12; DX 173; DX 174; DX 25; DX 24. | |
| 215. BANA's Claims Call Center handled calls related to potentially unauthorized transactions and billing errors.<br><br>DX 2 ¶ 6. | |
| 216. In February 2020, the Claims Call Center was staffed with ██ full-time equivalents handling ██████ calls per month. By October 2020, ████████ ██████████ incoming calls in October.<br><br>*See* DX 173. | |
| 217. The Claims Call Center was staffed with ███ FTEs by December 13, 2020.<br><br>*See* DX 173; *see also* DX 2 ¶ 15. | |
| 218. In March 2020, the average speed to answer (ASA) for BANA's prepaid call centers were at or below ████.<br><br>*See* DX 2 ¶ 7; DX 173; DX 174; DX 25; DX 24. | |
| 219. By the end of December 2020, the ASA for BANA's prepaid call centers, including the Claims Call Center, were at or below ████.<br><br>DX 173; *see* DX 2 ¶ 21. | |
| 220. ████████████████████ ████████████████████████ ████████████████████████ ████████████████<br><br>DX 154 at -4405; DX 179; *see* DX 14.V 57:6-60:2. | |
| 221. BANA did not ██████████ ████████████████████.<br><br>DX 14.A 327:2-9; DX 14.J 82:5-83:8; | |

| | |
|---|---|
| DX 14.I 204:19-204:21; DX 14.Y 76:17-77:3; *see* DX 2 ¶ 18; *see also* DX 148. | |
| 222. CEO Moynihan testified that ███████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ██████ . DX 14.X 158:14-25, 182:9-183:15. | |
| 223. Jenn Ehresman, who was not responsible for or involved in staffing decisions for the Claims Call Center, testified that ███████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ███████████ DX 14.G 20:25-21:5, 21:11-23, 55:2-6, 57:20-58:2. | |
| 224. Faiz Ahmad testified that ████████ ████████████████████████████ ████████████████████████████ DX 14.A 327:2-9; *see* DX 14.J 82:5-83:8; DX 14.I 204:19-204:21. | |
| 225. Bill Golden, the executive responsible for BANA's prepaid call centers between August 2020 and November 2021, testified that ████████ ████████████████████████████ ████████████████████████████ DX 14.J 318:16-17. | |
| 226. In August 2020, ███████████████ ████████████████████████████ DX 179; DX 14.V 57:6-61:11. | |

227. BANA ███████████████████
██████████████████ prior to, during, and after the Customer Service Class period.

DX 2 ¶ 16; *see* DX 48; DX 49; *see also* DX 45; DX 46.

228. Plaintiffs' expert Jay Minnucci purported to calculate ████████ ████████ of costs avoided by BANA as a result of the alleged understaffing of the Claims Call Center.

*See* DX 14.U.1 ¶¶ 108-113; *see also* DX 13.A ¶¶ 27, 36.

229. BANA does not have records of █
██████████████████████████
██████████████████████████
██████████████████████████
██████████████████████████

DX 6 ¶ 7; *see* DX 14.U 137:21-138:4, 141:12-20, 396:20-401:18; DX 14.K 25:22-26:12.

230. ████████████████████████
██████████████████████████
████████████

*See* DX 6 ¶ 7.

231. Each member of the Customer Service Class is also a member of at least one of either the Claim Denial or Credit Rescission Classes. Thus, by definition, each member of the Customer Service Class was able to reach BANA to report a claim with the Claims Call Center.

*See* ECF 494 at 97; DX 14.AB 106:16-107:7.

### IX. MAGNETIC STRIPES AND EMV CHIPS

232. At the time BANA entered into the EDD Agreement and throughout the EMV Chip Class period, most prepaid

| | |
|---|---|
| cards in the U.S. market did not contain EMV chips, including prepaid cards issued under public benefits programs.<br><br>DX 12.A ¶¶ 42, 45; *see also* DX 147; DX 141. | |
| 232A. In December 2015, the CFPB advised that EMV chips were not required in any type of card, and noted the "cost" and slow "merchant adoption" as factors that may be considered by financial institutions in deciding whether to include chips.<br><br>RJN 6 at 270-73. | |
| 233. Federal Reserve payment studies show that between 2019 and 2020, 65%-74% of in-person prepaid card transactions were completed without an EMV chip.<br><br>RJN 10; DX 12.A ¶¶ 45-46. | |
| 234. ███████████████████<br>███████████████████<br>███████████████████<br>DX 147 at -8505. | |
| 235. Prior to the 2021 letter agreement referenced in SUF ¶ 16. ███████<br>███████████████████<br><br>DX 14.B 188:17-189:21; DX 14.S 65:15-20, 78:13-22; DX 94 at -7095; DX 26 at No. 24; *see* DX 39 at -2850. | |
| 236. ███████████████████<br>███████████████████<br>DX 130 at -0150; DX 131 at -0154; DX 14.S 78:23-79:1; DX 1 ¶ 19. | |
| 237. ███████████████████<br>███████████████████<br>███████████████████<br>███████████████████ | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| DX 169; DX 72; DX 106; DX 94; DX 12.A ¶¶ 61-63; DX 127. | |
| 238. ███ DX 163; DX 164 at -4542-43; DX 165; DX 14.S 114:4-7. | |
| 239. ███ DX 39 at -2850; DX 14.B 188:17-190:2. | |
| 240. ███ DX 74 at -4993; DX 14.S 65:4-7, 114:12-14. | |
| 241. EMV chip technology does not prevent all fraudulent transactions. DX 123; DX 14.S 56:20-24; DX 5 ¶¶ 8-11; DX 12.A ¶¶ 73, 93-100; DX 181. | |
| 242. EMV chip technology does not prevent ███ DX 123 at -7048; DX 73; DX 12.A ¶¶ 94-96, 105-07, 116-17; DX 14.S 55:14-56:9, 113:1-21; DX 5 ¶ 8. | |
| 243. EMV chip technology does not prevent ███ DX 12.A ¶¶ 56, 83, 85, 89-90, 104, 117; DX 5 ¶ 9; *see also* RJN 17; RJN 18; RJN 20. | |
| 244. "Shimming" machines allow criminals to read identifying data, including card numbers, from EMV chips and produce counterfeit cards. DX 12.A ¶¶ 56, 83, 85, 89-90, 104, 117; *see also* RJN 17; RJN 18; RJN 20. | |

245. EMV chip technology does not

███████████████████████
███████████████████████
███████████████████

DX 113; DX 114; DX 12.A ¶¶ 16, 65, 74, 76-81; DX 14.S 55:14-56:9, 59:1-5; DX 14.Q 157:7-158:15; DX 5 ¶ 9.

246. ████████████████████
███████████████████
████████████████

DX 14.S 125:22-126:6; DX 12.A ¶ 103.

247. ████████████████
████████ .

DX 14.S 51:3-19; DX 12.A ¶¶ 76, 84; DX 5 ¶ 10.

248. Skimming devices ████████
███████████████████████
███████████████████████
███████████████████
███████████████

DX 12.A ¶¶ 76-81, 84; DX 14.S 51:3-19, 55:8-57:23; DX 5 ¶ 10; DX 113 at -4188; DX 114.

## X. PLAINTIFFS' REMAINING ALLEGATIONS

249. At all relevant times, and throughout the class periods, ████████████
████████████████ as required by 16 C.F.R. §§ 314.3, 314.4. *See* DX 64.

250. BANA required its prepaid card vendors to adhere to ████████████
███████████████████
█████████ .

DX 44; DX 47.

250A. From March 2020 to October 2020, various state and local offices and courts, which were responsible for handling state and local background

checks, ██████████████████
During this time, ████████████
████████████████
████████████

DX 14.J; DX 2 ¶¶ 10-11; DX 152.

251. There is no evidence that ████████
████████████████
████████████

*See* DX 2 ¶ 11; DX 14.J 292:2-19,
293:15-19.

252. There is no evidence of ████████
████████████████
████████████████
████████

*See* DX 29 at No. 47.

Dated: October 17, 2025          Respectfully submitted,

By:  */s/ James W. McGarry*

JAMES W. MCGARRY (*pro hac vice*)
*JMcGarry@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax: +1 617 523 1231

SABRINA M. ROSE-SMITH (*pro hac vice*)
*SRoseSmith@goodwinlaw.com*
MATTHEW L. RIFFEE (*pro hac vice*)
*MRiffee@goodwinlaw.com*
KEITH LEVENBERG (*pro hac vice*)
*KLevenberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**
1900 N St. NW
Washington, DC 20036
Tel: +1 202 346 4000
Fax: +1 202 346 4444

LAURA G. BRYS (SBN 242100)
*LBrys@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S Figueroa St., Suite 4100

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

BANA's SUF ISO Mot. for Partial SJ          Case No. 21-MD-02992-GPC-MSB

1                         Los Angeles, CA 90017
Tel.: +1 213 426 2500
2                         Fax: +1 617 346 4444

3                         VALERIE A. HAGGANS (*pro hac vice*)
VHaggans@goodwinlaw.com
4                         LINDSAY E. HOYLE (*pro hac vice*)
LHoyle@goodwinlaw.com
5                         **GOODWIN PROCTER LLP**
620 Eighth Avenue
6                         New York, NY 10118
Tel.: +1 212 813-8800
7                         Fax: +1 212 355-3333

8                         YVONNE W. CHAN (*pro hac vice*)
YChan@jonesday.com
9                         **JONES DAY**
100 High Street
10                        Boston, MA 02110
Tel.: +1 617 960 3939
11                        Fax: +1 617 449 6999

12                        JANICE P. BROWN (SBN 114433)
jbrown@myersnave.com
13                        MATTHEW B. NAZARETH (SBN 278405)
mnazareth@myersnave.com
14                        **MEYERS NAVE**
600 B Street, Suite 1650
15                        San Diego, CA 92101

16                        Attorneys for Defendant
**BANK OF AMERICA, N.A.**

17

18

19

20

21

22

23

24

25

26

27

28

GOODWIN PROCTER LLP
ATTORNEYS AT LAW