JAMES W. MCGARRY (*pro hac vice*)
JMcGarry@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax: +1 617 523 1231

SABRINA M. ROSE-SMITH (*pro hac vice*)
SRoseSmith@goodwinlaw.com
MATTHEW L. RIFFEE (*pro hac vice*)
MRiffee@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

Attorneys for Defendant
**BANK OF AMERICA, N.A.**

[*ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK*]

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
# SAN DIEGO DIVISION

| | |
|---|---|
| IN RE: BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION | Case No. 21-MD-02992-GPC-MSB<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: April 17, 2026<br>Time: 1:30 p.m.<br>Ctrm: 12A – 12th Floor<br>Judge: Hon. Gonzalo P. Curiel |

PLEASE TAKE NOTICE that pursuant to FEDERAL RULE OF EVIDENCE 201, Defendant Bank of America, N.A. (BANA) hereby requests the Court take judicial notice of the following documents and their contents in Exhibits 1-22, true and correct copies of which are attached to the concurrently filed Declaration of Laura G. Brys in support of this Request for Judicial Notice (RJN).

## REQUEST FOR JUDICIAL NOTICE

**I.  Materials Published by Government Entities**

| RJN Ex. # | Item and Fact(s) for Which Judicial Notice Is Requested |
|---|---|
| 1. | California State Auditor Report 2020-502, dated November 19, 2020:<br>• California's State Auditor discovered and reported that EDD had mailed at least 51 million documents to benefits claimants between 2017 and 2020 that included their full Social Security numbers. RJN 1 at 1-2; *see* SUF ¶ 52.[1] |
| 2. | California State Auditor Report 2020-628.2 titled *Significant Weaknesses in EDD's Approach to Fraud Prevention Have Led to Billions of Dollars in Improper Benefit Payments*, dated January 2021:<br>• California's State Auditor concluded that the PUA and failings by agencies charged with UI benefits administration (including EDD) resulted in hundreds of billions of fraud losses. RJN 2 at 1-3; *see* SUF ¶ 46.<br>• California's State Auditor reported that EDD failed to implement fraud detection or identity verification technology until October 2020, ignored repeated warnings from the U.S. Department of Labor's (DOL) Office of Inspector General, and approved approximately $10.4 billion in benefits with no identity verifications. RJN 2 at 1, 8-9, 14-17, 20, 29; *see* SUF ¶ 51. |
| 3. | Financial Crimes Enforcement Network (FinCEN) press releases and advisory notices from March 16, 2020 through February 24, 2021:<br>• *The Financial Crimes Enforcement Network (FinCEN) Encourages Financial Institutions to Communicate Concerns Related to the Coronavirus Disease 2019 (COVID-19) and to Remain Alert to Related Illicit Financial Activity*, dated March 16, 2020; |

---

[1] SUF refers to BANA's Statement of Undisputed Material Facts, filed herewith.

| RJN Ex. # | Item and Fact(s) for Which Judicial Notice Is Requested |
|---|---|
|  | • *The Financial Crimes Enforcement Network Provides Further Information to Financial Institutions in Response to the Coronavirus Disease 2019 (COVID-19) Pandemic*, dated April 3, 2020;<br>• Advisory FIN-2020-A002 titled *Advisory on Medical Scams Related to the Coronavirus Disease 2019 (COVID-19)*, dated May 18, 2020;<br>• *Notice Related to the Coronavirus Disease 2019 (COVID-19)*, dated May 18, 2020;<br>• Advisory FIN-2020-A003 titled *Advisory on Imposter Scams and Money Mule Schemes Related to Coronavirus Disease 2019 (COVID-19)*, dated July 7, 2020;<br>• Advisory FIN-2020-A005 titled *Advisory on Cybercrime and Cyber-Enabled Crime Exploiting the Coronavirus Disease 2019 (COVID-19) Pandemic*, dated July 30, 2020;<br>• Advisory FIN-2020-007 titled *Advisory on Unemployment Insurance Fraud During the Coronavirus Disease 2019 (COVID-19) Pandemic*, dated October 13, 2020;<br>• Advisory FIN-2021-A002 titled *Advisory on Financial Crimes Targeting COVID-19 Economic Impact Payments*, dated February 24, 2021; and<br>• Notice FIN-2021-NTC1 titled *Consolidated COVID-19 Suspicious Activity Report Key Terms and Filing Instructions*, dated February 24, 2021.<br>• Throughout the pandemic, FinCEN issued alerts to BANA and others about rising benefits fraud, encouraging financial institutions to perform additional inquiries and investigations to identify red flags indicating fraud, including suspicious, rapid disbursements from benefits accounts. RJN 3; *see* SUF ¶ 69. |
| 4. | U.S. Department of Justice (DOJ) National Unemployment Insurance Fraud Task Force guide titled *Unemployment Insurance Fraud Consumer Protection Guide*, dated September 21, 2020:<br>• In September 2020, the DOJ National Unemployment Insurance Fraud Task Force issued a warning that personal information stolen during past data breaches at other companies and sold on the dark web was being used by fraudsters to apply for PUA and other UI benefits. RJN 4 at 1; *see* SUF ¶ 54. |
| 5. | U.S. Secret Service alert titled *Massive Fraud Against State Unemployment Insurance Programs*, dated May 14, 2020: |

| RJN Ex. # | Item and Fact(s) for Which Judicial Notice Is Requested |
|---|---|
|  | • In May 2020, the Secret Service issued an alert stating that a Nigerian fraud ring was exploiting the pandemic to commit "large-scale fraud against state unemployment insurance programs." RJN 5; *see* SUF ¶¶ 53, 69. |
| 6. | Consumer Financial Protection Bureau (CFPB) report titled *The Consumer Credit Card Market*, dated December 2015: <br>• In December 2015, the CFPB advised that EMV chips were not required in any type of card, and noted the "cost" and slow "merchant adoption" as factors that may be considered by financial institutions in deciding whether to include chips. RJN 6 at 270-73; SUF ¶ 232A. |
| 7. | Congress.gov report titled *Unemployment Rates During the COVID-19 Pandemic*, dated August 20, 2021: <br>• The U.S. unemployment rate rose from 4.4% in March 2020 to 14.8% in April 2020. RJN 7 at 7, SUF ¶ 34. |
| 8. | EDD news release No. 20-49 titled *EDD Announces Reset in Response to Strike Team Recommendations to Process Claims Faster, Reduce Fraud and Tackle Backlog Issues*, dated September 19, 2020: <br>• In mid-September 2020, California's governor shut down EDD for two weeks, so that EDD could implement new strategies, including identity verification processes (ID.me), to attempt to counter fraudulent applications. RJN 8; *see* SUF ¶ 68. |
| 9. | EDD news release No. 24-06 titled *EDD benefit payments now issued on new Money Network prepaid debit cards*, dated February 15, 2024: <br>• EDD and BANA agreed that BANA would cease providing prepaid cards for EDD. RJN 9; *see* SUF ¶ 23. <br>• EDD stopped funding benefits through BANA-issued cards on February 15, 2024. RJN 9; *see* SUF ¶ 24. <br>• EDD reported that "April 15, 2024 is the last day individuals will be able to use their" BANA-issued EDD prepaid cards and accounts. RJN 9; *see* SUF ¶ 25. |
| 10. | Federal Reserve 2022 Payments Study: <br>• Between 2019 and 2020, approximately 65%-74% of in-person prepaid card transactions were completed without an EMV chip. RJN 10 at 5; *see* SUF ¶ 233. |
| 11. | Legislative Analyst's Office report titled *Legislative Oversight of Ongoing Challenges at EDD*, dated January 26, 2021: |

| RJN Ex. # | Item and Fact(s) for Which Judicial Notice Is Requested |
|---|---|
|  | • The CA Legislative Analyst's Office attributed the "[o]verwhelming majority" of fraud to PUA's "lower standard of identity and wage information" "due to federal policymakers' decision to prioritize immediate assistance." RJN 11 at 5; *see* SUF ¶ 47. |
| 12. | U.S. House Committee on Oversight and Accountability Report titled *Examining Widespread Fraud in Pandemic Unemployment Relief Programs*, dated September 10, 2024:<br>• In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which created the Pandemic Unemployment Assistance program (PUA). RJN 12 at 14-15; *see* SUF ¶ 35.<br>• PUA extended unemployment benefits to those not previously eligible under traditional unemployment systems, including self-employed individuals, contract workers, and gig workers. RJN 12 at 15; *see* SUF ¶ 36.<br>• PUA allowed claimants to file for benefits without former employer verification of wage or salary history. RJN 12 at 25; *see* SUF ¶ 37.<br>• The U.S. House Committee on Oversight and Accountability reported that "EDD staff . . . adopted a 'pay and chase' model and processed incoming claims quickly." RJN 12 at 28; *see* SUF ¶ 50, *see also id.* ¶ 38.<br>• The U.S. House Committee on Oversight and Accountability reported that "EDD staff understood that less time should be spent on checking eligibility of claimants as this would slow down paying out benefits. This led to many bad actors like international organized crime and individual criminals cashing in while eligible claimants were unable to obtain their benefits." RJN 12 at 28; *see* SUF ¶ 50; *see also id.* ¶ 38.<br>• The U.S. House Committee on Oversight and Accountability concluded that the PUA and failings by UI benefits administration agencies (including EDD) resulted in fraud losses that other agencies estimated reached at least nearly $200 billion. RJN 12 at 27; *see* SUF ¶ 46.<br>• The U.S. House Committee on Oversight and Accountability reported that the DOL reported that PUA had an improper payment rate of 35.9%. RJN 12 at 6, 22, 27; *see* SUF ¶ 48.<br>• The U.S. House Committee on Oversight and Accountability reported that "EDD was such a well-known target of fraud that it reached mainstream media and music." RJN 12 at 45; *see* SUF ¶¶ 59-60. |

| RJN Ex. # | Item and Fact(s) for Which Judicial Notice Is Requested |
|---|---|
|  | • The U.S. House Committee on Oversight and Accountability reported that an individual from Tennessee "rapped about successfully getting rich from filing fraudulent UI claims in California in the music video 'EDD' posted on YouTube and Instagram" featuring him waiving EDD envelopes "that had contained debit cards loaded with UI benefits" and boasting "about how he was doing 'my swagger for EDD' by exploiting the vulnerabilities in the PUA program." RJN 12 at 45-46; *see* SUF ¶ 60. |
| 13. | EDD brochure titled *Unemployment Insurance Benefits: What You Need to Know*: <br><br> • EDD made benefits available in two ways: via paper check or via a prepaid debit card. RJN 13 at 6; *see* SUF ¶ 2. <br><br> • EDD benefits recipients had the ability to choose whether they wanted to receive their benefits via check or via a prepaid card when they submitted their benefits applications to EDD. RJN 13 at 6; *see* SUF ¶ 3. |
| 14. | U.S. House Committee on Ways and Means article titled *Ways and Means Votes to Claw Back Billions in Stolen Pandemic-Era Unemployment Benefits, Protect Taxpayer Rights*, dated February 12, 2025: <br><br> • The U.S. House Committee on Ways & Means reported in February 2025 that improper PUA payments were estimated to be upwards of $400 billion nationwide. RJN 14 at 1; *see* SUF ¶ 49. |
| 15. | California State Auditor Report 2020-128/628.1 titled *EDD's Poor Planning and Ineffective Management Left It Unprepared to Assist Californians Unemployed by COVID-19 Shutdowns*, dated January 2021: <br><br> • The California unemployment rate rose to over 16% in April 2020. RJN 15 at 6-7; *see* SUF ¶ 34. <br><br> • PUA extended unemployment benefits to those not previously eligible under traditional unemployment systems, including self-employed individuals, and business owners. RJN 15 at 5; *see* SUF ¶ 36. <br><br> • California's State Auditor reported that "EDD responded to the claim surge by suspending its determinations of eligibility for most claimants, thereby compromising the integrity of the UI program." RJN 15 at 1; *see* SUF ¶ 64. <br><br> • California's State Auditor reported that "[i]n spring of 2020, the secretary of the Labor and Workforce Development Agency directed EDD to pay certain claimants UI benefits without making key eligibility determinations and to temporarily stop collecting biweekly eligibility certifications" – "directives [which] were designed to |

| RJN Ex. # | Item and Fact(s) for Which Judicial Notice Is Requested |
|---|---|
| | provide Californians with benefit payments as quickly as possible." RJN 15 at 1; *see* SUF ¶ 64. |

## II. Other Publications

| RJN Ex. # | Item and Fact(s) for Which Judicial Notice Is Requested |
|---|---|
| 16. | KCRA 3 article titled *Analysis shows California EDD fraud at $32.6 Billion and Counting*, dated October 6, 2022:<br>• Lexis Nexis data analysis estimated that EDD incurred approximately $32.6 billion in fraud losses during the pandemic. RJN 16 at 4; *see* SUF ¶ 47. |
| 17. | Decipher article titled *Criminals Find a Way to Clone EMV Cards*, dated July 31, 2020, and relied upon by BANA's expert witness Pamela Joseph:<br>• "Shimming" machines allow criminals to read identifying data, including card numbers, from EMV chips and produce counterfeit cards. RJN 17; *see* SUF ¶ 244, DX 12.A ¶¶ 56, 83, 85, 89-90, 104, 117. |
| 18. | WQOW.com article titled *Shimmers: the new credit card skimmers*, dated June 29, 2018, and relied upon by BANA's expert witness Pamela Joseph:<br>• "Shimming" machines allow criminals to read identifying data, including card numbers, from EMV chips and produce counterfeit cards. RJN 18 at 2-3; *see* SUF ¶ 244, DX 12.A ¶¶ 56, 83, 85, 89-90, 104, 117. |
| 19. | ID.me article titled *Calculating the Road to Losing $400 Billion Dollars*, dated January 20, 2022:<br>• ID.me estimated $400 billion in fraudulent claims for unemployment insurance during the pandemic, approximately a 40% loss rate. RJN 19 at 1, 4; *see* SUF ¶ 49. |
| 20. | Nilson Report, Issue 1187, dated December 2020, and relied upon by BANA's expert witness Pamela Joseph:<br>• EMV chip technology does not prevent account compromise through phishing or merchant breaches. RJN 20 at 5; *see* SUF ¶ 243, DX 12.A ¶¶ 56, 83, 85, 89-90, 104, 117. |

### III. YouTube Videos

| RJN Ex. # | Item for Which Judicial Notice Is Requested |
|---|---|
| 21. | YouTube video titled "EDD" by ShotOff & Nuke Bizzle:<br>• Individuals posted music videos on YouTube bragging about having defrauded EDD and BANA. RJN 21; *see* SUF ¶¶ 59-60. |
| 22. | YouTube video titled "Bandemic (E.D.D.)" by Shoreline Mafia:<br>• Individuals posted music videos on YouTube bragging about having defrauded EDD and BANA. RJN 22; *see* SUF ¶¶ 59-60. |

## LEGAL ARGUMENT

The court may take judicial notice of a fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). "[C]ourts often take judicial notice of the existence of documents." *Coastkeeper v. United States Int'l Boundary & Water Comm'n*, 2025 WL 509303, *3 (S.D. Cal. Feb. 14, 2025). Beyond that, a court may "take notice of the factual truth of the contents, if those are [not] subject to reasonable dispute." *See id.*

As set forth below, BANA respectfully requests judicial notice of RJNs 1-22 and the facts in these documents detailed above for the reasons discussed herein.

### I. Materials Published by Government Entities

The Court may take judicial notice of public records and publicly available government website pages. *See, e.g., Jones v. Pollard*, 2023 WL 4728802, *2 n.7 (S.D. Cal. July 24, 2023) ("all five exhibits are proper for judicial notice as they are publicly available government website pages"); *Metroflex Oceanside LLC v. Newsom*, 532 F. Supp. 3d 976, 980 (S.D. Cal. 2021) (documents "in the public record" are "subject to judicial notice"). Specifically, the "contents" of government records "are proper subjects for judicial notice." *Rowland v. Paris Las Vegas*, 2014 WL 769393, *2 (S.D. Cal. Feb. 25, 2014); *see Lopez v. Bank of America, N.A.*, 505 F. Supp. 3d

961, 969 (N.D. Cal. 2020) ("the content of records and reports of administrative bodies are proper subjects for judicial notice") (quotation omitted). The deference given to government materials extends to materials available on "[g]overnment websites," which are considered "reliable sources." *Day v. GEICO Cas. Co.*, 2024 WL 251408, *2 (N.D. Cal. Jan. 23, 2024). The "information obtained" from government websites is also judicially noticeable. *ImprimisRx, LLC v. OSRX, Inc.*, 2022 WL 3371343, *6 (S.D. Cal. Aug. 15, 2022) (quotation omitted); *No Cost Conf., Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1296 (S.D. Cal. 2013) (information, or facts, within a government website are judicially noticeable if they "cannot reasonably be disputed").

RJNs 1-15 consist of government reports, press releases, and other publications by federal and state government agencies and officials that are "proper subjects of judicial notice" and cannot reasonably be disputed. *See Rowland*, 2014 WL 769393, *2. These sources convey facts relating to the COVID-19 pandemic, including such non-controversial facts as the adoption of federal assistance programs, unemployment trends during the pandemic, warnings from government agencies about increases in pandemic-related fraud, the findings of government agencies that a significant portion of assistance payments made under the PUA program were improper, and government findings concerning EDD's administrative failings, as well as facts relating to EMV chips and EDD's payment options for unemployment insurance (UI) beneficiaries. These are all facts "generally known within [this Court's] territorial jurisdiction." FED. R. EVID. 201(b). Accordingly, judicial notice of the documents and facts listed in RJNs 1-15 is proper. *See, e.g.*, *Jones*, 2023 WL 4728802, *2 n.7 (granting request for judicial notice of publicly available government website pages relating to pandemic); *see also United States v. Lopez-Valdez*, 2021 WL 2453278, *1 n.2 (S.D. Cal. June 16, 2021) (taking judicial notice of government "statistics and reports" regarding pandemic).

## II. Other Publications

RJNs 16-20 are publications accessible through the Internet and/or Internet archives. Not only is the existence of webpages judicially noticeable, but "[f]acts that become widely known through news or other announcements, including on websites, are subject to judicial notice." *Parent v. Millercoors LLC*, 2016 WL 3348818, *4 (S.D. Cal. June 16, 2016) (finding judicial notice of fact in news article appropriate because fact in article was "generally known in San Diego and capable of sufficiently accurate and ready determination"); *see D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1191-92 (S.D. Cal. 2024) ("existence of . . . webpages [is] judicially noticeable."). In addition, courts also have taken judicial notice of archived Internet content. *See Kinnee v. TEI Biosciences Inc.*, 2023 WL 8191097, *3 (S.D. Cal. Nov. 27, 2023) ("courts have taken judicial notice of internet archives in the past") (quotation omitted).

The facts set forth in RJNs 16-20 for which judicial notice is sought relate to EMV chip technology and the estimated impact of pandemic-related UI fraud. Judicial notice of such facts is proper for the following reasons: (i) the limitations of EMV chip technology is a fact that has become "widely known" through public dissemination and therefore subject to judicial notice, *see Parent*, 2016 WL 3348818, *4; and (ii) the extent of UI fraud is at the heart of Plaintiffs' claims in this action and "generally known within the trial court's territorial jurisdiction." FED. R. EVID. 201(b).

## III. YouTube Videos

RJNs 21 and 22 are YouTube videos. BANA requests that the Court take judicial notice of RJNs 21 and 22 for the limited and proper purpose of establishing the existence of RJNs 21 and 22 in the public domain. *See Witt v. Bristol Farms*, 2022 WL 6258296, *5 (S.D. Cal. Oct. 7, 2022) (Courts may take judicial notice of "YouTube . . . to establish 'the existence of the website in the public realm.'") (quoting *Farrell v. Boeing Emps. Credit Union*, 761 F. App'x 682, 682 n.1 (9th Cir. 2019)).

# CONCLUSION

For the foregoing reasons, the Court should take judicial notice of the aforementioned documents and their contents in support of BANA's Motion for Partial Summary Judgment.

Dated: October 17, 2025

Respectfully submitted,

By: *s/ Laura G. Brys*

JAMES W. MCGARRY (*pro hac vice*)
*JMcGarry@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax: +1 617 523 1231

SABRINA M. ROSE-SMITH (*pro hac vice*)
*SRoseSmith@goodwinlaw.com*
MATTHEW L. RIFFEE (*pro hac vice*)
*MRiffee@goodwinlaw.com*
KEITH LEVENBERG (*pro hac vice*)
*KLevenberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**
1900 N St. NW
Washington, DC 20036
Tel: +1 202 346 4000
Fax: +1 202 346 4444

LAURA G. BRYS (SBN 242100)
*LBrys@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S Figueroa St., Suite 4100
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 617 346 4444

VALERIE A. HAGGANS (*pro hac vice*)
*VHaggans@goodwinlaw.com*
LINDSAY E. HOYLE (*pro hac vice*)
*LHoyle@goodwinlaw.com*
**GOODWIN PROCTER LLP**
620 Eighth Avenue
New York, NY 10118
Tel.: +1 212 813-8800
Fax: +1 212 355-3333

YVONNE W. CHAN (*pro hac vice*)

*YChan@jonesday.com*
**JONES DAY**
100 High Street
Boston, MA 02110
Tel.: +1 617 960 3939
Fax: +1 617 449 6999

JANICE P. BROWN (SBN 114433)
*jbrown@myersnave.com*
MATTHEW B. NAZARETH (SBN 278405)
*mnazareth@myersnave.com*
**MEYERS NAVE**
600 B Street, Suite 1650
San Diego, CA 92101

Attorneys for Defendant
**BANK OF AMERICA, N.A.**

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the clerk of the court for the United States District Court for the Southern District of California by using the CM/ECF system on October 17, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify under penalty of perjury that the foregoing is true and correct.

Dated:  October 17, 2025                              *s/ Laura G. Brys*