JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
BRIAN DANITZ (SBN 247403)
bdanitz@cpmlegal.com
KARIN B. SWOPE (Pro Hac Vice)
kswope@cpmlegal.com
VASTI S. MONTIEL (SBN 346409)
vmontiel@cpmlegal.com
CAROLINE A. YUEN (SBN 354388)
cyuen@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
CONNIE K. CHAN (SBN 284230)
cchan@altber.com
JAMES BALTZER (SBN 332232)
jbaltzer@altber.com
JESSICA M. LEVY (SBN 368289)
jlevy@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Fax: (415) 362-8064

*Co-Lead Counsel for Plaintiffs and the Classes*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE BANK OF AMERICA CALIFORNIA UNEMPLOYMENT BENEFITS LITIGATION**<br><br><br><br><br><br>This Document Relates to All Actions | Case No. 3:21-md-02992-GPC-MSB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR CLASS DECERTIFICATION**<br><br>[ORAL ARGUMENT REQUESTED]<br><br>Date:      September 25, 2026<br>Time:      1:30 p.m.<br>Judge:     Hon. Gonzalo P. Curiel<br>Ctrm:      12A (2nd Floor) |

REDACTED PUBLIC VERSION

# Table of Contents

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................... 4

   A. The Court's Order Granting Class Certification........................................ 4

   B. The Bank's Motion for Decertification, Based on the DOL-OIG's
      Flagging of Certain EDD Accounts as "Potentially" Fraudulent ............. 6

   C. The Bank's and EDD's Prior Actions to Validate Class Members........... 9

ARGUMENT ...................................................................................................... 13

   I. Article III Is Not a Barrier to Certification............................................ 13

      A. Plaintiffs Have Demonstrated Classwide Article III
         Standing Consistent with *Healy* ................................................... 13

      B. All Class Members Have Standing Because the Class Definitions
         Exclude Those Determined by EDD or the Bank to Be Fraudsters ........ 15

      C. The Class Definitions Are Not "Fail-Safe." ...................................... 16

   II. The Bank's Defenses Do Not Present Predominating Individualized Issues ........ 18

      A. The Bank Has Still Not Presented Admissible Evidence that the Existing
         Class Member Exclusion Procedures are Inadequate to Identify any
         Actual Fraudsters Who Have Not Already Been Disqualified....................... 19

      B. Mini Trials Are Neither Necessary nor Appropriate Because
         the Information Needed to Determine Fraud Still Resides with
         EDD and the Bank. ....................................................................... 21

      C. A Post Trial Claims Process Adequately Protects the Bank's
         Due Process Rights. ...................................................................... 22

   III. The Predominating Common Issues Continue to Be Whether the Bank's
      Common, Classwide Policies and Practices Were Unlawful............................. 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)..................................................................................................18

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018)......................................................................................23

*Beaton v. SpeedyPC Software*,
  907 F.3d 1018 (7th Cir. 2018) .................................................................................23

*Behar v. Northrop Grumman Corp.*,
  2026 WL 184300 (C.D. Cal. Jan 20, 2026) ..............................................................15

*Bowerman v. Field Asset Servs., Inc.*,
  60 F.4th 459 (9th Cir. 2023) ................................................................................5, 23

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) .............................................................13, 22, 23, 24

*Brown v. DirecTV, LLC*,
  562 F.Supp.3d 590 (C.D. Cal. 2021) .......................................................................24

*Brown v. Google, LLC*,
  2022 WL 17961497 (N.D. Cal. Dec. 12, 2022)........................................................19

*Cent. Delta Water Agency*,
  306 F.3d 938 (9th Cir. 2002) ...................................................................................14

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ...................................................................................17

*D.C. by & through Garter v. Cnty. of San Diego*,
  2018 WL 692252 (S.D. Cal. Feb. 1, 2018)...............................................................23

*Dilts v. Penske Logistics LLC*,
  267 F.R.D 625 (S.D. Cal. 2010) ...............................................................................25

*Dulberg v. Uber Techs., Inc.*,
  2018 WL 932761 (N.D. Cal. Feb. 16, 2018).............................................................17

*Elliot v. Humana Inc.*,
2025 WL 1065755 (W.D. Ky. Apr. 9, 2025), *leave to appeal denied sub nom.
In re Humana, Inc.,* 163 F.4th 376 (6th Cir. 2025) ...................................................... 24

*Frasco v. Flo Health Inc.*,
2025 WL 2680068 (N.D. Cal. Sept. 17, 2025)................................................. 13, 24, 25

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) ......................................................................*passim*

*Heredia v. Eddie Bauer LLC*,
2010 WL 127489 (N.D. Cal. Jan. 10, 2020)................................................................. 25

*Hernandez v. WM Wholesale, LLC*,
2025 WL 2556591 (C.D. Cal. Aug. 18, 2025) ............................................................. 19

*Jefferson v. Gen. Motors LLC*,
2024 WL 1097170 (W.D. Tenn. Mar. 13, 2024)........................................................... 24

*Kamar v. RadioShack Corp.*,
375 F.App'x 734 (9th Cir. 2010) ................................................................................. 16

*Krakauer v. Dish Network, LLC*,
2017 WL 3206324 (M.D.N.C. July 27, 2017)............................................................... 22

*Lyngaas v. Curaden A.G.*,
436 F.Supp.3d 1019 (E.D. Mich. 2020) ....................................................................... 22

*Mabanta v. Prime Now LLC*,
2022 WL 1601415 (N.D. Cal. Feb. 28, 2022) .............................................................. 25

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...................................................................................................... 14

*Melgar v. CSK Auto, Inc.*,
681 F.App'x 605 (9th Cir. 2017) ................................................................................. 16

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ......................................................................................... 4

*Mohamed v. Bank of Am. N.A.*,
93 F.4th 205 (4th Cir. 2024) ....................................................................................... 16

*Morgan v. Rohr, Inc.*,
2023 WL 8813171 (S.D. Cal. Dec. 20, 2023) .............................................................. 19

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...................................................................................23

*Olean Wholesale Grocery Coop, Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ...........................................................................5,13, 18

*Peel v. BrooksAmerica Mortg. Corp.*,
    2012 WL 3808591 (C.D. Cal. Aug. 30, 2012) ......................................................22

*Pitkin v. State Farm Fire & Cas. Co.*,
    2026 WL 1879726 (N.D. Cal. June 30, 2026)........................................................14

*Rahman v. Mott's LLP*,
    2014 WL 6815779 (N.D. Cal. Dec. 3, 2014)..........................................................23

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
    251 F.R.D. 267 (N.D. Ohio 2008) ..........................................................................22

*Ruiz Torres v. Mercer Canyons, Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ..........................................................................*passim*

*Schuman v. Microchip Technology, Inc.*,
    2026 WL 1603305 (N.D. Cal. June 4, 2026)..........................................................25

*Solano v. Kroger Co.*,
    2026 WL 1396385 (9th Cir. May 19, 2026)............................................................14

*Spurlock v. Wexford Health Sources, Inc.*,
    175 F.4th 232 (4th Cir. 2026) ................................................................................13

*Stearns v Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) (cited at Mot. 12-13)..............................................18

*Svoboda v. Amazon.com Inc.*,
    168 F.4th 956 (7th Cir. 2026) ...........................................................................18, 24

*Tavenner v. Talon Grp.*,
    2012 WL 1022814 (W.D. Wa. Mar. 26, 2012) .......................................................22

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).....................................................................................5, 23, 24

*True Health Chiropractice, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) .................................................................................19

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) ................................................................................. 19

*Velasquez v. HSBC Fin. Corp.*,
   2009 WL 112919 (N.D. Cal. Jan. 16, 2009) ..................................................... 16, 17

*Victorino v. FCA US LLC*,
   2020 WL 2306609 (S.D. Cal. May 8, 2020) ...................................................... 23, 24

*Victorino v. FCA US LLC*,
   2021 WL 4124245 (S.D. Cal. Sept. 9, 2021) ........................................................... 13

*Wesley v. Snap Finance, LLC*,
   341 F.R.D. 72 (D. Utah 2022) .................................................................................. 24

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ....................................................................... 17, 22, 25

**Statutes**

15 U.S.C. §1693g(b) ..................................................................................................... 18

Cal. Unemp. Ins. Code §§1336, 1377 .......................................................................... 22

**Other Authorities**

12 C.F.R. §1005.2(b)(3)(i)(B) ....................................................................................... 16

12 C.F.R. §1005.15(a)(2) .............................................................................................. 16

Federal Rules of Civil Procedure

   Rule 23 ...................................................................................................................... 16

   Rule 23(a) .................................................................................................................. 16

   Rule 23(b)(3) ....................................................................................................... 13, 18

   Rule 30(b)(6) ..................................................................................................... *passim*

   Rule 56 ...................................................................................................................... 15

Newberg on Class Actions (5th Ed. 2016), ............................................................... 4, 16

Moore's Fed. Practice, §23.21[3] ................................................................................. 17

**INTRODUCTION**

When defendant Bank of America moved for partial summary judgment last October, it barely contested plaintiffs' principal legal argument—that at the height of the pandemic, the Bank abandoned its longstanding ███ procedures for investigating account holders' unauthorized-transaction claims and, in a callous act of corporate greed designed to further its own economic self-interest at the expense of tens of thousands of vulnerable, unemployed Californians, substituted CFF-1, a grossly mis-calibrated automatic claim filter that summarily denied every claim by every EDD debit cardholder who alleged that their critical Unemployment Insurance ("UI") benefits funds had been stolen through an unauthorized PIN-enabled ATM transaction.

The Bank now seeks to avoid any classwide liability to the approximately ███ members of the certified class, not by showing it did nothing wrong—because it certainly failed to comply with the affirmative obligations imposed by EFTA and the other statutory and common law provisions at issue—but by moving to decertify based on the same type of unsubstantiated allegations the Court rejected in its June 16, 2025 Class Certification Order, ECF 494 at 51-52. According to the Bank's still-baseless argument, recent inquiries by the U.S. Department of Labor require the Court to reverse direction and hold that the Bank is entitled to conduct over 109,000 separate mini-trials to enable the Bank to convert this nearly six-year old MDL litigation into a referendum into the accuracy of EDD's previous UI eligibility decisions and subsequent deposit of benefits funds into the class members' Bank-administered debit card accounts. That argument fails once again.

As before, the Bank misstates the applicable burdens of proof and the requirements of Rule 23, and recent discovery has made clear that the Bank's argument remains unsupported by admissible evidence. When the Court certified the five classes at issue, it expressly excluded from class membership any person who "has been disqualified by the State from Program eligibility" (as well as those whom the Bank determined, pursuant to its Remediation Plan, had previously engaged in "fraudulent Program conduct"). ECF 494 at 96-97. That was an entirely appropriate exclusion and did not render the class definitions

fail-safe. *See infra* at 16-17. Pursuant to this exclusion, many class members *have* been eliminated over the past six years; and as the Court has repeatedly pointed out, the Bank (no less than EDD) has had ample opportunity to identify others through its longstanding investigations. *See infra* at 5-6, 17. While the Bank is correct that EDD, ███████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████, any current class member whom EDD disqualifies through this process will automatically be excluded from the class. The Bank's motion asserts a right to usurp the exclusive authority of EDD by challenging the agency's benefits eligibility decisions at trial, but it has no such right. Nor has the Bank established a factual predicate for disputing any non-excluded class member's benefits eligibility; indeed, its Rule 30(b)(6) designee recently admitted that the Bank does not know how DOL interpreted or applied any of the criteria it used to flag "potential" fraud or whether any of those criteria are even reliable. *See infra* at 7. For these reasons, the Bank's "██████████" effort (ECF 733-5 at 32:13-20) to avoid liability for its wrongful treatment of the class members whom EDD has *not* excluded must be rejected.[1]

The Bank principally rests its motion on two points: one factual, one legal; neither defensible.

Factually, the Bank asserts that DOL has made some sort of admissible evidentiary finding that more than ██████ class members obtained the funds paid by EDD into their Bank-administered debit accounts through fraud, principally identity fraud (i.e., stealing someone else's identity and claiming benefits under false pretenses). DOL made no such finding.  Rather, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ EDD, the state agency

_____

[1] Although the class definition excludes all individuals whom EDD has disqualified from eligibility, in the absence of such exclusion the Bank would still owe statutory and common law duties to those persons, including the duty to promptly investigate any unauthorized ATM transaction claims. The Bank's duties under EFTA, for example, do not depend on how the claimant initially obtained any deposited funds. While EDD has the statutory responsibility to determine whether it has made an "overpayment" of benefits funds to anyone who improperly sought UI benefits, any individual found to owe money to EDD is liable only to EDD—not to the bank in which the funds were deposited.

exclusively charged with making UI eligibility determinations, to revisit its previous eligibility determinations as to more than a million California UI recipients, mostly non-class members. PX 28; PX 29 at -888930_002; *see infra* at 8.[2] ████████████ ████████████████████████████████ ████████████████████████████████ ██████ ██████ ██████ ██████ ██████ ██████ ██████ ██ three class representatives and a preliminary-injunction declarant—each of whom is exactly who they claim to be and whose eligibility the Bank has never disputed. *See infra* at 7, 19-20. Nonetheless, any class member whom EDD determines prior to entry of judgment should have been found disqualified from eligibility will automatically be excluded.

Legally, the Bank continues to rely on *Healy v. Milliman, Inc.,* 164 F.4th 701 (9th Cir. 2026), for the proposition that in a class action, every class member must prove Article III standing to proceed to trial. Mot. 4, 11-12, 14, 21. But every class member in this case *does* have Article III standing, because EDD found them entitled to benefits and established an EFTA-qualifying account for them, and each of them submitted an unauthorized-transaction claim that the Bank summarily denied based solely on CFF-1. Besides, *Healy* holds that even at the summary judgment stage (and thus, necessarily at the class certification/decertification stage), it is sufficient if a "rational trier of fact 'could' find [absent class member standing] at trial," which it certainly could here. 164 F.4th at 709.

Under EFTA, standing is established by a plaintiff's showing that they had an account with the Bank, submitted an unauthorized-transaction claim with respect to the account, and alleged that the Bank neither conducted the required investigation nor paid provisional credit within the statutory 10-day period. Whether EDD previously erred in finding those class members eligible for benefits and paying those benefits into a Bank-administered debit account *before* the Bank committed the challenged violations has nothing to do with the class members' Article III standing. At most, it pertains to some sort

---

[2] All "PX" citations refer to exhibits attached to the Declaration of Jacqueline Tsai in Support of Plaintiffs' Opposition to Decertification ("Tsai Decl.").

of equitable defense that the Bank has never clearly articulated, based on some unknown number of unidentified class members' unspecified but "potential" fraud *against EDD*.

For these reasons and as explained in greater detail below, the Bank cannot avoid classwide liability to *any* of the five classes based on its renewed assertion that common issues do not predominate. The Bank has no right, due process or otherwise, to call to the stand all 109,400 class members—or even those whom DOL suspects *may* be potential fraudsters—to conduct some vaguely defined, never-before articulated inquiry into whether, under the governing UI statutes (which only EDD and the CUIAB have the statutory authority to administer), those class members were actually *in*eligible for the benefits EDD determined they were entitled to receive.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A. The Court's Order Granting Class Certification**

On June 16, 2025, the Court issued a 98-page order granting class certification, finding Rule 23(a) and (b)(3) fully satisfied for each of the five proposed classes. ECF 494. The Court's order expressly rejected the Bank's argument that individualized inquiries were needed to identify any supposed fraudsters lurking within the class. *See id.* at 55-56.

As the Court stated, the Ninth Circuit has "rejected the argument that 'a class cannot be certified if its contains both injured and non-injured parties[,]' explaining that a 'well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct.'" *Id*. at 55 (quoting *Ruiz Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016), and citing Newberg on Class Actions §2:3 (5th Ed. 2016), *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012)). The Court reasoned that "here, all putative class members were subject to Defendant's uniform practice and policy of applying CFF-1 which automatically denied EDD cardholders' error claims and rescinded permanent credits. Therefore, the legal issue of whether these policies violate the EFTA predominates over a handful of identified class members who were not injured." *Id.* at 55-56 (citing *Ruiz Torres*, 835 F.3d at 1134); *accord id.* at 61.

The Court "disagree[d] with BANA's assessment that individual questions, concerning non-injured and/or fraudulent class members, will predominate over common issues for several reasons." *Id*. at 56. First, the proposed class definition already excludes any person whom the Bank has determined "'(i) has been disqualified by the [S]tate [of California] from Program eligibility; [or] (ii) has previously engaged in fraudulent Program conduct, such as submission of fraudulent claims or other abuses of the claims process[.]'" *Id*. (quoting ECF 386-1, Notice of Mot. 3). Second, "[t]hrough the reconsideration process, the PI and the Remediation Plan, ███████████████████████████████████████████████████████████████████ ," and "[t]here is no evidence that many unearthed fraudulent claims will arise." *Id*. at 57-58. The Court concluded that "BANA has not sufficiently demonstrated with evidence that individual issues will predominate on the EFTA claim" and that "[e]ven if fraudulent claimants need to be sorted out, the process of fact-intensive analysis will come from BANA and EDD's records and not any evidence that a class member will need to present; therefore, additional discovery or many mini-trials will not overwhelm the proceedings." *Id*. at 60-61 (distinguishing *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023)). The Court also "reject[ed] BANA's argument that prior to class certification, Plaintiffs must demonstrate that all class members have Article III standing," *id*. at 61-62 (citing *Olean Wholesale Grocery Coop, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022)); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)), applying the now-settled principle under *Healy*, 164 F.4th at 709, that even at the later summary judgment stage, plaintiffs need only establish a disputed fact issue regarding class member standing.

After class certification, the Bank produced supplemental interrogatory responses updating the list of cardholders meeting the certified class definitions, and class notice was sent to the putative class members identified in the Bank's files. Based on the Bank's updated class data and after excluding those who timely opted out, approximately 109,400

individuals currently meet the definition of one or more classes (roughly 103,900 Claim Denial and 6,000 Credit Rescission class members). PX 7 (Regan Decl.) ¶8.

## B. The Bank's Motion for Decertification, Based on the DOL-OIG's Flagging of Certain EDD Accounts as "Potentially" Fraudulent

On June 8, 2026—three days before the summary judgment hearing—the Bank filed a motion for decertification, based exclusively on the assertion that DOL's Office of Inspector General ("DOL-OIG"), in conducting an investigation driven by "the President's Task Force to Eliminate Fraud," had flagged ▮▮▮▮ class member accounts (and 3,116,073 other non-class member accounts nationwide) as "potentially fraudulently obtained." PX 33 at -889137; PX 25 (Lennon Dep.) 117:19-118:9.[3]

In response to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (encompassing 12 states, including California) for 4,369,061 ▮▮▮▮ prepaid accounts with remaining balances and 914,527 accounts with escheated funds, including ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF 733-8 (Lennon Decl.) ¶6 & Ex. D. In January 2026, after DOL-OIG reviewed that data, it flagged 2,679,741 of those accounts with remaining balances and 459,350 of those accounts with escheated funds as "potentially fraudulently obtained." *Id.* The Bank subsequently determined that ▮▮▮▮ of the flagged accounts belonged to class members here. *Id.* ¶¶6, 8, 9. According to the declaration filed by the Bank's Rule 30(b)(6) designee Jennifer Lennon, the Bank understood, based on its

---

[3] *See* Exec. Order 14,395, *Establishing the Task Force to Eliminate Fraud* (Mar. 16, 2026), https://www.whitehouse.gov/presidential-actions/2026/03/establishing-the-task-force-to-eliminate-fraud/ (targeting suspected fraud in "Minnesota … California, Illinois, New York, Maine, and Colorado"); U.S. Dep't of Labor, *Press Release: U.S. Dep't of Labor Demands Immediate Action from Governors on Unemployment Insurance Fraud* (June 17, 2026), https://www.dol.gov/newsroom/releases/eta/eta20260617 (announcing letters from Acting Secretary Sonderling, "a member of President Trump's Task Force to Eliminate Fraud, led by Vice President JD Vance," to "officially put[] governors on notice," highlighting California, New York, and Illinois); Parker Purifoy, *Labor Inspector General D'Esposito Bucks Impartiality Standards*, Bloomberg Law (May 26, 2026), https://news.bloomberglaw.com/daily-labor-report/labor-inspector-general-desposito-bucks-impartiality-standards ("Anthony D'Esposito, in his first six months as the DOL's inspector general [has] closely aligned his fraud-fighting efforts with the White House's plans, saying he's working hand-in-hand with Vice President JD Vance and acting Labor Secretary Keith Sonderling.").

communications with DOL, "that DOL-OIG's bases for suspicion include, among other indicators, the potential fraud indicators stated in its September 21, 2022 Alert Memorandum." *Id.* ¶7.[4]

Plaintiffs sought discovery into the Bank's communications with state and federal authorities. In response, the Bank produced a spreadsheet containing an excerpt from DOL-OIG's ▮▮▮▮ provided to the Bank on July 6, 2026, stating its reasons for flagging ▮▮▮▮ ▮▮▮▮.[5] The four indicators identified on that spreadsheet were *not* the same "potential fraud indicators" described in DOL's 2022 Alert Memorandum and the Lennon Declaration, but were simply (without further explanation): ▮▮▮▮ ▮▮▮▮ PX 26 at 6-7; PX 27. On July 22, 2026, plaintiffs deposed Lennon as the Bank's 30(b)(6) designee. She testified that ▮▮▮▮ ▮▮▮▮ ▮▮▮▮. PX 25 (Lennon Dep.) 33:2-4; 8-9; 34:15-16; 36:3-5. She also testified that ▮▮▮▮ ▮▮▮▮ ▮▮▮▮, *id.* 36:5-8; 37:12-17, or ▮▮▮▮ ▮▮▮▮. *Id.* 120:5-9 ("▮▮▮▮ ▮▮▮▮ ▮▮▮▮.").

---

[4] Those indicators are: (1) accounts with SSNs associated with UI claims filed in two or more states concurrently; (2) accounts with SSNs belonging to deceased persons; (3) accounts with SSNs belonging to ineligible federal prisoners; and (4) accounts associated with UI claims filed with email addresses identified as suspicious by DOL (such as accounts enabling users to hide personal information and identities). Lennon Decl. ¶7 & ECF 733-12 ("Lennon Decl. Ex. B") at 4-6.
On or about June 17, 2026, the Bank's litigation counsel, Matthew Riffee, requested a meeting with DOL-OIG regarding this litigation and asked DOL-OIG to review the remaining ▮▮▮▮ class members whose accounts were not ▮▮▮▮ and thus had not been reviewed by DOL-OIG. PX 32 at -889124; PX 26 at 22. On July 14, 2026, D'Esposito wrote back to Riffee, ▮▮▮▮, PX 33, and ▮▮▮▮ later that day. PX 34 at -889145.
[5] The July 6 data file identified an additional ▮▮▮▮ accounts in addition to the previously identified ▮▮▮▮ as "potential fraud."

Contrary to the Bank's assertion, the DOL-OIG's flagging of accounts is not a finding of "likely" fraud (Mot. 2). Rather, the DOL's Employment and Training Administration ("ETA") has asked EDD to "███████████████████████████████████████," PX 29 at -888930_002, and has asked *EDD* to "████████████████████████████████████████████████████████," *id.* at 888930_001. At DOL's request, EDD is ██████████████████████████████████████████████████████████████████████████████████████████████████" ECF 732-12 (Lennon Decl. Ex. C); *see also* PX 29 at -888930_002. DOL asked EDD to "████████████████████████████████████████████████████████," "████████████████████████████████████████████████," "████████████████████████████████████████████" to DOL. PX 29 at -888930_001-003 (emphasis omitted).

As of July 3, 2026, EDD had directed the Bank to ███████████████████████████████████████████████████████████████████████████ *Id.* at -888930_002; PX 25 (Lennon Dep.) 103:11-12. According to Lennon's sworn Rule 30(b)(6) testimony, "████████████████████████████████████████████████████████████████████████████████████" *id.* 104:25-105:2—a factual representation that the Bank's counsel reiterated to the Court at the July 24, 2026 scheduling hearing.[6]

---

[6] Nonetheless, on July 27, as this brief was being finalized, the Bank served plaintiffs with "supplemental" discovery responses asserting that EDD had actually ███████████████████████████████████████████████████████████████████████████████. Late that night, the Bank also filed nine new exhibits with a narrative analysis by counsel, in direct violation of the Court's July 24 directive limiting any supplemental filing to a single document (the July 6 spreadsheet that plaintiffs have filed as PX 27) with no briefing or commentary. Not only does the Bank's last-minute filing violate the Court's order, but several of its counsel's supposed "factual" representations are demonstrably false or misleading, as plaintiffs will show in a forthcoming Motion to Strike (including, for example, the assertion that EDD ███████████████████████████████ including six class members and the implication that EDD has confirmed only 34 total accounts as non-fraudulent, which is contradicted by

## C. The Bank's and EDD's Prior Actions to Validate Class Members

The Bank treats DOL's flagging of ▇▇ class members' accounts as a bombshell development, suggesting that as many as half the class members are criminals. But the information DOL seemingly used to flag those accounts for "potential" fraud has long been in the Bank's and EDD's possession and is the same information they have long used to investigate potential fraud.[7] EDD and the Bank have ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* PX 11 at 15-16; PXs 13-18; PX 19 at -4903, -4904, -4909, -4911; PX 25 (Lennon Dep.) 44:13-24. The Bank has been reviewing the class members' EDD debit card accounts and making its own determinations of identity fraud (and other forms of claim fraud), PX 12 at 7-8, pursuant to its reconsideration process, the June 8, 2021 preliminary injunction, and the Remediation Plan, and EDD has had its Fraud Special Counsel (former U.S. Attorney McGregor Scott) overseeing a similar process of investigating identity fraud and other forms of enrollment fraud since July 2021. *See* PX 2; PX 3 at 2, 5, 7-10; PX 4 at 4, 9-11. All current class members were initially found eligible by EDD, and all passed EDD's and the Bank's subsequent fraud screenings as well.[8]

First, the Bank's documents indicate that every class member was "▇▇▇▇▇▇▇" EDD's own "▇▇▇▇▇▇▇▇▇▇," which EDD developed in "▇▇▇▇▇▇▇▇

the Bank's Rule 30(b)(6) designee's July 22 testimony that the Bank does not know the status of EDD's review process, PX 25 (Lennon Dep.) 69:14-17; 74:20-75:2; 103:1-7, and counsel's misstatement about what it means for EDD ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇). Despite the obvious gamesmanship, nothing in the Bank's late-night filing affects any of the analysis presented by plaintiffs in this opposition.

[7] Notably, the Bank's decertification motion rests only on potential benefits enrollment fraud, not claim fraud. *See* Mot. 16 n.7. Although the Bank also screened every class member for claim fraud, at class certification it was at most able to identify just one Credit Rescission class member and four Claim Denial class members who might have submitted fraudulent unauthorized-transaction claims. *See* ECF 378 at 14-15.

[8] Nearly ▇▇▇ class members have now passed DOL-OIG's screening, and once DOL completes its review of the final batch of roughly ▇▇▇ files, the number of cleared accounts will be considerably greater—creating the possibility that, if necessary, the cleared class members could be subclassed and their claims adjudicated first, perhaps as a bellwether group.

,” and which EDD shared with the Bank. PX 1 at -00073905–06.[9] EDD's Fraud Screen Criteria included many of the same criteria that the Bank now touts as game-changing:

PX 1 at -00073906.[10] On January 10, 2021, EDD began applying these criteria "████████ ████████" and "████ ████████████████████████████" as well. *Id.* at -00073905.[11] Thus, the Bank's documents indicate that as a result of the ████████████████████████████████████ every class member (1) "████ ████████████████████████████████," (2) "████ ████████████████████████████████████████

<hr>

[9] *See also* PX 5 at 3 (EDD implemented ID.me in October 2020 and Thomson Reuters fraud detection tools in December 2020 to verify identities and screen for fraud risks such as "mailing address, county and federal incarceration status"); PX 6.

[10] Many of DOL's indicators are ████████████████████████████████ ████████████████████. *See, e.g.*, PX 20 329:4-14 (████████████████████████). The Bank also looked at ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████." PX 21 at -00630749.

[11] *See also* PX 3 at 9 ("In December 2020, all claims filed in CY 2020 were cross-checked against TR [(Thomson Reuters)] fraud detection tools to identify whether claims had any potential fraud indicators. Beginning January 2021, EDD cross checked all new claims filed against TR fraud detection tools[.]").

Pls' Opp. to Mot. for Decertification; Case No. 3:21-md-02992-GPC-MSB          10

███████████████████████████████████,” and (3) “███████

██████████████████████████” PX 1 at -00073906.

Second, as the Court found previously, “[t]hrough the reconsideration process, the PI and the Remediation Plan, █████████████████████████████████

█████████████████████████████████████████████████████████

████████████.” ECF 494 at 57-58. The Bank's processes for investigating fraud include the investigation of potential identity fraud. *See, e.g.*, PX 11 at 15-16; PXs 13-18; PX 19. Moreover, the Bank's policy was to freeze (from December 3, 2020 to March 17, 2021) or block (from March 18, 2021 onward) the accounts of every class member whose claim triggered CFF-1, and to unfreeze the account only if the cardholder first verified their identity and benefits eligibility with EDD, and to ████████████████████

█████████████████████████████████████████████████████████

███████████████████████████. *See* ECF 633-2 ¶¶90, 93-95 (citing evidence); ECF 633-1 ¶¶123, 127-130; PX 8 255:23-256:17, 256:19-257:12, 302:9-17; PX 9. According to the Bank's verified interrogatory responses, its intensive “████████████████” process ██

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████ PX 11 at 15-16.[12] Any blocked cardholder who failed to successfully authenticate their identity ████████ █████████████████████████ was disqualified under the Bank's Remediation

---

[12] *See also* PX 9 at -00452797 ███████████████████

████████, -00452801 (████████ ███████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████). Since October 2020, the Bank had also been using its ████████████ ████████████████ to review prepaid claims closed for fraud, which flagged fraud risks including ███████████████████████████████████████. PX 19 at -4903, -4904, -4909, -4911.

Pls' Opp. to Mot. for Decertification; Case No. 3:21-md-02992-GPC-MSB          11

Plan and excluded from the class.[13] Thus, approximately ███ class members re-authenticated their identities through either the EDD or the Bank's rigorous identification processes, *see* PX 7 ¶¶9-10—proving they are who they say they are and did not engage in identity fraud (the principal form of enrollment fraud that occurred during the pandemic, and the principal stated concern of the Bank).[14]

The record also demonstrates that the Bank promised its federal regulators, the CFPB and OCC, that it would not only "████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████," but that it would exclude from Remediation Plan eligibility any cardholder who "██████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████." PX 23 at -102557. The Bank thus represented to its regulators that every current class member was eligible to receive compensation under the Remediation Plan. *See* PX 12.

The Bank now insists that its previous findings of Remediation Plan eligibility mean nothing. But as former long-time OCC Director of Bank Supervision William Abernathy explains, "when regulators require a bank ██████████████████████████ ████████████████████████████████████████████████████████ ██████████.… Regulators do not expect or tolerate payments to be made to fraudsters pursuant to a regulatory consent order and remediation plan, especially where the bank has agreed ████████████████████████████████ as the Bank did here." PX 24 ¶34.

---

[13] *See* PX 12 (████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████); ECF 620-4 (Regan Expert Rep. (Aug. 29, 2024)) ¶32 & n.24; PX 7 (Regan Decl.) ¶¶6-10.

[14] *See* PX 22 ¶9 ("typical" benefits enrollment fraud scheme identified by U.S. Secret Service and other federal and state agencies in late Spring 2020 involved "perpetrators apply[ing] for benefits online with stolen identifying information"); PX 20 77:10-18 ("the concern was that there were individuals who were using stolen identities to engage in unemployment insurance benefits enrollment fraud"). A less pervasive form of enrollment fraud during the pandemic was the use of one's own identity to apply for benefits for which one was not eligible ("eligibility fraud").

**ARGUMENT**

The Bank's principal ground for decertification rests on its misreading of *Healy*, 164 F.4th 701, which the Bank incorrectly contends "require[s] Plaintiffs to prove that their class can be made entirely free of criminal fraudsters before trial" and "forecloses" the possibility of winnowing out uninjured class members at or after trial. Mot. 4, 11 (original emphasis removed). In fact, *Healy* held only that absent class members *at the summary judgment stage* (i.e., in most cases, well after class certification) must show at least a genuine issue of disputed fact concerning their Article III standing, 164 F.4th at 709, which plaintiffs have certainly done. *See infra* at 14-15. *Healy* is not a class certification decision and does not abrogate any of the Ninth Circuit precedents governing class certification under Rule 23(b)(3) on which this Court relied in certifying the five classes. *See Spurlock v. Wexford Health Sources, Inc.*, 175 F.4th 232, 250 (4th Cir. 2026) ("Article III and Rule 23(b)(3)'s requirements … are separate."); ECF 494 at 53 (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017)); ECF 494 at 55, 74, 83 (citing *Ruiz Torres*, 835 F.3d at 1125, 1137); ECF 494 at 61 (citing *Olean*, 31 F.4th at 669); *infra* at 23-24.

Under those controlling authorities and this Court's prior reasoning, class certification remains as appropriate now as it was in June 2025. *See* ECF 494 at 60. Because "plaintiffs' prior demonstration of grounds for certification of a Rule 23(b)(3) class continues to hold true," there is no basis for decertification. *Frasco v. Flo Health Inc.*, 2025 WL 2680068, at *8 (N.D. Cal. Sept. 17, 2025) (denying post-trial motion to decertify); *see also Victorino v. FCA US LLC*, 2021 WL 4124245, at *2 (S.D. Cal. Sept. 9, 2021).

**I.     Article III Is Not a Barrier to Certification.**

The Bank's assertion that all five classes must be decertified because there may be hidden fraudsters who lack Article III standing is wrong as a matter of law and fact and ignores the relevant admissible evidence and the definition of each certified class.

**A. Plaintiffs Have Demonstrated Classwide Article III Standing Consistent with *Healy*.**

In *Healy*, the Ninth Circuit reaffirmed that "'at the summary judgment stage the

plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements.'" 164 F.4th at 709 (quoting *Cent. Delta Water Agency*, 306 F.3d 938, 947 (9th Cir. 2002)). Plaintiffs have no obligation to "prove" at the summary judgment stage that all absent class members have standing (Mot. 11), only "that a rational trier of fact 'could' find for them at trial." *Healy*, 164 F.4th at 709 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and reversing district court order that "imposed an unduly high burden on [plaintiffs] at summary judgment").[15]

Plaintiffs have easily met that standard by presenting evidence that all class members who satisfy the class definition: (1) were screened and found eligible for benefits by EDD; (2) after establishing EDD debit card accounts with the Bank, reported the theft of some or all of those funds through an unauthorized ATM withdrawal (an "ATM claim"); (3) either had their ATM claims summarily denied, had their previously paid credits summarily rescinded, and/or had their accounts summarily frozen, based solely on the fact that their ATM claims triggered the Bank's automated CFF-1; and (4) in the ensuing years, despite the Bank's and EDD's ongoing fraud review, have not been found by either EDD or the Bank to have engaged in benefits enrollment fraud (i.e. fraudulently applying for EDD benefits to which they know they are not entitled) or claim fraud (i.e. fraudulently disputing a transaction they knowingly authorized). ECF 324-1 at 7-11 (citing evidence); *see supra* at 9-12. That is more than enough to satisfy *Healy*. *See Pitkin v. State Farm Fire & Cas. Co.*, 2026 WL 1879726, at *13 (N.D. Cal. June 30, 2026) (denying summary judgment under *Healy* where plaintiffs produced evidence that "many, if not all, of … the class appear[ed] to have suffered underpayments resulting from State Farm's depreciation methodology," and "[u]nder the logic of *Healy*," evidence tending to show that the defendant implemented an unreliable common policy sufficed to create "a question of

---

[15] The Ninth Circuit subsequently reaffirmed in an unpublished memorandum disposition that "even if the class contains uninjured, unnamed members, at class certification, our standing inquiry focuses on the named plaintiffs." *Solano v. Kroger Co.*, 2026 WL 1396385, at *1 (9th Cir. May 19, 2026).

material fact regarding the standing of the unnamed class members," even though the question of "who among them has actually suffered economic damage [was] hotly in dispute."); *Behar v. Northrop Grumman Corp.*, 2026 WL 184300 at *8 & n.10 (C.D. Cal. Jan 20, 2026) (denying decertification and holding that plaintiffs "more than met" Rule 56 by presenting substantial evidence that predominating issue concerning exposure to air pollutant was common to all class members).

### B. All Class Members Have Standing Because the Class Definitions Exclude Those Determined by EDD or the Bank to Be Fraudsters.

Because the class definitions exclude anyone whom EDD has disqualified from benefits eligibility, the classes include only those whom EDD has determined were entitled to the benefits that plaintiffs allege the Bank wrongfully withheld. Accordingly, all class members necessarily have Article III standing.

The Bank's recent document production confirms that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ at the request of the Bank's litigation counsel, *see supra* at 7 n.4). DOL has not made any fraud findings on its own but ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Lennon Decl. Ex. C; PX 33 at -889137; *see also* PX 29 at -888930_001-002; PX 26 at 19-23. All class members whom EDD disqualifies from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ will be automatically excluded under the five class definitions. In the meantime, all class members whom EDD previously found eligible for EDD benefits and whom EDD has *not* since found ineligible continue to have Article III standing.

The Bank urges the Court to allow it to challenge every class member's benefits eligibility at trial, even absent any prior finding of fraud by EDD or the Bank. Not surprisingly, the Bank is unable to cite any legal authority supporting that position or otherwise entitling it to collaterally challenge EDD's eligibility determinations. Indeed, the EDD-Bank Contract expressly prohibits such administrative second-guessing once EDD has made an eligibility determination, as it requires the Bank to "disburse to each claimant

the entire amount the EDD authorizes." PX 30 at -2445; *id.* at -2447 ("The Contractor shall process all benefit payment amounts provided by the EDD without alteration or adjustment. The EDD will be solely responsible for determining the accuracy of the benefit amount."). If any benefits recipient impermissibly obtained an overpayment of government funds through fraud, that is a matter for EDD (and potentially CUIAB) to resolve, not the Bank. Once EDD has "establishe[d]" a "government benefit account" with the Bank for a particular cardholder, the Bank owes that cardholder duties under EFTA and Reg E—just as it owes those statutory duties to all customers, regardless of how they obtained the funds in their accounts. *See* ECF 494 at 49-50 ("EDD cardholders' accounts are 'government benefit accounts'" subject to EFTA and Reg E) (citing 12 C.F.R. §1005.2(b)(3)(i)(B); 12 C.F.R. §1005.15(a)(2)); *Mohamed v. Bank of Am. N.A.*, 93 F.4th 205, 210 (4th Cir. 2024) (same, for Bank of America prepaid debit card accounts established by Maryland to receive pandemic unemployment assistance benefits). The Bank continues to owe those duties unless and until EDD revokes its authorization for a particular account.

### C. The Class Definitions Are Not "Fail-Safe."

The Bank's new attack on the class definitions as "fail-safe" is also meritless (and is forfeited, because the Bank could have asserted that same argument in opposing class certification initially, but chose not to do so).[16] A fail-safe class is "one that is defined so narrowly as to 'preclude[] membership unless the liability of the defendant is established.'" *Ruiz Torres*, 835 F.3d at 1138 n.7 (quoting *Kamar v. RadioShack Corp.*, 375 F.App'x 734, 736 (9th Cir. 2010) (fail-safe class definition is "a circular one that determines the scope of the class only once it is decided that a class member was actually wronged")). In other words, it "presupposes success on the merits," *Melgar v. CSK Auto, Inc.*, 681 F.App'x 605, 606 (9th Cir. 2017) (citing Newberg on Class Actions §3:6), making the class "unascertainable prior to a finding of liability in the plaintiffs' favor," *Velasquez v. HSBC*

---

[16] The Bank asserted at the June 11 hearing that it "did not have the chance" to challenge the class definitions as fail-safe in opposing class certification, 6/11/26 Tr. 37:21-38:1, but plaintiffs' proposed class definitions that the Court adopted were set forth in Plaintiffs' Notice of Motion of Class Certification. *See* ECF 324.

*Fin. Corp.*, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009); *see Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).

The class definitions do not turn on any threshold determination of liability by the trier of fact but on objective criteria ascertainable from the Bank's own records. *See* Moore's Fed. Practice, §23.21[3]. The classes are defined as (1) those who were subject to the Bank's challenged policies and practices, excluding (2) those *who have been identified by EDD or the Bank* as having been disqualified by the State from Program eligibility, having previously engaged in fraudulent Program conduct, or having had their card frozen due to legal order or other specified processes. ECF 494 at 96-97. Neither set of conditions requires a finding of liability to determine class membership. Through its discovery responses, the Bank identified approximately ███████ and ██████ individuals who satisfied the first prong of the Claim Denial and Credit Rescission class definitions respectively, and of those, approximately ██████ and ██████ respectively, who are excluded under the second prong, leaving approximately 103,900 Claim Denial class members and 6,000 Credit Rescission class members. ECF 620-4 ¶¶31, 35-36; PX 7 (Regan Decl.) ¶¶6-8; PX 12. The exclusion of individuals identifiable from a defendant's own records is common in class definitions and does not render a class definition "fail-safe" just because the exclusion criteria might eliminate individuals against whom the defendant might otherwise have a particular defense, such as statute of limitations. *See, e.g.*, *Dulberg v. Uber Techs., Inc.*, 2018 WL 932761, at *3 (N.D. Cal. Feb. 16, 2018); *compare Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 956 (9th Cir. 2005) (certified class defined as "All consumers…who currently own, or paid to repair or replace the plastic intake manifold in any of [specific models]). Excluded from the Class are (1) anyone to whom Ford has provided an extended warranty for her intake manifold"). Excluding individuals whom EDD has declared ineligible due to fraud does not make the class fail-safe. Plaintiffs will still have to prove that the Bank's challenged policies and practices violated the law. If the Bank's policies and practices are found lawful, all class members will be bound by that judgment. *See*

---

Pls' Opp. to Mot. for Decertification; Case No. 3:21-md-02992-GPC-MSB                    17

*Olean*, 31 F.4th at 669 n.14. Because the composition of the classes will remain identical regardless of the liability determination at trial, they are not "fail-safe."

## II. The Bank's Defenses Do Not Present Predominating Individualized Issues.

The Bank continues to assert that the class members' entitlement to "actual damages" raises an individualized issue on which plaintiffs bear the burden of proof. Mot. 12. But the Court was entirely correct when it quoted EFTA for the proposition that "[i]n any [EFTA] action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized," not on the consumer to show that the transfer was unauthorized. ECF 494 at 46, quoting 15 U.S.C. §1693g(b). Plaintiffs have presented considerable evidence that the Bank wrongfully denied their ATM claims without investigation based solely on CFF-1, thus establishing classwide liability and entitlement to statutory damages plus classwide damages in the amount of the ATM claims and the lost time value of money resulting from untimely reimbursement. ECF 324-1 at 7-11 (citing evidence); ECF 620-3 ¶¶8-22, 37-79, 83-92, 98-109; PX 7 Ex. A (Regan Sched. 1).[17]

The Bank bears the burden of proving its defenses, including its defense that some class members may have authorized the ATM transactions they disputed. *See* ECF 494 at 60 ("[T]he claimants do not need to prove their unauthorized transaction claim, it is BANA that needs to conduct the investigation by reviewing its own records."). But the Bank cannot defeat predominance by raising issues that are not a valid defense, no matter how

---

[17] Plaintiffs' narrow class definition, limited to those whose ATM claims the Bank denied based solely on its uniformly applied CFF-1 policy, distinguishes this case from *Stearns v Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (cited at Mot. 12-13), where the overbroad class included those who may have intended to purchase defendant's services anyway and thus were not harmed by the failure to obtain written preauthorization. Besides, regardless of whose burden it is, it is well established that "not all elements of liability must be resolved on a classwide basis to satisfy Rule 23. Supreme Court precedent is clear on this point." *Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 962 (7th Cir. 2026) (affirming certification notwithstanding individualized liability questions regarding each customer's location); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3) … does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.").

individualized. The Bank's decertification motion is based *not* on new evidence of class members actually authorizing their ATM claims, but on the possibility that some class members may not have been qualified to receive all of the UI benefits that EDD approved and paid them. Mot. 16 n.7. That is not a valid defense to an EFTA claim.

Even if it were, a defendant may not "support its invocation of individualized issues with mere speculation," *Van v. LLR, Inc.*, 61 F.4th 1053, 1068 (9th Cir. 2023), which is all the Bank offers. *See True Health Chiropractice, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) (courts considering predominance "do not consider … defenses that [the defendant] might advance or for which it has presented no evidence"); *Morgan v. Rohr, Inc.*, 2023 WL 8813171, at *1 (S.D. Cal. Dec. 20, 2023). Attorney argument and declarations based on assumptions rather than evidence are insufficient to establish that individual issues will predominate, *Van*, 61 F.4th at 1068, and it is *still* true that "BANA has not sufficiently demonstrated *with evidence* that individual issues will predominate on the EFTA claim." ECF 494 at 59 (emphasis added).[18]

### A. The Bank Has Still Not Presented Admissible Evidence that the Existing Class Member Exclusion Procedures are Inadequate to Identify any Actual Fraudsters Who Have Not Already Been Disqualified.

The Bank's decertification motion rests entirely on inadmissible hearsay and speculation that more class members will be excluded in the future because DOL has flagged approximately ████ class members as "potential" fraudsters. But the Court got it right at the May 21, 2026 hearing when stating that "we are still left with generalities and the lack of something more individualized that would then give rise to supporting evidence for these positions, either on predominance or causation." ECF 733-5 32:9-10. Indeed, the Bank's Rule 30(b)(6) designee recently *conceded* that the Bank ████████████ ████████████████████████████████" and does not know

---

[18] In *Hernandez v. WM Wholesale, LLC*, 2025 WL 2556591, at *2-3 (C.D. Cal. Aug. 18, 2025), and *Brown v. Google, LLC*, 2022 WL 17961497, at *1 (N.D. Cal. Dec. 12, 2022), cited in Mot. 16, 19, the defendant had introduced substantial, *non-speculative* evidence that individualized issues would predominate, and those cases are therefore inapposite.



. PX 25 (Lennon Dep.) 33:8-34:3. The fact that DOL-OIG flagged ████████ ████████████████████████████████████████████████████" and flagged ████ ████████████████████████████████████████████" provides additional evidence that those indicators are grossly unreliable. *See* PX 26-27; PX 35-37; PX 25 (Lennon Dep.) 29:16-38:8 (████████████████████████████████ ████████████████████████████████████████████████████ ████████). Besides, in the five months ████████████████████████ ████████████████████████████████████████████████████ ████████, and as the Bank confirmed at the July 24 scheduling hearing. *See* PX 25 (Lennon Dep.) 104:18-105:2); *but cf. supra* n.6.[19]

In sum, the Bank has not put forth any admissible evidence that any meaningful number of the ████ class members on DOL's "suspect list" engaged in enrollment fraud. Nor has it presented any evidence of fraud among the ████ class members whom DOL has yet to review. Lennon's unsubstantiated assertion that "BANA has every reason to believe that many of [this unreviewed group] … are potentially fraudulent" is rank speculation. *See* Lennon Decl. ¶13.

Given the exclusion criteria, the Bank's real argument is that the "potential" that some class members might have committed fraud requires decertification, even though the Bank has no evidentiary basis (other than whatever findings EDD may make going forward) for accusing anyone of such misconduct, and even though the Bank entered into a contract with EDD requiring it to honor EDD's eligibility determinations for UI benefits. Nothing in that contract, or in the statutory and constitutional obligations that flow from it, entitles the Bank to second-guess EDD's determinations about who is and is not eligible

---

[19] Even if EDD disqualifies some class members pursuant to its ongoing review process (such as the few purportedly identified for exclusion in the Bank's last-minute filing), those individuals would simply be excluded from the class. *See* PX 7 ¶¶6-8. Their exclusion would not demonstrate that individualized issues will predominate, particularly because the Bank has presented no evidence of the basis for EDD's disqualification of any class member or how any such basis relates to any other class member.

for the benefits that EDD funded. Even now, despite the terms of the preliminary injunction and the representations the Bank made to its regulators to secure the Consent Decrees, the Bank has not cited any non-speculative evidence that any particular class member committed disqualifying fraud. Nor has the Bank established any right to subject individual class members to these unsubstantiated accusations at trial, which would be highly prejudicial. Thus, even if the Bank had articulated a plausible theory of defense based on alleged but unproven EDD overpayments, it still could not obtain decertification because it has been unable to muster a sufficient evidentiary predicate for its speculative contentions.

### B. Mini-Trials Are Neither Necessary nor Appropriate Because the Information Needed to Determine Fraud Still Resides with EDD and the Bank.

The Bank argues that "[t]he need for tens of thousands of individual mini- (or full trials) requires decertification." Mot. 17. But there will be no need for mini-trials (or trials of any nature) on individualized issues of fraud. As the Court held in granting class certification, "the process of fact-intensive analysis will come from BANA and EDD's records and not any evidence that a class member will need to present; therefore, additional discovery or many mini-trials will not overwhelm the proceedings." ECF 494 at 60.

First, the Bank has long been fully capable of determining for itself whether any class members "ma[de] the ATM withdrawals they denied making" (Mot. 1), either because they were criminals who used a stolen identity to engage in benefits enrollment fraud and then falsely filed an ATM claim or otherwise, simply by referring to its own records and readily available databases. *See supra* at 9-12; PX 1; PX 9; PX 13-17; ECF 324-17 150:30-157:24. The Bank has many tools to detect both identity fraud and claim fraud, including through

████████████████████████████████. *See, e.g.*, PX 18-19.[20] "Individual inquiries to EDD cardholders will not be necessary." ECF 494 at 60.

Second, as explained *supra* at 18-19, absent a determination of benefits ineligibility by EDD, the Bank cannot raise ineligibility as a valid defense to any of the claims at issue, and therefore no trial time need be spent on disputed issues of benefits eligibility. In any event, the process of determining eligibility fraud depends on EDD's administrative records, and ████████████████████████████████████ ████████████████████████████. That process does not require the participation of the Bank, let alone the affected class members. While anyone EDD disqualifies from eligibility, even at this late date, may appeal the resulting overpayment finding to the CUIAB, Cal. Unemp. Ins. Code §§1336, 1377; *see* PX 31, they will be excluded from the classes by definition, and no trial time need be spent on their eligibility.

### C. A Post-Trial Claims Process Adequately Protects the Bank's Due Process Rights.

To the extent any individualized issues remain after excluding anyone identified by the Bank or EDD as having engaged in fraud, those issues, if any, could be resolved through a claims process after a classwide trial, consistent with Ninth Circuit law and due process, as this Court held in granting class certification. *See* ECF 494 at 53 (citing *Briseno*, 844 F.3d at 1131-32); *see also Lyngaas v. Curaden A.G.*, 436 F.Supp.3d 1019, 1024 (E.D. Mich. 2020); *Krakauer v. Dish Network, LLC*, 2017 WL 3206324, at *4-5 (M.D.N.C. July 27, 2017). Because plaintiffs' damages expert calculates damages on a class member-by-

---

[20] Courts have repeatedly rejected arguments that a class should not be certified simply because the process of identifying injured class members would involve a potentially laborious file-by-file review. *See, e.g.*, *Young*, 693 F.3d at 539 (agreeing with other courts that "the need to review individual files to identify its members [is] not [a] reason[] to deny class certification"); *Tavenner v. Talon Grp.*, 2012 WL 1022814, at *5 (W.D. Wa. Mar. 26, 2012) ("It would be ironic if plaintiff's attempt to narrow the class definitions to include only those who suffered direct financial injury should preclude class certification."); *Peel v. BrooksAmerica Mortg. Corp.*, 2012 WL 3808591, at *3 (C.D. Cal. Aug. 30, 2012) (need for "loan-by-loan review" did not preclude certification); *Randleman v. Fidelity Nat'l Title Ins. Co.*, 251 F.R.D. 267, 280-81 (N.D. Ohio 2008) (finding class action manageable even though discovering the information about homeowners who did not get the benefit of a discount rate "may be very costly and time-consuming").

class member basis using the Bank's own records of the amount of each class member's ATM claim, account balance, and length of deprivation, his calculations can easily be adjusted to eliminate any class member later determined not to have a claim. *See* ECF 620-3 ¶¶44, 69, 80; PX 7 (Regan Decl.) ¶¶6-8; *see also* ECF 494 at 86-87.

The Bank asserts that it "ha[s] the right to have a jury decide who among the tens of thousands of likely fraudsters are indeed fraudsters." Mot. 3. That is wrong. A defendant's "due process [rights are] satisfied 'so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process.'" *Victorino v. FCA US LLC*, 2020 WL 2306609, at *3 (S.D. Cal. May 8, 2020) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015)); *see also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1030 (7th Cir. 2018); ECF 494 at 55-56. "If the concern is that claimants in cases like this will eventually offer only a 'self-serving affidavit' as proof of class membership, it is again unclear why that issue must be resolved at the class certification stage to protect a defendant's due process rights." *Briseno*, 844 F.3d at 1132 (citing *Mullins*, 795 F.3d at 669).[21]

The Bank also mistakenly argues that *Healy* forecloses the idea of "postpon[ing] the winnowing-out exercise for *after* trial." Mot. 4. *Healy* expressly states that prior cases were abrogated by *TransUnion* only "to the extent they would have permitted unnamed class members to go without demonstrating standing at trial *or in any later claims process*." *Healy*, 164 F.4th at 708-09 (emphasis added). So long as plaintiffs present a genuine issue of material fact as to absent class members' standing at summary judgment and trial—as plaintiffs have done—nothing in *Healy* alters Ninth Circuit precedent that disputes regarding individual class members' claims may be adequately addressed during a

---

[21] The Bank cites *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 470 (9th Cir. 2023), *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51-52 (1st Cir. 2018), *Rahman v. Mott's LLP*, 2014 WL 6815779, at *9 (N.D. Cal. Dec. 3, 2014), and *D.C. by & through Garter v. Cnty. of San Diego*, 2018 WL 692252, at *3 (S.D. Cal. Feb. 1, 2018) for the proposition that it has a due process right to "have a jury decide who among" the class is not entitled to damages. Mot. 3-4, 21-24. That is not the law, and those cases held no such thing. Each involved plaintiffs who had failed to present (or, in *Bowerman*, had withdrawn) a workable methodology for approximating class members' damages. That is not the case here.

subsequent claims process. *See Briseno*, 844 F.3d at 1131 (no due process issue where defendant "will have … opportunities to individually challenge the claims of absent class members if and when they file claims for damages"). "Courts across different Circuits" have continued to hold, post-*TransUnion*, that "'protecting the defendant's due process rights can be done during the claims administration process.'" *Jefferson v. Gen. Motors LLC*, 2024 WL 1097170, at *5 (W.D. Tenn. Mar. 13, 2024) (quoting *Victorino*, 2020 WL 2306609, at *4); *see, e.g.*, *Svoboda*, 168 F.4th at 962-65 (rejecting predominance and due process arguments where defendant "will still have the opportunity to challenge class members' individual proof of location"); *Elliot v. Humana Inc.*, 2025 WL 1065755, at *11 (W.D. Ky. Apr. 9, 2025), *leave to appeal denied sub nom. In re Humana, Inc.*, 163 F.4th 376 (6th Cir. 2025) (rejecting argument that defendant "has a due process right to call each of these individuals at trial for questioning," as "due process rights are protected "so long as the defendant is given a fair opportunity to challenge" each clamant "during the claims administration process").[22]

### III. The Predominating Common Issues Continue to Be Whether the Bank's Common, Classwide Policies and Practices Were Unlawful.

In granting class certification, the Court previously reasoned that "all putative class members were subject to [the Bank's] uniform practice and policy of applying CFF-1 which automatically denied EDD cardholders' error claims and rescinded permanent credits. Therefore, the legal issue of whether these policies violate the EFTA predominates over a handful of identified class members who were not injured." ECF 494 at 55-56 (citing *Ruiz Torres*, 835 F.3d at 1134); *accord id.* at 61. The Court's reasoning continues to be correct. Certification is appropriate where "'one or more of the central issues in the action

---

[22] *See also, e.g.*, *Frasco*, 2025 WL 2680068, at *9 (denying decertification, approving claims procedure for damages, and rejecting defendant's "concerns about 'credibility, testimony, and claimant-specific documents'" that was based on "pure speculation"); *Wesley v. Snap Finance, LLC*, 341 F.R.D. 72, 78 (D. Utah 2022) ("[I]ndividual challenges to the claims or identities of putative class members are best made if or when they come forward to file claims for damages."); *Brown v. DirecTV, LLC*, 562 F.Supp.3d 590, 604 (C.D. Cal. 2021) (denying decertification, as "proposed claim administration procedure allow[ing] DirecTV to challenge the class membership of claimants during class administration" rather than at trial "does not run afoul of Rule 23 or due process").

are common to the class and can be said to predominate, … even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* at 45 (quoting *Tyson Foods, Inc.*, 577 U.S. at 453 (citation omitted)).[23] Even if the Bank could potentially show that some class members were not entitled to damages for whatever reason, "such fortuitous non-injury to a subset of class members" is no reason to decertify. *Ruiz Torres*, 835 F.3d at 1137. "[C]lass action litigation [often] grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies." *Young*, 693 F.3d at 540.[24]

Because it is undisputed that all class members were subject to the Bank's classwide policies and practices, the common legal issues of whether those policies violate EFTA, due process, CCPA, or the Bank's common law duties continue to predominate over any "individual questions[] concerning non-injured and/or fraudulent class members" for all of the reasons set forth above and as previously explained by the Court.

## CONCLUSION

For all the foregoing reasons, the Bank's motion to decertify should be denied.

---

[23] *See, e.g.*, *Schuman v. Microchip Technology, Inc.*, 2026 WL 1603305, at *8 (N.D. Cal. June 4, 2026) (denying decertification where, despite potentially individualized defenses, the "heart of Plaintiffs' case" turned on common proof of the defendant's conduct); *Dilts v. Penske Logistics LLC*, 267 F.R.D 625, 639 (S.D. Cal. 2010) (common issues predominate where class members "were all ultimately controlled by the same set of central policies"); *Frasco*, 2025 WL 2680068, at *9 (similar, denying decertification).

[24] The Bank's reliance on two off-the-clock cases, *Mabanta v. Prime Now LLC*, 2022 WL 1601415 (N.D. Cal. Feb. 28, 2022) and *Heredia v. Eddie Bauer LLC*, 2010 WL 127489 (N.D. Cal. Jan. 10, 2020), is misplaced. In both cases, the plaintiffs failed to present evidence that the putative class members were in fact subject to a common policy at all. Given the absence of evidence of a common policy, individualized inquiries into which members worked on- or off-the-clock predominated. Here, by contrast, the record is undisputed that the Bank uniformly applied its common policies to all class members.

Respectfully submitted,

Dated: July 29, 2026                     **COTCHETT, PITRE & McCARTHY, LLP**

By:       /s/ *Brian Danitz*
          JOSEPH W. COTCHETT
          BRIAN DANITZ
          KARIN B. SWOPE
          BLAIR V. KITTLE
          VASTI S. MONTIEL
          CAROLINE A. YUEN


Dated: July 29, 2026                     **ALTSHULER BERZON LLP**

By:       /s/ *Michael Rubin*
          MICHAEL RUBIN
          CONNIE K. CHAN
          JAMES BALTZER
          JESSICA M. LEVY

*Co-Lead Counsel for Plaintiffs and the Class*

## SIGNATURE ATTESTATION

Pursuant to section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I, Brian Danitz, attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing content and have authorized this filing.

Dated: July 29, 2026                         */s/ Brian Danitz*
                                              BRIAN DANITZ